1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF OREGON

3

MASS ENGINEERED DESIGN, INC., )  3:16-cv-01510-SI

4                              )
      Plaintiff,               )

5                              )
              vs.              )  August 25, 2016

6                              )
PLANAR SYSTEMS, INC.,          )

7                              )
      Defendant.               )  Portland, Oregon

8

9

10

11

12

13                    (Status Conference)

14              TRANSCRIPT OF PROCEEDINGS

15       BEFORE THE HONORABLE MICHAEL H. SIMON

16          UNITED STATES DISTRICT COURT JUDGE

17

18

19

20

21

22

23

24

25

```
 1                        APPEARANCES

 2   FOR THE PLAINTIFF:    John F. Edmonds
                          Stephen F. Schlather
 3                        Collins Edmonds Schlather & Tower, PLLC
                          1616 South Voss Road
 4                        Houston, Texas   77057

 5
                          Jonathan E. Mansfield
 6                        Mansfield Law
                          121 SW Morrison, Suite 400
 7                        Portland, Oregon   97204

 8   FOR THE DEFENDANT:    Andrew T. Oliver
                          Amin Turocy & Watson, LLP
 9                        160 West Santa Clara Street, Suite 975
                          San Jose, California   95113
10
                          Jacob S. Gill
11                        Stoll Stoll Berne Lokting & Schlachter
                          209 SW Oak Street, Suite 500
12                        Portland, Oregon   97204

13   Also present:        Paula Holm Jensen

14

15

16

17

18

19

20

21

22

23   COURT REPORTER:      Dennis W. Apodaca, RDR, RMR, FCRR, CRR
                          United States District Courthouse
24                        1000 SW Third Avenue, Room 301
                          Portland, OR   97204
25                        (503) 326-8182
```

```
 1                    (August 25, 2016)

 2              P R O C E E D I N G S

 3         (In chambers; counsel present:)

 4         THE COURT:  All right.  Good morning, everyone.  We

 5  are here in the case of Mass Engineered Design, Incorporated

 6  versus Planar Systems, Inc., case 3:16-cv-1510, for a case

 7  management conference.  I think it will be easier for me if I

 8  ask everyone to enter their own appearances right now, starting

 9  with folks representing Plaintiff Mass Engineered.

10         MR. MANSFIELD:  John Mansfield, Mansfield Law,

11  representing the plaintiff.

12         MR. EDMONDS:  John Edmonds of Collins Edmonds

13  representing the plaintiff.

14         MR. SCHLATHER:  Steve Schlather of Collins Edmonds

15  representing the plaintiff.

16         THE COURT:  Here on behalf of Defendant Planar

17  Systems, Inc., we have?

18         MR. GILL:  Jacob Gill with Stoll, Stoll, Berne,

19  Lokting & Shlachter.

20         MR. OLIVER:  Andrew Oliver.

21         THE COURT:  And do you want to enter your appearance

22  as the client?

23         MS. HOLM JENSEN:  Sure.  Paula Holm Jensen, general

24  counsel for Planar Systems.

25         THE COURT:  All right.  I believe I sent to you all
```

1    last night a draft case management order.  I read a number of

2    materials.  First of all, I read your joint status report, and

3    I appreciate that.  I have also read the complaint, both in

4    this case and the SpaceCo case.  I have read the magistrate

5    judge's opinion on the Markman hearing on the claim

6    construction hearing in Texas, the judge's order adopting that

7    and rejecting Planar's objection to the Markman decision.  I've

8    read the motion to dismiss or to transfer that was filed in the

9    Texas case by Planar and the judge's decision on that.

10          I think where my thinking is, but I'll let you all

11   respond to it, is that I want to follow the local rules that

12   I'm used to in this district.  They generally have been

13   modified by me, but they are pretty close to the

14   Northern District of California's, but that's what I have been

15   doing in the few patent cases that I've had.  I have not had

16   that many patent cases, but these are the local rules that I

17   think are fair and reasonable and that I'm used to.

18          I do understand that the Eastern District of Texas in

19   this case and, frankly, in some other cases, and I really

20   didn't really focus on it as much until recently appears to

21   have this practice, am I correct, a practice of postponing

22   deciding motions to transfer until after they deal with an

23   awful lot of preliminary matters.  I know some of the comments

24   that have been coming down and the orders that have been coming

25   down from the Federal Circuit -- by the way, I note that Planar

1    comments in their joint status report that that also violates

2    the Fifth Circuit precedent, although I didn't see any

3    Fifth Circuit cases cited to me, so I'm not really aware of

4    those.  But I really wasn't aware that that has been ongoing in

5    the Eastern District of Texas.  I just didn't know about it.

6          But that said, now that the case is transferred here,

7    given that we already have a claim construction resolution, and

8    I know that the Court in Texas tried to make it consistent with

9    claim construction decisions that they've previously issued in

10   earlier decisions on comparable patents, or at least the same

11   '978 patent, from the Ergotron case, I don't think I'm prepared

12   to fuss around with that claim construction hearing.  I think

13   it is what it is.  The Court has tried to make it consistent

14   among a number of cases involving the same patents, including

15   across time.  I do think that the federal judge in Texas

16   carefully considered Planar's one objection to that and has

17   rejected it, and I'm not planning on second-guessing that.

18          I understand there has been some discovery deadlines

19   perhaps that have been met and passed in the Texas matter.  I

20   know that you all have some disputes regarding what should or

21   shouldn't be allowed to be reopened now that the case has been

22   transferred here.  My objective is to try to get the right

23   answer, notwithstanding the fact that I'm not going to

24   second-guess the claim construction hearing; I'm going to

25   assume that's the right answer, but I want to make sure that

1    justice is done.  I take very seriously Rule 1 and the

2    obligation of the courts and the parties now working together

3    under our new amendments.  It is quite clear to reach a speedy,

4    just, and inexpensive resolution.  I know that in patent

5    litigation "speedy" and "inexpensive" may be relative terms,

6    but that's okay.  But I want to make sure we get a just

7    resolution, which means getting the answers right.  To the

8    extent that means some parties may get, as I think as plaintiff

9    put it, a "redo" of certain things in their expert opinion

10   reports, I am going to allow that.  You have seen the proposed

11   schedule that I have.

12           I do want to talk to you and hear your opinions about

13   this schedule, because I think as you've seen from what I sent

14   last night, it doesn't really match what either side has

15   requested.  I know that plaintiff has asked for a trial date as

16   soon as possible, as soon as maybe April or May.  I know that

17   plaintiff has the SpaceCo case going to trial in Denver in

18   June.  I assume it is going to be the same trial team from

19   plaintiff.

20           I know that the defendant has asked for a trial date

21   in July, or preferably even September, noting my preference

22   that I am not going to schedule trials now for next August.

23   Just personally I try to take a significant vacation every

24   other August in odd-numbered years, so I am really trying to

25   keep August reserved for my ability to take a family vacation.

1          I looked at the proposed schedules that you have all

2    submitted.  Looking at the defendant's proposed schedule of how

3    long you have to do various items, there is no way that if I

4    give you all of those dates we could have a trial ready before

5    September or even October under those dates.  So what you will

6    see that I have done is I selected a date that works well for

7    my calendar in July, basically starting a seven-day jury trial

8    on July 17th, 2017 and then pretty much work backwards.

9          By the way, I have selected seven days.  By the way,

10   I know plaintiff says five days.  I know that SpaceCo is

11   scheduled for four days.  It is totally fine with me, folks, if

12   you do this in four or five days.  But right now my July 2017

13   trial calendar is relatively open.  It is a lot easier for me

14   to set this for a seven-day jury trial.  To the extent that you

15   only take four or five days, I will assure you that I will have

16   plenty of good work to do in that intervening time, and

17   taxpayer money will not be wasted.  It will be a lot easier if

18   we do it this way than if I were to set this for a four- or

19   five-day trial, set other things around it as time progresses,

20   and then if you all tell me that you've miscalculated, that you

21   really do need six days or seven days for trial, it may be a

22   lot more disruptive to fit it in then.  So I am going to set it

23   for seven days.  Feel free to use less.

24          So I started working backwards.  What I normally do

25   is have a significant pretrial conference a week, sometimes two

1    weeks before the trial date.  When I first put together my

2    draft of this schedule and worked backwards, that put too much

3    pressure on other things.  So I figure we can have a pretrial

4    conference six days before the trial, get an awful lot

5    accomplished.  To the extent that we will need a second

6    pretrial conference, we will schedule that three days later in

7    between the first and the trial date.

8           Then there is an awful lot of things that have to be

9    done -- at least the way I run my pretrial conferences -- by

10   the parties before the pretrial conference so I can be fully

11   prepared to make significant, substantive rulings.  I pretty

12   much get this case fully packaged and ready to go to the

13   jury -- that oftentimes includes jury instructions -- at the

14   pretrial conference.

15          So I'm then working backwards along the various

16   things that you have suggested and requested.  I think it was

17   mostly Planar that asked for larger chunks of time between the

18   various items, but it just didn't work to get us where we

19   needed to get to have a trial in July.  It really would have

20   forced a trial in September.  I thought that really wouldn't be

21   fair to the plaintiffs, who filed the case back in 2014 and

22   wanted a trial sooner rather than later.  So my compromise was

23   July, and that means I am going to have to condense or compress

24   a number of other dates.

25          I don't think that anything is particularly

1    unrealistic or extremely burdensome, but I'll be glad to let

2    you tell me whether I've missed something or think there is

3    some tweaks or modifications that you think I really should

4    consider.

5            Then for the pretrial documents that need to be

6    filed, I thought it would make most sense, both in terms of

7    your efficiencies and economies for both parties, if you know

8    what my rulings are going to be on summary judgment and/or

9    Daubert before you have to start filing your pretrial

10   documents.  So I don't give you much time in this compressed

11   schedule, but at least this is structured so you will have my

12   rulings at least four days -- maybe sooner -- before the first

13   wave of pretrial documents have to come in.

14           So that means we will probably be looking at an oral

15   argument or an evidentiary hearing on any summary judgment or

16   Daubert motions on May 8, 2017.  And from that point, I then

17   work backwards from there to allow each side to have an

18   appropriate or a reasonable amount of time to file their

19   motions, oppositions, and replies.  It is not as much as some

20   of you have requested, but I think it is reasonable.  It is not

21   uncommon in this district to have these types of schedules.

22           Then, of course, one has to assume that discovery

23   needs to close before the deadlines for filing summary judgment

24   and Daubert, both expert discovery and fact discovery.  So I

25   then worked backwards from that period to end up at the draft

1    schedule that I've presented to you all.

2            So that's the thinking behind this.  You are welcome

3    to try to talk me into a different approach, but hopefully you

4    will see that I've given this a fair amount of thought.  I have

5    read everything that you all have provided so we can talk about

6    what we need to do.

7            I do have a technical question, because I'm just not

8    that familiar with it.  You will see in item 16 I have put in,

9    as defendant requested, a deadline for defendant to comply with

10   Section 282(c) of Title 35 of the United States Code.

11           Could someone talk to me about what really that means

12   practically, logistically, and legally

13           State your name before speaking.

14           MR. OLIVER:  This is Andrew Oliver for defendant.

15           That section of the code just states that any party

16   that is going to present an invalidity defense at trial -- and

17   I'm paraphrasing; I can't quote it exactly -- but any party who

18   is going to present a patent invalidity defense at trial has to

19   file a disclosure identifying certain things about certain

20   prior art that they are going to use, and if you don't file

21   that disclosure, essentially the invalidity defense is waived.

22           THE COURT:  And it struck me -- and this is part of

23   what is motivating my question -- I assume one would have to

24   disclose invalidity contentions or defenses way before then so

25   that that can be explored in discovery and even motion

1   practice.

2        So what am I missing here?

3        MR. OLIVER:  I think this is probably a remnant of a

4   time before many district courts adopted patent local rules and

5   a remnant of a time from when close of discovery was compressed

6   closer to trial, and so they wanted to make sure that if

7   somebody was hanging on and not answering a contention

8   interrogatory about invalidity defenses, that it would be set

9   in stone before trial, I think.

10       THE COURT:  I am expecting, if and when on June 23rd,

11  2017, defendant complies with 35 U.S.C. 282(c), nothing they

12  say will be a surprise to plaintiff, and plaintiff will have

13  had a full opportunity for discovery, including motion practice

14  on those issues.

15       Am I correct?  And do we need to do something

16  different here?

17       MR. EDMONDS:  Your Honor, I have been doing patent

18  litigation for about 20 years.  I remember this statute.  I

19  think it is essentially a nullity at this point in time.  There

20  are cases -- I didn't know it would be a question -- but there

21  are cases where a plaintiff has tried to jam a defendant

22  because they didn't make that disclosure, and the courts have

23  said, no, the fact disclosures and expert disclosures suffice

24  for this.

25       Because we have fact discovery deadline, because we

1   have an expert deadline, I don't think there is a need for this

2   deadline.  I don't see it on scheduling orders anymore.  It is

3   really not used.  I think your point is well taken.  It would

4   be, if anything, redundant, and, at worst, I guess a "gotcha"

5   if somebody forgot to do it, and that's not what we have in

6   mind.

7           MR. MANSFIELD:  If I could chime in for a second.  It

8   also not a last date that you can wait to disclosure

9   invalidity.  I have had people try this before -- if someone

10  has a different view of the law, obviously state it.  You can't

11  just sandbag it and just do it then if there are requirements

12  that you do it before.

13          THE COURT:  So I would like to take out, Item 16,

14  because it just reads strange to me in this context.  If

15  somebody feels a need to build an earlier deadline for doing

16  that, just tell me when it should be, and I will add it.

17  Otherwise, if you can all deal with it through interrogatories,

18  expert reports, or however else you do it, that's fine with me.

19  So if you need me to add it somewhere earlier, I would be glad

20  to.  I just don't want anything in here that implies that you

21  can make a brand-new invalidity disclosure on June 23rd.  I am

22  sure it is my inexperience with patent cases that makes me

23  think this is weird.

24          MR. OLIVER:  In my experience -- and this is not

25  necessarily how the statute reads -- but in my experience this

1    is often more of a narrowing than a broadening.  So if somebody

2    files an expert property or an invalidity contention with 100

3    pieces of prior art, and then when it gets time for trial they

4    disclose some subset of that rather than expanding that.  But

5    given the discussion we've had, I think defendant is perfectly

6    satisfied with taking it off of the schedule.

7            THE COURT:  And I think that you are going to have to

8    start filing pretrial documents well before June 23rd to

9    prepare for our July 11th pretrial conference, we will know

10   exactly what invalidity contentions may or may not have to be

11   addressed well before then.

12           The other matter that I just want to call to your

13   attention since it may be a little bit more unique to either

14   the District of Oregon or me, take a look at Item 1.  Although

15   we are reopening discovery later this week, I do add there will

16   be no motions to compel without prior leave of the Court.

17           You may have noticed in the new amendments to the

18   Federal Rules of Civil Procedure generally, but became

19   effective last December, that is now something that has been

20   encouraged in the amendments to Rule 16.  I have been doing

21   that pretty much since I took the bench five years ago.

22           My experience has been that parties sometimes don't

23   really take their conferral obligations all that seriously.

24   They will threaten motions to compel or withhold production and

25   then somebody files a really big, thick stack of motion to

1   compel that really should have been able to resolved earlier.

2   So my rule is you can't file any motions to compel without

3   prior leave of the Court.  If you want prior leave, contact my

4   courtroom deputy either together on a joint telephone

5   conference or in an e-mail copied to the other side.

6          My courtroom deputy, by the way, today is Trish Hunt.

7   She is filling in this week because my regular courtroom

8   deputy, Mary Austad, is out this week.  Contact my regular

9   courtroom deputy.  If you don't set it forth in your e-mail,

10  she will probably ask you.  She will certainly ask you to set

11  it forth to briefly describe what the dispute is about.  If

12  that description adequately sets forth both sides' positions,

13  fine.  If not, if it is only the movant's position, we will

14  briefly ask for a responsive e-mail from the respondent what

15  their position is.

16         This is not the time to do a full-blown motion to

17  compel argument via e-mail or with lots of attachments.  I just

18  want to get a sense of what the dispute or disputes are about

19  so I can think about it briefly before I hear our telephone

20  conference.  Mary will then set up our telephone conference to

21  talk about these disputes, and we will talk our way through it.

22         My experience has been 80 to 90 percent of discovery

23  disputes can be resolved informally, inexpensively, and

24  promptly with these types of telephone conferences.  Now, the

25  e-mails you send me will not be part of the appellate record,

1    unless you choose to file it.  You will see, even as we get

2    close to trial, I will do some things informally by e-mail.  We

3    don't put those in the official court docket, but you are

4    certainly welcome, and I will never be insulted if you think

5    that something is important, and you want to attach an e-mail

6    or e-mail exchange, file it in the docket, and you will have it

7    for appellate purposes.

8            But I try to resolve some disputes that we can

9    informally, quickly, and inexpensively.  So we will talk our

10   way through these discovery disputes.  If you tell me that you

11   really need to preserve a particular point mostly for appellate

12   purposes, or if there is some real difficult nuances of the law

13   or the facts that mean that you really need and should be given

14   an opportunity to brief it, tell me.  I will give you the

15   opportunity to brief it.  I have seen occasionally people

16   explain that to me.  It is usually dealing with areas like

17   attorney-client privilege or trade secrets or something like

18   that.

19           I will give you the opportunity to brief it, and we

20   will do that.  But that basically could take a large stack of

21   motion to compel and reduce it to one to two specific issues.

22   Such things as burdensomeness, proportionality, relevance,

23   reasonableness of a request or a search parameter, we usually

24   can talk about that on the telephone and find an appropriate

25   resolution.

1          If you disagree with my ruling, first of all, it will

2    be on the record, so you'll have a record of that.  If you tell

3    me, though, I'm really making a big mistake, and it is an

4    important issue, and you really want an opportunity to brief

5    it, you are welcome to say that.  But that will at least narrow

6    down and confine and focus what the real dispute should be

7    about.  So that's what I mean by no motions to compel without

8    prior leave.

9          MR. MANSFIELD:  Is it safe to assume that any

10   discovery dispute would be subject to this procedure?  For

11   instance, if it was a protective order or a dispute over a

12   designation of a document?

13         THE COURT:  Yes.  Basically no motions relating to

14   discovery issues can be filed without my permission.  Obviously

15   if you have a dispute, confer with each other, try to get it

16   resolved.  If you can't, call Mary.  We will get on the phone.

