**Jacob S. Gill,** OSB No. 033238
Email: jgill@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Telephone:   (503) 227-1600
Facsimile:    (503) 227-6840

**Jenny W. Chen** (to be admitted *pro hac vice*)
Email: Jenny.Chen@ChenIPLaw.com
CHEN IP LAW GROUP
7F, N0. 1, Alley 30, Lane 358
Rueiguang Road
Neihu District,  Taipei City  114
Taiwan (R.O.C.)
Telephone:   +(886)-2-7721-8855
Facsimile:    +(886)-2-7721-8822

**Andrew T. Oliver**  (admitted *pro hac vice*)
Email: aoliver@ATWiplaw.com
AMIN, TUROCY & WATSON, LLP
160 West Santa Clara Street, Suite 975
San Jose, California 95113
Telephone:   (650) 618-6481
Facsimile:    (216) 696-8731

**Attorneys for Defendant Planar Systems, Inc.**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MASS ENGINEERED DESIGN, INC., | Case No. 3:16-CV-01510-SI |
| Plaintiff, | |
| v. | **DEFENDANT PLANAR SYSTEMS, INC.'S MOTION FOR SANCTIONS REGARDING THE DEPOSITION OF JERRY MOSCOVITCH** |
| PLANAR SYSTEMS, INC., | |
| Defendant. | **[AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]** |

## Table of Contents

Certificate of Compliance With LR 7-1 ................................................................ 1

Motion ................................................................................................................... 1

Memorandum in Support ....................................................................................... 2

I.    INTRODUCTION ......................................................................................... 2

II.   BACKGROUND AND FACTS ..................................................................... 5

      A.    Mr. Moscovitch and Mass Improperly Asserted the
            Attorney-Client Privilege to Impede, Delay, and Frustrate
            Proper Discovery in the December 2016 Deposition ..................... 5

            1.    Mass and Mr. Moscovitch Improperly Blocked
                  Testimony About the POSITA .......................................... 5

            2.    Mass and Mr. Moscovitch Improperly Blocked
                  Testimony About the Meaning and Application of
                  Claim Terms ...................................................................... 6

            3.    Mass and Mr. Moscovitch Improperly Blocked
                  Testimony About Discussions With a Non-Lawyer ........... 8

            4.    Three Times During the Deposition, Mass and Mr.
                  Moscovitch Were Warned, They Were Given an
                  Explanation, and Yet They Persisted With Improper
                  Refusals to Testify ........................................................... 10

      B.    Mr. Moscovitch Waived the Attorney-Client Privilege
            When He Submitted a Sworn Declaration in this Case
            Regarding Claim Construction ..................................................... 11

      C.    Mr. Moscovitch Further Waived the Attorney-Client
            Privilege as to These Topics When He Testified in this
            Case and in At Least Two Other Depositions .............................. 13

            1.    March 6, 2015 Deposition in This Case ............................ 13

            2.    2008 Depositions in An Earlier Case ................................ 14

      D.    Plaintiff's Improper Attempts to Block Testimony Based
            on Overreaching Privilege Assertions Have Also Been a
            Pattern in this Case ...................................................................... 15

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

E.  Plaintiff Was Sanctioned in a Prior Case for Almost
Identical Obstructive Behavior ...................................................... 16

III.  Legal Standards.................................................................................... 17

A.  Waiver of Attorney-Client Privilege.............................................. 17

B.  No Attorney-Client Privilege For Non-Attorneys; Patent
Agent Privilege is Extremely Limited ........................................... 19

C.  Sanctions for Impeding or Frustrating Fair Examination ............ 20

D.  Sanctions Include Expenses and Attorneys' Fees......................... 20

IV.  Argument – The Court Should Enter an Order Defining the Scope
of the Privilege Waiver and Sanctions for Frustrating and
Impeding the Fair Examination of Mr. Moscovitch ........................... 21

A.  The Existence of a Waiver of the Attorney-Client Privilege
Is Undisputed in this Instance ....................................................... 21

B.  The Scope of the Waiver is Broad Regarding Claim
Construction and Application of Claim Terms.............................. 23

1.  Temporal Scope of Waiver .................................... 24

2.  Subject Matter of Waiver....................................... 24

C.  Mass Should Be Sanctioned for Impeding and Frustrating
the Fair Examination of Mr. Moscovitch...................................... 26

1.  Planar Has Met the Twofold Burden to Obtain
Sanctions .............................................................. 27

2.  Even Though a Showing of Bad Faith is Not
Required, Bad Faith is Present Here ............................. 27

D.  Mass Should Also Be Instructed to Produce and Allow
Testimony Regarding All Potentially Relevant
Communications With Counsel and All Potentially
Relevant Documents Withheld on the Basis of Privilege............. 29

E.  Appropriate Sanctions................................................................. 30

1.  Another Deposition and Document Production
Should Be Required .................................................. 30

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

2. Requiring Reimbursement of Attorneys' Fees and
Expenses is Appropriate ................................................................. 31

3. Scope of Requested Sanctions Order ................................................ 33

V. CONCLUSION .......................................................................................... 34

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 300
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## Table of Authorities

**CASES**

*Cave Consulting Group, Inc. v. OptumInsight, Inc.,*
2016 WL 7475820 (N.D. Cal. Dec. 29, 2016) ..................................................... 19, 25

*Dunn v. Wal-Mart Stores, Inc.,*
2013 WL 5940099 (D. Nev. Nov. 1, 2013) .................................................. 20, 27, 30

*Fay v. Cordesman,*
109 U.S. 408 (1883) ................................................................................................ 23

*Fort James Corp. v. Solo Cup Co.,*
412 F.3d 1340 (Fed. Cir. 2005) ...................................................................... 18, 22, 23

*GMAC Bank v. HTFC Corp.,*
248 F.R.D. 182 (E.D. Penn. 2008) ...................................................................... 20, 28

*Hylton v. Anytime Towing,*
2012 WL 3562398 (S.D. Cal. Aug. 17, 2012) ...................................................... 20, 27

*In re EchoStar Communications Corp.,*
448 F.3d 1294 (Fed. Cir. 2006) .......................................................................... 17, 18

*In re Queen's University at Kingston,*
820 F.3d 1287 (Fed. Cir. 2016) .................................................................... 19, 29, 30

*In re Rouffet*
149 F.3d 1350 (Fed. Cir. 1998) .............................................................................. 11

*Layne Christensen Co. v. Bro-Tech Corp.,*
2011 WL 6934112 (D. Kan. Dec. 30, 2011) .................................................. 20, 27, 28

*Markman v. Westview Instr., Inc.,*
52 F.3d 967 (Fed. Cir. 1995) .................................................................................. 23

*Mass Engineered Design, Inc. v. Ergotron, Inc.,*
2008 WL 8667511 (E.D. Tex. Jan. 8, 2008) .............................................................. 17

*ProFoot, Inc. v. Merck & Co.,*
663 Fed. Appx. 928 (Fed. Cir. 2016) ...................................................................... 23

*Reishaw PLC v. Marposs Societa' Per Azioni,*
158 F.3d 1243 (Fed. Cir. 1998) .............................................................................. 23

*VirnetX Inc. v. Cisco Sys., Inc.,*
2012 WL 7997962 (E.D. Tex. Aug. 8, 2012) ........................................................ 30, 32

**RULES**

Federal Rule of Civil Procedure 26 ............................................................................ 26

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Federal Rule of Civil Procedure 30 ................................................................. 1, 2, 20, 26, 27, 31, 34

Federal Rule of Civil Procedure 37 ................................................................. 20, 31, 32

Federal Rule of Evidence 502 ......................................................................... 18, 21, 22, 26

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 300
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## Certificate of Compliance With LR 7-1

Pursuant to LR 7-l(a)(l), counsel for Defendant Planar Systems, Inc. ("Planar" or "defendant") hereby certifies that Planar and Plaintiff Mass Engineered Design, Inc. ("Mass" or "plaintiff"), by and through their counsel of record, conferred in good faith through a telephonic conference regarding the subject matter of this motion, but the parties were unable to reach a resolution of this matter.

## Motion

Pursuant to Fed. R. Civ. P. 30(d), Planar moves the Court to impose sanctions on plaintiff and Mr. Jerry Moscovitch, the sole owner of plaintiff and the named inventor of the asserted patents, because plaintiff's counsel and Mr. Moscovitch impeded and frustrated fair examination of the December 2016 deposition of Mr. Moscovitch, in violation of Rule 30(d), by improperly asserting the attorney-client privilege despite the prior waiver and/or non-existence of the privilege, and because plaintiff and Mr. Moscovitch repeated this sanctionable behavior in this case even after having been sanctioned for the same type of obstructive behavior at a deposition of Mr. Moscovitch conducted in a prior lawsuit asserting one of the patents asserted by plaintiffs in this case.

