**Jacob S. Gill,** OSB No. 033238
Email: jgill@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, Oregon 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840

**Jenny W. Chen** (admitted *pro hac vice*)
Email: Jenny.Chen@ChenIPLaw.com
CHEN IP LAW GROUP
7F, N0. 1, Alley 30, Lane 358
Rueiguang Road
Neihu District,  Taipei City  114
Taiwan (R.O.C.)
Telephone:  (886)-2-7721-8855
Facsimile:  (886)-2-7721-8822

**Andrew T. Oliver**  (admitted *pro hac vice*)
Email: aoliver@ATWiplaw.com
AMIN, TUROCY & WATSON, LLP
160 West Santa Clara Street, Suite 975
San Jose, California 95113
Telephone: (650) 618-6481
Facsimile:  (216) 696-8731

**Attorneys for Defendant Planar Systems, Inc.**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MASS ENGINEERED DESIGN, INC., | Case No. 3:16-CV-01510-SI |
| Plaintiff, | **DEFENDANT PLANAR SYSTEMS, INC.'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY AND PORTIONS OF THE EXPERT REPORT OF DR. J.E. AKIN** |
| v. | |
| PLANAR SYSTEMS, INC., | |
| Defendant. | **[AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]** |

## Table of Contents

Motion ................................................................................................................ 2

I.        FACTS ................................................................................................. 2

II.       LEGAL STANDARD ......................................................................... 2

III.      ARGUMENT ....................................................................................... 5

          A.      Dr. Akin Should be Precluded From Testifying Regarding
                  "Equivalents" to the Structures Claimed in the Patents,
                  Because Analyzed Alleged Infringement at the Wrong
                  Time and Missed Intervening Scientific Journal Articles
                  That Point to a Different Conclusion ........................................... 5

          B.      Dr. Akin Should be Precluded From Testifying Based on
                  "Assumptions" About Infringement ............................................. 8

          C.      Dr. Akin Should be Precluded From Testifying About The
                  Purported Benefits of the Asserted Patents and the Alleged
                  Value Based on those Benefits ................................................... 10

          D.      Dr. Akin Should be Precluded From Testifying That
                  Planar's Products Infringe Under the Doctrine of
                  Equivalents ................................................................................. 12

          E.      Dr. Akin Should Be Precluded From Testifying About
                  Planar's Intent and State of Mind .............................................. 15

          F.      Dr. Akin Should Be Precluded From Testifying That Planar
                  Infringed Patents, That Planar Contributed to Infringement,
                  and That Planar Induced Infringement ...................................... 16

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

### Certification of Compliance with LR 7-1

Pursuant to Local Rule 7-1, the parties made a good faith effort by telephone conference to resolve this dispute and have been unable to do so.

### Motion

Pursuant to Rules 702 and 403 of the Federal Rules of Evidence, defendant Planar Systems, Inc. ("Planar") moves the Court for an order (i) excluding testimony of Dr. J.E. Akin, the purported expert witness proffered by plaintiff Mass Engineered Design, Inc. ("Mass"), on the issue of infringement and damages; and (ii) excluding and/or striking portions of Dr. Akin's *Expert Report of Dr. J.E. Akin Regarding Planar's Infringement of United States Patent Nos. RE36,978 and 8,102,331*, dated January 6, 2017.

### Memorandum

## I.   FACTS

Mass proffered Dr. Akin as an expert to testify on the matters disclosed in his expert report.  In his expert report, Dr. Akin offers several opinions regarding alleged infringement by Planar and the value of that alleged infringement for purposes of the damages analysis.  Many of these opinions are flawed, as is discussed in more detail below.

For example, Dr. Akin provides impermissible testimony and opinions regarding the following issues: (i) equivalents to structures in the patent; (ii) assumptions about infringement; (iii) the purported benefits of the asserted patents and alleged value based on those benefits; (iv) infringement under the doctrine of equivalents; (v) speculation about Planar's intent and state of mind; and (vi) applying his purported facts to his opinions regarding legal standards to express an ultimate opinion.

These opinions should be excluded and not presented to the jury.

