Jacob S. Gill, OSB No. 033238
jgill@stollberne.com
STOLL BERNE
209 S.W. Oak Street
Suite 500
Portland, Oregon 97204
Tel.: (503) 227-1600
Fax.: (503) 227-6840

Jenny W. Chen (admitted *pro hac vice*)
Jenny.Chen@ChenIPLaw.com
CHEN IP LAW GROUP
7F, N0. 1, Alley 30, Lane 358, Rueiguang Road
Neihu District
Taipei, Taiwan 114
Tel.: +886.2.7721.8855
Fax: +886.2.7721.8822

Andrew T. Oliver (admitted *pro hac vice*)
aoliver@ATWiplaw.com
AMIN, TUROCY & WATSON LLP
160 W. Santa Clara Street
Suite 975
San Jose, CA  95113
Tel:  (650) 618-6477

Attorneys for Defendant Planar Systems, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **MASS ENGINEERED DESIGN, INC.,** | Case No. 3:16-cv-01510-SI |
| Plaintiff, | PLANAR SYSTEMS, INC.'S TRIAL OBJECTION TO ADMISSION OF LICENSES |
| v. | |
| **PLANAR SYSTEMS, INC.,** | |
| Defendant. | |

Planar Systems, Inc. ("Planar") hereby renews its objection to admission of litigation-induced licenses and licenses that are otherwise precluded by Fed. R. Evid. 401, 402, and/or 403 by Mass Engineered Design, Inc. ("Mass").  Planar made this objection in its initial objections to Mass's exhibit list (ECF 177-1) and its motion in limine #6 (ECF No. 189 at p. 7 et seq.).  The Court denied the motion in limine with leave to renew at trial.  (ECF No. 252 p. 26 (ruling on MiL #6).

**Legal Standards**

- Fed R. Evid. 401, 402 – The licenses are irrelevant to any issue other than damages.

- Fed. R. Evid. 403 – The probative value of the licenses is substantially outweighed by one or more of: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

- *Rude v. Wescott*, 130 U.S. 152, 164 (1889) ("It is clear that a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard …").

- Regarding "arms-length" negotiations – *see Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) ("A 'reasonable royalty' is a hypothetical royalty for the use of the patented technology by the infringer, calculated as if the parties negotiated at arm's length …").

- Regarding royalties paid, not collected, by Mass – *see Mars, Inc. v. TruRX LLC*, no. 6:13-cv-526-RWS-KNM, 2016 U.S. Dist. LEXIS 121889 (E.D. Tex. Apr. 18, 2016) ("[Damages expert] analyzed the ARTI license under the first *Georgia-Pacific* factor, which is 'the royalties received by the patentee for the licensing of the patent-in-suit …'  In the ARTI license, though, [plaintiff] was the licensee, not the licensor.  [Plaintiff] did not receive the right to collect royalties under the license; rather [plaintiff] obligated itself to *pay* royalties.  Additionally, the '419 patent involved in the license is not one of the patents-in-suit.  The ARTI license, therefore, is also irrelevant to the hypothetical negotiation in this case.  Consequently, the portions of [damages

expert's] reports relying on the Springer and ARTI licenses are hereby STRICKEN, and

[damages expert] is precluded from testifying to the material therein.").


This Court stated, "The Court agrees with the discussion in *Prism* differentiating the

Supreme Court's exclusion in *Rude* of litigation-induced settlements to prove an 'established royalty'

from excluding litigation-induced settlements to prove a 'reasonable royalty.'"  (ECF No. 252 p. 24).


**Discussion / Facts**

Mass's damages expert witness, Mr. Bratic, uses the litigation-induced settlements to prove

an "established royalty," which is prohibited by the Supreme Court's *Rude v. Wescott* ruling.  This is

demonstrated by the following excerpts from Mass's proposed opening statement and Mr. Bratic's

report.

Mass's proposed opening statement demonstrative (ECF No. 235 p. 39) states, "The

evidence will show that Mass has **established** a 5.9% reasonable royalty."  (emphasis added).