17   We most likely will get it resolved on the phone.  If not, I

18   will give you leave to file what you need to file.  By the way,

19   speaking of protective orders, I assume you have a protective

20   order already from Texas.

21         MR. MANSFIELD:  If I could maybe speak to that.

22   There is a protective order in Texas.  We have an issue, and it

23   has already arisen in circumstances that we don't need to go

24   into.  The lead case in Texas you may remember, because it is

25   in your order, is the SpaceCo case.  Because that was the lead

1   case, many of the relevant documents and docket entries are in

2   that and have not been transferred to our PACER.  I found this

3   out recently when I talked to the clerk.  She advised that we

4   consult with you because we obviously need to have those be

5   part of this record, and I don't know how Your Honor wants to

6   handle that.  Again, maybe it is just you ask the clerk to call

7   the other clerk or something or maybe you make an order or

8   something.  We need to get all of the Markman and the

9   protective order and all of those other things.  For instance,

10  right now you can't file a sealed pleading because there is no

11  protective order in our docket.

12         THE COURT:  I will ask you all to confer and find the

13  most efficient, cost-effective, reasonable way to accomplish

14  this.  And if that means you want to submit to me a new

15  stipulated protective order, submit it to me, and I'll sign it.

16  I don't know exactly what's in the SpaceCo case other than the

17  documents I've looked at.  But my guess is, given at least that

18  one of the patents in that litigation isn't even at issue in

19  this case, hopefully we don't have everything that is in that

20  case needing to be imported here.

21         So perhaps what you all can do is figure out what you

22  really need or want in this case and have it refiled.  Maybe

23  that's not an easy way or an inexpensive way to do it, in which

24  case tell me what you want.  Especially if you all agree on

25  what you want, I will do whatever you want, as long as you all

1    agree it is within reason.  But give it some thought as to what

2    is going to be a common sense, efficient way to get us what we

3    need.

4            If it turns out to be that we need to get everything

5    from that case, give me a proposed order.  But that doesn't

6    strike me as the best solution, given that we're going to get

7    more than we really need here.  But I'll let you all figure

8    that out.  If you need to get me a stipulated order, that's

9    fine.

10           By the way, you all know, or John and Jacob can tell

11   you, in this district we do have a model protective order that

12   we typically use.  We have a one-tier and a two-tier, depending

13   on whether we're dealing with competitors.

14           My general presumption is if the parties can agree on

15   a form of a stipulated protective order that's different than

16   those, fine, I will give you that, unless it is unreasonable.

17   My bar for unreasonableness is pretty high.  But if you

18   disagree, then my default is going to be what's wrong with our

19   local model, either one tier or two tier.  And there, the

20   burden is going to be on whoever disagrees with what the local

21   model is.  It is not beyond the possibility to say, "Oh, you

22   make a good point.  Our local is deficient or can be improved

23   in this respect," and then I will do it your way and maybe even

24   propose that we change our local model.

25           But other than that, I have seen in the olden days

1  people squabble over a few words that really don't make a bit

2  of difference just because each side wants to do it their way

3  or the way they are used to.  Then my default is going to be to

4  follow our local model unless it is meaningfully different.

5          The other thing I want to point out to you is Item 6

6  on summary judgment.  I have been practicing for a while.  I

7  started my practice in 1981.  I practiced for four, four and a

8  half years with Main Justice, the U.S. Department of Justice

9  Antitrust Division, and then I moved to Oregon in 1986 and

10  practiced with the Perkins Coie law firm for 25 years and then

11  became a federal judge a little more than five years ago, June

12  of 2011.

13          For those of you who have been practicing a while,

14  you may remember these older concise statements of undisputed

15  facts that were part of summary judgment.  I think they are a

16  great idea.  They turned out not to be so good and so helpful

17  when the judges don't really enforce them.  But when the judge

18  enforces them, they are a beautiful idea, and so I like them.

19  I enforce them.

20          Let me explain to you what I mean.  If somebody wants

21  to file a motion for summary judgment or partial summary

22  judgment, that's fine.  What you will need to do is convince me

23  of two things obviously:  That there is no material facts that

24  are in genuine dispute that require a jury resolution; and

25  looking at these undisputed facts, you are right on the law.

1    Obviously we all know how to fight over legal propositions.

2           So the hard part often comes in figuring out whether

3    there is a genuine dispute.  Well, we know that there is

4    background that one side likes to provide or the other side

5    likes to provide to help frame the questions and maybe even try

6    to influence the decision-maker who is on the side of

7    righteousness and justice and who is not.  That's fine.  I'm

8    not going to stop you from putting that stuff in; I can't do

9    that.  But those really aren't critical to deciding a summary

10   judgment motion.

11          So what is critical is if you are going to tell me

12   that you are entitled to summary judgment for a particular

13   claim or even a particular issue, it is going to be because you

14   say there are most likely a handful of key facts that you

15   contend are undisputed.  You can give me all of your other

16   background wherever you want to give it to me, probably in your

17   memorandum in support of your motion.  But there is going to be

18   a separate document that I require called a concise statement

19   of material undisputed facts where the movant tells me the

20   following three, four, five, six -- whatever -- facts -- one

21   fact at a time/one brick at a time is undisputed and is

22   necessary to resolving the issue.  If you want to tell me by

23   way of background that the other side is a horrible company

24   that does all sorts of terrible, mean things, first of all,

25   don't put that in there.  But if you have to, put it in your

background section.  It doesn't belong in the concise statement

of undisputed facts, because obviously it is going to be

disputed.  So put only those things that you really think are

undisputed and are necessary to win your motion and give me

pinpoint citations to where in the record evidence that you

submit I can find proof that it really is undisputed.

Then the respondent, in response, in addition to

giving me their memorandum where they put in their background

how wonderful they are and how terrible the other side is -- by

the way, I'm talking about companies; I'm not talking about

lawyers.  I don't want to hear invective about each other's

lawyering.  Enough said about that.

So the respondent in the concise statement says

either that they agree with a specific numbered fact.  Let's

say movant's concise undisputed No. 1, they either agree or

they don't agree, or they can agree for purposes of summary

judgment while reserving the opportunity to disagree at trial.

But for summary judgment, they don't challenge it for No. 1.

Fine.  Nothing more needs to be said about No. 1.

No. 2, let's suppose they disagree with that fact.

They state that they disagree with that fact.  They can

concisely tell me why they disagree with that fact or why there

is a genuine issue.  Then they identify specific portions in

the evidentiary record that's part of summary judgment either

that the movant submitted or that the respondent is going to

1    submit that shows me where there is genuine issue for trial on

2    that particular issue.

3         Or maybe they want to say, "You know, even if you

4    find that the movant's facts are correct or are undisputed,

5    there are some additional facts for why the movant should have

6    his motion denied."  Then you would add that to the

7    respondent's concise statement.  Now, here, you don't have to

8    convince me obviously that these additional facts are

9    undisputed.  You just have to show me that there is at least a

10   genuine issue, a genuine question for those facts that the jury

11   needs to decide.  Then obviously I will assume those facts in

12   the light most favorable to the non-moving party.

13        If for whatever reason the original moving party in

14   their reply wants to argue, no, those facts really are

15   undisputed, and it is not the way the respondent says, you're

16   welcome to do it and try to show me why it is not a genuine

17   issue in your reply.  More likely what I've seen is the movant

18   in the reply will say that fact is legally irrelevant.  "Even

19   if one accepts that fact, it doesn't deprive me of winning the

20   motion for summary judgment or partial summary judgment that I

21   have moved for.  Here is why legally."  That's the more likely

22   situation.

23        But at least that way it will enable me to very

24   quickly and easily -- that's also a relative term -- figure

25   out:  Do we really have genuine issues of fact, or is it just a

1    hard legal question that we need to analyze?

2              By the way, I have left something else out.  It is in

3    Item 6, and that is the movant for summary judgment or partial

4    summary judgment has an obligation to send me separately

5    stipulations of fact.  Confer with the other side.  If it is

6    stipulated for all purposes, fine.  If you are not ready to do

7    that, and you are willing to stipulate for purposes of summary

8    judgment, that's fine too.  Just make that clear.

9              At least that way when I write up my opinion -- and

10   most of my summary judgment rulings are written, not all, but

11   most are.  I at least will be able to take the stipulated facts

12   that you have given me and know, okay, these are part of some

13   background facts that help set the stage that I don't need to

14   worry about digging up evidentiary citations for.

15             So that's what I'm talking about on Item 6 for

16   summary judgment.

17             Daubert motions.  All I'll say at this stage -- and I

18   don't have the cite.  John, maybe you have it somewhere else.

19   But I have sat by designation on the Ninth Circuit.  I wrote a

20   decision -- Nicholle, was that in '14 or '15?

21             LAW CLERK:  '14, I think.

22             THE COURT:  '14.  The name of the case was, I

23   believe, Pomona v. SQM North America from 2014.  If you go back

24   and check some of the recent Ninth Circuit decisions on

25   Daubert, that was from 2014.

1              MR. MANSFIELD:   750 F.3d 1036, Pomona v. SQM North

2     America Corporation.

3              THE COURT:   Thank you.

4              My recollection is that it was unanimous, and it sets

5     forth how I view Daubert criteria.   It obviously is based on

6     Ninth Circuit precedent.   Obviously it is now Ninth Circuit

7     precedent.   So if you are going to file a Daubert motion, make

8     sure you are aware of that case.   Obviously if later

9     Ninth Circuit decisions come out, especially en banc or Supreme

10    Court decisions that affect that analysis, obviously I follow

11    the latest and most binding precedent.   But if you want to know

12    how do I view Daubert, that's the best way to see it.

13             Okay.   Does anyone want to talk about any of the

14    items or dates or deadlines or issues that I have addressed on

15    the case management order?   I have been talking for a while,

16    but I wanted to give you this basic framework.   Any issues?

17             Maybe before we do that, although I will give you

18    that opportunity, I've looked at least some of the diagrams

19    from the Markman hearing and the objections, and this doesn't

20    strike me as an extremely technical patent case.   I have seen

21    some that were really simple.   I had one where the claims I had

22    to construe -- it was on an iPad cover -- where I had to

23    construe top, bottom, flap, and insert said flap.   I loved

24    that.   That was nice.   Then, again, John brought me one about a

25    year or two ago where I had to get into cache coherence.   That

1    was more complicated.  This one strikes me in the middle.

2              Does anyone disagree?

3              Okay.  So I don't think I'm going to need any type of

4    technical tutorial on this technology.  Anybody disagree?

5    Okay.  I don't know what you are going to do in terms if this

6    case goes to a jury trial in terms of technical tutorial, a

7    demonstrative for the jury, but if so, I would like to see that

8    in advance.

9              I also don't think this case is going to need any

10   type of court-appointed technical expert.  I do that in some

11   cases.  I don't think I am going to need it in this case.

12   Anybody disagree?

13             Okay.  So does anybody want to say anything either

14   about this lawsuit that I may not know or understand that I

15   should know and then does anyone want to express concerns or

16   suggested tweaks on the proposed schedule?

17             I will start with plaintiff.

18             MR. EDMONDS:  Your Honor, John Edmonds for the

19   plaintiff.  I think mostly questions of clarifications to make

20   sure everybody understands what the rules are going forward.

21   You mention the Northern District's rules.  I didn't quite

22   understand how that would work in a case where we would have

23   already passed most of those junctures in the case.

24             THE COURT:  Right, I agree.  If there is something

25   that I have not built into this schedule, then tell me, and we

1    need to build it in.  But I was building this schedule in on a

2    going-forward basis, understanding that the defendant wants the

3    opportunity to revise some of their expert reports, and I am

4    going to give that to them.

5           If there are things that have already happened in

6    this case that are not addressed here that somebody thinks that

7    I better address or I need to address for clarity, you need to

8    tell me.

9           MR. EDMONDS:  The rules are the same in Texas, the

10   rules I am talking about.  So Patent Rule 3-1, which is

11   infringement disclosures, that deadline has passed.  3-3, which

12   is invalidity contention disclosures, that deadline has passed.

13          Is the Court saying that those deadlines are

14   essentially -- we are not going to worry about those

15   disclosures?  We are going to let people supplement expert

16   reports as they see fit at this point?  Do we still need to go

17   back and look at those, or do they need to be amended?  How

18   does the Court want to address that?

19          THE COURT:  What's the defendant's position on that?

20          MR. OLIVER:  I guess, from defendant's position, both

21   parties in expert reports disclosed things that were not in the

22   preliminary contention.  Plaintiff would probably disagree with

23   this and say that their record was clean and that ours was

24   supplemented, but our position is that they disclosed some

25   significant infringement arguments that were not in the

1    preliminary contentions.

2         So the way we see it, both parties have already

3    supplemented, and the cleanest way to make sure that everybody

4    knows the contentions of the other party is, and there are no

5    surprises, would be a simple contention interrogatory by each

6    party saying disclose your infringement positions or disclose

7    your invalidity positions.  Then if there is anything new or

8    any surprises, those will come out in response to that

9    interrogatory.

10        THE COURT:  Since I don't know as much about this

11   case as I'm going to know eventually, and I don't know that

12   much about it right now, it strikes me, sort of taking it one

13   small step at a time, that idea makes sense.  Both sides, as

14   soon as discovery reopens later this week, should serve

15   appropriate interrogatories.

16        By the way, you'll see in the local rules we do have

17   a local rule that prohibits contention interrogatories.  What

18   we mean by that here is something that doesn't apply as closely

19   in patent cases, but I think if you all have an interrogatory

20   to each other that basically says disclose all invalidity

21   contentions or other appropriate types of matters, that will

22   not run afoul of our prohibition of contention interrogatories.

23        You probably should submit to each other whatever

24   interrogatories of that nature you want sooner rather than

25   later.  Let's say you really should do it shortly after

1   Labor Day.  I don't want to put another deadline here unless

2   you want me to.  But my advice is do it sooner rather than

3   later.  The other side will respond in 30 days.  That will give

4   both sides the opportunity between now and when fact discovery

5   closes on December 23rd, the opportunity to take whatever

6   additional fact discovery may be needed on anything that may be

7   learned or new.

8           I am not going to preclude -- I am not going to

9   decide right now what I'm going to do if someone puts in

10  something new in response to that interrogatory and the other

11  side says, "That is horribly prejudicial.  It is terribly

12  unfair.  They shouldn't be allowed to do it."  Bring that to my

13  attention sooner rather than later.

14          Basically confer with each other.  If you can't

15  resolve it, call Mary, and we will talk about it, and we will

16  figure out what to do.  One of my questions is going to be, of

17  course, well, since fact discovery doesn't close until

18  December 23rd of this year, you've got plenty of time to take

19  whatever discovery you need on this new issue even if it is a

20  new issue and how are you being unfairly prejudiced.  Maybe the

21  answer might be, "Well, we have already deposed so and so on

22  this, and they are not letting me reopen the deposition."

23  Well, that's not going to be a smart move by whoever is not

24  letting somebody reopen a deposition.

25          Maybe the response is, "Well, we have already deposed

1   so and so on this, and they are in this other part of the

2   country.  It's an additional expense or burden to go depose

3   them again."  If you can't figure out what to do appropriately

4   with each other, call me, and we will talk our way through it

5   and figure something out.

6          But basically I think the solution to this problem is

7   going to be serve your -- for lack of a better term --

8   contention interrogatories sooner rather than later to see what

9   has changed.  That will really pin people done.  If you think

10  that someone is changing something unreasonably that you are

11  being unfairly and unreasonably prejudiced by, confer with the

12  other side, see if you can work out some mitigation of that

13  prejudice.  If not, call me, and we will talk about it.  But

14  you are not going to get much relief from the Court if it

15  simply is, "Well, this is something brand-new.  The deadline

16  for saying such and such has already passed.  Therefore, they

17  shouldn't be allowed to change their mind" -- and I know about

18  the change in counsel -- "but they shouldn't be allowed to say

19  something now that they have new counsel, but thought of

20  something that should have been said earlier."

21         My response to that is going to be, "How are you

22  being unreasonably prejudiced?"  If you are, we will figure out

23  a fair and appropriate way to mitigate any unreasonable

24  prejudice, if we can.  If we can't, well, then, I'll just deal

25  with what I have to deal with.  Most prejudice can be dealt

1   with and can be modified if people act promptly and reasonably,

2   but I think that's the best answer I can give to that question

3   right now in the abstract.

4           MR. EDMONDS:  I think all of my questions are

5   covered.  As the Court mentioned, we were a couple of weeks

6   from the close of discovery before, so so much had been done.

7   In the Eastern District there is one thing unique about their

8   procedures that are not done even in the Northern District.  In

9   the discovery order, there is a provision that essentially

10  says:  All sides produce all relevant documents without the

11  need for a request for production.  So requests for production

12  simply aren't used.  I think we produced 300,000 pages of

13  documents sua sponte, if you will.

14          Does the Court envision that the parties will reopen

15  that can of worms?  Plaintiff is willing to say we will operate

16  under that rule and produce it under what we have operated for

17  so long.

18          THE COURT:  Here is what worries me and let me hear

19  defendant's side as well as your response.  I don't like

20  "gotcha" games.  So I think it is a wonderful idea for both

21  sides to present all relevant documents.  But what I don't want

22  to see happen is I don't want plaintiff to be operating under

23  that rule, defendant then to wait until basically you have to

24  present your documents a few weeks before pretrial conference,

25  and then all of a sudden you spring on them a very important,

1  significant document helpful to the defense that they have

2  never seen before, and your response is, "Well, you have never

3  served me a discovery request and that Eastern District rule

4  doesn't apply in the District of Oregon."  That's not fair and

5  appropriate either.

6            Now, what's the best way to deal with that?  I'm not

7  sure.  Maybe it is a document request, "Please produce all

8  relevant documents."  I don't know.

9            What do you all think is the best and fair and

10  efficient way to deal with this, given that I'm not going to

11  let that type of unfair surprise/gotcha/you didn't ask for the

12  documents, so I'm not showing you this key document until right

13  before trial, I'm not going to let that happen.

14            What do you all think is the best way to deal with

15  it?

16            MR. OLIVER:  From the defendant's perspective, there

17  has been a lot of production.  I think it is good for parties

18  to normally produce the documents that they think are relevant.

19  We do think there are a few categories of documents that we

20  have not seen that are relevant to this case and think that

21  written requests for production need to be served with respect

22  to those.