Specifically, Planar requests that the Court impose at least the following sanctions:

(a)    An order requiring Mr. Moscovitch to present himself for another day of deposition on a date that is convenient to Planar, to be conducted in Portland, OR, or San Jose, CA;

(b)    An order requiring Mass, at least 14 days in advance of the deposition of Mr. Moscovitch, to produce all documents related to the identified privilege waiver and a complete privilege log for any other documents that Mass continues to withhold in this action without regard to the privilege log cutoff date (*i.e.*, Nov. 12, 2009) set forth in paragraph 28 of the protective order entered in this action;

(c)    An order requiring Mr. Moscovitch to travel to Portland, OR, or San Jose, CA, for the deposition at his own expense or at the expense of Mass, but at no expense to Planar;

Page 1 -  DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

(d)     An order requiring Mass to reimburse Planar for the expenses and attorneys' fees incurred in taking Mr. Moscovitch's December 2016 deposition in Toronto, Canada, including all incurred expenses and three days of attorneys' fees (*i.e.*, two travel days and one deposition day);

(e)     An order requiring Mass to reimburse Planar for all reasonable expenses and attorneys' fees incurred in bringing and arguing this motion, including any expenses incurred in travel by lead counsel to Portland for any hearing; and

(f)     An order requiring Mass to reimburse Planar for all reasonable expenses and attorney's fees incurred in taking the ordered deposition of Mr. Moscovitch.

## **Memorandum in Support**

## I.    **INTRODUCTION**

In this patent infringement case, defendant seeks sanctions pursuant to Rule 30(d). Specifically, defendant seeks an order holding that plaintiff's sole owner be required to submit to an additional day of deposition at plaintiff's expense, and that plaintiff be required to pay the costs and expenses to be incurred in taking this additional deposition.  Additionally, because this is repeat misconduct by the plaintiff that has been punished in past litigation without apparent effect, defendant seeks enhanced sanctions requiring plaintiff to reimburse defendant's attorneys' fees and costs incurred in connection with the previous deposition (where the misconduct took place), the preparation and argument of this motion, and the requested additional deposition. This motion is supported by the Declaration of Andrew T. Oliver ("Oliver Decl.") filed contemporaneously herewith.

These sanctions are sought because plaintiff's counsel and the deponent Mr. Jerry Moscovitch (who is also the sole owner of plaintiff and is the named inventor of the asserted patents) impeded and frustrated fair examination of his deposition, in violation of Rule 30(d), based on the improper assertion of the attorney-client privilege despite prior waiver of the privilege and, in some instances, non-existence of any privilege.  Plaintiff and Mr. Moscovitch

Page 2-   DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

repeated this sanctionable behavior in this case, after having been punished by another court for the same type of obstructive behavior at a deposition of Mr. Moscovitch, in a prior lawsuit asserting one of the same patents asserted in this case. Defendant should be permitted to complete its discovery and Plaintiff should be sanctioned again.

Specifically, during the deposition of Mr. Moscovitch: (i) counsel repeatedly and improperly instructed Mr. Moscovitch not to answer questions; (ii) Mr. Moscovitch repeatedly and improperly refused (of his own volition) to answer other questions; and (iii) Mr. Moscovitch improperly invoked the attorney-client (or patent-agent) privilege where no such privilege existed.

To put these refusals to testify in context, early in this case, when it benefitted plaintiff's assertions and claim construction arguments, Mr. Moscovitch submitted a 33-paragraph declaration, in which he provided sworn statements regarding construction and application of many claim terms. *See* Oliver Decl., Ex. 6. He also opined at length about the hypothetical person of ordinary skill in the art a.k.a. "POSITA" (a legal construct that plays a role in the patent laws) and what a POSITA might know. *Id.* Shortly after that, Mr. Moscovitch sat for a deposition (that was limited to claim construction only) in which he further testified regarding the POSITA and the construction of several claim terms. And when asked whether he prepared himself to testify about all of the claim terms that are discussed in the claim construction brief, he testified that "I'm prepared to testify about them." Oliver Decl., Ex. 8 (Moscovitch 2015 Tr.) at 16:20.

In contrast, in December 2016, when defendant questioned him about the same topics in preparation of its defenses, Mr. Moscovitch and Mass instead repeatedly asserted the attorney-client privilege. When asked about whether he had ever attempted to consider what a POSITA might know, he first feigned ignorance, stating, "I'm not clear 100 percent what ordinary skill in the art." Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 139:21-22. And then he improperly refused to even answer "yes" or "no", instead asserting the attorney-client privilege. *Id.* at

Page 3- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

142:2-17.  In the same deposition, Mr. Moscovitch refused to testify about many disputed claim terms on the basis of the attorney-client privilege, even though he had waived the privilege as to his understanding of the meaning and application of claim terms by (i) offering an extensive declaration on claim construction and (ii) testifying about the meaning of various claim terms in at least three prior depositions (one in this case and at least two in a prior case).  Further, Mr. Moscovitch refused to testify about conversations that he had with Mr. Allan Tameshtit on the basis of attorney-client privilege, even though Mr. Tameshtit has never been an attorney and was not a patent-agent at the time of the conversations.

Mr. Moscovitch engaged in this obstruction despite defendant's counsel giving three separate admonitions during the deposition that the privilege assertions were improper and that defendant would seek appropriate relief if the testimony was withheld.  Neither Mr. Moscovitch nor plaintiff reasonably considered the admonitions nor defendant's offer of an opportunity for Mr. Moscovitch to consult with his counsel about whether the privilege assertions should be maintained.  Rather, plaintiff's counsel compounded the problem by affirming Mr. Moscovitch's improper privilege assertions and accusing defense counsel of "bully[ing] the witness by threats."[1]

For all of the above reasons, defendant seeks sanctions in the form of requiring Mr. Moscovitch to sit for an additional day of deposition and reimbursement of the attorney's fees and expenses to be incurred by defendant for the additional day of deposition.  Additionally, because plaintiff has already been sanctioned once for similar obstruction (in a prior, related case), it is apparent that merely sanctioning the plaintiff for the fees and expenses for the additional day of deposition may be insufficient to deter future behavior of this type by plaintiff.  Accordingly, and because this is neither a first nor innocent offense by plaintiff, defendant seeks enhanced sanctions.

---

[1] Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 241:4-5.  The record confirms that no bullying or threats were made by plaintiff's counsel.  *Id.* at 240:1-242:1.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

## II.    BACKGROUND AND FACTS

### A.    Mr. Moscovitch and Mass Improperly Asserted the Attorney-Client Privilege to Impede, Delay, and Frustrate Proper Discovery in the December 2016 Deposition

Despite having broadly waived privilege as to at least (i) issues surrounding the POSITA and (ii) the meaning and application of claim terms in the '331, '978, and '103 patents,[2] in the December 2016 deposition, Mr. Moscovitch and Mass repeatedly and consistently asserted the attorney-client privilege and refused to permit Planar to collect testimony on these issues.

### 1.    Mass and Mr. Moscovitch Improperly Blocked Testimony About the POSITA

After submitting a sworn declaration and testifying about the POSITA in support of Mass's positions (detailed below, Section II B), Mr. Moscovitch first feigned ignorance of the term when deposed recently, then refused to answer based on an improper privilege assertion:

> **Q.** Did you consider yourself in December of 1998 to be a person that had an ordinary level of skill in the art of designing the type of inventions that are disclosed in Exhibit 122?
>
> **A.** What do you define ordinary skill in the art?
>
> **Q.** I'm not defining it. I'm asking – do you have an understanding of what that term means?
>
> **A.** I'm not clear 100 percent what ordinary skill in the art.
> …
>
> **Q.** Have you ever attempted to consider what an ordinary -- person of ordinary skill in the art might know with respect to patents or patent applications?
> …
>
> MR. EDMONDS: You can answer the yes or no question, Mr. Moscovitch. If you get into the characteristics of what ordinary skill in the art, then you can only answer that to the extent that that doesn't require you to divulge legal advice from your lawyers.
>
> THE DEPONENT: Right. Okay. So this is a item that we would have discussed as a group with our lawyers.
>
> **Q.** So are you declining to answer on the basis of attorney-client privilege?
>
> **A.** Correct.

---

[2] The '331, '978, and '103 patents are U.S. Patent Nos. 8,102,331, RE 36,978, and 8,462,103 B1, respectively.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 139:13-22; 141:1-142:4.  As explained below, privilege had already been waived by his own earlier declaration and prior deposition testimony. Yet, Mass's attorney made an improper instruction to limit the answer.  Mr. Moscovitch then improperly refused to give even the limited answer permitted by counsel.

### 2.    Mass and Mr. Moscovitch Improperly Blocked Testimony About the Meaning and Application of Claim Terms

Also, after submitting a sworn declaration and testifying about the meaning and applicability of claim terms in support of Mass's positions, when deposed recently, Mr. Moscovitch repeatedly followed improper instructions not to answer based on privilege and refused (improperly and without counsel's instruction) to answer other questions based on privilege.

For example, when asked about the claim term "a desired degree," Mass's counsel objected on the basis of privilege and instructed Mr. Moscovitch that he could give a limited answer.  Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 32:9-18.  After some discussion with Mass's counsel (*see id.* at 32:15-34:4), Mr. Moscovitch eventually refused to answer, stating: "So my understanding of these terms is I have a lot of discussion with my lawyers on these terms and so I can't really discuss these terms without divulging what we've talked about.  So I can't really answer that question." *Id.* at 34:5-9.  This instruction and refusal to answer was given despite Mr. Moscovitch having discussed the relevant term in three paragraphs of his earlier declaration and having testified about it at three earlier depositions when it would benefit Mass's positions, as set forth in more detail below.

As another example, when asked about whether a figure disclosed a "support column," Mr. Moscovitch was twice instructed to limit his answer based on privilege, and twice declined to answer based on a privilege objection.  Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 230:22-232:22; 233:19-234:10.  This instruction and refusal to answer was given despite Mr. Moscovitch having opined about a "column" and "support column" in his earlier declaration and having testified about these terms at two depositions, as set forth below.