## II.   LEGAL STANDARD

The admissibility of expert testimony is governed by Rules 702 and 403 of the Federal Rules of Evidence.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993)

Page 2 –   MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

("a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules").

"Rule 702 … provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (citing Fed. R. Evid. 702).[1]

Rule 403 imposes "an important constraint on expert testimony". *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1005 (9th Cir. 2001), *amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001). "Rule 403 permits the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595 (quotation marks and ellipsis omitted). As the Supreme Court has explained: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 exercises more control over experts than lay witnesses." *Id.* (quotation marks, citation, and ellipsis omitted).

The decision to admit or exclude expert opinion testimony is committed to the sound discretion of the trial court. *See, e.g.*, *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 596–97 (9th Cir. 1996) (applying abuse of discretion standard even though the ruling was dispositive of motion for summary judgment); *Sundance, Inc. v. Del Monte Fabricating, Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008). This discretion is not unlimited, however.

In general, "an expert cannot testify to a matter of law amounting to a legal conclusion."

---

[1] The decision as to whether to admit expert testimony in a trial is a procedural issue governed by the law of the regional circuit. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).

Page 3 –    MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

*United States v. Tamman*, 782 F.3d 543, 552-53 (9th Cir. 2015) (holding that an opinion which "provided only a recitation of facts and the legal conclusion that [defendant] acted in conformity with unidentified SEC rules and regulations and otherwise did not break the law … is not a proper expert opinion"); *Crow Tribe of Indians v. Raciot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law."); *see also Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) ("It is black-letter law that it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.") (quotation marks, citations, and brackets omitted).  The Ninth Circuit has explained:

> As a general rule, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a).  "That said, an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.  Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court."  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal citations and quotation marks omitted); *see also* Fed.R.Evid. 702 (requiring that expert opinion evidence "assist the trier of fact to understand the evidence or to determine a fact in issue").

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008).  Thus, courts have excluded expert testimony regarding the legal standard governing the question of willfulness.  *See*, *e.g.*, *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F.Supp.2d 431, 443 (D. Del. 2004) (holding that plaintiff's expert, an experienced patent attorney, "will not, however, be permitted to testify as to the legal standard for willfulness").

Neither may an expert offer opinion testimony concerning a party's intent, motive, or state of mind.  *AstraZeneca LP v. Tap Pharm. Prod., Inc.*, 444 F.Supp.2d 278, 293 (D. Del. 2006) ("Expert witnesses are not permitted to testify regarding intent, motive, or state of mind, or evidence by which such state of mind may be inferred.") (quotation marks, citation, and ellipsis omitted); *First Am. Title Ins. Co. v. Nw. Title Ins. Agency, LLC*, 2016 WL 6471212, at *3 (D. Utah Nov. 1, 2016) (same); *Oxford Gene Tech.*, 345 F.Supp.2d at 443 (same); *XY, LLC v. Trans Ova Genetics*, 2016 WL 97788, at *5 (D. Colo. Jan. 8, 2016) ("Nor may [the expert] opine that Trans Ova was aware, or should have been aware, of anything; he is not qualified to testify to Trans Ova's knowledge or intent, and would invade the jury's role in making that

Page 4 –    MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

determination."); *The Medicines Co.*, 2014 WL 1758135 at *5 ("Patent experts may not testify that they know the patentee's intent … because they are not mind-readers.") (quotation marks and citation omitted)

"Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 847 (N.D. Ohio 2004); *Chemipal Ltd.*, 350 F.Supp.2d at 588 (same). And "[e]xpert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand." *SEC v. Lipson*, 46 F.Supp.2d 758, 763 (N.D. Ill. 1998); *see also Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 3417941, at *13 n.8 (N.D. Cal. July 11, 2014) (excluding opinion "based upon [the expert]'s interpretation of the evidence" where "[the expert]'s opinion merely summarize[d] the record evidence and gratuitously interpret[ed] it").