The original Bratic expert report (dated Sept. 28, 2015) at p. 15 recites his understanding of

*Georgia-Pacific* factor no. 1, "The royalties received by the patentee for the licensing of the patents-in-

suit, proving or tending to prove an **established royalty**."  (emphasis added).  This is followed, at

pages 18-34 by his analysis of multiple licenses, i.e., Mass/CSAV, Mass/CPSI, Mass/Waterloo,

Mass/RightAngle, Mass/Workrite, Mass/Steelcase, Mass/Fellowes, Mass/ModernSolid,

Mass/SBFI, Mass/Humanscale, Mass/IOP, and Mass/Herman Miller agreements and what he calls

"Other Mass Agreements."  (These licenses are discussed in a table *below*.)

Mr. Bratic concludes his analysis of *Georgia-Pacific* factor no. 1 by stating, at p. 34 ¶92, "The

CSAV Royalty Rate, as well as Mass's subsequent licenses of the '978 Patent in exchange for the

same royalty rate of 5.9%, indicates that **there is an established royalty rate of 5.9%**..."  Mass's

licenses also **establish** that licensees agree to pay a **royalty** on the sales price of the entire licensed product." (emphasis added).

In the next paragraph of his report (i.e. p. 34 ¶93), Mr. Bratic confirms that this is the type of "established royalty" that was prohibited by *Rude v. Wescott* in 1889.  Mr. Bratic confirms this by relying on an earlier Supreme Court case to support his position.  Mr. Bratic quotes an 1886 Supreme Court case, "In *Clark v. Wooster* (1886), the U.S. Supreme Court characterized the importance of established license fees as follows:  It is a general rule in patent causes [sic] that established license fees are the best measure of damages that can be used …"  Thus, it is plain that Mr. Bratic and Mass rely on the litigation-induced settlements to prove an "established royalty."  But the Supreme Court prohibited this methodology three years after the case on which Mr. Bratic relies.

In the next two paragraphs of his report (i.e., pp. 34-35 ¶¶ 94-95), Mr. Bratic further confirms his "established royalty" analysis, stating:

- "An **established royalty** is usually the best measure of a 'reasonable' royalty …"

- "Therefore **Mass's established royalty rate** of 5.9% … is an important benchmark regarding a reasonable royalty …"

- "Under the Book of Wisdom, Mass and Planar would have been aware of Mass's **licensing history and practices** … Mass would have sought to maintain its **standard 5.9% royalty rate**…"

(all emphasis added).

Mr. Bratic later wraps the "established royalty" into his analysis of other *Georgia-Pacific* factors and his summary, as indicated below:

- p. 44, ¶ 117 (*G-P* factor 12) – "Therefore, this factor **highlights the significance of an established royalty rate** as discussed under my analysis of *Georgia-Pacific* Factor No. 1"

- p. 48, ¶ 129 (*G-P* factor 13)  - "Additionally, I have considered that Mass has a history of licensing the Patent-in-Suit **and has established a royalty rate** that it ordinarily seeks …"

- p. 49, ¶ 132 (*G-P* factor 13)  - "**Mass's established running royalty rate** of 5.9% … reflects the value of a non-exclusive license …"

- p. 49, ¶ 134 (*G-P* factor 13)  - "Therefore, **Mass's established royalty rate** of 5.9% … is an indicator of the importance and value …"

*Planar Objection to Admission of Licenses*

- p.51, ¶ 137 (*G-P* factor 15)  - "**Mass has established a royalty rate** of 5.9% … supported by … subsequent licenses with other companies in the industry…"

- p. 15, ¶ 139 (section titled "Reasonable Royalty Base") – "As a result, Mass's extensive licensing history involving the Patents-in-Suit clearly indicates that <u>there is an **established practice of licensees having paid a royalty rate**</u> …"

(all emphasis added).

In Mr. Bratic's supplemental report (dated Jan. 6, 2017), he continues to rely on the established royalty, stating at p. 3 ¶3, "I herein incorporate the Bratic Report in its entirety.  Defined terms in this supplemental report shall have the same meaning as set forth in the Bratic Report." And he continues to rely on the licenses to show an "established royalty," stating, "Therefore, **Mass's established royalty rate** of 5.9% … [N]o further apportionment of **Mass's established royalty rate** of 5.9% …"  (*See* p. 17 ¶ 48 (emphasis added).

Mass attempts to wrap the established royalty into its "reasonable royalty" analysis.  But the foundational step of proving an "established royalty" with litigation-induced licenses is prohibited by *Rude v. Wescott*.  Rather, the "established royalty" under factor 1 of the *Georgia-Pacific* analysis must be proven by other types of licenses, e.g., arms-length, non-litigation-related licenses wherein the party <u>received</u> (rather than <u>paid</u>) royalties.