23            We are likely to serve a broader set of requests for

24  production of documents, fully understanding that the answer to

25  those may be, "We've already produced all of these documents."

1    But we want to make sure the record is clear that where we

2    think documents are relevant, we're not just relying on the

3    opposing party's view of what documents are relevant to the

4    case.

5            THE COURT:  So it sounds like what you are

6    suggesting -- it is John, right?

7            MR. EDMONDS:  Yes.

8            THE COURT:  I'll get back to John in a moment.

9            Maybe both sides should serve document requests on

10   each other.  But what I'm not interested in is some type of

11   motion to compel where we asked for so many things that would

12   be so incredibly burdensome, and they are not producing it.

13   Therefore, order them to produce it.  I'm not going to let that

14   type of discovery expense be incredibly burdensome.  On the

15   other hand, it does protect you so that if they come up with a

16   document that really would have been responsive to your request

17   that they should have produced earlier, they are not going to

18   be able to get it in by saying, "Well, you never asked for that

19   type of information."

20           So craft your document requests and serve them on

21   each other.  Obviously anything that has already been exchanged

22   need not be produced and exchanged again obviously.  But if you

23   want to make sure you have a catch-all that you have caught all

24   the things that they might reasonably have, go ahead and make

25   sure you ask them for it.  But I'm not going to let discovery

1    requests be a weapon by either side to make the other side

2    incur even more expense than they've already incurred to date.

3             John, do you want to be heard further on that?

4             MR. EDMONDS:  I mean, the way it works in practice is

5    that a party says you haven't produced this, and you are under

6    a court-ordered obligation to produce it.  If the other side

7    disagrees with that, then the Court resolves it.  I guess the

8    beauty of that is it doesn't require a redo of that entire

9    process.  To me, that would be the more directed process, like

10   Mr. Oliver saying if there is something that they think they

11   haven't received that they should have received, they could

12   say, "You were supposed to produce everything relevant, but we

13   have not received X.  We need X."  Then we would either

14   produce X, or dispute X, and it should be produced.

15            THE COURT:  It doesn't seem like it is that

16   burdensome.  If they think you haven't produced X, or they

17   think you haven't produced Y, send a document request to each

18   other.  It will either get produced, or there will be some

19   response for why you are not going to produce it.  If there is

20   a response, confer.  If you can't resolve it, call Mary, and we

21   will talk about it on the telephone.  Unless it is incredibly

22   burdensome and lacking in proportionality, I will say produce

23   it when we get there.

24            MR. EDMONDS:  A couple of clarifications.  So there

25   was an issue that has been alluded to in the briefings about

1   there was a deadline for disclosing opinions of counsel in the

2   past, and one was not disclosed.  Planar announced its

3   intention to rely on one.  Typically in patent cases there is

4   some deadline for disclosing that type of information so on

5   last day of discovery somebody doesn't drop it.  Plus

6   typically, if materiality is an issue, with willfulness, then

7   experts may weigh in on that, so you need to have it disclosed

8   at some point early.

9           We can obviously makes requests, like you said,

10  before Labor Day, to get that out.  But would we expect to get

11  that information then, or would they be able to sit back?

12          THE COURT:  They have to respond to your request.

13  Put it in the form of an interrogatory or a document request.

14  They will have to respond to that.

15          As I understand it, Planar's position is they don't

16  have a direct advice of counsel letter, but they are relying

17  derivatively upon some other advice that was given to -- what's

18  the name?

19          MR. OLIVER:  High Grade.

20          THE COURT:  High Grade.  So you all know what's at

21  issue there.

22          What would be the consequence of the fact that they

23  might not have disclosed that within the Eastern District of

24  Texas's deadline?  The answer from the District of Oregon is

25  going to be no consequence.  But if there is other advice of

1    counsel, confer among yourselves.  If there is something else

2    that you in good faith need to share with them, share it with

3    them.  If you want to make sure that all I's are dotted and T's

4    are crossed, send it to them in a document request or

5    interrogatory or both.  Then you can explore the dimensions of

6    High Grade and then argue to me later whether or not that type

7    of derivative reliance does or doesn't count legally.

8         MR. EDMONDS:  I think I understand.  Typically the

9    way it works, one side will claim privilege.  Then at some

10   point in the case they say, "Okay.  We are going to waive

11   privilege, because we are going to rely on it."  It sounds like

12   if they are going to rely on it, it is now or never.

13        THE COURT:  Absolutely.  I don't let privilege be

14   asserted, either in patent cases or elsewhere, as a sword and a

15   shield, where it is a shield, "We are not going to give you

16   this," and the day before trial, "Oh, we have changed our mind,

17   so now we are doing it."  That doesn't work that way.  If you

18   assert privilege to something, and it is truly privileged, then

19   you are stuck, and you can't waive privilege on it later,

20   especially if it causes prejudice to the other side, which it

21   almost certainly will unless you change your mind, let's say,

22   within 24 hours.

23        MR. EDMONDS:  My last question was, we have taken

24   their 30(b)(6) deposition.  For example, it was in the briefing

25   on the 30(b)(6) deposition, the designee said, "We haven't

received an opinion of counsel." We have this deposition

there. 30(b)(6) testimony is normally binding. I understand

the spirit of the Court's rulings here, but the question is:

Does the Court have an idea of how we would handle that?

Should they notify us, "We have now changed our mind on some of

this testimony," or can we assume the testimony we have so far

we can rely on as binding?

THE COURT: Tell me if I have misunderstood. As I

read what you sent to me in your joint status report, it really

hasn't changed. "We didn't have a direct advice of counsel

letter," and that the respondent didn't understand the question

to be, "Do you have some type of derivative reliance on

High Grade's reliance?"

Am I correct in understanding that's Planar's

position?

MR. OLIVER: There was a very direct question to him

about whether Planar itself had commissioned an opinion of

counsel. The question was answered accurately, and there was

no follow-up on it.

THE COURT: Even if the question was more broadly

phrased than that, if that's the person who was answering the

question understood it, did Planar retain counsel and ask

counsel for an advice of counsel opinion, and the answer was

no, and the person answering the question did not believe that

the question was saying, "Did Planar rely upon High Grade's

counsel's opinion to High Grade," then I don't think it changes

the answer, but I do think now, in a relatively loose sense,

I'm letting this now come in and be revisited.  If they need to

re-depose that 30(b)(6) to explore more issues, of course, they

will be allowed do that.

I'm not treating this as a changed answer

necessarily, but nor am I going to deny them the opportunity

now to follow up on this question now that, if you will, this

misunderstanding has come to light.  So if they need to

re-depose that 30(b)(6), they are allowed to do that.

MR. EDMONDS:  Thank you, Your Honor.

Those clarifications help us going forward.  I

appreciate it.

THE COURT:  You will get a sense that I am sort of

very pragmatic.  I try to be practical in some of these things.

I want both sides to have fair and reasonable opportunities to

present their full case, to present their full defense, to not

play games with the other side and to not cause unreasonable or

unfair prejudice to the other side.

That's how I will structure most of my rulings.

Hopefully, then we will get a resolution that's reasonably

inexpensive, reasonably prompt, but hopefully reasonably just

as well.

I don't push people to settle cases.  I am meeting

outside counsel for the first time here.  Local counsel here

1    are very experienced.  They know their way around these cases,

2    and I assume from what I have been reading that you all are

3    very experienced patent litigators.  You know what you are

4    doing.  You will know whether you can or can't or should or

5    shouldn't settle this case.

6         I'm not going to order anybody to any type of ADR.

7    If you want the Court's assistance in finding somebody in this

8    building to serve as a settlement judge, contact my courtroom

9    deputy.  If both sides agree, we will find someone.  My best

10   opinion, and tell me if you all agree or disagree, because I

11   would be interested in all of your perspectives, as experienced

12   patent litigators, I don't think for patent litigation it is a

13   particularly good idea to get a generalist judge, whether it be

14   a district judge or a magistrate judge -- in the District of

15   Oregon.  I don't know about the other districts that have

16   specialized folks.

17        But I don't think it would be particularly effective

18   to help you in a patent case to deal with a judicial settlement

19   conference.  I think you are better off -- if you want to do a

20   mediation or settlement conference -- to go find someone who

21   both understands patent ligation and maybe even this particular

22   technology in a way that both sides feel comfortable and then

23   go find your own private mediator.

24        Our settlement judges -- -- and I do a number of

25   settlement conference -- we're pretty good at certain types of

1    disputes.  I don't think patent litigation is something we have

2    enough experience with to help in a settlement conference.

3           Am I wrong?

4           MR. EDMONDS:  Our prior mediation was before retired

5    Judge Ward, who was one of the most experienced patent judges

6    in the country, and it did not bear fruit.  So we have already

7    done that.

8           THE COURT:  I know there are some differences.  I

9    know the products in SpaceCo are different.  It may or may not

10   be the case that after everybody sees how the trial turns out

11   in June in SpaceCo, they may want to revisit settlement issues

12   here, or not.

13          By the way, is that a pretty firm trial date?

14          MR. EDMONDS:  We have no reason to suspect it is not.

15          THE COURT:  Okay.  I am going to assume that this

16   case is going to trial on July 17th.  Please understand that

17   once we set a calendar with this degree of specificity, I

18   rarely -- not unheard of -- but I rarely, unless there is a

19   really good reason, would start departing from these dates.

20          So if for whatever reason you come to me in early

21   December and say, "By the way, we would like another three or

22   four months to complete discovery and to do this and push our

23   trial date three or four months," even if it is agreed, I

24   probably will not grant it, unless it is a darn good reason.  A

25   darn good reason might be that you all were waiting for me that

1    I took long to get you an answer on and therefore it interfered

2    with your ability to meet this schedule.  That's a good reason.

3    I will leave to your imagination what other good reasons might

4    be.  But you should really assume that these are pretty firm

5    dates.

6           Obviously to the extent that you all can agree among

7    yourselves minor modifications to these dates, as long as they

8    don't involve court hearings or the dates that you have to file

9    things with the Court, you don't need my approval, as long as

10   you agree to it.  For example, expert discovery close is

11   February 17th, and one of your experts you want to depose isn't

12   available until February 21st.  As long as you agree with each

13   other and document it somehow, even like an e-mail, that you

14   will take expert X's deposition on February 21st, that's fine

15   with me.  You don't need to get me involved in it.  Do what you

16   want.

17          However, I am expecting to see any motions for

18   summary judgment and Daubert being filed on March 10th.  If

19   that's going to be delayed by a day or two, just call Mary and

20   say that you need another day-or-two extension on that.  Tell

21   her whether the other side opposes or doesn't oppose.  If it is

22   a day-or-two extension and the other side doesn't oppose, Mary

23   will just grant it by minute order.  If it is a more

24   significant extension, that will fit into this category of

25   "there better be a good reason," because it will affect the

1  rest of the calendar going forward, or if it is opposed, I will

2  get on the phone with you, and we will deal with it.  But

3  that's how we should all treat this schedule, as pretty darn

4  firm.

5              Is there anything else we should talk about now?

6              MR. EDMONDS:  None from the plaintiff.  Thank you.

7              MR. OLIVER:  Nothing from the defendant.

8              THE COURT:  All right.  It was a pleasure meeting the

9  folks from out of town.  It was pleasure seeing John and Jacob

10  again.

11              Have we met before?  I don't think we have.

12              MS. HOLM JENSEN:  I'm not sure we have.  I don't

13  know.

14              THE COURT:  I will disclose to you all that I do know

15  Steve Going, although I don't think I have seen him in 20

16  years.  He worked as a corporate associate at my old law firm

17  Perkins Coie.

18              When did Steve leave?  Do you know?

19              MS. HOLM JENSEN:  Oh, goodness.  Quite a while ago.

20              THE COURT:  I did litigation at the firm.  He was a

21  corporate associate.  I remember him, but I don't think I have

22  seen him in 20 years.

23              Nice meeting you all.  I look forward to working with

24  you.  If it doesn't resolve otherwise, we will have an

25  interesting trial.

1          I find that Portland juries for the most part are

2     pretty sophisticated.  You may very well find a handful of

3     Ph.D.s in our prospective jury panel between some of the

4     high-tech companies -- not just Planar -- but the other

5     high-tech companies in the area -- one or two or three people

6     from them on our prospective juror pool.  Whether you choose to

7     use a peremptory on them, or not, that's your own tactical

8     decision.  But we have a pretty sophisticated panel here.

9          Let me tell you this:  After civil trial, unless a

10    party disagrees beforehand, and most of time lawyers don't, I

11    invite the jurors who want to come out and meet with the

12    lawyers and the parties to come out and talk to us all.  I

13    appreciated that back when I was a trial lawyer, and so I

14    continue that practice.

15         I will moderate that discussion.  There will be a few

16    questions that I'll say are off the table.  It rarely happens

17    that we get to those.  But for the most part, I invite the

18    jurors to -- at the end of the trial -- after the verdict is

19    received, or if it is a hung jury, if the jury is discharged,

20    when we are done with the jury, I will invite those that want

21    to come back and talk to the lawyers and parties to do so in my

22    presence back in the courtroom.

23         My experience has been anywhere from half to

24    three-quarters want to come back.  Usually the folks that don't

25    want to come back, they really wanted to come back, but they

1   have other commitments that they want to get to, and then we

2   will have a little dialogue.  It is off the record.

3           The lawyers can ask the jurors what they found

4   persuasive, what was not persuasive, what they thought of their

5   lawyering techniques, what they thought of the clarity of the

6   demonstrative evidence, the clarity of their presentations,

7   things like that, and it is usually a pretty interesting

8   discussion.

9           By the way, to help to entice the jurors to want to

10  come back, I say, "The lawyers will ask you questions, or the

11  clients might, and you don't have to answer if you don't want

12  to, but they are very interested in what you have to say.  In

13  exchange, you can ask them questions."  So I let the jurors ask

14  the parties and the lawyers questions.  Again, the lawyers and

15  the parties, they don't have to answer if they don't want to.

16  They can say pass.  But we have an interesting dialogue.  So I

17  think if we get that far, you will see that we have very

18  conscientious, careful, intelligent jurors here that work their

19  way through disputes.

20          I think patent litigation, maybe patent litigation/

21  antitrust litigation, are some of the difficult things that we

22  ask jurors to do on the civil side, but you will, I think, be

23  impressed with our juror pool out here.  That said, I don't

24  have any clue which way it will fall, having smarter jurors

25  than non-smarter jurors.  I don't know.  But I think you will

1    like trying a case out here.

2           One of the things to think about, but we will wait

3    for you to worry about this, and that's the following:  We're

4    planning on a seven-day jury trial.  What normally happens is

5    on day one we will probably have our jury selected by

6    lunchtime.  You will do your opening statements in the

7    afternoon.  Maybe hopefully we will get to at least one or two

8    or three witnesses in the afternoon.

9           From that point forward, we have trial days from 9:00

10   to 5:00, usually about an hour and 15 minutes for lunch, a

11   15-minute break in the morning, a 15-minute break in the

12   afternoon.  So in round numbers we generally can get between

13   five and a half to six hours of real witness testimony done

14   during trial on any given regular trial day.

15          If you add up those numbers -- figure we will get an

16   hour or two of testimony on day one, five and a half hours to

17   six hours of testimony on day two, day three, day four.  What

18   that means is that this case will get to the jury no later than

19   the early afternoon of day six, because that way they need some

20   time to begin their deliberations and probably day seven to do

21   their deliberations.

22          So when you add up those numbers of available hours,

23   and as you will see in witness statements, I am going to ask

24   each side propounding a witness to give me a realistic estimate

25   of direct examination.  Do you think this witness will be a

15-minute witness?  Or a two-hour witness?  Or a four-hour
witness?  We add up all that time.  I then have a rough rule of
thumb of maybe to 50 to 75 percent of direct will be used for
cross, depending on who the witnesses are, and I add it up.

If we're within the ballpark of something that will
keep us to a seven-day jury trial, fine, I will leave you
alone.  Sometimes, and more often than not, when I get people's
estimates, ah, they want to try a 15-day trial in a seven-day
window.  So we're not going to do that.

So then what I do, I use a chess clock.  Wow, does
that work.  It works beautifully, because I will give each side
a certain number of hours.  We will talk about it in advance to
make sure it is the right amount.  Most of the time it doesn't
count for your opening statement.  It will never count for your
closing argument.  It will only count for the times when you
are questioning the witnesses, but it includes all of your
directs and redirects, your crosses and your recrosses.

And one of benefits of that is I don't ever have to
worry about somebody asking marginally relevant/marginally
irrelevant questions to run down the other side's clock and do
something that's going to take longer, because as long as it is
only your clock that's ticking, you can take as much time as
you want asking marginally relevant questions and repeating
oneself over and over and over.  So I generally won't interfere
with that.

1           But I'm also quite strict saying, if you have 12

2    hours or 15 hours per side, you are not going to get any more

3    than that.  Use it as you see fit.  What I have noticed is that

4    people are remarkably efficient about that.  It makes for very

5    efficient directs and crosses.  Frankly, juries prefer it.  It

6    means that I don't have to worry about time being wasted, and

7    you all end up trying a much better case because you are being

8    very efficient.

9           We will figure out later whether we should or

10   shouldn't use a chess clock in this case.  We will decide that

11   at the pretrial conference.  But give some thought to that as

12   you are figuring your estimated times for direct examinations

13   for your witnesses.

14          The other thing, too, if you are going to show videos

15   of perpetuated depositions in lieu of live testimony, I

16   encourage both sides to work together to come up with a good,

17   tightly edited video, because we don't want to put the jury to

18   sleep.  A two-hour video of a witness will put them to sleep.

19          In addition, you will probably see -- I used to do it

20   in the beginning, until I changed, we show on the video:

21   Mr. Witness, by whom are you employed?  What are your duties?

22   How long have you been at this company?  Stuff like that.  Who

23   do you report to?

24          A much more efficient way to do it is for the parties

25   to work together in advance and come up with a stipulated

1   paragraph that I will just read to the jury.  Members of the

2   jury, we're now going to hear from Mr. So and So or

3   Ms. So and So.  Ms. So and So is in the following position.

4   She reports to this and that.  She has been doing this position

5   for X number of years, and her testimony is being presented to

6   you because she is the one who actually did the experiment that

7   you have heard that happened on January 2nd, 2008 regarding the

8   such and such polymer, or something like that.  Then you can

9   just dive right into that video:  So I understand you did the

10  experiment on January 2nd.  How did you prepare it?