Page 6-    DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

As another example, Mr. Moscovitch was instructed to limit his answer and/or refused to testify about various aspects of the "support arm" at least 11 times, based on privilege assertions. Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 95:2-19; 212:11-214:18; 215:9-216:5; 217:5-218:6, 220:7-16; 221:4-223:6; 223:7-224:3; 232:9-22; 236:12-21; 247:15-248:12; 256:9-257:3. These instructions and refusals were made despite Mr. Moscovitch having testified about the support arm in an earlier deposition, where he identified the arm and column, stating, "Well, the arm extends on either side of the support column. So this is the column (indicating). Here's the arm. Here's the arm." Oliver Decl., Ex. 8 (Moscovitch 2015 Tr.) at 24:12-14; *see also id.* at 20:6-21:16; 23:20-25:10; 91:22-92:13 (further testimony regarding the same). The objections were also made in the face of defendant's counsel having noted,

> [Y]ou answered my questions about Exhibit 108 with respect to the support column element in the claim in that Exhibit. And now you're saying that with respect to Exhibit 112, your answer regarding your understanding what a support column is is attorney-client privileged, is that correct? … Did something change with respect to your understanding of what's privileged and what's not privileged … with respect to that term "support column"?

Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 234:11-235:11.

Similarly, despite having testified in an earlier deposition about how a "bowed" arm was depicted (*see* Oliver Decl. Ex. 8 (Moscovitch 2015 Tr.) at 88:4-92:18), when Planar attempted to obtain Mr. Moscovitch's understanding of the claim term "bowed," Mr. Moscovitch was instructed not to and/or refused to answer at least 13 times, based on privilege assertions. Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 79:1-81:6; 84:1-85:3, 96:16-97:1; 104:17-106:4; 106:6-107:12; 211:12-212:5; 217:5-218:6; 238:12-21; 251:17-252:7; 256:9-257:3.

In addition to refusing to answer regarding the claim terms identified above, Mr. Moscovitch was instructed not to answer and/or refused to answer questions about the following claim terms based on privilege assertions:

> "connectors" (*Id.* at 233:1-10; 255:15-256:8));
> "consists of directly connected components" (*Id.* at 198:10-199:5);

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

"displays are connected to the support arm" (or "displays attached to the arm") (*Id.* at 214:11-18; 233:1-10; 255:15-256:8; 257:4-19); and

"attached to the base" (*Id.* at 243:3-13)

All of this testimony was withheld improperly based on Mr. Moscovitch's prior declaration and deposition testimony that broadly waived the privilege with respect to the meaning and application of claim terms.

### 3.    Mass and Mr. Moscovitch Improperly Blocked Testimony About Discussions With a Non-Lawyer

In addition to the above, during the deposition, Mr. Moscovitch improperly asserted the attorney-client privilege and refused to answer patent-prosecution-related questions that he had with a non-lawyer and non-patent agent.

Specifically, in 2005, Mass "hired [its] own in-house person to deal with [its] patents." Oliver Decl. Ex. 1 (Moscovitch 2016 Tr.) at 58:13-20; *see also id.* at 66:19-67:15. That person was Alan Tameshtit, Mass's "director of intellectual property." *Id.* at 65:11-67:15. At the time that Mr. Tameshtit began handling Mass's patent matters, Mass's former patent attorneys withdrew from representing Mass before the U.S. Patent and Trademark Office. *See, e.g., id.* at 56:11-58:20.

To the best of Planar's knowledge, Mr. Tameshtit was not an attorney at least as of December 17, 2014, when he sought *pro hac vice* admission in a patent office proceeding. *See generally* Oliver Decl., Ex. 11. This was known by the attorney who represented Mass at Mr. Moscovitch's deposition in 2016, because that attorney (i) served the referenced *pro hac vice* admission (*see id.* at p. 6), and (ii) filed a motion stating that Mr. Tameshtit "does not have membership … of the Bar of at least one State or the District of Columbia," and describing Mr. Tameshtit as a "patent agent." Oliver Decl., Ex. 12 at pp. 3-4.

Additionally, Mr. Tameshtit was not registered as a patent agent with the U.S. Patent and Trademark Office until 2010, so the patent agent privilege (*see* legal standards below) did not apply to him before 2010, either. *See* Oliver Decl., Ex. 13.[3]

---

[3] During the parties' meet-and-confer related to this motion, Mass's counsel stated that Mr.

Page 8-    DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

Thus, from the time Mr. Tameshtit was hired by Mass in 2005 through 2010, Mr. Tameshtit was neither a lawyer nor a patent agent; Mr. Moscovitch's communications with Mr. Tameshtit would thus not be protected by the attorney-client or patent agent privilege. Despite the non-existence of any privilege, Mr. Moscovitch refused to testify when his answers would have implicated conversations with Mr. Tameshtit during this time frame.

For example, when asked about who would have made the decision, in 2007, on whether to cite Mr. Moscovitch's own pending patent applications to the patent office, Mr. Moscovitch improperly refused to answer based on the attorney-client privilege, claiming the privilege exists because he had discussed the issue with Mr. Tameshtit. *See* Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 120:1-124:15; *see id.* at 124:6-15 for refusal to testify.

In another instance, in response to questioning related to an act occurring in December 2005 (after Mass's former patent prosecution attorneys had withdrawn and Mr. Tameshtit had begun handling Mass's patent matters), Mr. Moscovitch improperly refused to testify about his understanding as to what was properly disclosed to the patent office, because it was "based on discussions I would have with my attorneys on this type of subject." Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 114:5-118:2; *see id.* at 117:16-118:2 for privilege objection, instruction, and refusal to testify. Here, it appears that Mr. Moscovitch was actually refusing to testify about conversations with non-attorney Mr. Tameshtit, even though he used the term "attorneys."[4] This is because, as of December 2005: (i) Mass's previous patent attorneys had already withdrawn and no new patent attorneys were hired to the best of Planar's knowledge; (ii) Mr. Tameshtit was not an attorney or patent agent; (iii) Mr. Moscovitch testified that he

---

Tameshtit lost his registration to practice before the U.S. Patent and Trademark Office in 2002, and that Mr. Tameshtit registered for patent practice in Canada in 2009; this has not been verified by Planar.

[4] *See also* Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 120:18-122:14 (wherein Mr. Moscovitch states that his lawyers would take care of figuring out what to cite to the patent office, in 2007, after the patent attorneys had withdrawn and while Mr. Tameshtit was responsible for the patent prosecution, suggesting that Mr. Moscovitch was referring to Mr. Tameshtit as "my lawyers").

Page 9-   DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

"always" would have discussed decisions to disclose with Mr. Tameshtit (*id.* at 75:21); and (iv)
Mr. Tameshtit has had responsibility for prosecution of all of Mr. Moscovitch's patent
applications from 2005 through present (*id.* at 67:6-15).

Because Mr. Tameshtit was neither an attorney nor patent agent at the time of the
relevant communications, no privilege protects Mr. Moscovitch's referenced communications.
The refusal to testify was not proper.

### 4.    Three Times During the Deposition, Mass and Mr. Moscovitch Were Warned, They Were Given an Explanation, and Yet They Persisted With Improper Refusals to Testify

During the deposition, defendant's counsel attempted to stop the improper assertions of
the attorney-client privilege, stating,

> I'm going to make a brief statement that's not a question. I want to
> make sure it's on the record.
>
> Mr. Moscovitch, I think that your assertion of the attorney-client
> privilege with respect to my questions regarding the application of
> the Figures in Exhibit 122 to the claims in exhibits 112 and 108 to
> the extent you've done so is an improper assertion of the attorney-
> client privilege.
>
> I believe that you should answer the questions as posed and there's
> a good chance that we will go to the court to seek relief, including
> a further deposition of you to explore these questions, potentially
> in the presence of the judge or the magistrate if allowed to get
> answers to these questions and I would encourage you, to the
> extent that you intend to maintain your privilege assertions and
> your refusals to answer based on privilege, to consult with counsel
> regarding whether you want to maintain those assertions.
>
> Would you like an opportunity to do so now?

Oliver Decl. Ex. 1 (Moscovitch 2016 Tr.) at 240:1-22.  Plaintiff's counsel responded by asserting
that defendant's counsel was attempting to "bully this witness by threats" and "threatening the
witness with hauling him into court or whatever…"  *Id.* at 241:4-10.  To this, defendant's
counsel clarified that it was not a threat, stating,

> Just to clarify, that was not a threat. That was a statement that we
> will likely seek relief if he continues to maintain the assertion of
> attorney-client privilege. And I believe that, if necessary, the
> videotape will bear out that my statement was conveyed in an

Page 10- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO
BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

entirely non-threatening manner and merely stated my position on
the issue.

*Id.* at 241:16-242:1.

This warning was the third admonition during the deposition that the attorney-client

privilege was being asserted improperly. *See, e.g.,* Oliver Decl. Ex. 1 (Moscovitch 2016 Tr.) at

222:10-223:6 ("I don't think that's a good faith assertion of the attorney-client privilege....") and

234:11-235:22 ("[Y]ou answered my questions… about the support column… And now you're

saying that … your answer regarding your understanding what a support column is is attorney-

client privileged… ? … Did something change with respect to your understanding of what's

privileged and what's not…?").