## III.   ARGUMENT

### A.   Dr. Akin Should be Precluded From Testifying Regarding "Equivalents" to the Structures Claimed in the Patents, Because Dr. Akin Analyzed The Alleged Infringement at the Wrong Time and Missed Intervening Scientific Journal Articles That Point to a Different Conclusion

Because Dr. Akin analyzed "equivalents" at an incorrect time, he missed important scientific journal articles that show that the proposed "equivalents" on which he bases his infringement analysis are, in fact, not equivalent to the structures to which he claims they are equivalent. Dr. Akin should be precluded from offering testimony based on using an incorrect, and explicitly rejected, legal standard. The Supreme Court stated, unequivocally, that "the proper time for evaluating equivalency—and thus knowledge of interchangeability between elements—is at the time of infringement, not at the time the patent was issued." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997). In making this statement, the Supreme Court explicitly rejected the dissenting Justices' suggestion that equivalents should be evaluated at the time the patent issued. *Id.* But Dr. Akin stated, unequivocally, "An equivalent under §112 must have been available at the time of issuance of the claim." (Oliver Exh. 1 at p.

Page 5 –   MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

10).  Thus, in direct opposition to the Supreme Court's clear requirement, Dr. Akin required that

> In each instance in this report in which I identify a structural
> equivalent, based upon my knowledge, education and experience, in
> each instance the structural equivalent was available at the time of
> issuance of each respective patent.

(Oliver Exh. 1 at p. 11).  Thus, Dr. Akin's opinions regarding "equivalents" should be excluded

to the extent that there is any later contradictory information.  There indeed is, as set forth below.

In his report, Dr. Akin correctly notes that the '978 patent issued in November 1997.

(Oliver Exh. 1 at p. 21).  This is the "time of issuance of the claim" to which Dr. Akin refers.  Dr.

Akin notes that "Planar was made aware of the '978 Patent no later than February 26, 2010."

(*Id.* at 16).  This is the time of alleged infringement, to which the Supreme Court refers.  Thus,

by Dr. Akin's statement, he analyzed equivalents based on knowledge of what was considered

"available" as an equivalent in 1997, not 2010.  Accordingly, if something arose between 1997

and 2010 that informed a person of ordinary skill that a previous equivalent was no longer

considered an equivalent, Dr. Akin would have ignored (and in one instance as explained below,

actually did ignore) that intervening information.  Rather, he focused only on what was available

in 1997.

Based on this "1997" knowledge, Dr. Akin opined that the "compound joint" in Planar's

products is "equivalent to, the ball joints in the cited '978 structures."  (Oliver Exh. 5 at p. 8).

This opinion included statements such as,

> … compound joint 8 (comprising a vertical hinge, a horizontal
> hinge with a resistive spring, and a rotating pivot) and a screw,
> which attaches the hinges, and thus the mounted display, to arm
> assembly 4, which is just a sub-set of, and substantially the same
> as, including kinematically equivalent to, a ball joint.

*Id.*  This is important, because Dr. Akin confirmed that the Planar products don't include the

structure identified in the patent as infringing (i.e., the ball joint), so he had to rely upon an

"equivalent" structure to claim infringement.  *Id.* at 9 ("…each of the Planar Infringing Products

does not include a ball joint per se, each product comprises an equivalent structure, namely

compound joint 8."); *id.* at 10-11 (same).  Dr. Akin claimed that this equivalence arose through

Page 6 –   MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

"kinematic equivalence."  (*Id.*; *see also* Oliver Exh. 1 at p. 12 ("In the charts appended to this report, I employ a kinematic equivalence analysis…").  He even managed to refer to himself in the third person while confirming that this equivalence analysis permeated his reasoning, stating, "Dr. Akin's use of the kinematic equivalence analysis is similarly applied throughout his report." (Oliver Exh. 1 at p. 14).

However, as Dr. Yee confirmed in his report, at least two scientific papers were published between 1997 and 2010 (i.e., in 2003 and 2005), that showed that Planar's compound joint could no longer be considered kinematically equivalent to a ball joint.  (Oliver Exh. 3 at pp. 19-21).  As Dr. Yee notes, one of these papers was cited by Dr. Akin, but not relied upon, because Dr. Akin limited his analysis to what was known in 1997.  (Oliver Exh. 3 at p. 19 ¶41).  In the 2003 paper, the authors stated that equivalence relied upon "intersection of three orthogonal axes at a point N."  *Id.* at p. 20 ¶43.  In the 2005 paper, the authors confirmed, as paraphrased in Dr. Yee's words, "equivalent kinematic chain exists among spherical joint and three separated pin joints when all three axes intersect at a common point like the diagram shown in Figure 3 of the article and its application in Figure 5 of the paper."  *Id.* at p. 21 ¶44.  Thus, both of the references that arose after patent issuance and before alleged infringement required: intersection of three axes at a common point.