**TABLE: "License" Exhibits to Which Planar Objects**

| Exhibit | Brief Description | Demonstration that License is litigation-induced (except for PTX 88 and PTX 89) |
|---|---|---|
| PTX 88 | Mass / Moscovitch 2003 Agreement | Not litigation induced, but irrelevant and prejudicial/confusing/misleading under Fed. R. Evid. 401, 402, 403, because this license records self-dealing between Mr. Moscovitch and his 100% owned company, which is further evidenced by Mr. Moscovitch's signature on behalf of both parties to the agreement.  This does not reflect an arms-length deal and is unrelated to a reasonable royalty in patent litigation.<br><br>Further, Mr. Bratic analyzed this license under *Georgia-Pacific* Factor No. 1, which is related to "royalties <u>received</u> by the patentee for the licensing of the <u>patents-in-suit</u>…"  (Bratic |

| Exhibit | Brief Description | Demonstration that License is litigation-induced (except for PTX 88 and PTX 89) |
|---------|------------------|--------------------------------------------------------------------------------|
| | | Report p. 15 ¶¶37-38).  Under the agreement with Mr. Moscovitch, Mass did not receive, but paid royalties.  (See section 4.1, 4.3).  And the license was only partially related to one patent in suit, but included other patents.  (See section 2.1, 1(b), Schedule A).  This should be excluded and testimony about it stricken.  *See Mars, Inc. v. TruRX LLC*, no. 6:13-cv-526-RWS-KNM, 2016 U.S. Dist. LEXIS 121889 at *12-*13 (E.D. Tex. Apr. 18, 2016) (striking licenses and related testimony where plaintiff "obligated itself to *pay* royalties" and the licensed patent "is not one of the patents-in-suit.").<br><br>*See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) ("A 'reasonable royalty' is a hypothetical royalty for the use of the patented technology by the infringer, calculated as if the parties negotiated at arm's length …"). |
| PTX 89 | Mass / Moscovitch 2013 Agreement | Same grounds as PTX 88 (above).<br><br>*See* Bratic Report pp. 15-16 at ¶¶39-41 (analysis of license).  See PTX 89 § 3.1 (royalty paid by Mass); PTX 89 at Exh. A (listing patents), Background (listing and defining "Patents"), §1.1 granting license to "Patents."  Note that multiple non-asserted patents are included. |
| PTX 90 | Summary of licenses | Column titled "Additional Information" confirms that many licenses were "settlement of the Texas Litigation" |
| PTX 91 | Mass / Eizo | PTX 90 p. 1 states, "This agreement was a settlement of the Texas Litigation" |
| PTX 92 | Mass / DoubleSight | PTX 90 p. 1 states, "This agreement was a settlement of the Texas Litigation" |
| PTX 93 | Mass / Peerless | PTX 90 p. 1 states, "This agreement was a settlement of the Texas Litigation" |
| PTX 94 | Mass / Bretford | PTX 90 pp. 1-2 states, "This agreement was a settlement of the Texas Litigation" |
| PTX 95 | Mass / Moview | PTX 90 p. 2 states, "This agreement was a settlement of the Texas Litigation" |
| PTX 96 | Mass/CSAV | First page states, "The total quantity of Licensed Units includes all products … that were accused of infringement in the case *Mass Engineered Design, Inc. v. Ergotron Corp. et al.* …" |
| PTX 97 | Mass / Ergotron and Dell | PTX 90 pp. 2-3 states, "This agreement was a settlement of the Texas Litigation" |
| PTX 98 | Mass/CPSI | First page states, "WHEREAS, Mass filed suit against CPSI … claiming that CPSI has infringed the Patent…"<br><br>PTX 90 p. 3 states, "This agreement was a settlement of the Texas Litigation" |