11          Then the video will show everything.  So feel free to

12  think about how this is going to present to the jury and work

13  with each other in advance so you can efficiently and

14  effectively communicate to the jury what you need to

15  communicate with the jury on those issues of video testimony.

16  We can talk about demonstrative exhibits for trial much further

17  down the road.

18          Then the only other question I had for you now, and I

19  guess it is primarily for -- well, it could be for both sides.

20  Does anybody right now anticipate any likely or potential

21  motions for summary judgment or partial summary judgment that

22  you want to alert me to?  This is not binding on you.  You

23  won't have to file this motion.  If you think of others, you

24  are welcome to file others.  But anything I should be thinking

25  about in advance?

1          MR. OLIVER:  From defendant's perspective, I don't

2    know that there is anything that you need to think about in

3    advance.  I believe we are anticipating a motion for summary

4    judgment on laches, and that's related to a case that was filed

5    in 2009 by plaintiff and then dismissed in 2012.  I believe

6    that we are anticipating at least one motion for summary

7    judgment of non-infringement on at least one of the patents.

8          I can't say whether that's the full scope, but I

9    don't think that either of those are something you need to be

10   concerned about at this point.

11         THE COURT:  John, anything from plaintiff's

12   perspective?

13         MR. EDMONDS:  Again, we may talk to them about the

14   infringement.  I presume that our opposition to the motion for

15   summary judgment on non-infringement is that it infringes, so

16   that might be something that the Court could take up on

17   uncontested facts.

18         THE COURT:  It probably is premature, but does

19   anybody have any expectations right now of a Daubert motion and

20   whether or not we will be needing to hear any evidence at a

21   Daubert motion?  Obviously some Daubert motions can be heard on

22   the papers; others require an evidentiary hearing.

23         Based upon the experts you have already seen

24   exchanged, do you think it is likely or not likely we will get

25   a Daubert motion, or not, or is it too early to tell?

```
 1            MR. OLIVER:  We have seen in opening reports from

 2    each parties, infringements and damages report from the

 3    plaintiff and an invalidity report from the defendant.  Those

 4    may be modified under your schedule.  Based on what we have

 5    seen from plaintiff, I don't think we are anticipating a

 6    Daubert motion.  I do note that on a similar analysis there was

 7    a Daubert motion filed in the SpaceCo case, but we haven't

 8    anticipated filing a Daubert motion on that same point.

 9            MR. EDMONDS:  We haven't seen their damages report

10    yet, but we don't have anything significant in mind at this

11    point, Your Honor.

12            THE COURT:  Thank you very much.  It has been a

13    pleasure meeting you.  You know I'm here, in case there is

14    anything I can do for you to help make the resolution just,

15    speedy, and inexpensive, knowing that "inexpensive" and

16    "speedy" are relative terms.

17            Thank you all very much.

18            COUNSEL:  Thank you, Your Honor.

19            (Recess.)

20

21

22

23

24

25
```

--oOo--


         I certify, by signing below, that the foregoing is a

correct transcript of the record of proceedings in the

above-entitled cause.  A transcript without an original

signature, conformed signature, or digitally signed signature

is not certified.


/s/ Dennis W. Apodaca                    August 28, 2016
DENNIS W. APODACA, RDR, RMR, FCRR, CRR               DATE
Official Court Reporter

COUNSEL: [1] 49/17
LAW CLERK: [1] 23/20
MR. EDMONDS: [16] 3/11 11/16
25/17 26/8 30/3 32/6 33/3 33/23 35/7
35/22 37/10 39/3 39/13 41/5 48/12
49/8
MR. GILL: [1] 3/17
MR. MANSFIELD: [5] 3/9 12/6 16/8
16/20 23/25
MR. OLIVER: [11] 3/19 10/13 11/2
12/23 26/19 31/15 34/18 36/15 41/6
47/25 48/25
MS. HOLM JENSEN: [3] 3/22 41/11
41/18
THE COURT: [33] 3/3 3/15 3/20 3/24
10/21 11/9 12/12 13/6 16/12 17/11
23/21 24/2 25/23 26/18 27/9 30/17
32/4 32/7 33/14 34/11 34/19 35/12
36/7 36/19 37/13 39/7 39/14 41/7
41/13 41/19 48/10 48/17 49/11

'
'14 [3] 23/20 23/21 23/22
'15 [1] 23/20
'978 [1] 5/11

-
--oOo [1] 50/2

/
/s [1] 50/9

1
100 [1] 13/2
1000 [1] 2/24
1036 [1] 24/1
10th [1] 40/18
11th [1] 13/9
12 [1] 46/1
121 [1] 2/6
15 [2] 44/10 46/2
15-day [1] 47/3
15-minute [3] 44/11 44/11 45/1
1510 [1] 3/6
16 [3] 10/8 12/13 13/20
160 [1] 2/9
1616 [1] 2/3
17th [3] 7/8 39/16 40/11
1981 [1] 19/7
1986 [1] 19/9

2
20 [3] 11/18 41/15 41/22
2008 [1] 47/7
2009 [1] 48/5
2011 [1] 19/12
2012 [1] 48/5
2014 [3] 8/21 23/23 23/25
2016 [3] 1/5 3/1 50/9
2017 [4] 7/8 7/12 9/16 11/11
209 [1] 2/11
21st [2] 40/12 40/14
23rd [3] 11/10 12/21 28/5
24 [1] 35/22
25 [3] 1/5 3/1 19/10
28 [1] 50/9
282 [2] 10/10 11/11
2nd [2] 47/7 47/10

3
3-1 [1] 26/10
3-3 [1] 26/11
30 [6] 28/3 35/24 35/25 36/2 37/4
37/10
300,000 [1] 30/12
301 [1] 2/24
326-8182 [1] 2/25
35 [2] 10/10 11/11
3:16-cv-01510-SI [1] 1/3
3:16-cv-1510 [1] 3/6

4
400 [1] 2/6

5
50 [1] 45/3
500 [1] 2/11
503 [1] 2/25
5:00 [1] 44/10

7
75 percent [1] 45/3
750 [1] 24/1
77057 [1] 2/4

8
80 [1] 14/22
8182 [1] 2/25

9
90 percent [1] 14/22
95113 [1] 2/9
97204 [3] 2/7 2/12 2/24
975 [1] 2/9
9:00 [1] 44/9

A
ability [2] 6/25 40/2
able [4] 14/1 23/11 32/18 34/11
about [49] 5/5 6/12 10/5 10/11 10/19
11/8 11/18 14/11 14/18 14/19 14/21
15/24 16/7 21/10 21/10 21/11 21/12
21/19 23/14 23/15 24/13 24/24 25/14
26/10 26/14 27/10 27/12 28/15 29/13
29/17 30/7 33/21 33/25 36/17 38/15
41/5 44/2 44/3 44/10 45/12 45/19 46/4
46/6 47/12 47/16 47/25 48/2 48/10
48/13
above [1] 50/6
above-entitled [1] 50/6
Absolutely [1] 35/13
abstract [1] 30/3
accepts [1] 22/19
accomplish [1] 17/13
accomplished [1] 8/5
accurately [1] 36/18
across [1] 5/15
act [1] 30/1
actually [1] 47/6
add [8] 12/16 12/19 13/15 22/6 44/15
44/22 45/2 45/4
addition [2] 21/7 46/19
additional [4] 22/5 22/8 28/6 29/2
address [3] 26/7 26/7 26/18
addressed [3] 13/11 24/14 26/6
adequately [1] 14/12
adopted [1] 11/4
adopting [1] 4/6
ADR [1] 38/6

advantage [5] 5/8 46/12 46/25 47/13
47/25 48/3
advice [6] 28/2 34/16 34/17 34/25
36/10 36/23
advised [1] 17/3
affect [2] 24/10 40/25
aful [1] 27/22
after [5] 4/22 27/25 39/10 42/9 42/18
afternoon [4] 44/7 44/8 44/12 44/19
again [7] 17/6 24/24 29/3 32/22 41/10
43/14 48/13
ago [4] 13/21 19/11 24/25 41/19
agree [13] 17/24 18/1 18/14 21/14
21/15 21/16 21/16 25/24 38/9 38/10
40/6 40/10 40/12
agreed [1] 39/23
ah [1] 45/8
ahead [1] 32/24
alert [1] 47/22
all [58]
allow [2] 6/10 9/17
allowed [6] 5/21 28/12 29/17 29/18
37/5 37/10
alluded [1] 33/25
almost [1] 35/21
alone [1] 45/7
along [1] 8/15
already [14] 5/7 16/20 16/23 25/23 26/5
27/2 28/21 28/25 29/16 31/25 32/21
33/2 39/6 48/23
also [2] 2/13 4/3 5/1 12/8 22/24 25/9
46/1
although [4] 5/2 13/14 24/17 41/15
am [23] 4/21 6/10 6/22 6/24 7/22 8/23
11/2 11/10 11/15 12/21 25/11 26/3
26/10 28/8 28/8 36/14 37/7 37/14
37/24 39/3 39/15 40/17 44/23
amended [1] 26/17
amendments [3] 6/3 13/17 13/20
America [2] 23/23 24/2
Amin [1] 2/8
among [3] 5/14 35/1 40/6
amount [3] 9/18 10/4 45/13
analysis [2] 24/10 49/6
analyze [1] 23/1
and/or [1] 9/8
Andrew [3] 2/8 3/20 10/14
announced [1] 34/2
another [12] 5/23 5/25 28/21 30/2 31/24
34/24 36/23 37/2 37/6 40/1 43/11
43/15
answer [12] 5/23 5/25 28/21 30/2 31/24
34/24 36/23 37/2 37/6 40/1 43/11
43/15
answered [1] 36/18
answering [3] 11/7 36/21 36/24
answers [1] 6/7
anticipate [1] 47/20
anticipated [1] 49/8
anticipating [3] 48/3 48/6 49/5
antitrust [2] 19/9 43/21
any [20] 5/2 9/15 10/15 10/17 14/2 16/9
24/13 24/16 25/3 25/9 27/8 29/23 38/6
40/17 43/24 44/14 46/2 47/20 48/19
48/20
anybody [6] 25/4 25/12 25/13 38/6
47/20 48/19
anymore [1] 12/2
anyone [3] 24/13 25/2 25/15
anything [13] 8/25 12/4 12/20 25/13
27/7 28/6 32/21 41/5 47/24 48/2 48/11
49/10 49/14

**A**

anywhere [1] 42/23
Apodaca [3] 2/23 50/9 50/10
appearance [1] 3/21
appearances [2] 2/1 3/8
appears [1] 4/20
appellate [3] 14/25 15/7 15/11
apply [2] 27/18 31/4
appointed [1] 25/10
appreciate [2] 4/3 37/13
appreciated [1] 42/13
approach [1] 10/3
appropriate [6] 9/18 15/24 27/15 27/21 29/23 31/5
appropriately [1] 29/3
approval [1] 40/9
April [1] 6/16
are [106]
area [1] 42/5
areas [1] 15/16
aren't [2] 20/9 30/12
argue [2] 22/14 35/6
argument [3] 9/15 14/17 45/15
arguments [1] 26/25
arisen [1] 16/23
around [3] 5/12 7/19 38/1
art [2] 10/20 13/3
as [52]
ask [15] 3/8 14/10 14/10 14/14 17/6 17/12 31/11 32/25 36/22 43/3 43/10 43/13 43/13 43/22 44/23
asked [5] 6/15 6/20 8/17 32/11 32/18
asking [2] 45/19 45/23
assert [1] 35/18
asserted [1] 35/14
assistance [1] 38/7
associate [2] 41/16 41/21
assume [11] 5/25 6/18 9/22 10/23 16/9 16/19 22/11 36/6 38/2 39/15 40/4
assure [1] 7/15
attach [1] 15/5
attachments [1] 14/17
attention [2] 13/13 28/13
attorney [1] 15/17
attorney-client [1] 15/17
August [6] 1/5 3/1 6/22 6/24 6/25 50/9
Austad [1] 14/8
available [2] 40/12 44/22
Avenue [1] 2/24
aware [3] 5/3 5/4 24/8
awful [3] 4/23 8/4 8/8

**B**

back [12] 8/21 23/23 26/17 32/8 34/11 42/13 42/21 42/22 42/24 42/25 42/25 43/10
background [6] 20/4 20/16 20/23 21/1 21/8 23/13
backwards [6] 7/8 7/24 8/2 8/15 9/17 9/25
ballpark [1] 45/5
banc [1] 24/9
bar [1] 18/17
based [3] 24/5 48/23 49/4
basic [1] 24/16
basically [7] 7/7 15/20 16/13 27/20 28/14 29/6 30/23
basis [1] 26/2
be [100]
bear [1] 39/6

beautiful [1] 39/15
beautifully [1] 45/11
beauty [1] 33/8
became [2] 13/18 19/11
because [23] 6/13 10/7 11/22 11/25 11/25 12/14 14/7 16/24 16/25 17/4 17/10 19/2 20/13 21/2 35/11 38/10 40/25 44/19 45/11 45/21 46/7 46/17 47/6
been [29] 4/12 4/14 4/24 4/24 5/4 5/18 5/19 5/21 11/17 13/19 13/20 13/22 14/14 14/22 17/2 19/6 19/13 24/15 19/20 30/6 31/17 32/16 32/21 33/25 38/2 42/23 46/22 47/4 49/12
before [26] 1/15 7/4 8/1 8/4 8/10 9/9 9/12 9/23 10/13 10/24 11/4 11/9 12/9 12/12 13/8 13/11 14/19 24/17 30/6 30/24 31/2 31/13 34/10 35/16 39/4 41/11
beforehand [1] 42/10
begin [1] 44/20
beginning [1] 46/20
behalf [1] 3/16
behind [1] 10/2
being [7] 28/20 29/11 29/22 40/18 46/6 46/7 47/5
believe [5] 3/25 23/23 36/24 48/3 48/5
belong [1] 21/1
below [1] 50/4
bench [1] 13/21
benefits [1] 45/18
Berne [2] 2/11 3/18
best [7] 18/6 24/12 30/2 31/6 31/9 31/14 38/9
better [5] 26/7 29/7 38/19 40/25 46/7
between [7] 8/7 8/17 28/4 42/3 44/12
beyond [1] 18/21
big [2] 13/25 16/3
binding [4] 24/11 36/2 36/7 47/22
bit [2] 13/13 19/1
blown [1] 14/16
both [18] 4/3 9/6 9/7 9/24 14/12 26/20 27/2 27/13 28/4 30/20 32/9 35/5 37/16 38/9 38/21 38/22 46/16 47/19
bottom [1] 24/23
brand [2] 12/21 29/15
brand-new [2] 12/21 29/15
break [2] 44/11 44/11
brick [1] 20/21
brief [4] 15/14 15/15 15/19 16/4
briefing [1] 35/24
briefings [1] 33/25
briefly [3] 14/11 14/14 14/19
Bring [1] 28/12
broadening [1] 13/1
broader [1] 31/23
broadly [1] 36/20
brought [1] 24/24
build [2] 12/15 26/1
building [2] 26/1 38/8
built [1] 25/25
burden [2] 18/20 29/2
burdensome [5] 9/1 32/12 32/14 33/16 33/22
burdensomeness [1] 15/22

**C**

cache [1] 24/25
calendar [4] 7/7 7/13 39/17 41/1
California [1] 2/9

call [8] 13/12 16/16 17/6 28/15 29/4 29/13 33/20 40/19
called [1] 20/18
can [42] 8/3 8/10 10/5 10/25 12/8 12/17 12/21 14/19 14/23 15/8 15/24 16/14 17/21 18/10 18/14 18/22 20/15 21/6 21/16 21/21 29/12 29/24 29/25 30/1 30/2 30/15 34/9 35/5 36/6 36/7 38/4 40/6 43/3 43/13 43/16 44/12 45/22 47/8 47/13 47/16 48/21 49/14
can't [13] 10/17 12/10 14/2 16/16 17/10 20/8 28/14 29/3 29/24 33/20 35/19 38/4 48/8
careful [1] 43/18
carefully [1] 5/16
case [49] 3/5 3/6 3/6 4/1 4/4 4/4 4/9 4/19 5/6 5/11 5/21 6/17 8/12 8/21 16/24 16/25 17/16 17/17 17/19 17/20 17/22 17/24 18/5 23/22 24/8 24/15 24/20 25/6 25/9 25/11 25/22 25/23 26/6 27/11 31/20 32/4 35/10 37/17 38/5 38/18 39/10 39/16 44/1 44/18 46/7 46/10 48/4 49/7 49/13
cases [14] 4/15 4/16 4/19 5/3 5/14 11/20 11/21 12/22 25/11 27/19 34/3 35/14 37/24 38/1
catch [1] 32/23
catch-all [1] 32/23
categories [1] 31/19
category [1] 40/24
caught [1] 32/23
cause [2] 37/18 50/6
causes [1] 35/20
certain [5] 6/9 10/19 10/19 38/25 45/12
certainly [3] 14/10 15/4 35/21
certified [1] 50/8
certify [1] 50/4
challenge [1] 21/18
chambers [1] 9/6
change [4] 18/24 29/17 29/18 35/21
changed [6] 29/9 35/16 36/5 36/10 37/6 46/20
changes [1] 37/1
changing [1] 29/10
check [1] 23/24
chess [2] 45/10 46/10
chime [1] 12/7
choose [2] 15/1 42/6
chunks [1] 8/17
Circuit [8] 4/25 5/2 5/3 23/19 23/24 24/6 24/6 24/9
circumstances [1] 16/23
citations [2] 21/5 23/14
cite [1] 23/18
cited [1] 5/3
civil [3] 13/18 42/9 43/22
claim [7] 4/5 5/7 5/9 5/12 5/24 20/13 35/9
claims [1] 24/21
Clara [1] 2/9
clarifications [3] 25/19 33/24 37/12
clarity [3] 26/7 43/5 43/6
clean [1] 26/23
cleanest [1] 27/3
clear [3] 6/3 23/8 32/1
clerk [3] 17/3 17/6 17/7
client [3] 3/22 15/17
clients [1] 43/11
clock [4] 45/10 45/20 45/22 46/10

close [7] 4/13 9/23 11/5 15/2 28/17
30/6 40/10
closely [1] 27/18
closer [1] 11/6
closes [1] 28/5
closing [1] 45/15
clue [1] 43/24
code [2] 10/10 10/15
coherence [1] 24/25
Coie [2] 19/10 41/17
Collins [3] 2/3 3/12 3/14
come [16] 9/13 24/9 27/8 32/15 37/3
37/9 39/20 42/11 42/12 42/21 42/24
42/25 42/25 43/10 46/16 46/25
comes [1] 20/2
comfortable [1] 38/22
coming [1] 4/24 4/24
comments [2] 4/23 5/1
commissioned [1] 36/17
commitments [1] 43/1
common [1] 18/2
communicate [2] 47/14 47/15
companies [1] 21/10 42/4 42/5
company [2] 20/23 46/22
comparable [1] 5/10
compel [8] 13/16 13/24 14/1 14/2 14/17
15/21 16/7 32/11
competitors [1] 18/13
complaint [1] 4/3
complete [1] 39/22
complicated [1] 25/1
complies [1] 11/11
comply [1] 10/9
compress [1] 8/23
compressed [2] 9/10 11/5
compromise [1] 8/22
concerned [1] 48/10
concerns [1] 25/15
concise [6] 19/14 20/18 21/1 21/13
21/15 22/7
concisely [1] 21/22
condense [1] 8/23
confer [7] 16/15 17/12 23/5 28/14
29/11 33/20 35/1
conference [17] 1/13 3/7 7/25 8/4 8/6
8/10 8/14 13/9 14/5 14/20 14/20 30/24
38/19 38/20 38/25 39/2 46/11
conferences [2] 8/9 14/24
conferral [1] 13/23
confine [1] 16/6
conformed [1] 50/7
conscientious [1] 43/18
consequence [2] 34/22 34/25
consider [1] 9/4
considered [1] 5/16
consistent [2] 5/8 5/13
construction [5] 4/6 5/7 5/9 5/12 5/24
construe [2] 24/22 24/23
consult [1] 17/4
contact [3] 14/3 14/8 38/8
contend [1] 20/15
contention [8] 11/7 13/2 26/12 26/22
27/5 27/17 27/22 29/8
contentions [5] 10/24 13/10 27/1 27/4
27/21
context [1] 12/14
continue [1] 42/14
convince [2] 19/22 22/8
copied [1] 14/5