Mr. Moscovitch and Mass[5] disregarded these attempts to stop the improper assertions of

the attorney-client privilege and continued to refuse to provide answers to Planar's questions.

These improper assertions and refusals were made, despite Mass's and Mr. Moscovitch's broad

waivers that are set forth below.

### B.    Mr. Moscovitch Waived the Attorney-Client Privilege When He Submitted a Sworn Declaration in this Case Regarding Claim Construction

Mr. Moscovitch thoroughly waived the attorney-client privilege regarding the relevant

topics when he submitted a 33-paragraph declaration in this case, in support of Mass's claim

construction briefing.  Oliver Decl., Ex. 6.  In this declaration, Mr. Moscovitch gave sworn

testimony regarding claim construction.  Mr. Moscovitch provided at least three paragraphs

defining the "person of ordinary skill in the art ('POSITA')"[6] and applied the POSITA's

knowledge in at least twenty additional paragraphs.  *Id.* at ¶¶ 5, 7, 8 (defining POSITA) and ¶¶

14-33 (applying POSITA's knowledge).  This included testimony that, "I meet that definition of

a POSITA and, as a professional product designer and inventor of the Patents-in-Suit, I also meet

---

[5] Mass's counsel of record, sole owner, and corporate representative were all present and
complicit.

[6] The person of ordinary skill in the art (or "POSITA") is a hypothetical, legal construct used
in various analyses in patent law, and is "akin to the 'reasonable person' used as a reference in
negligence determinations." *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998).

Page 11- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO
BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

any definition of a POSITA that could possibly be applicable to the Patents-in-Suit." *Id.* at ¶5. This definition of a POSITA and the understanding of a POSITA is of significance in this case; for example, Mass's proposed expert regarding infringement stated that his entire report was written from the POSITA's perspective.[7]

The waiver is also relevant to various of defendant's counterclaims and defenses, because Mr. Moscovitch also gave sworn testimony defining the scope of the asserted patents as well as a third patent (the '103 patent) that has the same relevant disclosure as prior art relied upon in defendant's counterclaims and defenses.[8]  *See* Oliver Decl., Ex. 6 at ¶¶ 10-12.

Finally, Mr. Moscovitch gave sworn testimony as to the meaning of multiple terms of the asserted claims of the '978, '331, and '103 patents, including:

> "positioning means" (Oliver Decl., Ex. 6 at ¶¶13, 23);
>
> "positioning means for positioning displays…" (*Id.* at ¶¶16, 17, 23);
>
> "the positioning means allows positioning of the rear portion at a plurality of distances from the support means to minimize a spacing" (*Id.* at ¶23, 24);
>
> "arm assembly," "support means," and "the arm assembly consists of directly connected components, said arm assembly projecting horizontally from the support means" (*Id.* at ¶¶14, 15);
>
> "means for adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree" (*Id.* at ¶¶18, 19, 20);
>
> "mounting means" and "the mounting means permits the one display to assume a first angular position and a second angular position" (*Id.* at ¶¶21, 22);
>
> "the ends are oriented vertically" (*Id.* at ¶25);

---

[7] He stated in his expert report alleging infringement: "The entirety of this report is written from the perspective of a person of ordinary skill in the art." Oliver Decl., Ex. 7 (Mass expert report) at p. 18.

[8] In ECF No. 58 at p. 6 of 35, Mass confirmed that the '103 patent has a disclosure identical to the '742 application. The '742 application is one of the focal points of defendant's inequitable conduct defense. *See, e.g.,* ECF No. 57 at p. 25 of 40 (at ¶ 52). A related or identical publication is also relied upon in defendant's invalidity defense. (*See, e.g.,* ECF No. 133-3 in EDTX case no. 6:14-411-RWS-KNM (relying upon U.S. Pat. App. Pub. No. 2013/0334376 A1 (and related '103 patent)).

Page 12- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

"folded together to form a compact assembly" (*Id.* at ¶26, 27);

"mounting portion" (*Id.* at ¶¶28, 29);

"substantially horizontal in use" (*Id.* at ¶30); and

"rest[ing]" and "resting on a counter" (*Id.* at ¶¶31, 32, 33).

However, in December 2016, when Planar sought testimony regarding the meanings and applicability of claim terms in the same three patents in support of Planar's counterclaims and defenses, Mr. Moscovitch refused to answer based on an improper assertion of the attorney-client privilege.

### C.    Mr. Moscovitch Further Waived the Attorney-Client Privilege as to These Topics When He Testified in this Case and in At Least Two Other Depositions

Additionally, Mr. Moscovitch already testified in at least three depositions (earlier in this case and in another case) regarding the same broad topics. This testimony further served to waive the attorney-client privilege regarding the POSITA and the meaning and applicability of claim terms.

### 1.    March 6, 2015 Deposition in This Case

When deposed in March 2015, Mr. Moscovitch testified that he met the definition of POSITA, and that he had testimony on how a POSITA would interpret the claims of the patents-in-suit (which included the '331, '978, and '103 patents). Oliver Decl., Ex. 8 (Moscovitch 2015 Tr.) at 14:5-24. Mr. Moscovitch also testified at length about the understanding, training, and skills a POSITA would have. *Id.* at 73:2-78:9.

In addition to testifying about the POSITA, Mr. Moscovitch testified about the meaning of multiple claim terms, including:

"directly connected components" (Oliver Decl., Ex. 8 (Moscovitch 2015 Tr.) at 58:7-68:25, 94:11-95:21);

"column" (*Id.* at 64:6-65:4);

"adjusting the angular orientation of each of the displays relative to the arm assembly to thereby permit said displays to be angled toward each other to a desired degree." (*Id.* at 80:19-82:25, 85:21-87:22, 96:3-9);

Page 13- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

"the mounting means permits the one display to assume a first angular position and a second angular position" (*Id.* at 30:6-34:12);

"the positioning means allows positioning of the rear portion at a plurality of distances from the support means to minimize a spacing" (*Id.* at 52:25-53:17);

"support arm," "support arm structure," and "single piece support arm" (*Id.* at 20:6-21:16, 23:20-25:10, 91:15-92:13);

"connector means" (*Id.* at 37:1-25, 46:16-47:18);

"connector" and "connects one of the displays to the arm" (*Id.* at 37:1-25, 41:2-45:19, 49:6-23); and

"support arm that is bowed" (*Id.* at 89:15-92:16).

Some of this testimony was even given in response to questions by Mass's counsel, Mr. Edmonds (*Id.* at 93:22-96:9), the same attorney who, in December 2016, instructed Mr. Moscovitch not to answer defendant's questions about the same claim terms.

In addition to waiving any privilege by providing this testimony about the meaning of multiple claim terms and the POSITA, Mass's counsel and Mr. Moscovitch confirmed that he expected to testify broadly in this case regarding the meaning and applicability of claim terms. Specifically, in response to a question about whether Mr. Moscovitch would testify at any Markman (*i.e.*, claim construction) hearing that the Court may have, Mass's counsel responded "We reserve the right to call him." Oliver Decl., Ex. 8 (Moscovitch 2015 Tr.) at 15:13-22. And Mr. Moscovitch, when asked whether he was prepared to testify about even claim terms that are not mentioned in his declaration, stated, "I'm prepared to testify about them." *Id.* at p. 16:13-20. Neither Mass's counsel nor Mr. Moscovitch suggested that any such testimony in support of Mass's affirmative case would be limited by privilege assertions in the same way that Mass has attempted to block all related testimony that might be used to support Planar's counterclaims and/or defenses.

### 2.    2008 Depositions in An Earlier Case

Mr. Moscovitch's waiver of the attorney-client privilege is consistent with his handling of this issue in prior litigation. By way of example, he provided testimony about the meaning

Page 14- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

and applicability of claim terms (with no privilege objections) in at least two other depositions in an earlier case. Specifically, in two depositions taken in 2008 in another case, Mr. Moscovitch testified, for example, about the following claim terms:

> "a desired degree" (Oliver Decl., Ex. 9 (Moscovitch May 2008 Tr.) at 127:1-128:15; Oliver Decl., Ex. 10 (Moscovitch July 2008 Tr.) at 123:3-24; 241:1-14);
>
> "arm" (Oliver Decl., Ex. 10 (Moscovitch May 2008 Tr.) at 123:3-24);
>
> "mounted at the back of the displays" (*Id.*);
>
> "column" (*Id.*);
>
> "support structure" (*Id.*);
>
> "base" (*Id.*);

Though that testimony was not extensive, no privilege objections were made to the referenced questions or testimony.

### D.    Plaintiff's Improper Attempts to Block Testimony Based on Overreaching Privilege Assertions Have Also Been a Pattern in this Case

Though the number of depositions in this case has been small, Mass also inappropriately asserted the attorney-client privilege and misstated the scope of an attorney-client privilege waiver in a third party deposition in this case. Specifically, during the deposition of third party patent attorney Mirek Waraksa, Mass's counsel asserted:

> I'm going to stop [you] here. Mr. Waraksa, I'm going to object to any testimony about your conversations with Mr. Moscovitch. Those discussions or conversations are privileged, except to the extent that they go to the scope of what Mr. Moscovitch was seeking, specifically in the reissue application. So if you can answer that question without divulging privileged information, please do so. If not, I'm going to ask you not to answer that question.

Oliver Decl., Ex. 4 (Waraksa Tr.) at 32:13-33:1.