In Planar's products, however, as Dr. Yee explains, "the swivel axis of a vertical hinge joint … does not intersect the two other axes at the same point."  (Oliver Exh. 3 at p. 19 ¶ 42). Thus, even though the knowledge of those skilled in the art might have been different in 1997, the time at which Dr. Akin based his flawed analysis, one of ordinary skill in the art as of 2010 would have known that a single 3-axis intersection point was required for kinematic equivalence. And, the Planar products incorporated two 2-axis intersection points. (To visualize this in two dimensions, imagine the difference between an asterisk (*) with three lines intersecting and two plus signs (++) with one line being intersected by two other lines at different points.)  Thus, under the knowledge that one of skill in the art would have had in 2010, Planar's hinge joint would not be equivalent to the ball joint of the '978 patent.  And Dr. Akin's testimony, based on

Page 7 –    MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

an incorrect legal standard that led to an incorrect analysis, must not be permitted to confuse the jury.

For these reasons Dr. Akin should not be permitted to present his equivalents analysis, based on an improper legal standard, to the jury.

**B.**      **Dr. Akin Should be Precluded From Testifying Based on "Assumptions" About Infringement**

Dr. Akin's opinions that are not based on any facts (or, at least, not on any facts identified in his report or during the discovery period), should be precluded as unreliable. "[N]othing in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). And, "when the conclusion simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion." *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1121 (10th Cir. 2004). Here, Dr. Akin bases his opinions on assumptions that are not supported by any data. Thus, the "conclusion simply does not follow from the [nonexistent] data" and should be excluded.

First, in his direct infringement opinion at pages 24-25, Dr. Akin makes an assumption without basis that the products provided by Planar have been assembled in the United States. (Oliver Exh. 1 at pp. 24-25). Yet, there is no factual basis to support this assumption, as the Planar products are shipped boxed and disassembled. (*See, e.g.,* Oliver Exh. 6). And the asserted claims require either assembled products or parts that are not found in Planar's products.[2] As can be seen in the boxed product (Exh. 6), there are no displays and there are no connected parts. In short, there is no direct infringement, but Dr. Akin just assumes infringement into existence, stating "it is reasonable to assume that Planar …" (Oliver Exh. 1 at p. 24). In

---

[2] (*See, e.g.,* Oliver Exh. 1 at p. 22 (showing that claim 1 of the '331 patent requires, inter alia, "a support column connected to the base" and "a support arm structure secured to the support column"), at p. 21 (showing that claim 16 of the '978 patent requires "a pair of electronic displays")).

Page 8 –    MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

fact, it is not reasonable to make that assumption. Mass deposed Planar multiple times and had months and months of discovery, but did not put forward even a scintilla of evidence supporting that assumption. Because Dr. Akin does not have any "data" connected to his "*ipse dixit*," his "assumption" that Planar infringes should be excluded.

In Dr. Akin's induced infringement opinion, he doubles down on his improper assumptions, relying on the original assumption about direct infringement and stating, "In my opinion, Planar actively and knowingly aids and abets the mounting of such displays – which is the sole and intended use of its products – by providing marketing/advertising information on its website …" (Oliver Exh. 1 at p. 26). This assumption goes too far, as it assumes both infringement within the United States (which is a required prong of inducing infringement) and assumes that everyone who purchases the products assembles them in an infringing configuration. Again, there is no data supporting this, and the "conclusion simply does not follow from the [nonexistent] data." Dr. Akin's "assumption" that Planar induces infringement should be excluded.