| Exhibit | Brief Description | Demonstration that License is litigation-induced (except for PTX 88 and PTX 89) |
|---------|-------------------|--------------------------------------------------------------------------------|
| PTX 99 | Mass/Waterloo | This license releases "the 'CompX Released Parties'" from causes of action. (*See* §2.02). CompX has been disclosed by Mass and listed in a document titled "Mass Engineered Design Inc. Patent Suit Analysis Defendants and status." (*See* ECF 214-1 at column A, row 51 (page M244517)). |
| PTX 100 PTX 109 | Mass/RightAngle | PTX 100 - Section 1.01 defines the "2009 Action" as a pending infringement case; Sections 3.1 and 3.2 include releases from the 2009 Action; *see also* PTX 90 p. 3 ("This agreement was a settlement and license resulting from the Eastern District of Texas Litigation…"). PTX 109 is titled "Settlement and Patent License Agreement." It is another settlement with the same party after being subject to litigation previously.  Also, this is objectionable as irrelevant (F.R.E. 401, 402) and prejudicial, confusing, and/or misleading (F.R.E. 403) because it relates to a U.S. Patent that was asserted against some companies, but not Planar, and the Canadian counterpart of that patent.  (Agreement §1.03). |
| PTX 101 PTX 305 | Mass/Workrite Mass / Knape & Vogt / Workrite | Section 1.01 defines the "2009 Action" as a pending infringement case; Section 2.1 includes dismissal of the 2009 Action; *see also* PTX 90 p. 3 ("This agreement was a settlement and license resulting from the Eastern District of Texas Litigation…") PTX 305 is another settlement with the same party after being subject to litigation previously.  Also, this is objectionable as irrelevant (F.R.E. 401, 402) and prejudicial, confusing and/or misleading (F.R.E. 403) because it relates to a U.S. Patent that was asserted against some companies but not Planar and the Canadian and Japanese counterparts of that patent.  (Agreement §1.03). |
| PTX 102 | Mass / Fellowes | PTX 90 p. 4 states, "This agreement was a license resulting from the Eastern District of Texas Litigation." |
| PTX 103 | Mass/ModernSolid | Section 2.1 – "Mass agrees to dismiss ESI without prejudice from the 2009 Action …" PTX 90 p. 4 states, "This agreement was a license resulting from the Eastern District of Texas Litigation." |
| PTX 104 | Mass / Steelcase | Title – "Settlement and License Agreement" (emphasis added). Section 1.01 – "Licensor owns at least one patent that it has asserted against various companies including Licensee." Section 1.03 – "The parties have reached an amicable agreement that resolves all infringement claims that Licensor has raised |

| Exhibit | Brief Description | Demonstration that License is litigation-induced (except for PTX 88 and PTX 89) |
|---|---|---|
| | | with Licensee relating to infringement…" Section 3.04 – "The Licensor covenants not to sue the Licensee for infringement of U.S. Patent No. 36, 978 by any Innovative Office Products, Inc. ("Innovative") unit sold by the Licensee provided a) Innovative remains a defendant in a lawsuit for infringement of U.S. Patent No. 36,978 in which Licensor is a plaintiff…" Sections 3.03, 3.05 – other covenants not to sue and references to infringement claims |
| PTX 105 | Mass / SBFI | p. 1 ("WHEREAS, Defendant previously filed an action alleging patent infringement styled *Mass Engineered Design, Inc. et al. v. SBFI North America*, 2:09-cv-00358-JRG …"); p. 3 §4.1 ("… the parties shall cause their respective counsel to execute and file the Stipulation of Dismissal with Prejudice…"). |
| PTX 106 | Mass / IOP | PTX 90 p. 4 states, "Parties agreed to drop all claims brought in litigation in the Eastern District of Virginia."; *see* §§ 4.6 – 4.9. |
| PTX 107 | Mass/Humanscale | PTX 90 p. 5 states, "Defendants mediated with Plaintiff to form this agreement to settle a pending case in the Eastern District of Virginia, 1:13-cv-535."; *see* § 1 ("We are Plaintiff … and Defendant …"). |
| PTX 108 | Mass/Herman Miller | p. 1 ("WHEREAS, Licensor filed suit against Licensee … for patent infringement …"). |
| PTX 304 | Mass / Milestone | PTX 90 p. 5 states, "Litigation was pending in the Eastern District of Texas, 6:15-cv-570-RWS-KNM." p. 1 ("WHEREAS, Mass filed suit against Licensee … for patent infringement …") |

All of the listed exhibits should be excluded and testimony related to them prohibited.

Dated:  April 23, 2018                          Respectfully submitted,


By:      */s/ Andrew T. Oliver*
           _____
           Jacob S. Gill, OSB No. 033238

           Jenny W. Chen (admitted *pro hac vice*)

           Andrew T. Oliver (admitted *pro hac vice*)

           Attorneys for Defendant Planar Systems, Inc.

*Planar Objection to Admission of Licenses*