Corporation [1] 24/2
correct [5] 4/21 11/15 22/4 36/14 50/5
cost [1] 17/13
cost-effective [1] 17/13
could [8] 7/4 10/11 12/7 15/20 16/21
33/11 47/19 48/16
counsel [15] 3/3 3/24 29/18 29/19 34/1
34/16 35/1 36/1 36/10 36/18 36/22
36/23 36/23 37/25 37/25
counsel's [1] 37/1
count [4] 35/7 45/14 45/14 45/15
country [2] 29/2 39/6
couple [2] 30/5 33/24
course [3] 9/22 28/17 37/4
court [22] 1/1 1/16 2/23 5/8 5/13 13/6
14/3 15/3 24/10 25/10 26/13 26/18
29/14 30/5 30/14 33/6 33/7 36/4 40/8
40/9 48/16 50/10
Court's [2] 36/3 38/7
court-appointed [1] 25/10
court-ordered [1] 33/6
Courthouse [1] 2/23
courtroom [6] 14/4 14/6 14/7 14/9 38/8
42/22
courts [3] 6/2 11/4 11/22
cover [1] 24/22
covered [1] 30/5
craft [1] 32/20
criteria [1] 24/5
critical [2] 20/9 20/11
cross [1] 45/4
crossed [1] 35/4
crosses [2] 45/17 46/5
CRR [2] 2/23 50/10
cv [2] 1/3 3/6

D

damages [2] 49/2 49/9
darn [3] 39/24 39/25 41/3
date [10] 6/15 6/20 7/6 8/1 8/7 12/8
33/2 39/13 39/23 50/10
dates [8] 7/4 7/5 8/24 24/14 39/19 40/5
40/7 40/8
Daubert [16] 9/9 9/16 9/24 23/7 23/25
24/5 24/7 24/12 40/18 48/19 48/21
48/21 48/25 49/6 49/7 49/8
day [22] 7/7 7/14 7/19 28/1 34/5 34/10
35/16 40/19 40/20 40/22 44/4 44/5
44/14 44/16 44/17 44/17 44/19
44/20 45/6 45/8 45/8
day-or-two [2] 40/20 40/22
days [14] 7/9 7/10 7/11 7/12 7/15 7/21
7/21 7/23 8/4 8/6 9/12 18/25 28/3 44/9
deadline [12] 10/9 11/25 12/1 12/2
12/15 26/11 26/12 28/1 29/15 34/1
34/4 34/24
deadlines [4] 5/18 9/23 24/14 26/13
deal [9] 4/22 12/17 29/24 29/25 31/6
31/10 31/14 38/18 41/2
dealing [2] 15/16 18/13
dealt [1] 29/25
December [4] 13/19 28/5 28/18 39/21
December 23rd [1] 28/5
December 23rd of [1] 28/18
decide [3] 22/11 28/9 46/10
deciding [2] 4/22 20/9
decision [5] 4/7 4/9 20/6 23/20 42/8
decision-maker [1] 20/6
decisions [5] 5/9 5/10 23/24 24/9 24/10

defendant [14] 1/7 2/8 3/16 6/20 10/9
10/9 10/14 11/11 11/21 13/5 26/2
30/23 41/7 49/3
defendant's [6] 7/2 26/19 26/20 30/19
31/16 48/1
defense [5] 10/16 10/18 10/21 31/1
37/17
defenses [2] 10/24 11/8
deficient [1] 18/22
degree [1] 39/17
delayed [1] 40/19
deliberations [2] 44/20 44/21
demonstrative [3] 25/7 43/6 47/16
denied [1] 22/6
Dennis [2] 2/23 50/9 50/10
Denver [1] 6/17
deny [1] 37/7
departing [1] 39/19
Department [1] 19/8
depending [2] 18/12 45/4
depose [4] 29/2 37/4 37/10 40/11
deposed [2] 28/21 28/25
deposition [6] 28/22 28/24 35/24 35/25
36/1 40/14
depositions [1] 46/15
deprive [1] 22/19
deputy [5] 14/4 14/6 14/8 14/9 38/9
derivative [2] 35/7 36/12
derivatively [1] 34/17
describe [1] 14/11
description [1] 14/12
DESIGN [2] 1/3 3/5
designation [2] 16/12 23/19
designee [1] 35/25
diagrams [1] 24/18
dialogue [2] 43/2 43/16
did [9] 36/22 36/24 36/25 39/6 41/18
41/20 47/6 47/9 47/10
didn't [10] 4/20 5/2 5/5 8/18 11/20
11/22 25/21 31/1 36/10 36/11
difference [1] 19/2
differences [1] 39/8
different [6] 10/3 11/16 12/10 18/15
19/4 39/9
difficult [2] 15/12 43/21
digging [1] 23/14
digitally [1] 50/7
dimensions [1] 35/5
direct [6] 34/16 36/10 36/16 44/25 45/3
46/12
directed [1] 33/9
directs [2] 45/17 46/5
disagree [11] 16/1 18/18 21/17 21/20
21/21 21/22 25/2 25/4 25/12 26/22
38/10
disagrees [3] 18/20 33/7 42/10
discharged [1] 42/19
disclose [6] 10/24 13/4 27/6 27/6 27/20
41/14
disclosed [5] 26/21 26/24 34/2 34/7
34/23
disclosing [2] 34/1 34/4
disclosure [5] 10/19 10/21 11/22 12/8
12/21
disclosures [5] 11/23 11/23 26/11
26/12 26/15
discovery [26] 5/18 9/22 9/24 9/24
10/25 11/5 11/13 11/25 13/15 14/22
16/10 16/14 27/14 28/4 28/6

**D**

discovery... [10]  28/17 28/19 30/6 30/9 31/3 32/14 32/25 34/5 39/22 40/10
discussion [3]  13/5 42/15 43/8
dismiss [1]  4/8
dismissed [1]  48/5
dispute [9]  14/11 14/18 16/6 16/10 16/11 16/15 19/24 20/3 33/14
disputed [1]  21/3
disputes [8]  5/20 14/18 14/21 14/23 15/8 15/10 39/1 43/19
disruptive [1]  7/22
district [20]  1/1 1/2 1/16 2/23 4/12 4/14 4/18 5/5 9/21 11/4 13/14 18/11 30/7 30/8 31/3 31/4 34/23 34/24 38/14 38/14
District's [1]  25/21
districts [1]  38/15
dive [1]  47/9
Division [1]  19/9
do [74]
docket [4]  15/3 15/6 17/1 17/11
document [12]  16/12 20/18 31/1 31/7 31/12 32/9 32/16 32/20 33/17 34/13 35/4 40/13
documents [18]  9/5 9/10 9/13 13/8 17/1 17/17 30/10 30/13 30/21 30/24 31/8 31/12 31/18 31/19 31/24 31/25 32/2 32/3
does [13]  20/24 24/13 25/2 25/13 25/15 26/18 30/14 32/15 35/7 36/4 45/10 47/20 48/18
doesn't [17]  6/14 18/5 21/1 22/19 24/19 27/18 28/17 31/4 33/8 33/15 34/5 35/7 35/17 40/21 40/22 41/24 45/13
doing [4]  4/15 11/17 12/15 13/20 35/17 38/4 47/4
don't [64]
done [9]  6/1 7/6 8/9 29/9 30/6 30/8 39/7 42/20 44/13
dotted [1]  35/3
down [5]  4/24 4/25 16/6 45/20 47/17
draft [3]  4/1 8/2 9/25
drop [1]  34/5
during [1]  44/14
duties [1]  46/21

**E**

e-mail [8]  14/5 14/9 14/14 14/17 15/2 15/5 15/6 40/13
e-mails [1]  14/25
each [17]  9/17 16/15 19/2 21/11 27/5 27/20 27/23 28/14 29/4 32/10 32/21 33/17 40/12 44/24 45/11 47/13 49/2
earlier [5]  5/10 12/15 12/19 14/1 29/20 32/17
early [4]  34/8 39/20 44/19 48/25
easier [3]  3/7 7/13 7/17
easily [1]  22/24
Eastern [5]  4/18 5/5 30/7 31/3 34/23
easy [1]  17/23
economies [1]  9/7
edited [1]  46/17
Edmonds [6]  2/2 2/3 3/12 3/12 3/14 25/18
effective [3]  13/19 17/13 38/17
effectively [1]  47/14
efficiencies [1]  9/7
efficient [7]  17/13 18/2 31/10 46/4 46/5 46/8 46/24

efficiently [4]
either [14]  6/14 13/13 14/4 18/19 21/14 21/15 21/24 25/13 31/5 33/1 33/13 33/18 35/14 48/9
else [5]  12/18 23/2 23/18 35/1 41/5
elsewhere [1]  35/14
employed [1]  46/21
en [1]  24/9
enable [1]  22/23
encourage [1]  46/16
encouraged [1]  13/20
end [3]  9/25 42/18 46/7
enforce [2]  19/17 19/19
enforces [1]  19/18
ENGINEERED [3]  1/3 3/5 3/9
enough [2]  11/22 39/2
enter [2]  3/8 3/21
entice [1]  43/9
entire [1]  33/8
entitled [2]  20/12 50/6
entries [1]  17/1
envision [1]  30/14
Ergotron [1]  5/11
especially [3]  17/24 24/9 35/20
essentially [4]  10/21 11/19 26/14 30/9
estimate [1]  44/24
estimated [1]  46/12
estimates [1]  45/8
even [17]  6/21 7/5 10/25 15/1 17/18 18/23 20/5 20/13 22/3 22/18 28/19 30/8 33/2 36/20 38/21 39/23 40/13
eventually [1]  27/11
ever [1]  45/18
every [1]  6/23
everybody [2]  25/20 27/3 39/10
everyone [2]  3/4 3/8
everything [5]  10/5 17/19 18/4 33/12 47/11
evidence [1]  21/5 43/6 48/20
evidentiary [4]  9/15 21/24 23/14 48/22
exactly [3]  10/17 13/10 17/16
examination [1]  44/25
examinations [1]  46/12
example [2]  35/24 40/10
exchange [2]  15/6 43/13
exchanged [3]  32/21 32/22 48/24
exhibits [1]  47/16
expanding [1]  13/4
expect [1]  34/10
expectations [1]  48/19
expecting [2]  11/10 40/17
expense [3]  29/2 32/14 33/2
experience [6]  12/24 12/25 13/22 14/22 39/2 42/23
experienced [4]  38/1 38/3 38/11 39/5
experiment [2]  47/6 47/10
expert [12]  6/9 9/24 11/23 12/1 12/18 13/2 25/10 26/3 26/15 26/21 40/10 40/14
experts [3]  34/7 40/11 48/23
explain [2]  15/16 19/20
explore [2]  35/5 37/4
explored [1]  10/25
express [1]  25/15
extension [3]  40/20 40/22 40/24
extent [4]  6/8 7/14 8/5 40/6
extremely [2]  9/1 24/20

**F**

F.3d [1]  24/1

fact [7]  16/5 24/9 24/23 25/23
11/23 11/25 20/21
21/14 21/20 21/21 21/22 22/18 22/19 22/25 23/5 28/4 28/6 28/17 34/22
facts [17]  15/13 19/15 19/23 19/25 20/14 20/19 20/20 21/2 22/4 22/5 22/8 22/10 22/11 22/14 23/11 23/13 48/17
fair [4]  4/17 8/21 10/4 29/23 31/4 31/9 37/16
faith [1]  35/2
fall [1]  43/24
familiar [1]  10/8
family [1]  6/25
far [2]  36/6 43/17
favorable [1]  22/12
FCRR [2]  2/23 50/10
February [3]  40/11 40/12 40/14
February 17th [1]  40/11
February 21st [2]  40/12 40/14
federal [4]  4/25 5/15 13/18 19/11
feel [3]  7/23 38/22 47/11
feels [1]  12/15
few [5]  4/15 19/1 30/24 31/19 42/15
Fifth [2]  5/2 5/3
Fifth Circuit [1]  5/3
fight [1]  20/1
figure [10]  8/3 17/21 18/7 22/24 28/16 29/3 29/5 29/22 44/15 46/9
figuring [2]  20/2 46/12
file [14]  9/18 10/19 10/20 14/2 15/1 15/6 16/18 16/18 17/10 19/21 24/7 40/8 47/23 47/24
filed [7]  4/8 8/21 9/6 16/14 40/18 48/4 49/7
files [1]  13/2 13/25
filing [4]  9/9 9/23 13/8 49/8
filling [1]  14/7
find [9]  15/24 17/12 21/6 22/4 38/9 38/20 38/23 42/1 42/2
finding [1]  38/7
fine [12]  7/11 12/18 14/13 18/9 18/16 19/22 20/7 21/19 23/6 23/8 40/14 45/6
firm [6]  19/10 39/13 40/4 41/4 41/16 41/20
first [7]  4/2 8/1 8/7 9/12 16/1 20/24 37/25
fit [4]  7/22 26/16 40/24 46/3
five [9]  7/10 7/12 7/15 7/19 13/21 19/11 20/20 44/13 44/16
five-day [1]  7/19
flap [2]  24/23 24/23
focus [2]  4/20 16/6
folks [3]  3/9 7/11 38/16 41/9 42/24
follow [5]  4/11 19/4 24/10 36/19 37/8
follow-up [1]  36/19
following [3]  20/20 44/3 47/3
forced [1]  8/20
foregoing [1]  50/4
forgot [1]  12/5
form [2]  18/15 34/13
forth [4]  14/9 14/11 14/12 24/5
forward [6]  25/20 26/2 37/12 41/1 41/23 44/9
found [2]  17/2 43/3
four [7]  7/11 7/12 7/15 7/18 9/12 19/7 19/7 20/20 39/22 39/23 44/17 45/1
four-hour [1]  45/1
frame [1]  20/5
framework [1]  24/16
frankly [2]  4/19 46/5
free [2]  7/23 47/11

## F

fruit [1]  39/6
full [5]  11/13 14/16 37/17 37/17 48/8
full-blown [1]  14/16
fully [3]  8/10 8/12 31/24
further [3]  33/3 47/16
fuss [1]  5/12

## G

games [2]  30/20 37/18
general [2]  3/23 18/14
generalist [1]  38/13
generally [4]  4/12 13/18 44/12 45/24
genuine [8]  19/24 20/3 21/23 22/1
 22/10 22/10 22/16 22/25
get [41]  5/22 6/6 6/8 8/4 8/12 8/18 8/19
 14/18 15/1 16/15 16/16 16/17 17/8
 18/2 18/4 18/6 18/8 24/25 29/14 32/8
 32/18 33/3 33/23 34/10 34/10 37/14
 37/21 38/13 40/1 40/15 41/2 42/17
 43/1 43/17 44/7 44/12 44/15 44/18
 45/7 46/2 48/24
gets [1]  13/3
getting [1]  6/7
Gill [2]  2/10 3/18
give [20]  7/4 9/10 15/14 15/19 16/18
 18/1 18/5 18/16 20/15 20/16 21/4
 24/16 24/17 26/4 28/3 30/2 35/15
 44/24 45/11 46/11
given [10]  5/7 10/4 13/5 15/13 17/7
 18/6 23/12 31/10 34/17 44/14
giving [1]  21/8
glad [2]  9/1 12/19
go [8]  8/12 16/23 23/23 26/16 29/2
 32/24 38/20 38/23
goes [1]  25/6
going [69]
going-forward [1]  26/2
good [19]  3/4 7/16 18/22 19/16 31/17
 35/2 38/13 38/25 39/19 39/24 39/25
 40/2 40/3 40/25 46/16
goodness [1]  41/19
got [1]  28/18
gotcha [3]  12/4 30/20 31/11
Grade [4]  34/19 34/20 35/6 37/1
Grade's [2]  36/13 36/25
grant [2]  39/24 40/23
great [1]  19/16
guess [6]  5/24 12/4 17/17 26/20 33/7
 47/19
guessing [1]  5/17