The witness was prepared to take this improper instruction, stating, "… I can't answer your question if the privilege is being asserted." Oliver Decl., Ex. 4 (Waraksa Tr.) at 33:6-7. However, a Court in a prior litigation had already ordered that the prior privilege waiver was broader. *See id.* at 33:9-35:16. Specifically, the prior court order showed that the privilege

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

waiver was not limited to the scope of what Mr. Moscovitch was seeking, specifically, in the reissue application, but was much broader, extending to "issues related to claim scope believed available."[9] *Id.* at 35:6-9.

Mass's overbroad assertion of privilege – even in view of an order defining the scope of the prior privilege waiver – demonstrates that Mass's over-assertion of the privilege in Mr. Moscovitch's deposition was not inadvertent but rather a pattern.

### E. Plaintiff Was Sanctioned in a Prior Case for Almost Identical Obstructive Behavior

Mass's pattern of improper obstruction of depositions extends back to prior litigation in which Mass asserted the '978 patent, one of the patents asserted in this case.[10] *See, e.g.,* Complaint, Case No. 2:06-cv-272-LED, U.S. Dist. Ct., E.D. Tex.

In that earlier litigation, defendant Dell attempted to depose Mass regarding "claim construction and prosecution history issues" (Oliver Decl., Ex. 2 (Dell motion) at p. 1), two of the primary topics on which Planar sought testimony and was blocked in the December 2016 deposition, as explained above.

In that earlier litigation, Mass provided Mr. Moscovitch and Mr. Tameshtit as its corporate deposition witnesses (*id.* at p. 2), and in the December 2016 deposition in this case, Mr. Moscovitch was the deponent and Mr. Tameshtit appeared as Mass's representative (Oliver Decl., Ex. 1 (Moscovitch 2016 Tr.) at 6:4 and 6:22).

---

[9] The improperly and incorrectly limited scope of waiver asserted by Mass would have blocked essentially all relevant testimony about what occurred during the original patent prosecution and allowed only testimony regarding the reissue process, whereas the court-ordered scope of waiver allowed a significant amount of testimony about the original prosecution. *See, e.g.,* Oliver Decl., Ex. 5 at pp. 3-4.

It is worth noting that, though the cited order does not refer to improper assertions of privilege regarding deposition testimony, the cited order provides yet another example of Mass overasserting the attorney-client privilege to block discovery after a waiver had occurred. *See, generally, id.*

[10] The '331 patent that is asserted in this case hadn't issued at the time of that lawsuit and did not issue until 2012.

Page 16- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

At the deposition in the earlier litigation, "Mass repeatedly objected and instructed the deponent not to answer various questions." Oliver Decl., Ex. 3 (sanctions order) at p. 2. Some of these instructions were because the questions "called for 'legal conclusions,' and 'ask[ed] for a definition of claim construction.'" *Id.* As explained above, in the December 2016 deposition, Mass repeatedly objected and instructed the deponent not to answer questions, and the deponent also took it upon himself to refuse to answer various questions, including many questions related to claim construction.

Following the deposition in the earlier litigation, Dell moved for sanctions. Oliver Decl., Ex. 2 (Dell motion). The Court granted the motion and entered sanctions:

> The Court ORDERS Mass to pay all attorneys' fees and expenses incurred from the October 19, 2007 deposition of Alan Tameshtit and the fees and expenses incurred by Dell for this motion practice. Further, the Court ORDERS Mass within two weeks of this Order to produce a 30(b)(6) designee knowledgeable of the noticed topics for deposition....

Oliver Decl., Ex. 3 (sanctions order) at p. 3; *see also Mass Engineered Design, Inc. v. Ergotron, Inc.*, 2008 WL 8667511 at *2 (E.D. Tex. Jan. 8, 2008) (same). However, based on Mass's actions in this case, it is apparent that these prior sanctions did not have a meaningful impact on Mass's continuous obstructive behavior.

Planar now seeks sanctions for Mass's conduct in the December 2016 deposition of Mr. Moscovitch conducted in this case. Planar primarily seeks another deposition of Mr. Moscovitch that is free of improper instructions and refusals to answer. However, Planar also notes that monetary or other sanctions are also in order due to Mass's repeat misconduct. Accordingly, a request for attorneys' fees and reimbursement is justified.

## III.    Legal Standards

### A.    Waiver of Attorney-Client Privilege

Federal common law governs privilege issues with respect to federal claims. Fed. R. Evid. 501. "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive

Page 17- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

patent law." *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006). The

Federal Rules provide that a waiver of attorney-client privilege extends to undisclosed

communications in certain circumstances:

> The following provisions apply, in the circumstances set out, to
> disclosure of a communication or information covered by the
> attorney-client privilege or work-product protection.
>
> (a) Disclosure Made in a Federal Proceeding or to a Federal Office
> or Agency; Scope of a Waiver. When the disclosure is made in a
> federal proceeding or to a federal office or agency and waives the
> attorney-client privilege or work-product protection, the waiver
> extends to an undisclosed communication or information in a
> federal or state proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information
> concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502.

"[W]hen a party defends its actions by disclosing an attorney-client communication, it

waives the attorney-client privilege as to all such communications regarding the same subject

matter." *EchoStar*, 448 F.3d at 1301; *see also Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340,

1349 (Fed. Cir. 2005) ("The widely applied standard for determining the scope of a waiver of

attorney-client privilege is that the waiver applies to all other communications relating to the

same subject matter."). "The waiver extends beyond the document initially produced out of

concern for fairness, so that a party is prevented from disclosing communications that support its

position while simultaneously concealing communications that do not." *Fort James*, 412 F.3d at

1349 (citing *Weil v. Investment/Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981)).

"There is no bright line test for determining what constitutes the subject matter of a

waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice

sought and  the prejudice to the parties of permitting or prohibiting further disclosures." *Id.* at

1349-1350. "[A]llowing a party to disclose and rely on privileged communications about a

given issue so long as they are favorable to its interests and yet fall back on privilege as soon as

Page 18- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO
BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

the party or its counsel becomes aware of (and communicates) a less favorable aspect of the same issue would be a clear case of improperly using privilege as both a shield and a sword." *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, 2016 WL 7475820, at \*8 (N.D. Cal. Dec. 29, 2016) (citing *EchoStar*, 448 F.3d at 1301).

      **B.**     **No Attorney-Client Privilege For Non-Attorneys; Patent Agent Privilege is Extremely Limited**

      The Federal Circuit recently confirmed the existence of a limited patent agent privilege. *See generally In re Queen's University at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016). In that case, the Court held that "we apply our own law" (rather than regional circuit law) to "the applicability of a privilege for a patentee's communications with a non-attorney patent agent regarding prosecution of the patents-in-suit." *Id.* at 1291. In doing so, the Federal Circuit reaffirmed that "courts have consistently refused to recognize as privileged communications with other non-attorney client advocates." *Id.* at 1295.

      In finding that a patent-agent "privilege should be acknowledged," (*id.* at 1294) the Federal Circuit noted the tight limits of such privilege. The Federal Circuit confirmed that the patent-agent privilege is limited to individuals who have passed the patent office examination and are subject to its ethical obligations. *Id.* at 1300-1301. And the scope of the privilege is limited to communications regarding practice before the patent office and "[c]ommunications between non-attorney patent agents and their clients that are in furtherance of the performance of these tasks, or 'which are reasonably necessary and incident to the preparation and prosecution of patent applications or other proceeding[s] before the Office ...." *Id.* at 1301.

      However, "Communications that are not reasonably necessary and incident to the prosecution of patents before the Patent Office fall outside the scope of the patent-agent privilege." *Id.* at 1301. The Federal Circuit specifically noted that certain patent agent opinions related to litigation do not fall within the "reasonably necessary and incident" ambit. *Id.* at 1301-1302.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

### C.      Sanctions for Impeding or Frustrating Fair Examination

Rule 30(d) provides that "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).

"Under Rule 30(d)(2), the moving party's burden is twofold. First, the movant must identify language or behavior that impeded, delayed or frustrated the fair examination of the deponent … Second, the movant must identify 'an appropriate sanction.' The Ninth Circuit provides District Courts with wide discretion to fashion 'an appropriate sanction.'" *Dunn v. Wal-Mart Stores, Inc.*, 2013 WL 5940099 at *5 (D. Nev. Nov. 1, 2013) (citations omitted).

Bad faith is not a requirement for the imposition of sanctions under Rule 30(d)(2). *Hylton v. Anytime Towing*, 2012 WL 3562398 at *2 (S.D. Cal. Aug. 17, 2012); *Layne Christensen Co. v. Bro-Tech Corp.*, 2011 WL 6934112 at *2 (D. Kan. Dec. 30, 2011); *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 196 (E.D. Penn. 2008).

### D.      Sanctions Include Expenses and Attorneys' Fees

Rule 30(d) provides, "Rule 37(a)(5) applies to the award of expenses." Fed. R. Civ. P. 30(d)(3)(C). Rule 37(a)(5) provides, absent certain circumstances:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5). Bad faith is not a requirement for the imposition of sanctions under Rule 37(a)(5). *See, e.g., Hylton*, 2012 WL 3562398 at *3.