And in Dr. Akin's contributory infringement opinion, he again stacks assumptions. (Oliver Exh. 1 at pp. 26-27). First, he assumes direct infringement in the United States, which has not been proven. Then, he assumes that the products lack "substantial non-infringing uses" even though it is Mass's burden to put forward evidence of no substantial non-infringing uses. Again, Dr. Akin's "assumption" based on nothing but his feelings should be excluded.

Where hundreds of thousands of units of the accused products have been sold, it would be too much of "an impermissible analytical gap" to move from zero evidence of infringement to the "conclusion" that all the products have been assembled and used in the United States in an infringing manner. *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1121 (10th Cir. 2004). So, Dr. Akin's assumptions about infringement should be excluded.

In the alternative, if the Court desires to allow Dr. Akin to provide testimony, the Court could limit his testimony to those instances where Dr. Akin has direct evidence of infringement. Planar believes, however, that this will have the same result, as neither Mass nor Dr. Akin have

Page 9 –    MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

identified any instances of direct infringement.

C.      **Dr. Akin Should be Precluded From Testifying About The Purported Benefits of the Asserted Patents and the Alleged Value Based on those Benefits**

Dr. Akin's testimony regarding the alleged "Benefits of the Patented Technology" and "Technical Value Factor" (set forth at pages 27 – 33 of his report – Oliver Exh. 1) that supports Mass's damages analysis under *Georgia-Pacific* factors nos. 9 and 10 should be stricken because the testimony does not identify any nexus to the patented technology but, rather, merely states the benefits of having two screens.

However, "*Georgia-Pacific* factor [nine] requires a nexus be established between [the field of technology] in general and the patented technology in the instant matter…. Absent this established nexus, [the proffered opinion] testimony in this regard is irrelevant under factor nine." *Magnetar Techs. Corp. v. Six Flags Theme Parks*, no. 07-127-LPS-MPT, 2014 U.S. Dist. LEXIS 15675 at * 16 - *18 (D. Del. Feb. 7, 2014).  And, "The tenth Georgia-Pacific factor is '[t]he nature of the *patented invention*… and the benefits to those who have used the *invention*.'" *Id.* at *17-*18 (some emphasis in original, some emphasis added).  The court excluded, as "irrelevant under factors nine and ten," testimony that was related to the value of the field of technology "as opposed to the value of the accused [products] because they are purportedly covered by the patents in suit."  *Id.* at *18; *see also Magnetar Techs. Corp. v. Six Flags Theme Parks*, 61 F. Supp. 3d 437, 442 (D. Del. 2014) (confirming decision cited above and ruling, "[T]he general categories on which [the opinion witness] seeks to testify fail to establish a nexus between the patents-in-suit and [the technology generally].  This testimony is irrelevant and will be excluded,…"), affirmed without opinion at 599 Fed. Appx. 960 (Fed. Cir. 2015).

Specifically, at pages 27 – 32, Dr. Akin states, without any reference to the patented monitor stands, that "multi-monitor systems provide significant benefits" and then lists the purported benefits.  (Oliver Exh. 1 at pp. 27-32).  And Mass's damages expert, Mr. Bratic, relies

Page 10 –  MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

on these purported benefits in his analysis of Georgia-Pacific Factors 9 and 10.  (Oliver Exh. 2 at

pp. 42-43).  However, none of the benefits listed are attributable to the patented technologies.

And none of the articles cited by Dr. Akin refer to the patented technologies, but instead refer

only to multiple monitor systems.  For example, one of the articles referred to the high-tech

solution of stacking monitors on reams of paper, and another referred just to two monitors side-

by-side, which hopefully Mass does not claim either of these is the patented invention:



Figure 2. A 3-monitor configuration. Displays are not pushed as close together as possible to minimize gaps.



 (*See* Oliver Exh. 3 at pp. 52-59 (reproducing the pictures and analyzing why the alleged

"benefits" do not relate to the patented technology)).  It is plain that these articles do not refer to

the patented technology.  Nor does Dr. Akin attempt to show that they refer to the patented

technology.  Because there is no nexus between the claimed benefits and the patented technology

(rather, the benefits of multi-screen systems exist with something as simple as stacking screens

on reams of paper), Dr. Akin should not be permitted to attempt to testify that the benefits of

non-patented technology are due to the patented technology.  *Magnetar Techs.*, 2014 U.S. Dist.