## H

had [12]  4/15 4/15 11/13 12/9 13/5
 24/21 24/21 24/22 24/25 30/6 36/17
 47/18
half [4]  19/8 42/23 44/13 44/16
hand [1]  32/15
handful [2]  20/14 42/2
handle [2]  17/6 36/4
hanging [1]  11/7
happen [2]  30/22 31/13
happened [2]  26/5 47/7
happens [2]  42/16 44/4
hard [2]  20/2 23/1
has [29]  5/4 5/13 5/16 5/18 5/21 6/14
 6/15 6/17 6/20 9/22 10/18 11/21 12/10
 13/19 13/22 14/22 16/23 23/4 26/11
 26/12 29/9 29/16 31/17 32/21 33/25
 37/9 42/23 47/4 49/12

hasdocume [4]to 54
have [153]
haven't [7]  33/5 33/11 33/16 33/17
 35/25 49/7 49/9
having [1]  43/24
He [2]  41/16 41/20
hear [6]  6/12 14/19 21/11 30/18 47/2
 48/20
heard [4]  33/3 47/7 48/21
hearing [7]  4/5 4/6 5/12 5/24 9/15
 24/19 48/22
hearings [1]  40/8
help [7]  20/5 23/13 37/12 38/18 39/2
 43/9 49/14
helpful [2]  19/16 31/1
her [2]  40/21 47/5
here [24]  3/5 3/16 5/6 5/22 11/2 11/16
 12/20 17/20 18/7 22/7 22/21 26/6
 27/18 28/1 30/18 36/3 37/25 37/25
 39/12 42/8 43/18 43/23 44/1 49/13
high [9]  18/17 34/19 34/20 35/6 36/13
 36/25 37/1 42/4 42/5
High Grade [1]  34/19
High Grade's [1]  36/13
high-tech [2]  42/4 42/5
him [4]  36/16 41/15 41/21 41/22
his [1]  22/6
Holm [2]  2/13 3/23
Honor [6]  11/17 17/5 25/18 37/11 49/1
 49/18
HONORABLE [1]  1/15
hopefully [5]  10/3 17/19 37/21 37/22
 44/7
horrible [1]  20/23
horribly [1]  28/11
hour [5]  44/10 44/16 45/1 45/1 46/18
hours [8]  35/22 44/13 44/16 44/17
 44/22 45/12 46/2 46/2
Houston [2]  2/4
how [19]  7/2 12/25 17/5 20/1 21/9 21/9
 24/5 24/12 25/22 26/17 28/20 29/21
 36/4 37/20 39/10 41/3 46/22 47/10
 47/12
however [2]  12/18 40/17
hung [1]  42/19
Hunt [1]  14/6

## I

I'll [8]  4/10 9/1 17/15 18/7 23/17 29/24
 32/8 42/16
I'm [31]  4/12 4/17 5/3 5/11 5/17 5/23
 5/24 8/15 10/7 10/17 16/3 20/7 21/10
 21/10 23/15 25/3 27/11 28/9 31/6
 31/10 31/12 31/13 32/10 32/13 32/25
 37/3 37/6 38/6 41/12 46/1 49/13
I's [1]  35/3
I've [8]  4/7 4/15 9/2 10/1 10/4 17/17
 22/17 24/18
idea [6]  19/16 19/18 27/13 30/20 36/4
 38/13
identify [1]  21/23
identifying [1]  10/19
imagination [1]  40/3
implies [1]  12/20
important [3]  15/5 16/4 30/25
imported [1]  17/20
impressed [1]  43/23
improved [1]  18/22
INC [4]  1/3 1/6 3/6 3/17
includes [2]  8/13 45/16

includerage [55]of 62
Incorporated [1]  3/5
incredibly [3]  32/12 32/14 33/21
incur [1]  33/2
incurred [1]  33/2
inexpensive [6]  6/4 6/5 17/23 37/22
 49/15 49/15
inexpensively [2]  14/23 15/9
inexperience [1]  12/22
influence [1]  20/6
informally [3]  14/23 15/2 15/9
information [3]  32/19 34/4 34/11
infringement [6]  26/11 26/25 27/6 48/7
 48/14 48/15
infringements [1]  49/2
infringes [1]  48/15
insert [1]  24/23
instance [2]  16/11 17/9
instructions [1]  8/13
insulted [1]  15/4
intelligent [1]  43/18
intention [1]  34/3
interested [3]  32/10 38/11 43/12
interesting [3]  41/25 43/7 43/16
interfere [1]  45/24
interfered [1]  40/1
interrogatories [6]  12/17 27/15 27/17
 27/22 27/24 29/8
interrogatory [7]  11/8 27/5 27/9 27/19
 28/10 34/13 35/5
intervening [1]  7/16
invalidity [13]  10/16 10/18 10/21 10/24
 11/8 12/9 12/21 13/2 13/10 26/12 27/7
 27/20 49/3
invective [1]  21/11
invite [3]  42/11 42/17 42/20
involve [1]  40/8
involved [1]  40/15
involving [1]  5/14
iPad [1]  24/22
irrelevant [2]  22/18 45/20
is [197]
isn't [2]  17/18 40/11
issue [15]  16/4 16/22 17/18 20/13
 20/22 21/23 22/1 22/22 22/10 22/17
 28/19 28/20 33/25 34/6 34/21
issued [1]  5/9
issues [9]  11/14 15/21 16/14 22/25
 24/14 24/16 37/4 39/11 47/15
it [224]
It's [1]  29/2
item [6]  10/8 12/13 13/14 19/5 23/3
 23/15
items [3]  7/3 8/18 24/14
its [1]  34/2
itself [1]  36/17

## J

Jacob [4]  2/10 3/18 18/10 41/9
jam [1]  11/21
January [2]  47/7 47/10
January 2nd [2]  47/7 47/10
Jensen [2]  2/13 3/23
John [12]  2/2 3/10 3/12 18/10 23/18
 24/24 25/18 32/6 32/8 33/3 41/9 48/11
joint [4]  4/2 5/1 14/4 36/9
Jonathan [2]  2/5
Jose [1]  2/9
judge [9]  1/16 5/15 19/11 19/17 38/8
 38/13 38/14 38/14 39/5

**J**

judge's [3]  4/5 4/6 4/9
judges [3]  19/17 38/24 39/5
judgment [25]  9/8 9/15 9/23 19/6 19/15
  19/21 19/22 20/10 20/12 21/17 21/18
  21/24 22/20 22/20 23/3 23/4 23/8
  23/10 23/16 40/18 47/21 47/21 48/4
  48/7 48/15
judicial [1]  38/18
July [8]  6/21 7/7 7/8 7/12 8/19 8/23
  13/9 39/16
July 11th [1]  13/9
July 17th [2]  7/8 39/16
July 2017 [1]  7/12
junctures [1]  25/23
June [6]  6/18 11/10 12/21 13/8 19/11
  39/11
June 23rd [2]  11/10 12/21
June 23rd to [1]  13/8
juries [2]  42/1 46/5
juror [2]  42/6 43/23
jurors [9]  42/11 42/18 43/3 43/9 43/13
  43/18 43/22 43/24 43/25
jurors to [1]  42/18
jury [22]  7/7 7/14 8/13 8/13 19/24 22/10
  25/6 25/7 42/3 42/19 42/19 42/20 44/4
  44/5 44/18 45/6 46/17 47/1 47/2 47/12
  47/14 47/15
just [28]  5/5 6/4 6/6 6/23 8/18 10/7
  10/15 12/11 12/11 12/14 12/16 12/20
  13/12 14/17 17/6 19/2 22/9 22/25 23/8
  29/24 32/2 37/22 40/19 40/23 42/4
  47/1 47/9 49/14
justice [4]  6/1 19/8 19/8 20/7

**K**

keep [2]  6/25 45/6
key [2]  20/14 31/12
know [42]  4/23 5/5 5/8 5/20 6/4 6/15
  6/16 6/20 7/10 7/10 9/7 11/20 13/9
  17/5 17/16 18/10 20/1 20/3 22/3 23/12
  24/11 25/5 25/14 25/15 27/10 27/11
  27/11 29/17 31/8 34/20 38/1 38/3 38/4
  38/15 39/8 39/9 41/13 41/14 41/18
  43/25 48/2 49/13
knowing [1]  49/15
knows [1]  27/4

**L**

Labor [2]  28/1 34/10
Labor Day [1]  28/1
laches [1]  48/4
lack [1]  29/7
lacking [1]  33/22
large [1]  15/20
larger [1]  8/17
last [6]  4/1 6/14 12/8 13/19 34/5 35/23
later [13]  8/6 8/22 13/15 24/8 27/14
  27/25 28/3 28/13 29/8 35/6 35/19
  44/18 46/9
latest [1]  24/11
law [7]  2/6 3/10 12/10 15/12 19/10
  19/25 41/16
lawsuit [1]  25/14
lawyer [1]  42/13
lawyering [2]  21/12 43/5
lawyers [8]  21/11 42/10 42/12 42/21
  43/3 43/10 43/14 43/14
lead [2]  16/24 16/25
learned [1]  28/7

least [2]  5/9 11/8
leave [8]  13/16 14/3 14/3 16/8 16/18
  40/3 41/18 45/6
left [1]  23/2
legal [2]  20/1 23/1
legally [4]  10/12 22/18 22/21 35/7
less [1]  7/23
let [13]  4/10 9/1 18/7 19/20 26/15
  30/18 31/11 31/13 32/13 32/25 35/13
  42/9 43/13
let's [4]  21/14 21/20 27/25 35/21
letter [2]  34/16 36/11
letting [3]  28/22 28/24 37/3
lieu [1]  46/15
ligation [1]  38/21
light [2]  22/12 37/9
like [17]  12/13 15/16 15/17 19/18 25/7
  30/19 32/5 33/9 33/15 34/9 35/11
  39/21 40/13 43/7 44/1 46/22 47/8
likely [8]  16/17 20/14 22/17 22/21
  31/23 47/20 48/24 48/24
likes [2]  20/5 11/18
litigation [9]  6/5 11/18 17/18 38/12 39/1
  41/20 43/20 43/20 43/21
litigators [2]  38/3 38/12
little [3]  13/13 19/11 43/2
live [1]  46/15
LLP [1]  2/8
local [11]  4/11 4/16 11/4 18/19 18/20
  18/22 18/24 19/4 27/16 27/17 37/25
logistically [1]  10/12
Lokting [2]  2/11 3/19
long [9]  7/3 17/25 30/17 40/1 40/7 40/9
  40/12 45/21 46/22
longer [1]  45/21
look [3]  13/14 26/17 41/23
looked [3]  7/1 17/17 24/18
looking [3]  7/2 9/14 19/25
loose [1]  37/2
lot [7]  4/23 7/13 7/17 7/22 8/4 8/8
  31/17
lots [1]  14/17
loved [1]  24/23
lunch [1]  44/10
lunchtime [1]  44/6

**M**

magistrate [2]  4/4 38/14
mail [8]  14/5 14/9 14/14 14/17 15/2
  15/5 15/6 40/13
mails [1]  14/25
Main [1]  19/8
make [23]  5/8 5/13 5/25 6/6 8/11 9/6
  11/6 11/22 12/21 17/7 18/22 19/1 23/8
  24/7 25/19 27/3 32/1 32/23 32/24 33/1
  35/3 45/13 49/14
maker [1]  20/6
makes [4]  12/22 27/13 34/9 46/4
making [1]  16/3
management [3]  3/7 4/1 24/15
Mansfield [4]  2/5 2/6 3/10 3/10
many [4]  4/16 4/19 4/17/1 32/11
March [1]  40/18
March 10th [1]  40/18
marginally [3]  45/19 45/19 45/23
Markman [4]  4/5 4/7 17/8 24/19
Mary [7]  14/8 14/20 16/16 28/15 33/20
  40/19 40/22

match [1]  6/14
material [2]  19/23 20/19
materiality [1]  34/6
materials [1]  4/2
matter [2]  5/19 13/12
matters [2]  4/23 27/21
may [22]  6/5 6/8 6/16 7/21 9/16 13/10
  13/10 13/13 13/17 16/24 19/14 25/14
  28/6 28/6 31/25 34/7 36/24 39/9 39/9 39/11
  42/2 48/13 49/4
May 8 [1]  9/16
maybe [19]  6/16 9/12 16/21 17/6 17/7
  17/22 18/23 20/5 22/3 23/18 24/17
  28/20 28/25 31/7 32/9 38/21 43/20
  44/7 45/3
me [70]
mean [6]  15/13 16/7 19/20 20/24 27/18
  33/4
meaningfully [1]  19/4
means [6]  6/7 6/8 8/23 9/14 10/11
  17/14 44/18 46/6
mediation [2]  38/20 39/4
mediator [1]  38/23
meet [2]  40/2 42/11
meeting [4]  37/24 41/8 41/23 49/13
Members [1]  47/1
memorandum [2]  20/17 21/8
mention [1]  25/21
mentioned [1]  30/5
met [2]  5/19 41/11
MICHAEL [1]  1/15
middle [1]  25/1
might [7]  28/21 32/24 34/23 39/25 40/3
  43/11 48/16
mind [6]  12/6 29/17 35/16 35/21 36/5
  49/10
minor [1]  40/7
minute [4]  40/23 44/11 44/11 45/1
minutes [1]  44/10
miscalculated [1]  7/20
missed [1]  9/2
missing [1]  11/2
mistake [1]  16/3
misunderstanding [1]  37/9
misunderstood [1]  36/8
mitigate [1]  29/23
mitigation [1]  29/12
model [5]  18/11 18/19 18/21 18/24 19/4
moderate [1]  42/15
modifications [2]  9/3 40/7
modified [3]  4/13 30/1 49/4
moment [1]  32/8
money [1]  7/17
months [23]  39/22 39/23
more [17]  7/22 13/1 13/13 18/7 19/11
  21/19 22/17 22/21 25/1 32/3 33/9
  36/20 37/4 40/23 45/7 46/2 46/24
morning [2]  3/4 44/11
Morrison [1]  2/6
most [16]  9/6 16/17 17/13 20/14 22/12
  23/10 23/11 24/11 25/23 29/25 37/20
  39/5 42/1 42/10 42/17 45/13
mostly [3]  8/17 15/11 25/19
motion [24]  4/8 10/25 11/13 13/25
  14/16 15/21 19/21 20/10 20/17 21/4
  22/6 22/20 24/7 32/11 47/23 48/3 48/6
  48/14 48/19 48/21 48/25 49/6 49/7
  49/8
motions [12]  4/22 9/16 9/19 13/16

**M**

motions... [8]  13/24 14/2 16/7 16/13
23/17 40/17 47/21 48/21
motivating [1]  10/23
movant [5]  20/19 21/25 22/5 22/17
23/3
movant's [3]  14/13 21/15 22/4
move [1]  28/23
moved [2]  19/9 22/21
moving [2]  22/12 22/13
MR [1]  3/14
Mr. [3]  33/10 46/21 47/2
Mr. Oliver [1]  33/10
Mr. So [1]  47/2
Mr. Witness [1]  46/21
Ms. [2]  47/3 47/3
Ms. So [1]  47/3
Ms. So and [1]  47/3
much [17]  4/20 7/8 8/2 8/12 9/10 9/19
13/21 27/10 27/12 29/14 30/6 45/22
46/7 46/24 47/16 49/12 49/17
my [46]  4/10 5/22 6/21 6/25 7/7 7/12
8/1 8/9 8/22 9/8 9/11 10/23 12/22
12/24 12/25 13/22 14/2 14/3 14/6 14/7
14/8 14/22 16/1 16/14 17/17 18/14
18/17 18/18 19/3 19/7 23/9 23/10 24/4
28/2 28/12 28/16 29/21 30/4 35/23
37/20 38/8 38/9 40/9 41/16 42/21
42/23

**N**

name [3]  10/13 23/22 34/18
narrow [1]  16/5
narrowing [1]  13/1
nature [1]  27/24
necessarily [2]  12/25 37/7
necessary [2]  20/22 21/4
need [46]  7/21 8/5 9/5 10/6 11/15 12/1
12/15 12/19 15/11 15/13 16/18 16/23
17/4 17/8 17/22 18/3 18/4 18/7 18/8
19/22 23/1 23/13 25/3 25/9 25/11 26/1
26/7 26/7 26/16 26/17 28/19 30/11
31/21 32/22 33/13 34/7 35/2 37/3 37/9
40/9 40/15 40/20 44/19 47/14 48/2
48/9
needed [2]  8/19 28/6
needing [2]  17/20 48/20
needs [3]  9/23 21/19 22/11
never [6]  15/4 31/2 31/2 32/18 35/12
45/14
new [11]  6/3 12/21 13/17 17/14 27/7
28/7 28/10 28/19 28/20 29/15 29/19
next [1]  6/22
nice [2]  24/24 41/23
Nicholle [1]  23/20
night [2]  4/1 6/14
Ninth [5]  23/19 23/24 24/6 24/6 24/9
Ninth Circuit [1]  24/9
no [17]  7/3 11/23 13/16 16/7 16/13
17/10 19/23 21/15 21/18 21/19 22/14
27/4 34/25 36/19 36/24 39/14 44/18
No. [1]  21/20
No. 2 [1]  21/20
non [4]  22/12 43/25 48/7 48/15
non-infringement [1]  48/7 48/15
non-moving [1]  22/12
non-smarter [1]  43/25
None [1]  41/6
normally [4]  7/24 31/18 36/2 44/4
North [2]  23/23 24/1

**N** (continued column)

Northern District [1]  4/14
not [87]
note [2]  4/25 49/6
nothing [3]  11/11 21/19 41/7
noticed [2]  13/17 46/3
notify [1]  36/5
noting [1]  6/21
notwithstanding [1]  5/23
now [29]  3/8 5/6 5/21 6/2 6/22 7/12
13/19 14/24 17/10 22/7 24/6 27/12
28/4 28/9 29/19 30/3 31/6 35/12 35/17
36/5 37/2 37/3 37/8 37/8 41/5 47/2
47/18 47/20 48/19
nuances [1]  15/12
nullity [1]  11/19
number [6]  4/1 5/14 8/24 38/24 45/12
47/5
numbered [2]  6/24 21/14
numbers [3]  44/12 44/15 44/22