Page 20- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

IV.   **Argument – The Court Should Enter an Order Defining the Scope of the Privilege Waiver and Sanctions for Frustrating and Impeding the Fair Examination of Mr. Moscovitch**

Planar submits that it is plain that a privilege waiver occurred in this matter, followed by improper assertions of the attorney-client privilege that frustrated and impeded fair examination of Mr. Moscovitch.  Planar also submits that, though a finding of bad faith is not required for sanctions, Mass acted in bad faith in this matter.  Planar requests that the Court enter an order setting forth the scope of the waiver and sanctioning Mass as set forth in additional detail below.

A.   **The Existence of a Waiver of the Attorney-Client Privilege Is Undisputed in this Instance**

Each of the elements required to show a waiver of the attorney-client privilege under Fed. R. Evid. 502 is present in this matter.  To find a waiver in a federal proceeding, that rule requires (i) that the waiver be intentional; (ii) that the disclosed and undisclosed communications or information concern the same subject matter; and (iii) that they ought in fairness to be considered together.

The first element is satisfied because Mass and Mr. Moscovitch intentionally waived the privilege when Mr. Moscovitch signed, and Mass filed, a declaration setting forth Mr. Moscovitch's sworn testimony regarding the POSITA and the meaning, scope, and applicability of numerous terms of the asserted claims.  *See, supra*, Section II B.  The intentional nature of the waiver is confirmed by both the filing and Mr. Moscovitch's related testimony in a deposition in this case and at least two depositions in another case.  *See, supra*, Section II C.

The second element is satisfied because the disclosed and undisclosed communications or information concern the same subject matter.  Mass and Mr. Moscovitch refused to disclose communications or information regarding the POSITA when questioned by Planar (*supra, Section II A 1*), despite having testified and submitted a declaration regarding the POSITA in this case (*supra*, Sections III B and III C 1).  Mass and Mr. Moscovitch also refused to disclose communications or information regarding numerous terms of the asserted claims (*supra, Section*

Page 21- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

II A 2), despite having testified and submitted a declaration regarding numerous terms of the asserted claims (some overlapping and some differing) (*supra*, Sections III B and III C 1-2).

The third element is satisfied because both disclosed and undisclosed communications or information should, in fairness, be considered together. Mass has already received much of the benefit of the disclosed communications and information, by being able to rely upon them during claim construction in this matter[11] and in its proposed expert's report regarding alleged infringement.[12] Mass will receive additional benefits if any of its witnesses are permitted to testify regarding these topics at trial. Yet, when the related, undisclosed communications or information may benefit Planar, such as in its noninfringement, invalidity, inequitable conduct, willful infringement, and/or damages defenses and counterclaims, Mass seeks to deny Planar the benefit of relying on them. As the Federal Circuit has noted, in such situations, "The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Fort James*, 412 F.3d at 1349 (citing *Weil*, 647 F.2d at 24). In this case, fairness dictates that Planar have access to the undisclosed communications and information.

A waiver of the attorney-client privilege has occurred pursuant to the definition and test provided by Fed. R. Evid. 502. Accordingly, Planar requests an order from the Court establishing that a waiver occurred, as well as the scope of the waiver.

---

[11] Oliver Decl., Ex. 6, is a declaration that Mass submitted as part of its claim construction briefing in this case. With this declaration in hand, the Court ruled in Mass's favor on almost every claim term that was construed. *See generally* ECF No. 31 in Case No. 6:14-cv-414-RWS-KNM, U.S. Dist. Ct., E.D. Tex. (claim construction order)).

[12] Mass's proposed expert stated, "I have spoken with Jerry Moscovitch concerning the education and experience levels of persons working within this field … and believe that a person of ordinary skill in this art is … In considering the language of the Asserted Claims, I have read those claims as I feel they would be understood by a person having this or a reasonably comparable level of skill in the art. The entirety of this report is written from the perspective of a person of ordinary skill in the art." Oliver Decl., Ex. 7 (Mass expert report) at p. 18.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

### B.    The Scope of the Waiver is Broad Regarding Claim Construction and Application of Claim Terms

Mass chose, of its own volition, to submit a declaration by Mr. Moscovitch (sole owner of Mass and named inventor of the asserted patents) in support of Mass's claim construction briefing in this case, thereby broadly waiving the privilege with respect to the meaning and application of claim terms.  As the Federal Circuit has noted, "The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Fort James*, 412 F.3d at 1349 (citing *Weil*, 647 F.2d at 24).  Here, it would be highly prejudicial to Planar to limit the scope of the waiver to only those claim terms discussed in the declaration or explicitly in deposition testimony.

Rather, the scope of each asserted claim is defined by the interaction and interplay of all of the terms in that claim and patent that, together, form a single definition of an alleged invention. *Fay v. Cordesman*, 109 U.S. 408, 421 (1883) ("I[n] a claim to a combination, [] restricted to specified elements, all must be regarded as material."); *Markman v. Westview Instr., Inc.*, 52 F.3d 967, 988 (Fed. Cir. 1995) ("Both this court and the Supreme Court have made clear that all elements of a patent claim are material, with no single part of a claim being more important or 'essential' than another.").  The scope and applicability of each term necessarily impacts the scope and applicability of each of the other terms. *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.").  No term can be extracted as a stand-alone term. *ProFoot, Inc. v. Merck & Co.*, 663 Fed. Appx. 928, 932 (Fed. Cir. 2016) ("Claim terms 'do not stand alone,' but 'must be read in view of the specification, of which they are a part.'") (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005)).  For this reason (and as further detailed below), it is appropriate to enter an order broadly defining the temporal and subject matter scope of Mass's waiver of the attorney-client privilege, as follows.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

1.    **Temporal Scope of Waiver**

Temporally, the waiver should extend backwards and forward.  It should extend

backwards, to all related communications prior to Mr. Moscovitch's deposition on March 6,

2015, because any and all such communications may have affected Mr. Moscovitch's testimony

and understanding, both in his declaration of March 2, 2015 and his related deposition testimony.

Additionally, the temporal scope of the waiver should extend backwards to all related

communications from March 2015 through present, (i) because Mass has indicated that Mr.

Moscovitch is expected to be its only fact witness at trial (Oliver Decl., Ex. 14 at p. 24) and (ii)

because Mass's only expert witness regarding alleged infringement relied upon related

information provided by Mr. Moscovitch to form his opinions:

> I have spoken with Jerry Moscovitch concerning the education and
> experience levels of persons working within this field ... and
> believe that a person of ordinary skill in this art is ... In
> considering the language of the Asserted Claims, I have read those
> claims as I feel they would be understood by a person having this
> or a reasonably comparable level of skill in the art. The entirety of
> this report is written from the perspective of a person of ordinary
> skill in the art.

Oliver Decl., Ex. 7 (Mass expert report) at p. 18.  Thus, all of Mass's expected trial testimony

with respect to alleged infringement has a direct relation to the relevant waiver.  Finally, the

temporal scope should extend forward.  Because all of Mass's infringement witnesses at trial will

present testimony based upon the subject matter of the relevant waiver, it is appropriate to extend

the temporal scope of the waiver through present day and forward until the completion of Mass's

presentation of evidence at trial, at least because it is not reasonable to expect that Mass would

develop new infringement positions at this point or that Mr. Moscovitch would be able to

separate communications after present day from earlier communications in his mind when

testifying at trial.

2.    **Subject Matter of Waiver**

With respect to the subject matter of the waiver, it should extend beyond the specific

testimony given by Mr. Moscovitch to all communications related to the POSITA and all

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

relevant claim terms.  Mass has attempted to offer testimony favorable to Mass's positions and

arguments while blocking all testimony that may be less favorable to Mass.  However,

> [A]llowing a party to disclose and rely on privileged
> communications about a given issue so long as they are favorable
> to its interests and yet fall back on privilege as soon as the party or
> its counsel becomes aware of (and communicates) a less favorable
> aspect of the same issue would be a clear case of improperly using
> privilege as both a shield and a sword.

*Cave Consulting Grp.*, 2016 WL 7475820 at *8 (citing *EchoStar*, 448 F.3d at 1301).  Thus, the

waiver should extend to all related subject matter, whether or not that subject matter is favorable

to Mass.

First, the subject matter waiver should extend to all issues regarding the "person of

ordinary skill in the art" (or POSITA).  Through Mr. Moscovitch's declaration (Oliver Decl., Ex.

6) and his earlier deposition testimony (Oliver Decl., Ex. 8 at, *e.g.*, pp. 14 and 73-78), Mass

waived the privilege with respect to the knowledge and definition of the POSITA, as well as the

manner in which the POSITA would apply claim terms to the prior art or patent disclosures.

Second, Mass waived the privilege with respect to the terms of the claims in the '978

patent, the '331 patent, and the '103 patent.[13]  As set forth in detail above, Sections III B and C,

Mr. Moscovitch and Mass waived the privilege with respect to numerous terms in the asserted

patents when it was favorable to Mass to do so.  Yet, when Planar sought testimony about those

claim terms and other claim terms, in aspects of the case that are less favorable to Mass, Mass

repeatedly blocked discovery.  Because the various terms are each just a portion of a single

definition of an alleged invention, it is improper to allow Mass to use the privilege as a shield to

protect itself from unfavorable testimony after Mass was permitted to waive the privilege in

limited, favorable aspects and use that testimony as a sword.  It is not possible to define the

alleged inventions without using all of the language of the claims.  Thus, it would be improper to

allow Mass to waive privilege with respect to part of the definition of a claim while protecting

---

[13] The '103 patent is not asserted in this action, but is asserted in the *Mass v. Spaceco* action
that was consolidated with this action for almost two years.  And the '103 patent is directly
relevant to Planar's defenses and counterclaims, as set forth above in Section II B.