LEXIS 15675 at * 16 - *18.

Additionally, Dr. Akin's testimony about what he calls a "technical value factor," on

pages 32-33 of his report should be excluded as it is based on the benefits discussed above.  Dr.

Akin states, "In making this determination [of technical value factor], I weighed the benefits,

including booking and wristing discussed above, and the breadth of the claims."  (Oliver Exh. 1

at p. 32).  He then states a "technical value factor" for each patent.  *Id.* at pp. 32-33.  Because this

conclusion is based on irrelevant considerations of technology that cannot be attributed to the

Page 11 –   MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

patented inventions, the testimony and opinion regarding technical value factor analysis is also flawed.  Dr. Akin compounds and doubles-down on a flawed premise.  This opinion should be excluded as being based upon irrelevant considerations.

For these reasons, Planar requests that the Court exclude any opinions or testimony regarding the "Benefits of the Patented Technology" and the "Technical Value Factor" as set forth at pages 27 – 33 of Dr. Akin's report.

> **D.    Dr. Akin Should be Precluded From Testifying That Planar's Products Infringe Under the Doctrine of Equivalents**

Dr. Akin offers opinions regarding patent infringement under the "doctrine of equivalents" with respect to at least two claim limitations of the asserted claims that were added to overcome invalidity rejections during prosecution of the asserted patents.  However, as the Supreme Court has explained,

> The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes. When, however, the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-734 (2002).  Thus, because Mass narrowed its claims in response to rejections during patent prosecution, Mass is precluded from alleging infringement under the doctrine of equivalents, and Dr. Akin's testimony should be excluded.

Specifically, with respect to the '331 patent, as to the claim limitations that Dr. Akin refers to as limitations 1.III.a, 9.III.a, and 9.VI.a, Dr. Akin asserts that the claim elements are infringed by equivalents and, for two, provides analysis of the function-way-result tests used to analyze infringement under the doctrine of equivalents.[3]  (Oliver Exh. 4 at pp. 2-3, 6-8, 9).

---

[3] "One way to show equivalence is by showing on an element-by-element basis that 'the accused product performs substantially the same function in substantially the same way with  substantially the same result as each claim limitation of the patented product,' often referred to as the function-

Page 12 –  MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

These numbered elements correspond to the following claim limitations:

> 1.III.a – claim 1 - the support arm structure having a single piece support arm that extends on either side of the support column and that has a longitudinal length that is longer than the width of the base; and
>
> 9.III.a – claim 9 - the support arm structure having a support arm that extends on either side of the column, that is substantially horizontal when the base is resting on a horizontal surface and that has a longitudinal length that is longer than the width of the base; and
>
> 9.IV.a - such that the support arm structure is secured to the support column through the mounting member by an acceptance of the mounting portion of the support column into the hole and

(Oliver Exh. 4).  However, each of these claim limitations was added during patent prosecution to overcome a rejection and, under *Festo*, cannot be infringed under the doctrine of equivalents. *Festo*, 535 U.S. at 733-734 (when the patentee "narrowed the claim in response to a rejection, he may not argue that the surrendered territory … should be deemed equivalent…").

On July 7, 2007, all of the pending claims of the relevant patent application were rejected on various grounds.  (Oliver Exh. 7 at M218857 – M218867).  In response to that rejection, on December 17, 2007, Mr. Moscovitch cancelled all of the existing claims to overcome the rejection, and replaced them with new claims, including claim 62 (which would eventually issue as claim 1 after several amendments) that, for the first time, recited "a support arm secured to the support column, the support arm being formed as a single piece component."  (Oliver Exh. 7 at M218849).  In stating the reason for this amendment, Mr. Moscovitch noted that the examiner had rejected all the claims in view of the "Jingu" prior art.  (*Id.* at M218851).  Mr. Moscovitch specifically argued that the amendments were made to the claims to overcome "Jingu," stating, "Jingu does not teach this feature" and "Note, however, that a bowed support arm, as recited in new claim 62, is taught in neither Jingu nor the '006 patent."  *Id.*  He further argued that the "single piece" limitation overcame another prior art rejection, "New claim 62 recites a support

_____

way-result test." *Intendis GmbH v. Glenmark Pharms., Inc.*, 822 F.3d 1355, 1360 (Fed. Cir. 2016).