**O**

Oak [1]  2/11
objection [2]  4/7 5/16
objections [1]  24/19
objective [1]  5/22
obligation [3]  6/2 23/4 33/6
obligations [1]  13/23
obviously [17]  12/10 16/14 17/4 19/23
20/1 21/2 22/8 22/11 24/5 24/6 24/8
24/10 32/21 32/22 34/9 40/6 48/21
occasionally [1]  15/15
October [1]  7/5
odd [1]  6/24
odd-numbered [1]  6/24
off [4]  13/6 38/19 42/16 43/2
official [1]  15/3 50/10
often [3]  13/1 20/2 45/7
oftentimes [1]  8/13
Oh [3]  18/21 35/16 41/19
okay [8]  6/6 23/12 24/13 25/3 25/5
25/13 35/10 39/15
old [1]  41/16
olden [1]  18/25
older [1]  19/14
Oliver [4]  2/8 3/20 10/14 33/10
once [1]  39/17
one [31]  5/16 9/22 10/23 15/21 17/18
18/12 18/19 20/4 20/20 20/21 22/19
24/21 24/24 25/1 27/12 28/16 30/7
34/2 34/3 35/9 39/5 40/11 42/5 44/2
44/5 44/7 44/16 45/18 47/6 48/6 48/7
one-tier [1]  18/12
oneself [1]  45/24
ongoing [1]  5/4
only [6]  7/15 14/13 21/3 45/15 45/22
47/18
oOo [1]  50/2
open [1]  7/13
opening [3]  44/6 45/14 49/1
operate [1]  30/15
operated [1]  30/16
operating [1]  30/22
opinion [8]  4/5 6/9 23/9 36/1 36/17
36/23 37/1 38/10
opinions [2]  6/12 34/1
opportunities [1]  37/16
opportunity [11]  11/13 15/14 15/15
15/19 16/4 21/17 24/18 26/3 28/4 28/5
37/7

**O** (continued column)

opposed [1]  41/1
opposes [1]  40/21
opposing [1]  32/3
opposition [1]  48/14
oppositions [1]  9/19
oral [1]  9/14
order [19]  4/1 4/6 16/11 16/20 16/22
16/25 17/7 17/9 17/11 17/15 18/5 18/8
18/11 18/15 24/15 30/9 32/13 38/6
40/23
ordered [1]  33/6
orders [3]  4/24 12/2 16/19
OREGON [9]  1/2 1/7 2/7 2/12 13/14
19/9 31/4 34/24 38/15
original [2]  22/13 50/1
other [50]  4/19 6/24 7/19 8/3 8/24
13/12 14/5 16/15 17/7 17/9 17/16
18/25 19/5 20/4 20/15 20/23 21/9 23/5
27/4 27/20 27/21 27/23 28/3 28/10
28/14 29/1 29/4 29/12 32/15 32/15
32/21 33/1 33/6 33/18 34/17 34/25
35/20 37/18 37/19 38/15 40/3 40/13
40/21 40/22 42/4 43/1 45/20 46/14
47/13 47/18
other's [1]  21/11
others [3]  47/23 47/24 48/22
otherwise [2]  12/17 41/24
our [25]  6/3 13/9 14/19 14/20 14/21
15/9 17/2 17/11 18/18 18/22 18/24
19/4 26/24 27/22 29/4 35/16 36/5
38/24 39/4 39/22 42/3 42/6 43/23 44/5
48/14
ours [1]  26/23
out [26]  12/13 14/8 17/3 17/21 18/4
18/8 19/5 19/16 20/2 22/25 23/2 24/9
27/8 28/16 29/3 29/5 29/12 29/22
34/10 39/10 41/9 42/11 42/12 43/23
44/1 46/9
outside [1]  37/25
over [6]  16/11 19/1 20/1 45/24 45/24
45/24
own [3]  3/8 38/23 42/7

**P**

PACER [1]  17/2
packaged [1]  8/12
pages [1]  30/12
panel [2]  42/3 42/8
papers [1]  48/22
paragraph [1]  47/1
parameter [1]  15/23
paraphrasing [1]  10/17
part [10]  10/22 14/25 17/5 19/15 20/2
21/24 23/12 29/1 42/1 42/17
partial [4]  19/21 22/20 23/3 47/21
particular [5]  15/11 20/12 20/13 22/2
38/21
particularly [3]  8/25 38/13 38/17
parties [16]  6/2 6/8 8/10 9/7 13/22
18/14 26/21 27/2 30/14 31/17 42/12
42/21 43/14 43/15 46/24 49/2
party [8]  10/15 10/17 22/12 22/13 27/4
27/6 33/5 42/10
party's [1]  32/3
pass [1]  43/16
passed [5]  5/19 25/23 26/11 26/12
29/16
past [1]  34/2
patent [22]  4/15 4/16 5/11 6/4 10/18

**P**

patent... [17]  11/4 11/17 12/22 24/20 26/10 27/19 34/3 35/14 38/3 38/12 38/12 38/18 38/21 39/1 39/5 43/20 43/20
patents [4]  5/10 5/14 17/18 48/7
Paula [2]  2/13 3/23
people [9]  12/9 15/15 19/1 26/15 29/9 30/1 37/24 42/5 46/4
people's [1]  45/7
per [1]  46/2
percent [2]  14/22 45/3
peremptory [1]  42/7
perfectly [1]  13/5
perhaps [2]  5/19 17/21
period [1]  9/25
Perkins [2]  19/10 41/17
permission [1]  16/14
perpetuated [1]  46/15
person [2]  36/21 36/24
personally [1]  6/23
perspective [3]  31/16 48/1 48/12
perspectives [1]  38/11
persuasive [2]  43/4 43/4
Ph.D.s [1]  42/3
phone [3]  16/16 16/17 41/2
phrased [1]  36/21
pieces [1]  13/3
pin [1]  29/9
pinpoint [1]  21/5
plaintiff [23]  1/4 2/2 3/9 3/11 3/13 3/15 6/8 6/15 6/17 6/19 7/10 11/12 11/12 11/21 25/17 25/19 26/22 30/15 30/22 41/6 48/5 49/3 49/5
plaintiff's [1]  48/11
plaintiffs [1]  8/21
PLANAR [12]  1/6 3/6 3/16 3/24 4/9 4/25 8/17 34/2 36/17 36/22 36/25 42/4
Planar's [4]  4/7 5/16 34/15 36/14
planning [2]  5/17 44/4
play [1]  37/18
pleading [1]  17/10
Please [2]  31/7 39/16
pleasure [3]  41/8 41/9 49/13
plenty [2]  7/16 28/18
PLLC [1]  2/3
Plus [1]  34/5
point [13]  9/16 11/19 12/3 15/11 18/22 19/5 26/16 34/8 35/10 44/9 48/10 49/8 49/11
polymer [1]  47/8
Pomona [2]  23/23 24/1
pool [2]  42/6 43/23
portions [1]  21/23
Portland [5]  1/7 2/7 2/12 2/24 42/1
position [9]  14/13 14/15 26/19 26/20 26/24 34/15 36/15 47/3 47/4
positions [3]  14/12 27/6 27/7
possibility [1]  18/21
possible [1]  6/16
postponing [1]  4/21
potential [1]  47/20
practical [1]  37/15
practically [1]  10/12
practice [7]  4/21 4/21 11/1 11/13 19/7 33/4 42/14
practiced [2]  19/7 19/10
practicing [2]  19/6 19/13
pragmatic [1]  37/15
precedent [4]  5/2 24/6 24/7 24/11

prefer [1]  46/5
preferably [1]  6/21
preference [1]  6/21
prejudice [5]  29/13 29/24 29/25 35/20 37/19
prejudiced [3]  28/20 29/11 29/22
prejudicial [1]  28/11
preliminary [3]  4/23 26/22 27/1
premature [1]  48/18
prepare [2]  13/9 47/10
prepared [2]  5/11 8/11
presence [1]  42/22
present [9]  2/13 3/3 10/16 10/18 30/21 30/24 37/17 37/17 47/12
presentations [1]  43/6
presented [2]  10/1 47/5
preserve [1]  15/11
pressure [1]  8/3
presume [1]  48/14
presumption [1]  18/14
pretrial [13]  7/25 8/3 8/6 8/9 8/10 8/14 9/5 9/9 9/13 13/8 13/9 30/24 46/11
pretty [12]  4/13 7/8 8/11 13/21 18/17 38/25 39/13 40/4 41/3 42/2 42/8 43/7
previously [1]  5/9
primarily [1]  47/19
primarily for [1]  47/19
prior [7]  10/20 13/3 13/16 14/3 14/3 16/8 39/4
private [1]  38/23
privilege [6]  15/17 35/9 35/11 35/13 35/18 35/19
privileged [1]  35/18
probably [9]  11/4 11/3 14/10 20/16 26/22 27/23 39/24 44/5 44/20 46/19 48/18
problem [1]  29/6
procedure [2]  13/18 16/10
procedures [1]  30/8
proceedings [2]  1/14 50/5
process [2]  33/9 33/9
produce [10]  30/10 30/16 31/7 31/18 32/13 33/6 33/12 33/14 33/19 33/22
produce X [1]  33/14
produced [9]  30/12 31/25 32/17 32/22 33/5 33/14 33/16 33/17 33/18
producing [1]  32/12
production [6]  13/24 30/11 30/11 31/17 31/21 31/24
products [1]  39/9
progresses [1]  7/19
prohibition [1]  27/22
prohibits [1]  27/17
prompt [1]  37/22
promptly [2]  14/24 30/1
proof [1]  21/6
property [1]  13/2
proportionality [2]  15/22 33/22
propose [1]  18/24
proposed [5]  6/10 7/1 7/2 18/5 25/16
propositions [1]  20/1
propounding [1]  44/24
prospective [2]  42/3 42/6
protect [1]  32/15
protective [9]  16/11 16/19 16/19 16/22 17/9 17/11 17/11 18/11 18/15
provide [2]  20/4 20/5
provided [1]  10/5
provision [1]  30/9

produced [1]  28/24
purpose [5]  8/19 9/12 21/16 23/6 23/7
push [2]  37/24 39/22
put [13]  6/9 8/1 8/2 10/8 15/3 20/25 20/25 21/3 21/8 28/1 34/13 46/17 46/18
puts [1]  28/9
putting [1]  20/8

**Q**

quarters [1]  42/24
question [17]  10/7 10/23 11/20 22/10 23/1 30/2 35/23 36/3 36/11 36/16 36/18 36/20 36/22 36/24 36/25 37/8 47/18
questioning [1]  45/16
questions [10]  20/5 25/19 28/16 30/4 42/16 43/10 43/13 43/14 45/20 45/23
quickly [2]  15/9 22/24
quite [4]  6/3 25/21 41/19 46/1
quote [1]  10/17

**R**

rarely [3]  39/18 39/18 42/16
rather [6]  8/22 13/4 27/24 28/2 28/13 29/8
RDR [2]  2/23 50/10
re [2]  37/4 37/10
re-depose [1]  37/4
re-depose that [1]  37/10
reach [1]  6/3
read [8]  4/1 4/2 4/3 4/4 4/8 10/5 36/9 47/1
reading [1]  38/2
reads [2]  12/14 12/25
ready [2]  7/4 8/12 23/6
real [3]  15/12 16/6 44/13
realistic [1]  44/24
really [36]  4/19 4/20 5/3 5/4 6/14 6/24 7/21 8/19 8/20 9/3 10/11 12/3 13/23 13/25 14/1 15/11 15/13 16/3 16/4 17/22 18/7 19/1 19/17 20/9 21/3 21/6 22/14 22/25 24/21 27/25 29/9 32/16 36/9 39/19 40/4 42/25
reason [9]  18/1 22/13 39/14 39/19 39/20 39/24 39/25 40/2 40/25
reasonable [5]  4/17 9/18 9/20 17/13 37/16
reasonableness [1]  15/23
reasonably [5]  30/1 32/24 37/21 37/22 37/22
reasons [1]  40/3
received [5]  33/11 33/11 33/13 36/1 42/19
recent [1]  23/24
recently [2]  4/20 17/3
Recess [1]  49/19
recollection [1]  24/4
record [10]  14/25 16/2 16/2 17/5 21/5 21/24 26/23 32/1 43/2 50/5
recrosses [1]  45/17
redirects [1]  45/17
redo [2]  6/9 33/8
reduce [1]  15/21
redundant [1]  12/4
refiled [1]  17/22
regarding [2]  5/20 47/7
regular [3]  14/7 14/8 44/14
rejected [1]  5/17
rejecting [1]  4/7

**R**

related [1] 48/4
relating [1] 16/13
relative [3] 6/5 22/24 49/16
relatively [2] 7/13 37/2
relevance [1] 15/22
relevant [11] 17/1 30/10 30/21 31/8
31/18 31/20 32/2 32/3 33/12 45/19
45/23
relevant/marginally [1] 45/19
reliance [3] 35/7 36/12 36/13
relief [1] 29/14
rely [5] 34/3 35/11 35/12 36/7 36/25
relying [2] 32/2 34/16
remarkably [1] 46/4
remember [4] 11/18 16/24 19/14 41/21
remnant [2] 11/3 11/5
reopen [3] 28/22 28/24 30/14
reopened [1] 5/21
reopening [1] 13/15
reopens [1] 27/14
repeating [1] 45/23
replies [1] 9/19
reply [3] 22/14 22/17 22/18
report [7] 4/2 5/1 36/9 46/23 49/2 49/3
49/9
REPORTER [2] 2/23 50/10
reports [7] 6/10 12/18 26/3 26/16 26/21
47/4 49/1
representing [4] 3/9 3/11 3/13 3/15
request [9] 15/23 30/11 31/3 31/7
32/16 33/17 34/12 34/13 35/4
requested [4] 6/15 8/16 9/20 10/9
requests [7] 30/11 31/21 31/23 32/9
32/20 33/1 34/9
require [4] 19/24 20/18 33/8 48/22
requirements [1] 12/11
reserved [1] 6/25
reserving [1] 21/17
resolution [7] 5/7 6/4 6/7 15/25 19/24
37/21 49/14
resolve [4] 15/8 28/15 33/20 41/24
resolved [4] 14/1 14/23 16/16 16/17
resolves [1] 33/7
resolving [1] 20/22
respect [2] 18/23 31/21
respond [4] 4/11 28/3 34/12 34/14
respondent [6] 14/14 21/7 21/13 21/25
22/15 36/11
respondent's [1] 22/7
response [9] 21/7 27/8 28/10 28/25
29/21 30/19 31/2 33/19 33/20
responsive [2] 14/14 32/16
rest [1] 41/1
retain [1] 36/22
retired [1] 39/4
revise [1] 26/3
revisit [1] 39/11
revisited [1] 37/3
right [20] 3/4 3/8 3/25 5/22 5/25 6/7
7/12 17/10 19/25 25/24 27/12 28/9
30/3 31/12 32/6 41/8 45/13 47/9 47/20
48/19
righteousness [1] 20/7
RMR [2] 2/23 50/10
road [2] 2/3 47/17
Room [1] 2/24
rough [1] 45/2
round [1] 44/12
rule [9] 6/1 13/20 14/2 26/10 27/17

rules [9] 4/11 4/16 11/4 13/18 25/20
25/21 26/9 26/10 27/16
ruling [1] 16/1
rulings [6] 8/11 9/8 9/12 23/10 36/3
37/20
run [3] 8/9 27/22 45/20

**S**

safe [1] 16/9
said [9] 5/6 11/23 21/12 21/19 24/23
29/20 34/9 35/25 43/23
same [5] 5/10 5/14 6/18 26/9 49/8
San [1] 2/9
sandbag [1] 12/11
Santa [1] 2/9
sat [1] 23/19
satisfied [1] 13/6
say [24] 11/12 16/5 18/21 20/14 21/15
22/3 22/18 23/17 25/13 26/23 27/25
29/18 30/15 33/12 33/22 35/10 35/21
39/21 40/20 42/16 43/10 43/12 43/16
48/8
saying [7] 26/13 27/6 29/16 32/18
33/10 36/25 46/1
says [7] 7/10 21/13 22/15 27/20 28/11
30/10 33/5
schedule [15] 6/11 6/13 6/22 7/2 8/2
8/6 9/11 10/1 13/6 25/16 25/25 26/1
40/2 41/3 49/4
scheduled [1] 7/11
schedules [2] 7/1 9/21
scheduling [1] 12/2
Schlacter [1] 2/11
Schlather [4] 2/2 2/3 3/14 3/14
scope [1] 48/8
sealed [1] 17/10
search [1] 15/23
second [4] 5/17 5/24 8/5 12/7
second-guess [1] 5/24
second-guessing [1] 5/17
secrets [1] 15/17
section [3] 10/10 10/15 21/1
Section 282 [1] 10/10
see [19] 5/2 7/6 10/4 10/8 12/2 15/1
24/12 25/7 26/16 27/2 27/16 29/8
29/12 30/22 40/17 43/17 44/23 46/3
46/19
seeing [1] 41/9
seem [1] 33/15
seen [14] 6/10 6/13 15/15 18/25 22/17
24/20 31/2 31/20 41/15 41/22 48/23
49/1 49/5 49/9
sees [1] 39/10
selected [3] 7/6 7/9 44/5
send [1] 14/25 23/4 33/17 35/4
sense [6] 9/6 14/18 18/2 27/13 37/2
37/14
sent [3] 3/25 6/13 36/9
separate [1] 20/18
separately [1] 23/4
September [3] 6/21 7/5 8/20
seriously [2] 6/1 13/23
serve [6] 27/14 29/7 31/23 32/9 32/20
38/8
served [1] 31/3 31/21
set [11] 7/14 7/18 7/19 7/22 11/8 14/9
14/10 14/20 23/13 31/23 39/17
sets [2] 14/12 24/4
settle [1] 37/24 38/5

settlement [5] 36/6 38/18 38/20 38/24
38/25 39/2 39/11
seven [9] 7/7 7/9 7/14 7/21 7/23 44/4
44/20 45/6 45/8
seven-day [5] 7/7 7/14 44/4 45/6 45/8
share [2] 35/2 35/2
she [7] 14/7 14/10 14/10 17/3 47/4
47/4 47/6
shield [2] 35/15 35/15
Shlachter [1] 3/19
shortly [1] 27/25
should [23] 5/20 9/3 12/16 14/1 15/13
16/6 22/5 25/15 27/14 27/23 27/25
29/20 32/9 32/17 33/11 33/14 36/5
38/4 40/4 41/3 41/5 46/9 47/24
shouldn't [6] 5/21 28/12 29/17 29/18
38/5 46/10
show [5] 22/9 22/16 46/14 46/20 47/11
showing [1] 31/12
shows [1] 22/1
SI [1] 1/3
side [27] 6/14 9/17 14/5 19/2 20/4 20/4
20/6 20/23 21/9 23/5 28/3 28/11 29/12
30/19 33/1 33/1 33/6 35/9 35/20 37/18
37/19 40/21 40/22 43/22 44/24 45/11
46/2
side's [1] 45/20
sides [10] 27/13 28/4 30/10 30/21 32/9
37/16 38/9 38/22 46/16 47/19
sides' [1] 14/12
sign [1] 17/15
signature [3] 50/7 50/7 50/7
signed [1] 50/7
significant [7] 6/23 7/25 8/11 26/25
31/1 40/24 49/10
signing [1] 50/4
similar [1] 49/6
SIMON [1] 1/15
simple [2] 24/21 27/5
simply [2] 29/15 30/12
since [4] 13/13 13/21 27/10 28/17
sit [1] 34/11
situation [1] 22/22
six [6] 7/21 8/4 20/20 44/13 44/17
44/19
sleep [2] 46/18 46/18
small [1] 27/13
smart [1] 28/23
smarter [2] 43/24 43/25
so [84]
solution [2] 18/6 29/6
some [36] 4/19 4/23 5/18 5/20 6/8 9/3
9/19 13/4 15/2 15/8 15/12 18/1 22/5
23/12 23/24 24/18 24/21 25/10 26/3
26/24 29/12 32/10 33/18 34/4 34/8
34/17 35/9 36/5 36/12 37/15 39/8 42/3
43/21 44/19 46/11 48/21
somebody [11] 11/7 12/5 12/15 13/1
13/25 19/20 26/6 28/24 34/5 38/7
45/19
somehow [1] 40/13
someone [6] 10/11 12/9 28/9 29/10
38/9 38/20
something [25] 9/2 11/15 13/19 15/5
15/17 17/7 17/8 23/2 25/24 27/18
28/10 29/5 29/10 29/15 29/19 29/20
33/10 35/1 35/18 39/1 45/5 45/21 47/8
48/9 48/16
sometimes [3] 7/25 13/22 45/7
somewhere [2] 12/19 23/18