Page 25- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO
BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

other parts of the same definition.  In some respects, limiting the waiver in that manner would be akin to allowing Planar to see only a subset of the definitions of a word in the dictionary, yet expecting Planar to know all of the definitions.  Such a limitation would be prejudicial to Planar and would not comport with the principle of fairness embodied in Rule 502.

### C.      Mass Should Be Sanctioned for Impeding and Frustrating the Fair Examination of Mr. Moscovitch

Entry of sanctions is appropriate because Mass repeatedly instructed Mr. Moscovitch not to answer questions and Mr. Moscovitch repeatedly refused to answer questions based on an attorney-client privilege that had been knowingly and intentionally waived by both Mass and Mr. Moscovitch.  Instructions not to answer may only be given to preserve a privilege, enforce a court ordered limitation, or present a motion under Rule 30(d)(3).  Fed. R. Civ. P. 30(c)(2).  And Rule 30 provides that any "person who impedes, delays, or frustrates the fair examination" may be sanctioned.  Fed. R. Civ. P. 30(d)(2).  In the deposition at issue in this motion, no party or non-party sought to present a Rule 30(d)(3) motion.  And no court ordered limitation allowed instructions not to answer.  Thus, instructions not to answer (and, presumably self-initiated refusals to answer) could only be used to preserve a privilege.  However, no privilege existed. Instead, Mass and Mr. Moscovitch had knowingly and intentionally waived any privilege well in advance of the 2016 deposition.  The improper assertion of the attorney-client privilege was nothing more than an attempt by Mass and Mr. Moscovitch to block Planar from obtaining testimony confirming that various elements of the asserted claims and precursors to those claims could be found in the prior art, and testimony related to the scope and applicability of the asserted claims.  Such testimony is likely to be directly relevant to Planar's invalidity and inequitable conduct defenses and counterclaims and possibly relevant to Planar's noninfringement, willful infringement, and damages defenses and counterclaims.[14]

---

[14] Even if one were to dispute the direct relevance of the testimony, Rule 30(d)(2) would still apply to conduct impeding or frustrating fair examination.  Rule 26 permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense…" Fed. R. Civ. P. 26(b)(1).  Thus, if there were any dispute about relevance or good faith, which Planar believes there is not, Mass and Mr. Moscovitch had the mechanism to limit or terminate the

Page 26- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

1.     **Planar Has Met the Twofold Burden to Obtain Sanctions**

In this brief, Planar has already established the first part of its twofold burden (with the second part to be established below).  "Under Rule 30(d)(2), the moving party's burden is twofold.  First, the movant must identify language or behavior that impeded, delayed or frustrated the fair examination of the deponent ...." *Dunn*, 2013 WL 5940099 at *5 (citations omitted).  As noted above, in Section II A, Mass and Mr. Moscovitch impeded and frustrated the fair examination by making numerous improper instructions not to answer and numerous refusals to testify.  For example, as quoted in Section II A 1, Mass's counsel improperly limited Mr. Moscovitch to a yes or no answer, and Mr. Moscovitch refused to answer even with that limitation.  As another example, in Section II A 2, Mass's counsel improperly limited Mr. Moscovitch's answer regarding "a desired degree" and Mr. Moscovitch entirely refused to answer, stating, "... I can't really discuss these terms without divulging what [my lawyers and I] talked about.  So I can't really answer that question."  Further examples are set forth in Section II A 2, including identification of at least 11 blocked questions about the "support arm" term and at least 13 blocked questions about the "bowed" term.  Several other examples and a listing of improperly blocked testimony is also set forth in Section II A 2, along with citations to the portions of the record showing the specific language and behavior that impeded and frustrated the fair examination of Mr. Moscovitch.

2.     **Even Though a Showing of Bad Faith is Not Required, Bad Faith is Present Here**

Even though establishing "bad faith" is not a requirement for imposition of sanctions, the conduct of Mass and Mr. Moscovitch establishes bad faith in their privilege assertions in this matter.  Multiple cases have noted that bad faith is not a requirement for the imposition of sanctions under Rule 30(d)(2).  *See, e.g.*, *Hylton*, 2012 WL 3562398 at *2; *Layne Christensen*

---

deposition in accordance with Rule 30(d)(3)(A); but no Rule 30(d)(3) motion was ever suggested or brought by Mass or Mr. Moscovitch.

Page 27- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

*Co.*, 2011 WL 6934112 at *2; *GMAC Bank*, 248 F.R.D. at 196. Yet, in this instance bad faith is present.

First, the counsel defending Mr. Moscovitch at the deposition, Mr. Edmonds, was aware of the waiver of privilege and that Mr. Tameshtit was not an attorney or patent agent at the relevant times. Mr. Edmonds defended Mr. Moscovitch at the March 2015 deposition, where Mr. Moscovitch's declaration was a key exhibit and where testimony regarding POSITA and claim terms was given; Mr. Edmonds even asked questions that prompted additional waivers during that deposition; Mr. Edmonds and Mr. Moscovitch both knew of the waiver. *See supra*, Section II C 1. Additionally, Mr. Edmonds knew that communications with Mr. Tameshtit could not be subject to the attorney-client privilege or patent agent privilege prior to 2010; Mr. Edmonds both (i) served a declaration establishing that Mr. Tameshtit was not an attorney or patent agent prior to 2010, and (ii) signed a motion confirming his knowledge. *See* Oliver Decl., Exs. 11 and 12. Despite this knowledge, Mr. Edmonds asserted the privilege in bad faith and did not contradict Mr. Moscovitch's refusals to answer questions related to discussions with Mr. Tameshtit.

Second, Mass has made improper impediments to and frustration of deposition testimony a pattern in this case and others, both through refusals to testify and improper privilege assertions. Mass was sanctioned in a prior case for almost identical obstructive behavior. *See supra*, Section II E. Notably, both Mr. Moscovitch and Mr. Tameshtit were witnesses at that prior deposition, and both were present at the deposition that is the subject of this motion. *Id.* And the sanctions order that issued is presumed to have been known to both, because both were corporate designees for various topics and the order required Mass to "produce a 30(b)(6) designee knowledgeable of the noticed topics for deposition…." Oliver Decl., Ex. 2 (sanctions order) at p. 3. Additionally, as noted, Mass improperly attempted to use an assertion of the attorney-client privilege to block testimony in another third party deposition in this case, by misstating the scope of another Mass attorney-client privilege waiver to the deponent.

Page 28- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

Third, Planar's counsel attempted, not once or twice but, three times during the deposition to remind that Mass's and Mr. Moscovitch's privilege claims were improper or overbroad, at one point even asserting, "I don't think that's a good faith assertion of the attorney-client privilege," thereby alerting Mass and Mr. Moscovitch of their bad faith. *See*, *supra*, Section II A 4. Each time, Mass's counsel responded by utterly rejecting the assertions without considering them for more than a few seconds and without seeking any clarification of the reasons for the assertions. *Id.* In one instance, Mass's counsel went so far as to accuse that Planar's counsel was attempting to "bully this witness by threats," even though the record clearly establishes that the reminder was politely made and made without any semblance of bullying or threats. *Id.*

Planar believes that it is reasonable for the Court to consider that, in a series of many litigations regarding the same patents, where Mass has received at least one past order establishing a privilege waiver (Oliver Decl., Ex. 5 (waiver order)) and at least one past order sanctioning Mass for frustrating and impeding testimony (*see*, *supra*, Section II E), that it would have been more reasonable for Mass's counsel to seek clarification of why Planar's counsel asserted that the privilege claim was improper. Mass's counsel's utter rejection of that possibility (within seconds of hearing the assertion) indicates bad faith.

**D.    Mass Should Also Be Instructed to Produce and Allow Testimony Regarding All Potentially Relevant Communications With Counsel and All Potentially Relevant Documents Withheld on the Basis of Privilege**

As noted above, Section II A 3, while Planar is not aware of the existence of any specific documents, Mass should be instructed to produce all communications related to patent prosecution that occurred with Mr. Tameshtit prior to his registration with the patent office on March 1, 2010 and all other potentially relevant communications with counsel, Mr. Tameshtit or otherwise, or that have been withheld under a privilege claim, without regard to date. The law is well established: the patent agent privilege does not extend to non-attorneys who are not registered with the U.S. Patent and Trademark Office. *In re Queen's University at Kingston*, 820

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

F.3d at 1300-1301. And the privilege does not extend to litigation-related communications that are not "reasonably necessary and incident to the preparation and prosecution of patent applications…" *Id.* at 1301.

While Mass has not yet provided its privilege log, Mass blocked testimony regarding such communications. And it is reasonable to expect that Mass withheld written communications based on the same privilege assertion.

Accordingly, it is appropriate (i) to require that Mass produce all potentially relevant communications with counsel (whether Mr. Tameshtit or otherwise); (ii) to require that Mass produce all other potentially relevant documents that have been withheld on the basis of privilege, as well as a complete privilege log; and (iii) to require that Mr. Moscovitch testify at deposition regarding the facts related to all such communications and documents.