Page 13 –  MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

arm being formed as a single piece component.  Leveridge does not teach such an arm."  *Id.* at M218852.

After further prosecution that added claim 75 (that would eventually become claim 9), in April 2009, claims 62 and 75 were rejected.  (*Id.*at M218632-645).  So, on October 7, 2009, Mr. Moscovitch again amended the claims to overcome the rejection by limiting them to "having a longitudinal length that is longer than the width of the base."  (*Id.* at M218599, M218601).  Mr. Moscovitch did not explain the particular amendment, but used it to overcome the prior art rejection.

On January 15, 2010, claims 62 and 75 were again rejected.  (*Id.* at M218559-560).  On June 15, 2010, Mr. Moscovitch responded to the rejection, but apparently did not convince the examiner that he had overcome it.  (*Id.* at M218550-558).  Because, on August 11, 2010, an Examiners' Amendment, Notice of Allowance, and Interview Summary were filed.  (*Id.* at M218277-218559).  Claims 62 and 75 were amended to their current language.  (*Id.* at M218282-84).  The Examiner noted that the reason for the amendments was to overcome the prior art rejection, stating, "The examiner and the applicant agreed that further definition of the claimed invention, specifically the claimed support arm, could overcome the obviousness rejections of the prior Office Action.  The applicant discussed possible amendments to the claims and those amendments were acceptable to the examiner.."  (*Id.* at M218280).  The examiner provided further discussion of overcoming the prior art and confirmed that claim 62 would be renumbered claim 1 and claim 75 would be renumbered claim 9.  (*Id.* at M218285).

As can be seen, it is clear that the multiple amendments to bring the claims to their current form were entered to overcome rejections and encompass all of the subject matter for which Dr. Akin attempts to assert infringement under the doctrine of equivalents.  Under *Festo*, Mass is not permitted any scope of equivalents because it surrendered the relevant scope to overcome rejections.

Finally, with respect to limitation 9.IV.a, Dr. Akin improperly opines, "In my opinion, this claim element is included … or included through the doctrine of equivalents," without any

Page 14 –   MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

analysis of the tri-partite function-way-result test underlying his opinion. This opinion is insufficiently supported, as the law requires an analysis of the doctrine of equivalents assertion. This is another reason for excluding the identified testimony.

For these reasons, Dr. Akin's opinions regarding infringement under the doctrine of equivalents should be excluded.

### E.    Dr. Akin Should Be Precluded From Testifying About Planar's Intent and State of Mind

Dr. Akin should not be permitted to speculate regarding Planar's intent or state of mind. "Expert witnesses are not permitted to testify regarding intent, motive, or state of mind, or evidence by which such state of mind may be inferred." *AstraZeneca*, 444 F.Supp.2d at 293 (quotation marks, citation, and ellipsis omitted); *see also, e.g.*, *First Am. Title Ins.*, 2016 WL 6471212, at *3 (same); *XY, LLC*, 2016 WL 97788, at *5 ("Nor may [the expert] opine that Trans Ova was aware, or should have been aware, of anything; he is not qualified to testify to Trans Ova's knowledge or intent, and would invade the jury's role in making that determination."); *The Medicines Co.*, 2014 WL 1758135 at *5 ("Patent experts may not testify that they know the patentee's intent … because they are not mind-readers.") (quotation marks and citation omitted).

In this case, Dr. Akin attempts to opine about Planar's "specific intent," "subjective belief," "intention," "actively and knowingly aid[ing] and abet[ing]" (which would require intent), and contributorily infringing under 35 U.S.C. §271(c) (which requires intent).[4] These opinions are found at pages 15 (spelling out specific intent requirements), 16 (referring to "intention" and also opining "Planar actively induces," (which requires the intent mentioned on page 15)), and 25-26 (discussing "actively and knowingly aids and abets").

Dr. Akin is not a mind reader, and such testimony should not be permitted.