**S**

soon [3]  6/16 6/16 27/14
sooner [6]  8/22 9/12 27/24 28/2 28/13 29/8
sophisticated [2]  42/2 42/8
sort [2]  27/12 37/14
sorts [1]  20/24
sounds [2]  32/5 35/11
South [1]  2/3
SpaceCo [8]  4/4 6/17 7/10 16/25 17/16 39/9 39/11 49/7
speak [1]  16/21
speaking [2]  10/13 16/19
specialized [1]  38/16
specific [3]  15/21 21/14 21/23
specificity [1]  39/17
speedy [4]  6/3 6/5 49/15 49/16
spirit [1]  36/3
sponte [1]  30/13
spring [1]  30/25
SQM [2]  23/23 24/1
squabble [1]  19/1
stack [2]  13/25 15/20
stage [2]  23/13 23/17
start [4]  9/9 13/8 25/17 39/19
started [2]  7/24 19/7
starting [2]  3/8 7/17
state [3]  10/13 12/10 21/21
statement [5]  20/18 21/1 21/13 22/7 45/14
statements [3]  19/14 44/6 44/23
states [5]  1/1 1/16 2/23 10/10 10/15
status [4]  1/13 4/2 5/1 36/9
statute [2]  11/18 12/25
step [1]  27/13
Stephen [1]  2/2
Steve [3]  3/14 41/15 41/18
still [1]  26/16
stipulate [1]  23/7
stipulated [6]  17/15 18/8 18/15 23/6 23/11 46/25
stipulations [1]  23/5
Stoll [4]  2/11 2/11 3/18 3/18
stone [1]  11/9
stop [1]  20/8
strange [1]  12/14
Street [2]  2/9 2/11
strict [1]  46/1
strike [2]  18/6 24/20
strikes [2]  25/1 27/12
struck [1]  10/22
structure [1]  37/20
structured [1]  9/11
stuck [1]  35/19
stuff [2]  20/8 46/22
sua [1]  30/13
subject [1]  16/10
submit [5]  17/14 17/15 21/6 22/1 27/23
submitted [2]  7/2 21/25
subset [1]  13/4
substantive [1]  8/11
such [5]  15/22 29/16 29/16 47/8 47/8
sudden [1]  30/25
suffice [1]  11/23
suggested [2]  8/16 25/16
suggesting [1]  32/6
Suite [3]  2/6 2/9 2/11
summary [25]  9/8 9/15 9/23 19/6 19/15 19/21 19/21 20/9 20/12 21/16 21/18 21/24 22/20 22/20 23/3 23/4 23/7

Document 54 47/16 47/18
48/6 48/15
supplement [1]  26/15
supplemented [2]  26/24 27/3
support [1]  20/17
suppose [1]  21/20
supposed [1]  33/12
Supreme [1]  24/9
sure [15]  3/23 5/25 6/6 11/6 12/22 24/8 25/20 27/3 31/7 32/1 32/23 32/25 35/3 41/12 45/13
surprise [1]  11/12 31/11
surprise/gotcha/you [1]  31/11
surprises [2]  27/5 27/8
suspect [1]  39/14
SW [3]  2/6 2/11 2/24
sword [1]  35/14
SYSTEMS [4]  1/6 3/6 3/17 3/24

**T**

T's [1]  35/3
table [1]  42/16
tactical [1]  42/7
take [15]  6/1 6/23 6/25 7/15 12/13 13/14 13/23 15/20 23/11 28/5 28/18 40/14 45/21 45/22 48/16
taken [2]  12/3 35/23
taking [2]  13/6 27/12
talk [19]  6/12 10/3 10/5 10/11 14/21 14/21 15/9 15/24 24/13 28/15 29/4 29/13 33/21 41/5 42/12 42/21 45/12 47/16 48/13
talked [1]  17/3
talking [5]  21/10 21/10 23/15 24/15 26/10
taxpayer [1]  7/17
team [1]  6/18
tech [2]  42/4 42/5
technical [5]  10/7 24/20 25/4 25/6 25/10
techniques [1]  43/5
technology [2]  25/4 38/22
telephone [6]  14/4 14/19 14/20 14/24 15/24 33/21
tell [18]  7/20 9/2 12/16 15/10 15/14 16/2 17/24 18/10 20/11 20/22 21/22 25/25 26/8 36/8 38/10 40/20 42/9 48/25
tells [1]  20/19
term [2]  22/24 29/7
terms [5]  6/5 9/6 25/5 25/6 49/16
terrible [2]  20/24 21/9
terribly [1]  28/11
testimony [9]  36/2 36/6 36/6 44/13 44/16 44/17 46/15 47/5 47/15
Texas [12]  2/4 4/6 4/9 4/18 5/5 5/8 5/15 5/19 16/20 16/22 16/24 26/9
Texas's [1]  34/24
than [19]  7/18 8/22 13/1 13/4 17/16 18/7 18/15 18/25 19/11 27/24 28/2 28/13 29/8 33/2 36/21 43/25 44/18 45/7 46/3
Thank [6]  24/3 37/11 41/6 49/12 49/17 49/18
that [365]
that's [35]  4/14 5/25 6/6 10/2 12/5 12/18 16/7 17/23 18/8 18/15 19/22 20/7 21/24 22/21 22/24 23/8 23/15 24/12 28/23 30/2 31/4 36/14 36/21 37/20 37/21 40/2 40/14 40/19 41/3

Page 60 of 62
their [24]  3/8 5/1 6/9 9/18 13/23 14/15 19/2 21/8 21/8 22/14 26/3 26/23 29/17 30/7 35/24 37/17 37/17 38/1 43/4 43/6 43/18 44/20 44/21 49/9
them [19]  19/17 19/18 19/18 19/19 26/4 29/3 30/25 32/13 32/20 32/25 35/2 35/3 35/4 37/7 42/6 42/7 43/13 46/18 48/13
then [49]  7/8 7/20 7/22 8/8 8/15 9/5 9/16 9/22 9/25 10/24 12/11 13/3 13/11 13/25 14/20 18/18 18/23 19/3 19/9 19/10 21/7 21/23 22/6 22/11 24/24 25/15 25/25 27/7 29/24 30/23 30/25 33/7 33/13 34/6 34/11 35/5 35/6 35/9 35/18 37/1 37/21 38/22 43/1 45/2 45/10 47/8 47/11 47/18 48/5
there [53]
therefore [3]  29/16 32/13 40/1
these [15]  4/16 9/21 14/21 14/24 15/10 19/14 19/25 22/8 23/12 31/25 37/15 38/1 39/19 40/4 40/7
they [77]
they've [2]  5/9 33/2
thick [1]  13/25
thing [3]  19/5 30/7 46/14
things [21]  6/9 7/19 8/3 8/8 8/16 10/19 15/2 15/22 17/9 19/23 20/24 21/3 26/5 26/21 32/11 32/24 37/15 40/9 43/7 43/21 44/2
think [69]
thinking [3]  4/10 10/2 47/24
thinks [1]  26/6
Third [1]  2/24
this [96]
those [29]  5/4 7/4 7/5 11/14 15/3 17/4 17/9 18/16 19/13 20/9 21/3 22/10 22/11 22/14 25/23 26/13 26/14 26/17 27/8 31/22 31/25 37/12 42/17 42/20 44/15 44/22 47/15 48/9 49/3
though [4]  16/3
thought [8]  8/20 9/6 10/4 18/1 29/19 43/4 43/5 46/11
threaten [1]  13/24
three [8]  8/6 20/20 39/21 39/23 42/5 42/24 44/8 44/17
three-quarters [1]  42/24
through [12]  12/17 14/21 15/10 29/4 43/19
thumb [1]  45/3
ticking [1]  45/22
tier [4]  18/12 18/12 18/19 18/19
tightly [1]  46/17
time [22]  5/15 7/16 7/19 8/17 9/10 9/18 11/4 11/5 11/19 13/4 14/16 20/21 20/21 27/13 28/18 37/25 42/10 44/20 45/2 45/13 45/22 46/6
time/one [1]  20/21
times [2]  45/15 46/12
Title [1]  10/10
today [1]  14/6
together [5]  6/2 8/1 14/4 46/16 46/25
too [4]  8/2 23/8 46/14 48/25
took [2]  13/21 40/1
top [1]  24/23
totally [1]  7/11
Tower [1]  2/3
town [1]  41/9
trade [1]  15/17
transcript [3]  1/14 50/5 50/6

**T**

transfer [2]  4/8 4/22
transferred [3]  5/6 5/22 17/2
treat [1]  41/3
treating [1]  37/6
trial [42]  6/15 6/17 6/18 6/20 7/4 7/7
 7/13 7/14 7/19 7/21 8/1 8/4 8/7 8/19
 8/20 8/22 10/16 10/18 11/6 11/9 13/3
 15/2 21/17 22/1 25/6 31/13 35/16
 39/10 39/13 39/16 39/23 41/25 42/9
 42/13 42/18 44/4 44/9 44/14 44/14
 45/6 45/8 47/16
trials [1]  6/22
tried [3]  5/8 5/13 11/21
Trish [1]  14/6
truly [1]  35/18
try [10]  5/22 6/23 10/3 12/9 15/8 16/15
 20/5 22/16 37/15 45/8
trying [3]  6/24 44/1 46/7
turned [1]  19/16
turns [2]  18/4 39/10
Turocy [1]  2/8
tutorial [2]  25/4 25/6
tweaks [2]  9/3 25/16
two [15]  7/25 15/21 18/12 18/19 19/23
 24/25 40/19 40/20 40/22 42/5 44/7
 44/16 44/17 45/1 46/18
two-hour [2]  45/1 46/18
two-tier [1]  18/12
type [10]  25/3 25/10 31/11 32/10 32/14
 32/19 34/4 35/6 36/12 38/6
types [4]  9/21 14/24 27/21 38/25
typically [4]  18/12 34/3 34/6 35/8

**U**

U.S [1]  19/8
U.S.C [1]  11/11
unanimous [1]  24/4
uncommon [1]  9/21
uncontested [1]  48/17
under [7]  6/3 7/5 30/16 30/16 30/22
 33/5 49/4
understand [10]  4/18 5/18 25/14 25/22
 34/15 35/8 36/2 36/11 39/16 47/9
understanding [3]  26/2 31/24 36/14
understands [2]  25/20 38/21
understood [1]  36/22
undisputed [12]  19/14 19/25 20/15
 20/19 20/21 21/2 21/4 21/6 21/15 22/4
 22/9 22/15
unfair [1]  28/12 31/11 37/19
unfairly [2]  28/20 29/11
unheard [1]  39/18
unique [2]  13/13 30/7
UNITED [4]  1/1 1/16 2/23 10/10
United States [1]  10/10
unless [9]  15/1 18/16 19/4 28/1 33/21
 35/21 39/18 39/24 42/9
unrealistic [1]  9/1
unreasonable [3]  18/16 29/23 37/18
unreasonableness [1]  18/17
unreasonably [3]  20/10 29/11 29/22
until [7]  4/20 4/22 28/17 30/23 31/12
 40/12 46/20
up [15]  9/25 14/20 23/9 23/14 32/15
 36/19 37/8 44/15 44/22 45/2 45/4 46/7
 46/16 46/25 48/16
upon [3]  34/17 36/25 48/23
us [6]  8/18 18/2 36/5 37/12 42/12 45/6
use [7]  7/23 10/20 18/12 42/7 45/10

48/6 48/10
used [7]  4/12 4/17 12/3 19/3 30/12
 45/3 46/19
usually [5]  15/16 15/23 42/24 43/7
 44/10

**V**

vacation [2]  6/23 6/25
various [3]  7/3 8/15 8/18
verdict [1]  42/18
versus [1]  3/6
very [14]  6/1 22/23 30/25 36/16 37/15
 38/1 38/3 42/2 43/12 43/17 46/4 46/8
 49/12 49/17
via [1]  14/17
video [6]  46/17 46/18 46/20 47/9 47/11
 47/15
videos [1]  46/14
view [4]  24/5 24/12 32/3
violates [1]  5/1
Voss [1]  2/3

**W**

wait [3]  12/8 30/23 44/2
waiting [1]  39/25
waive [2]  35/10 35/19
waived [1]  10/21
want [53]
wanted [4]  8/22 11/6 24/16 42/25
wants [5]  17/5 19/2 19/20 22/14 26/2
Ward [1]  39/5
was [39]  4/8 8/16 8/22 11/5 11/7 16/11
 16/25 23/20 23/22 23/25 24/4 24/22
 24/24 25/1 26/1 26/23 26/23 33/25
 34/1 34/2 34/17 35/23 35/24 36/16
 36/18 36/18 36/20 36/21 36/23 36/25
 39/4 39/5 41/8 41/9 41/20 42/13 43/4
 48/4 49/6
wasn't [1]  5/4
wasted [2]  7/17 46/6
Watson [1]  2/8
wave [1]  9/13
way [46]  4/25 7/3 7/9 7/9 7/18 8/9
 10/24 14/6 14/21 15/10 16/18 17/13
 17/23 17/23 18/2 18/10 18/23 19/2
 19/3 20/23 21/10 22/15 22/23 23/2
 23/9 24/12 27/2 27/3 27/16 29/4 29/23
 31/6 31/10 31/14 33/4 35/9 35/17 38/1
 38/22 39/13 39/21 43/9 43/19 43/24
 44/19 46/24
we [142]
we're [8]  18/6 18/13 32/2 38/25 44/3
 45/5 45/9 47/2
we've [2]  13/5 31/25
weapon [1]  22/3
week [5]  7/25 13/15 14/7 14/8 27/14
weeks [3]  8/1 30/5 30/24
weigh [1]  34/7
weird [1]  12/23
welcome [5]  10/2 15/4 16/5 22/16
 47/24
well [17]  7/6 12/3 13/8 13/11 20/3
 28/17 28/21 28/23 28/25 29/15 29/24
 30/19 31/2 32/18 37/23 42/2 47/19
were [8]  7/18 19/15 24/21 26/21 26/25
 30/5 33/12 39/25
West [1]  2/9
what [66]
what's [6]  17/16 18/18 26/19 31/6
 34/17 34/20

whatever [3]  17/25 20/20 22/13 27/23
 28/5 28/19 39/20
when [17]  8/1 11/5 11/10 12/16 13/3
 17/3 19/17 19/17 23/9 28/4 33/23
 41/18 42/13 42/20 44/22 45/7 45/15
where [14]  4/10 8/18 11/21 20/19 21/5
 21/8 22/1 24/21 24/22 24/25 25/22
 32/1 32/11 35/15
wherever [1]  20/16
whether [12]  9/2 18/13 20/2 35/6 36/17
 38/4 38/13 40/21 42/6 46/9 48/8 48/20
which [6]  6/7 17/23 26/10 26/11 35/20
 43/24
while [5]  19/6 19/13 21/17 24/15 41/19
who [12]  8/21 10/17 19/13 20/6 20/7
 36/21 38/20 39/5 42/11 45/4 46/22
 47/6
whoever [2]  18/20 28/23
whom [1]  46/21
why [6]  21/22 21/22 22/5 22/16 22/21
 33/19
will [117]
willfulness [1]  34/6
willing [1]  23/7 30/15
win [1]  21/4
window [1]  45/9
winning [1]  22/19
withhold [1]  13/24
within [4]  18/1 34/23 35/22 45/5
without [6]  13/16 14/2 16/7 16/14 30/10
 50/6
witness [9]  44/13 44/23 44/24 44/25
 45/1 45/1 45/2 46/18 46/21
witnesses [4]  44/8 45/4 45/16 46/13
won't [2]  45/24 47/23
wonderful [2]  21/9 30/20
words [1]  19/1
work [12]  7/8 7/16 8/18 9/17 25/22
 29/12 35/17 43/18 45/11 46/16 46/25
 47/12
worked [3]  8/2 9/25 41/16
working [4]  6/2 7/24 8/15 41/23
works [4]  7/6 33/4 35/9 45/11
worms [1]  30/15
worries [1]  30/16
worry [5]  23/14 26/14 44/3 45/19 46/6
worst [1]  12/4
would [27]  8/19 9/6 10/23 11/8 11/20
 12/3 12/13 12/19 16/10 22/6 25/7
 25/22 25/22 26/22 27/5 32/11 32/16
 33/9 33/13 34/10 34/1 34/22 36/4
 38/11 38/17 39/19 39/21
wouldn't [1]  8/20
Wow [1]  45/10
write [1]  23/9
written [2]  23/10 31/21
wrong [2]  18/18 39/3
wrote [1]  23/19

**X**

X's [1]  40/14

**Y**

year [2]  24/25 28/18
years [9]  6/24 11/18 13/21 19/8 19/10
 19/11 41/16 41/22 47/5
Yes [2]  16/13 32/7
yet [1]  49/10
you [260]
you'll [2]  16/2 27/16

**Y**

you're [1]  22/15
you've [3]  6/13 7/20 28/18
your [51]
Your Honor [2]  17/5 49/11
yourselves [2]  35/1 40/7