### E.    Appropriate Sanctions

After identifying the behavior that frustrated or impeded the fair examination, the moving party must identify an appropriate sanction. "Second, the movant must identify 'an appropriate sanction.' The Ninth Circuit provides District Courts with wide discretion to fashion 'an appropriate sanction.'" *Dunn*, 2013 WL 5940099 at *5 (citations omitted). As noted by a sister court:

> Any sanction this Court imposes for [a party's] improper termination of [a] deposition must serve the dual purpose of deterring any similar discovery abuse in this case, as well as deterring similar abuse in future cases. Additionally, the sanction imposed must attempt to address any harm suffered by [the party taking the deposition] as a result of [the] improper termination of the deposition.

*VirnetX Inc. v. Cisco Sys., Inc.*, 2012 WL 7997962 at *4 (E.D. Tex. Aug. 8, 2012).

### 1.    Another Deposition and Document Production Should Be Required

As an initial matter, Planar was prejudiced by being prevented from obtaining testimony from Mr. Moscovitch that is believed to be directly relevant to Planar's invalidity and inequitable conduct defenses and counterclaims (and which might prove relevant to non-infringement,

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

willful infringement, and/or damages, as well).  Because of this, at a minimum, it is proper to

order Mr. Moscovitch (Mass's sole owner) to present himself for another day of deposition in

this matter.

Planar also submits that it has become apparent that Mass is asserting the attorney-client

privilege and/or patent agent privilege beyond its bounds.  Mass has not yet produced a privilege

log in this action, and Planar does not have a sense of what documents Mass may have withheld

based on this improper privilege assertion.  Planar sought production of such documents and

relevant information through written interrogatories and requests for production.[15]  Thus, Planar

believes that it is also appropriate to order Mass to produce any documents that have been

withheld based on the improper privilege assertions and to produce a privilege log of all

documents that Mass continues to withhold, both to occur at least two weeks before the

deposition so that Planar will have an opportunity to review the documents and privilege log in

advance of the deposition.

### 2.    Requiring Reimbursement of Attorneys' Fees and Expenses is Appropriate

In addition to providing for additional deposition and/or discovery time, Rule 30 also

permits the court to include "reasonable expenses and attorney's fees incurred by any party."

Fed. R. Civ. P. 30(d)(2).  As further specified, "Rule 37(a)(5) applies to the award of expenses."

Fed. R. Civ. P. 30(d)(3)(C).  Rule 37(a)(5) requires that, absent certain circumstances that aren't

present here:

> If the motion is granted—or if the disclosure or requested
> discovery is provided after the motion was filed—the court must,
> after giving an opportunity to be heard, require the party or

---

[15] These requests asked for, among other things, "All documents pertaining to any analysis of how any Planar product, system, or method potentially or actually infringes the patents-in-suit" and "All documents pertaining to your claim that planar infringes the patents-in-suit, including, but not limited to, all devices, specifications and any other documents analyzed in reaching your conclusion that planar infringes the patents-in-suit."  Oliver Decl., Ex. 15 (requests for production 36 and 40) at pp. 13-14.  And the interrogatories asked Mass to state its contentions and the factual basis for contentions regarding the meaning of various claim terms, including "a desired degree," "consists of directly connected components," and "the width of the base."  Oliver Decl., Ex. 14 (interrogatories 13, 15, 17) at pp. 16-19.

Page 31- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

> deponent whose conduct necessitated the motion, the party or
> attorney advising that conduct, or both to pay the movant's
> reasonable expenses incurred in making the motion, including
> attorney's fees.

Fed. R. Civ. P. 37(a)(5).

While attorney's fees or expenses may not normally be included in a sanction, in a standard matter where deposition testimony was improperly blocked, this case is not standard. This plaintiff and deponent (who is the sole owner of plaintiff) have been the subject of a sanctions order for almost identical conduct in a related case. That sanctions order required payment of "all attorneys' fees and expenses incurred from the [deposition] and the fees and expenses incurred by [defendant] for this motion practice." *See, supra*, Section II E. Thus, plaintiff and deponent were entirely aware of the consequences of improperly impeding and frustrating a deposition, yet chose to ignore them. Moreover, as set forth above, in the preceding section, it is reasonable to find that bad faith was present here. Accordingly, to give any credit to the sentiment of the *Virnetx* court that, "any sanction … must serve the dual purpose of deterring any similar discovery abuse in this case, as well as deterring similar abuse in future cases" (*Virnetx*, 2012 WL 7997962, at *4), merely ordering another deposition at Planar's expense will be insufficient; this (and more) was already ordered in the prior sanctions order against Mass.

Planar submits that it is appropriate to, at least, require Mass to reimburse Planar for all of the attorneys' fees and expenses incurred in travelling to Toronto and taking the deposition of Mr. Moscovitch, as well as all of the attorneys' fees and expenses incurred in preparation and argument of this motion. Both were relatively expensive due to the two days of travel required for a trip to Toronto (as well as high court reporting and videography fees in Canada), and the extensive factual research that was needed for this motion (including studying multiple prior deposition transcripts, dockets, and filings, as well as lead counsel's expected travel to Portland for a hearing).

However, an almost identical sanction was already imposed on Mass in the prior sanctions order and did not deter Mass from repeating its discovery abuse (thereby failing one of

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

the suggested sanction requirements noted in *Virnetx*). Thus, it appears that an additional, enhanced sanction may be needed to deter future abuses by Mass and to signal to future litigants that repeat abuses will not be tolerated. Accordingly, Planar suggests that it would be appropriate to also require Mass to pay all reasonable expenses and attorney's fees incurred by Planar in taking a second deposition of Mr. Moscovitch.

### 3.    Scope of Requested Sanctions Order

Accordingly, Planar requests an order specifying at least the following sanctions:

(a)    Mr. Jerry Moscovitch shall present himself for another day of deposition on a day that is convenient to Planar;

(b)    At least 14 days in advance of the deposition of Mr. Moscovitch, Mass shall produce all documents related to the identified privilege waiver and a complete privilege log for any other documents that Mass continues to withhold in this action without regard to the privilege log cutoff date (i.e., Nov. 12, 2009) set forth in paragraph 28 of the protective order, so that Mass's inappropriate assertion of the attorney-client privilege may be tested to ensure that all relevant documents are being produced;

(c)    Mr. Moscovitch shall travel to Portland, OR or San Jose, CA for the deposition at the expense of either himself or Mass, but at no expense to Planar; (or, in the alternative, Mr. Moscovitch may make himself available for deposition in Toronto and shall be jointly and severally liable with Mass and Mass's counsel for reasonable travel and attorney's fee expenses expected to be incurred by Planar, including roundtrip airfare (not to exceed U.S. $1,500), two nights lodging at the same hotel that Planar's counsel stayed in for the prior deposition (or a comparably priced hotel), meals and reasonable travel expenses for Planar's counsel for two travel days and the day of deposition, up to two full days (no more than 8 hours per day) of attorney's fees for travel time at the standard rate charged by Planar's counsel in this matter, rental of a room for deposition comparable to the room in which the prior deposition occurred, and fees for court reporting and videography at rates comparable to those incurred for the prior

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

deposition (which may include travel and lodging fees for the court reporter and videographer),

(d)    Mass shall reimburse Planar for the expenses and attorneys' fees incurred in taking Mr. Moscovitch's prior deposition in Toronto, including all incurred expenses and three days of attorneys' fees (i.e., two travel days and one deposition day);

(e)    Mass shall reimburse Planar for all reasonable expenses and attorneys' fees incurred in bringing and arguing this motion, including any expenses incurred in travel by lead counsel to Portland for any hearing; and

(f)    Mass shall reimburse Planar for all reasonable expenses and attorney's fees incurred in taking the second deposition of Mr. Moscovitch.

## V.    CONCLUSION

For the foregoing reasons, Planar requests that the Court grant Planar's motion for sanctions and enter an order: (a) setting forth the scope of Mass's privilege waiver; (b) ordering Mass to make Mr. Moscovitch available for another day of deposition; (c) ordering Mass to produce all relevant documents that were improperly withheld as privileged and to provide a complete privilege log for Planar's review; (d) ordering Mass and Mr. Moscovitch to provide testimony consistent with the court's order regarding the scope of the waiver; and (e) sanctioning Mass (in the manner set forth in the immediately preceding section) for violating Rule 30(d).

DATED this 7th day of April, 2017.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: s/Jacob S. Gill
    **Jacob S. Gill,** OSB No. 033238

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  (503) 227-1600
Facsimile:  (503) 227-6840
Email:      jgill@stollberne.com

-And-

**Jenny W. Chen** (admitted *pro hac vice*)
Email: Jenny.Chen@ChenIPLaw.com

Page 34- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO
BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

CHEN IP LAW GROUP
7F, N0. 1, Alley 30, Lane 358
Rueiguang Road
Neihu District,  Taipei City  114
Taiwan (R.O.C.)
Telephone: +(886)-2-7721-8855
Facsimile:  +(886)-2-7721-8822

-And-

**Andrew T. Oliver**  (admitted *pro hac vice*)
Email: aoliver@ATWiplaw.com
AMIN, TUROCY & WATSON, LLP
160 West Santa Clara Street, Suite 975
San Jose, California 95113
Telephone: (650) 618-6481
Facsimile:  (216) 696-8731

**Attorneys for Defendant Planar Systems, Inc.**

Page 35- DEFENDANT'S MOTION FOR DEPOSITION SANCTIONS [AUTHORIZED TO
BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840