---

[4] *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011) (stating that Congress has not "seen fit to alter §271(c)'s intent requirement in the nearly half a century since *Aro II* was decided.").

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

**F.      Dr. Akin Should Be Precluded From Testifying That Planar Infringed Patents, That Planar Contributed to Infringement, and That Planar Induced Infringement**

Dr. Akin should not be permitted to testify regarding ultimate legal conclusions, such as direct infringement under 35 U.S.C. §271(a), inducing infringement under 35 U.S.C. §271(b) and willful infringement under 35 U.S.C. §271(c). "[A]n expert cannot testify to a matter of law amounting to a legal conclusion." *Tamman*, 782 F.3d at 552-553; *Nationwide Transp. Fin.*, 523 F.3d at 1058 ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."). The Federal Rules of Evidence do not permit expert testimony as to legal conclusions. *Lannett Co. Inc. v. KV Pharm., Drugtech Corp.*, 2009 WL 10657988, at *5 (D. Del. Mar. 9, 2009) (striking expert report and testimony where legal conclusion was offered because the "report usurps the role of the [fact finder] and should not be permitted," and noting that the report "is not an attempt to assist the Court in understanding the facts … but rather is a platform … to offer testimony on the ultimate legal issue in the case."). Dr. Akin attempts to opine on these ultimate issues, stating, for example: "In my opinion, the Infringing Products infringe the Asserted Claims… Further, in my opinion, the [redesigned products] infringe the Asserted claims…" (p. 3); "[I]t is my opinion that … a person of ordinary skill in the art would find that the Infringing products directly infringe, literally and equivalently, the Asserted claims…" (p. 15); "[I]t is my opinion, that the Infringing Products directly infringe the Asserted Claims… It is my opinion that the Infringing Products necessarily infringe … the direct infringement of the Asserted Claims … is clear and straight forward." (p. 16); "It is my opinion that Planar actively induces [others] … to directly infringe the Asserted Claims…" (pp. 16-17); "the direct infringement of the Asserted Claims … is clear and straight forward." (p. 17); "the Infringing Products comprise the entire patented invention of the asserted claims…" (pp. 17 - 18); "It is also my opinion that a person of ordinary skill in the art would find that the Infringing Products are not staple articles of commerce capable of substantial non-infringing use . . . it is my opinion that the Planar [sic] contributorily infringes the Asserted Claims…" (p. 18);

Page 16 –   MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

"In my opinion, Planar actively and knowingly aids and abets …" (p. 26);

Thus, Dr. Akin's opinions regarding ultimate legal conclusions should be stricken and his testimony precluded.

## IV.    Conclusion

Mass proffers Dr. Akin as an expert to provide testimony and opinions regarding matters on which Dr. Akin should not be permitted to testify or opine, and regarding matters wherein Dr. Akin does not follow the proper legal standards and may misguide the jury.  Accordingly, the identified portions of Dr. Akin's testimony and report should be excluded pursuant to Rules 702 and 403 of the Federal Rules of Evidence.

DATED this 18th day of April, 2017.

AMIN, TUROCY & WATSON, LLP

By: s/ Andrew T. Oliver

**Jacob S. Gill,** OSB No. 033238
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:     (503) 227-1600
Facsimile:      (503) 227-6840
Email:           jgill@stollberne.com

-And-

**Jenny W. Chen** (admitted *pro hac vice)*
Email: Jenny.Chen@ChenIPLaw.com
CHEN IP LAW GROUP
7F, N0. 1, Alley 30, Lane 358
Rueiguang Road
Neihu District,  Taipei City  114
Taiwan (R.O.C.)
Telephone:  +(886)-2-7721-8855
Facsimile:   +(886)-2.-7721-8822

-And-

Page 17 –  MOTION TO EXCLUDE J.E. AKIN EXPERT REPORT AND TESTIMONY

**Andrew T. Oliver**  (admitted *pro hac vice)*
Email: aoliver@ATWiplaw.com
AMIN, TUROCY & WATSON, LLP
160 West Santa Clara Street, Suite 975
San Jose, California 95113
Telephone: (650) 618-6481
Facsimile:  (216) 696-8731

**Attorneys for Defendant Planar Systems, Inc.**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840