Jacob S. Gill, OSB No. 033238
jgill@stollberne.com
STOLL BERNE
209 S.W. Oak Street
Suite 500
Portland, Oregon 97204
Tel.: (503) 227-1600
Fax.: (503) 227-6840

Jenny W. Chen (admitted *pro hac vice*)
Jenny.Chen@ChenIPLaw.com
CHEN IP LAW GROUP
7F, N0. 1, Alley 30, Lane 358, Rueiguang Road
Neihu District
Taipei, Taiwan 114
Tel.: +886.2.7721.8855
Fax: +886.2.7721.8822

Andrew T. Oliver (admitted *pro hac vice*)
aoliver@ATWiplaw.com
AMIN, TUROCY & WATSON LLP
160 W. Santa Clara Street
Suite 975
San Jose, CA  95113
Tel:  (650) 618-6477

Attorneys for Defendant Planar Systems, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MASS ENGINEERED DESIGN, INC.,** | Case No. 3:16-cv-01510-SI |
| Plaintiff, | PLANAR SYSTEMS, INC.'S MOTIONS IN LIMINE REGARDING WILLFUL INFRINGEMENT TRIAL |
| v. | |
| **PLANAR SYSTEMS, INC.,** | |
| Defendant. | |

**Table of Contents**

I.   Motion No. 1 - Preclude Testimony By Irrelevant Witnesses .................................. 4

        1.   Jerry Moscovitch .................................................................... 4

        2.   Walter Bratic ......................................................................... 5

        3.   John Akin ............................................................................... 5

        4.   Peter Heuser .......................................................................... 5

        5.   Ming-Hsien Huang ................................................................. 5

II.  Motion No. 2 - Preclude Testimony Regarding Willful
     Infringement By Mr. Moscovitch ........................................................ 6

    A.   Background ..................................................................................... 6

    B.   Argument ......................................................................................... 7

        1.   Notice Dates ........................................................................... 8

        2.   Mass's Reasons for Dismissing the First Lawsuit .............................. 9

        3.   Alleged Moscovitch Meeting With Planar in 2007 ....................... 10

        4.   Alleged Copying of Mass's Product by Planar ............................... 11

        5.   Mr. Moscovitch's Prior Testimony at Trial ..................................... 13

    C.   Conclusion .................................................................................... 14

III. Motion No. 3 - Preclude Introduction of Irrelevant and Prejudicial
     Exhibits ....................................................................................... 14

IV.  Motion No. 4 - Preclude Mass From Eliciting Testimony
     Regarding Irrelevant And Prejudicial Mental Health Issues ................... 19

    A.   Background .................................................................................. 19

    B.   Mass's Attempt to Introduce Inappropriate Mental Health
       Evidence is Irrelevant and Much More Prejudicial Than
       Probative – Fed. R. Evid. 401, 402, 403 ..................................... 19

V.   Motion No. 5 - Preclude Mass From Eliciting Testimony
     Regarding The Contents Of Documents That Cannot Be
     Authenticated ................................................................................ 24

A.    Introduction.................................................................................................24

B.    Argument ...................................................................................................24

VI.    Motion No. 6 – Exclude Mass's Proposed Exhibits That Cannot Be Authenticated By Any Witness.................................................................................27

Planar Systems, Inc. ("Planar") moves to preclude the introduction of improper evidence, argument, and questions by Mass Engineered Design, Inc. ("Mass") and its witnesses, as set forth herein.

Planar has not yet received many of Mass's exhibits, some of which do not appear to have been produced to Planar. Accordingly, Planar may not be able to present its motions or objections regarding those exhibits until after Mass provides copies of the exhibits.

## I.    Motion No. 1 - Preclude Testimony By Irrelevant Witnesses

Planar moves for an order precluding Mass from offering testimony by witnesses who are irrelevant to the issues being tried. Only testimony relevant to alleged willful infringement should be permitted in the jury trial. And only testimony relevant to inequitable conduct should be permitted in the bench trial. Permitting witnesses to offer irrelevant testimony will result in the jury or Court being presented with information that is more prejudicial than probative.

Yet, Mass's witness list (ECF No. 346) contains a list of witnesses who are offered for testimony that is irrelevant or who have been excluded by the Court. To put this motion in context, the willful infringement inquiry focuses on facts that Planar knew or had reason to know. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016) ("Nothing in *Safeco* suggests that we should look to facts that the defendant neither knew nor had reason to know at the time he acted."). It is directed to Planar's state of mind, not occurrences outside of Planar's state of mind.

The witnesses that Mass has listed and that Planar seeks to exclude are:

### 1.    Jerry Moscovitch

Mr. Moscovitch should be precluded from testifying about any issue other than inequitable conduct. The Court has already ordered that Mr. Moscovitch may not testify regarding willfulness. ECF No. 252 pp. 31-32. Further reasoning for this is addressed in detail in Motion #2, below.

### 2.    Walter Bratic

Mass states that Mr. Bratic will offer testimony regarding damages and reasonable royalties. (ECF No. 346 p. 2).  These topics have already been decided by the jury and have no relevance to the willful infringement inquiry.

### 3.    John Akin

Mass states that Dr. Akin will offer testimony regarding infringement, validity, and benefits of the patents-in-suit, as well as inequitable conduct.  However, infringement, validity, and benefits of the patents have already been adjudicated by the jury.  Dr. Akin should only be permitted to testify regarding inequitable conduct, not the other topics.

### 4.    Peter Heuser

Mass lists Mr. Heuser as a witness.  Mr. Heuser has been excluded twice, once in the pretrial order (ECF No. 162 pp. 27-29) and once during trial (April 26, 2018 trial transcript at pp. 534-546). Mr. Heuser should not be permitted to testify.

### 5.    Ming-Hsien Huang

Mass states that Mr. Huang will testify regarding "willful infringement including copying." However, the only "copying" inquiry relevant to willful infringement is "whether the infringer deliberately copied the ideas or design of another."  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992).  Mr. Huang is neither an employee nor an agent of Planar.  He is the founder of Highgrade, a different company that is independent of Planar.  Mr. Huang designed the products independently of Planar.  And there is nothing (aside from Mass's counsel's insinuations) to suggest that Mr. Huang designed the products at Planar's request.  He did not.  Thus, even if Mr. Huang had copied Mass's products (which he did not), such copying would not have any relevance as to whether the "infringer", i.e., Planar, deliberately copied.

Allowing the jury to hear allegations of copying that are unrelated to the willfulness inquiry

would be highly prejudicial in this case, because Planar buys the accused products from Highgrade. Thus, the jury might attempt to conflate Highgrade's actions with Planar's actions. In this instance, this alleged testimony regarding "copying" would be much more prejudicial than probative and would have no bearing on the jury attempting to discern Planar's state of mind.

For the reasons set forth herein, Planar requests an order precluding Mass from taking the irrelevant and prejudicial testimony from these witnesses.

## II.     Motion No. 2 - Preclude Testimony Regarding Willful Infringement By Mr. Moscovitch

Planar moves for an order precluding Mass from presenting testimony by Mr. Jerry Moscovitch in the willful infringement trial.

### A.       Background

This court already properly ruled that "Mr. Moscovitch may not testify regarding Planar's alleged willfulness." (ECF No. 252 p. 32). This ruling was based on the Court's finding that "Mr. Moscovitch was not disclosed as a witness having knowledge of Planar's alleged willfulness and thus he may not testify on that subject, unless Mass explains why the lack of disclosure is substantially justified or how Planar is not prejudiced by lack of disclosure." (*Id.* at p. 31). The ruling was further based on Planar's objection to Mr. Moscovitch testifying on topics for which he was not properly disclosed during the discovery periods in this case. (ECF No. 178 at p. 2).

The Court did allow Mr. Moscovitch to testify "regarding the history of the company he founded" because the Court found that testimony was "evidence regarding Mass, its use of the patents-in-suit, and its harm suffered by the alleged infringement." (ECF No. 252 pp. 32-33).

However, despite the clear ruling prohibiting testimony regarding willful infringement, Mass Mass's witness statement (ECF No. 346) indicates that Mass intends to call Mr. Moscovitch as a

witness in the jury trial regarding willful infringement.  In prior discussions, Mass verbally indicated

that it intends to call Mr. Moscovitch to testify on four topics, summarized as follows: (1) dates of

notice of infringement allegations and dismissal of the first lawsuit against Planar; (2) Mass's reasons

for dismissing the first lawsuit against Planar; (3) an alleged meeting with Planar in 2007; and (4)

alleged copying of Mass's products by Ergotron.

> **B.**    **Argument**

Only the first topic (i.e., dates of notice of infringement and dismissal of the first lawsuit

against Planar), is relevant to the willful infringement inquiry.  The remainder of the topics are

irrelevant to the willful infringement inquiry, an inquiry focused on facts that Planar knew or had

reason to know.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016) ("Nothing in *Safeco*

suggests that we should look to facts that the defendant neither knew nor had reason to know at the

time he acted.").

Further, with respect to each of the topics below, Mr. Moscovitch was not properly

disclosed as a witness regarding willful infringement, in accordance with the Court's scheduling

orders.  Thus, the Court's ruling at ECF 252 p. 32 should remain in force for the willful

infringement trial.  Mass has not moved (under Rule 16(b)) for permission to amend the deadline for

disclosure of topics of testimony.  And that rule states, "A schedule may be modified only for good

cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Here, Mass could have disclosed all of

the topics on which it wished for Mr. Moscovitch to testify in a timely manner, well before the close

of discovery.  In fact, Mass could have disclosed these topics in December 2014, when it filed its

initial disclosures, because all of the facts occurred before that date.  Mass does not have "good

cause" for its delay.  Specifically, a finding of "good cause" requires diligence.  "Under Rule 16(b),…

'the focus of the inquiry is on the moving party's reasons for seeking modification.  If that party was

not diligent, the inquiry should end.'"  ECF No. 270 p. 6 (citing *Johnson v. Mammoth Recreations, Inc.*,

975 F.2d 604, 609 (9th Cir. 1992)).  Mass was not diligent in seeking permission to amend its

disclosures of testimony topics.  Thus, the order precluding Mr. Moscovitch's testimony should

remain in place.

Additionally, for the reasons set forth below, the subject matter of the proposed testimony is

irrelevant, providing an additional reason to exclude the testimony.

### 1.    Notice Dates

With respect to the dates on which Planar was given notice of infringement, the parties

agreed to the dates.  For example, in a letter to the Court regarding jury instructions, dated April 28,

2018 and transmitted via email at 7:00am, Mass wrote regarding final jury instructions:

> Mass proposes revising this instruction as follows: … For the '978
> Patent, Planar was first notified of the patent on February 16, 2010.
> For the '331 patent, Planar was first notified of the patent on May 12,
> 2014.

(Exhibit 1 at p. 7).  Planar did not oppose these notice dates, and the jury was instructed as to the

dates, based on Mass's proposal and the parties' agreement.  (ECF No. 308 p. 27).  Planar proposed

including these dates in the jury instructions for the willful infringement trial.  (ECF No. 331 at

section labeled 16.1).  Further testimony about the dates would waste time and be needless

presentation of cumulative evidence.  Fed. R. Evid. 403.

Regarding the date on which the first lawsuit was dismissed by stipulation, Planar will

stipulate to that date, i.e., August 2, 2012.  Planar will also stipulate that the jury can be shown

Exhibit 81, i.e., the stipulation of dismissal that shows that date.  (To the extent that Mass attempts

to argue that Mr. Moscovitch needs to testify about what the stipulation of dismissal means to him,

e.g., the meaning of "without prejudice", such testimony reflects only the knowledge of Mr.

Moscovitch which is irrelevant to willful infringement.  *Halo*, 136 S. Ct. at 1933 (no reason to look at

"facts that defendant neither knew or had reason to know.")).

Thus, even though the dates are relevant, Mr. Moscovitch should not be permitted to testify

regarding these dates.

## 2.    Mass's Reasons for Dismissing the First Lawsuit

Mr. Moscovitch's testimony regarding Mass's reasons for dismissing the first lawsuit against Planar should be excluded both because Mr. Moscovitch was not properly disclosed as a willfulness witness and because Mass's reasoning or state of mind is not relevant to the willfulness inquiry. Rather, the Supreme Court stated, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo*, 136 S. Ct. at 1933. The Court continued, "In [the *Safeco* case] we stated that a person is reckless if he acts 'knowing or having reason to know of facts which would lead a reasonable man to realize' his actions are unreasonably risky." *Id.* The Supreme Court summarized, "Nothing in *Safeco* suggests that we should look to facts that the defendant neither knew nor had reason to know at the time he acted." *Id.* Accordingly, there is nothing to suggest that the jury should look at Mr. Moscovitch's personal knowledge or personal reasons for dismissing a lawsuit when attempting to determine whether Planar acted egregiously.

Planar expects that Mr. Moscovitch will attempt to testify both that he intended to file another suit later[1] and that he only dismissed the case because his lawyer became ill and the law firm disbanded.[2] But, Mr. Moscovitch's personal knowledge and intent are irrelevant to the willful infringement inquiry. *Id.*; *see also* ECF No. 162 at p. 7 (quoting *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016) for the proposition that "A determination of willfulness requires an assessment of a defendant's state of mind."). Moreover, Mr. Moscovitch confirmed that he did not divulge this information with Planar:

---

[1] *See, e.g.,* April 25, 2018 trial transcript p. 330 ("Q. Do you have an understanding of what it means to dismiss without prejudice? [Mr. Moscovitch:] It means so we can relaunch a lawsuit …").

[2] *See, e.g.,* April 25, 2018 trial transcript p. 328 ("Q. Can you briefly tell us what happened to this lawsuit? [Mr. Moscovitch:] So the head of the law firm that we had hired became very ill and nearly died, and so his law firm disbanded and then we no longer had a law firm to represent us.").

> Q. … So you had to end the lawsuit because one of your lawyers got very ill, right?
> [Mr. Moscovitch:] Correct.
>
> Q Did you tell that to Planar?
> A Did I tell that to Planar? Planar was released without prejudice.
>
> Q Was Planar ever made aware it was because of that lawyer getting ill?
> A I didn't call them and tell them that, no.
>
> Q So as far as Planar knew, you dismissed the lawsuits. They didn't know why?
> A I'm not sure if people knew. I mean, that was the reason. I'm just not sure we
> informed.

(April 26, 2018 trial transcript at p. 597).  Because Mr. Moscovitch's reasoning for filing the

dismissal was unknown to Planar, it is irrelevant to determining Planar's state of mind and, hence,

irrelevant to the willful infringement inquiry.

Thus, Mr. Moscovitch should not be permitted to testify regarding his personal knowledge

of Mass's reasons for dismissing the first law suit.

### 3.    Alleged Moscovitch Meeting With Planar in 2007

Mr. Moscovitch's testimony regarding an alleged meeting with Planar, in 2007, should be

excluded from the willful infringement trial, because it is not relevant to willful infringement, is more

prejudicial than probative, and will only serve to confuse the jury.  The relevant time period for the

willful infringement inquiry is the period after which "the infringer had knowledge of the patent-in-

suit" and "the allegation of infringement."  *Adidas Am. Inc. v. Skechers USA, Inc.*, no. 3:16-cv-1400-SI,

2017 U.S. Dist. LEXIS 89752 at *9 (D. Or. June 12, 2017) (citing *Mitutoyo Corp. v. Cent. Purchasing,

LLC*, 499 F.3d 1284, 1290 (Fed. Cir. 2007); *Virginia Innovation Scis. v. Samsung Elecs. Co., Ltd.*, 983 F.

Supp. 2d 700, 708 (E.D. Va. 2013); *see also Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910,

918 (Fed. Cir. 2005) (holding that under the rule announced by the U.S. Supreme Court in *Dunlap v.

Schofield*, 152 U.S. 244, 14 S. Ct. 576, 38 L. Ed. 426, 1894 Dec. Comm'r Pat. 224 (1894), in order to

state a claim for willful infringement, a patentee must allege that the infringer acted "with a

knowledge of the patent and of [its] infringement")).  As noted above, the parties have agreed, and

the infringement verdict in the first trial was based on the instruction, that the first notice of the '978 patent did not occur until 2010, and the first notice of the '331 patent did not occur until 2014.  (*See, e.g.,* Exhibit 1 at p. 7; ECF No. 308 p. 27).  Thus, testimony about an alleged meeting at least three years before the first notice date has no relation to the issues that the jury is being asked to decide.

Moreover, allowing such testimony would be highly prejudicial to Planar because Mr. Moscovitch was not disclosed as a witness regarding willful infringement (*see* ECF No. 252 p. 31), thereby precluding Planar from taking discovery from him (or others) as to his knowledge or obtaining testimony from the other alleged participants in the alleged 2007 meeting.  The emails that Mass produced relative to the alleged meeting in 2007 identified five persons at Planar, none of whom are currently Planar employees.  (*See, e.g.,* Mass's exhibits nos. 333 through 350).  And they relate to a time period, 2007, in which it would be difficult and expensive to search for relevant documents and/or attempt to recover related emails (if they exist) from backups.  Mass's attempt to inject this alleged meeting into the willful infringement analysis over a year after the close of discovery and over three years after Mass's Rule 26 initial disclosures has the highly prejudicial effect of preventing Planar from seeking discovery from non-party, non-employee witnesses.  And the meeting has been known to Mass since 2007 and the participants' knowledge should have been disclosed as early as 2014 in initial disclosures.  Further, the disclosure during pretrial proceedings (rather than the discovery period) foreclosed Planar from presenting any rebuttal to Mr. Moscovitch's allegations regarding the meeting.

Because the testimony is both irrelevant and prejudicial and the testimony was not properly disclosed during the discovery period (thereby resulting in prejudice to Planar), Mr. Moscovitch should not be permitted to testify about an alleged 2007 meeting with Planar.

### 4.    Alleged Copying of Mass's Product by Planar

Mr. Moscovitch's testimony regarding alleged copying by Ergotron of a Mass product

should be excluded from the willful infringement trial, because it is not relevant to Planar's alleged willful infringement, is more prejudicial than probative, and will only serve to confuse the jury. The "copying" inquiry relevant to willful infringement is "whether the infringer deliberately copied the ideas or design of another." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992). Here, Mr. Moscovitch seeks to introduce testimony that Ergotron copied Mass's design at a trade show. There is no suggestion that Ergotron acted for Planar or any allegation of any agency relationship between Ergotron and Planar. No Ergotron product is accused of infringement in this case. Thus, Mr. Moscovitch's testimony regarding copying is irrelevant, prejudicial, and will cause jury confusion.

Specifically, Planar expects that Mass intends to introduce testimony that companies photographed Mass's products at a trade show and that Ergotron used such photographs to copy Mass's products. (*See, e.g.,* May 2, 2018 trial transcript at p. 1409). This testimony is not relevant to the inquiry into whether the "infringer", i.e., Planar, copied someone's ideas or design. Rather, the evidence shows that Planar purchased an off-the-shelf product in an arms-length deal with a supplier, i.e., Highgrade. Planar considers different suppliers every year. (*See, e.g.,* April 25, 2018 trial transcript p. 418 ("I have had a chance to look at other monitor suppliers and really, I look at them every year … I don't feel the quality is there. That's why I buy from HighGrade…")). No evidence or testimony suggests that Planar was responsible for Ergotron's alleged copying. And no evidence or testimony suggests that Planar was responsible for Highgrade's design of the products.

For these reasons, Mr. Moscovitch's allegations of copying are irrelevant and prejudicial and will be confusing to the jury. They do not relate in any way to actions taken by Planar or the factors considered in a willful infringement analysis.

Moreover, allowing such testimony would be highly prejudicial to Planar because Mr. Moscovitch was not disclosed during discovery as a witness regarding willful infringement. (*See* ECF No. 252 p. 31). Mass's choice to withhold this disclosure until trial precluded Planar from deposing

him regarding these allegations and then taking discovery or obtaining testimony from Ergotron or others regarding the alleged copying or even investigating Mr. Moscovitch's allegations regarding the purported evidence of copying from an earlier trial. (Indeed, by the time that Mass improperly raised this copying allegation in its rebuttal case, Planar was left with less than 20 minutes of trial testimony time to attempt to gather the relevant documents and/or question Mr. Moscovitch.) Mass's attempt to inject this meeting into the willful infringement analysis over a year after the close of discovery and over three years after Mass's Rule 26 initial disclosures has the effect of preventing Planar from seeking discovery from both Mass and non-party witnesses. And it foreclosed Planar from presenting any rebuttal to Mr. Moscovitch's allegations regarding the alleged copying.

Further, because the testimony is both irrelevant and prejudicial and the testimony was not properly disclosed during the discovery period, Mr. Moscovitch should not be permitted to testify regarding alleged copying of Mass's products.

### 5.    Mr. Moscovitch's Prior Testimony at Trial

In a telephonic hearing, the Court suggested that it might consider permitting any testimony that was already presented in the prior trial to be heard by the willful infringement jury. However, while much of the testimony discussed herein might have been relevant to issues such as infringement, damages, or invalidity, none of this testimony is relevant to the issue that the jury will be deciding in the willful infringement trial. The willful infringement inquiry relates to Planar's knowledge and actions, not the knowledge or actions of other parties such as Mr. Moscovitch or Ergotron. Thus, introducing such information would be prejudicial, confusing, and irrelevant. And, if Planar had been given an indication that Mass would attempt to reintroduce this infringement, damages, and/or invalidity evidence in a willful infringement analysis, Planar would have objected and sought a limiting instruction during the first trial. But because Mr. Moscovitch was prohibited from testifying regarding willful infringement (ECF No. 252 p. 32), Planar understood that Mass

would not willfully disobey the Court's order and that Mr. Moscovitch's testimony was presented only with respect to the other issues that the jury was asked to decide.

### C.    Conclusion

For the reasons set forth herein and the reasons set forth in support of the Court's ruling in ECF No. 252, Mr. Moscovitch should be precluded from testifying regarding alleged willful infringement.

### III.    Motion No. 3 - Preclude Introduction of Irrelevant and Prejudicial Exhibits

Planar moves for an order precluding Mass from introducing Exhibits 333 through 350 into evidence and from offering testimony regarding these exhibits.  The basis for this motion is tripartite.  The exhibits are highly prejudicial.  The exhibits are not relevant to the willful infringement inquiry.  And Mass does not have good cause to seek an order modifying the scheduling order that required disclosure of exhibits by July 10, 2017.  (Each of these exhibits is purportedly an email that was allegedly written in 2007, relating to a meeting between Mr. Moscovitch and Planar, which could have been disclosed in the initial trial exhibit list.)

Planar notes the Court's Order in ECF No. 350 states that Mass's request "to present to the jury the underlying emails and other documents related to this meeting … is conditionally GRANTED, provided that Mass lays an appropriate foundation for the admissibility of those documents and they do not contain any otherwise objectionable content."  By this motion, Planar objects regarding foundation; Planar objects regarding otherwise objectionable content; and Planar objects regarding the belated disclosure of the exhibits (i.e., after trial and a year after the deadline).

First, Mass will not be able to lay the proper foundation for Exhibits 333 to 350. Specifically, the exhibit sponsor, Mr. Moscovitch, was precluded from testifying about willful infringement. (ECF No. 252 p. 32 ("Mr. Moscovitch may not testify regarding Planar's alleged

willfulness.")).  As set forth above in more detail, above, in Motion #2 section A, Mr. Moscovitch was not disclosed as a witness related to willful infringement.  Had he been properly disclosed, Planar could have taken his deposition testimony on the subject and learned that he intended to testify about Exhibits 333 to 350.  Had he been properly disclosed, Planar could have attempted to contact its former employees who allegedly received the emails.  Had he been properly disclosed, Planar could have attempted to search for backups of computer files from the 2007 time frame, to determine whether other relevant documents existed.  Instead, Mr. Moscovitch's testimony regarding this alleged meeting was initially disclosed during trial, well over a year after the close of discovery, after the deadline for expert reports, and after the summary judgment deadline.  Even when presented at trial, this testimony was not related to willful infringement, because it related to Planar's business dealings and the *Georgia-Pacific* factors for a reasonable royalty.  However, the reasonable royalty issue has already been decided by a jury.  And there is no basis to introduce this testimony in a trial that is solely related to allegations of willful infringement.

Second, introduction of Exhibits 333 to 350 (all dated 2007) will be highly prejudicial to Planar and provide no probative value, due to the exhibits predating any notice of alleged infringement.  The parties agreed that the first notices of alleged infringement were in 2010 and 2014, and the jury was instructed regarding these dates.  (ECF No. 308 p. 47 at Instr. No. 38).  The jury found infringement and damages based on these notice dates.  Yet, Exhibits 333 to 350 are all dated 2007, years before any notice of infringement.  And many of Exhibits 333 to 350 contain an email footer that lists Mass's patent numbers.  For example, Exhibit 333 includes the following text in the footer:

> Jerry Moscovitch
> President
> Mass Multiples
> 474 Wellington St W.
> Toronto, Ontario
> M5V IE3

Canada
Tel: (647) 258-3151 ext 224
Fax: 1-866-531-4818
jerry@massedi.com

<http://www.massmultiples.com>
<http://www.massmultiples.com/>

Patent Numbers: US RE. 36978, US 5687939, US 6343006 B1, US
6702604, US 7061754, GB 2384612, GB 2361799, GB 2384610, GB
2384611, DE 60015365.7-08, Chinese ZL00815588.7 ZL 00813248.8,
ZL 00817340.0 KR 667053

Confidential and Proprietary

This e-mail, including attachments, contains information that is
confidential and proprietary. This e-mail and its attachments
constitutes non-public information intended to be conveyed only to
the designated recipients. If you are not an intended recipient, please
delete this e-mail, including attachments, and notify me at (416) 593-
4663 (x224). Unauthorized use, dissemination, distribution, or
reproduction of this email including attachments, is prohibited and
may be unlawful.

(Exhibit 333 at M169335). Thus, a jury seeing this might read the footer and assume that Planar was

on notice of the '978 patent in 2007, contrary to the parties' agreement, contrary to the jury

instructions, and contrary to the law. This would be highly prejudicial to Planar. And introduction

of evidence about a meeting in 2007 has no bearing on the willful infringement inquiry related to

Planar's state of mind in 2010 and later years.

Rather, the law is clear that the relevant time period for the willful infringement inquiry is the

period after which "the infringer had knowledge of the patent-in-suit" and "the allegation of

infringement." *Adidas Am. Inc. v. Skechers USA, Inc.*, no. 3:16-cv-1400-SI, 2017 U.S. Dist. LEXIS

89752 at *9 (D. Or. June 12, 2017) (citing *Mitutoyo Corp. v. Cent. Purchasing, LLC*, 499 F.3d 1284, 1290

(Fed. Cir. 2007); *Virginia Innovation Scis. v. Samsung Elecs. Co., Ltd.*, 983 F. Supp. 2d 700, 708 (E.D. Va.

2013); *see also Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005) (holding

that under the rule announced by the U.S. Supreme Court in *Dunlap v. Schofield*, 152 U.S. 244, 14 S.

Ct. 576, 38 L. Ed. 426, 1894 Dec. Comm'r Pat. 224 (1894), in order to state a claim for willful

infringement, a patentee must allege that the infringer acted "with a knowledge of the patent and of

[its] infringement")). Thus, because Mass made no allegation of infringement in 2007, and notice

did not occur until 2010, introduction of the 2007 emails in a willful infringement inquiry serves no

relevant purpose and will only prejudice the jury.

Third, and finally, this willful infringement trial is a retrial of the willful infringement trial

that was already conducted in April and May, and for which Mass already provided a complete trial

exhibit list by the July 10, 2017 deadline (*see* ECF No. 77 at item 10). Rule 16(b)(4) does not permit

the addition of new exhibits after the deadline for exhibit lists has passed. Where a party objects to

new exhibits,[3] an order permitting new exhibits to be added would require both "good cause" and

the Court's consent. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and

with the judge's consent."). Here, Planar objects to the addition of Exhibits 333 to 350. And no

good cause exists for adding the exhibits.

This is not an opportunity to introduce new theories and new evidence regarding willful

infringement, but rather an opportunity to re-try the issues that were fairly and timely disclosed,

using the witnesses and exhibits that were fairly and timely disclosed. If exhibits 333 to 350 are

accurate, then Mass has had these documents in its possession since 2007. Mass chose not to

include them in its first four trial exhibit lists related to willful infringement. Mass did not properly

move for permission to modify the scheduling order to permit the introduction of new exhibits

related to an issue that has already been tried to the jury. And, under the law of the case in this case,

establishing good cause to amend a scheduling order requires diligence. ECF No. 270 p. 4. Yet,

such diligence must be from the time that the party "had sufficient facts" in which it could "act

---

[3] Planar did not lodge timeliness objections to Mass's first three amendments to its trial exhibit
list. But Planar also did not waive its right to raise such an objection to a later amendment.

diligently to amend" a filing.  ECF No. 270 p. 4.  In this case, Mass allegedly had the emails in 2007.

And Mass relies on its complaint that was filed in 2014 as a pleading of willful infringement.  The

initial exhibit list was filed in July 2017.  The exhibits were added in late-June 2018.  Mass did not

exercise diligence.

Lest Mass argue that it was unaware of the importance of presenting the emails until the jury

trial, the Court has already rejected such arguments in this case, stating, "the diligence requirement

of the good cause prong of Rule 16(b) would be eliminated under circumstances such as in this

case."  ECF No. 270 p. 5.  The Court noted that,

> If the party who inadequately alleged the issue could simply argue that it did not
> know it had inadequately pleaded and needed to amend and so it must now be given
> the chance to amend well after applicable deadlines, the poor pleading would be
> rewarded and an incentive created to plead in a manner that obfuscates rather than
> elucidates.  This is an unacceptable result.

ECF No. 270 pp. 5-6.  The Court stated, "Under Rule 16(b), however, 'the focus of the inquiry is on

the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry

should end.'"  ECF No. 270 p. 6 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th

Cir. 1992)).  Here, Mass was not diligent in seeking permission to amend its exhibit list.  And the

inquiry should end.

The Court also noted, "Prejudice to the opposing party 'might supply additional reasons to

deny a motion.'"  ECF No. 270 p. 6.  Here, Planar would be highly prejudiced by the addition of

these new exhibits.  Planar based its multiple responsive filings (dating back to July 21, 2017, per

ECF No. 77) upon Mass's disclosures of July 10, 2017.  Now, Mass seeks to introduce multiple new

exhibits without allowing Planar the ability to respond to those exhibits in the time frame set by the

court or to work the response to those exhibits into its overall trial strategy regarding infringement,

invalidity, and damages.  Rather, Planar had less than two weeks between the disclosure of the new

exhibits and the trial, as opposed to the more-than-two-months that was built into the original

schedule.  (*See* ECF No. 77 at items 10 and 18.  This is inadequate time to consider and respond with respect to this new addition.

Accordingly, because there is no good cause to modify the scheduling order regarding disclosure of exhibits, because the exhibits are irrelevant to willful infringement, and because the content of the exhibits is highly prejudicial without being probative of any issue, the Court should issue an order excluding Exhibits 333 to 350.

## IV.    Motion No. 4 - Preclude Mass From Eliciting Testimony Regarding Irrelevant And Prejudicial Mental Health Issues

### A.    Background

Planar moves for an order precluding Mass from questioning Mr. Waraksa on cross-examination regarding mental health issues.  Such questions are both irrelevant and highly prejudicial, but not probative of his credibility, competence, or any other relevant issue.

Planar raised this issue in ECF No. 213 (Planar Systems, Inc.'s Reply Regarding Deposition Designations, filed Aug. 9, 2017).  However, this issue became moot when the Court ruled that Planar could not present Mr. Waraksa's testimony with respect to invalidity under 35 U.S.C. §251. (ECF No. 252 pp. 7 et seq. (ruling on Mass's Motion No. 8)).

The discussion herein has been updated, because Mr. Waraksa is expected to testify live regarding inequitable conduct.  Thus, deposition designations are relevant to show the types of questions that Mass intends to ask rather than to show the exact testimony expected.

### B.    Mass's Attempt to Introduce Inappropriate Mental Health Evidence is Irrelevant and Much More Prejudicial Than Probative – Fed. R. Evid. 401, 402, 403

Planar requests that the Court exclude Mass's expected cross-examination of Mr. Waraksa regarding mental health, under Fed. R. Evid. 401, 402, 403 as irrelevant, highly prejudicial yet not probative, and confusing to the trier of fact.

Based upon the relevant factual timeline (see footnote)[4] and the testimony referenced below, Mr. Waraksa had not had any mental health episodes that impaired him during the relevant time period or until years after the '978 patent reissued.  He testified that he had not had any bipolar disorder episodes during the period of August 1995 to April 1996 during which period he wrote the patent application and claims.  (ECF No. 213-1 (Waraksa tr.) p. 110:1-9 ("That was yet to come.  It took years before … I was diagnosed and I had [a] nasty response.")).  His bipolar disorder did not seriously affect him in November 1997 and surrounding time frame and at that time "my insipient bipolar disorder didn't affect my judgment in any way."  (*Id.* pp. 55-56, p. 108).  Mr. Waraksa was first diagnosed with bipolar disorder in 1997 or 1998.  (*Id.* p. 77:17-19).  His bipolar disorder, at times, made it difficult for him to work but he was not "severely impaired in any way" in the 1990s. (*Id.* at p. 79:5-80:3).  The disorder "didn't become very serious until some time about 2002 or 2003." *Id.*  Mr. Waraksa testified that his bipolar disorder

> was diagnosed in '97, but it wasn't – it was years later that I started to truly cycle.  I think it – I still recall it was about 12 years [ago], had to have started about 2002 or 2003.  That's when it became a problem.

(*Id.* at p. 108).  Mr. Waraksa was diagnosed in 1997, not because he had serious problems in 1997 (he testified, "I remember I had no serious problems in 1997") but rather, because he reported a response to antidepressants to a doctor.  *Id.*  And by 2010, six years before his deposition, Mr.

---

[4] The timeline of relevant facts regarding reissue of the '978 patent is:

| Date | Evidence | Event |
| --- | --- | --- |
| August 1995 | Waraksa tr. p. 15:6-18:5 | Mr. Waraksa acknowledged that the inventor wants to obtain a patent |
| April 26, 1996 | PTX 1 ('978 patent) | Mr. Waraksa filed the patent application that eventually issues as '939 patent and reissues as PTX 1 |
| April 18, 1997 | Ex 564 at p. 77 | Patent Office issued Notice of Allowability for the application that will issue as the '939 patent |
| June 27, 1997 | Ex. 564 at p. 81 | Mr. Waraksa paid the issue fee for the '939 patent |
| Nov. 1997 | PTX 1 | '939 patent issued |
| Oct. 1998 | PTX 1 | Inventor filed reissue application re '939 patent |
| Dec. 2000 | PTX 1 at p. 1 | Patent Office issued '978 patent as a reissue of '939 patent |

Waraksa's bipolar disorder was completely managed with appropriate medications. *Id.* at 79:1-4.

Thus, the severe bipolar episodes that affected Mr. Waraksa occurred between 2002 or 2003 and 2010, years after the events in question and years before he gave his 2016 testimony. As noted below by the court in *O'Brien v. Chaparro*, bipolar disorder is a treatable disease that does not impair memory, but is subject to significant prejudicial stigma in our society. *See also* ECF No. 213-1 (Waraksa tr.) p. 106 ("Does that memory loss extend to periods where you're not having a depressive episode? A. Oh no. No.").

Considering all of the evidence, there is no indication that Mr. Waraksa's mental health affected his current testimony, his memory about past events, his credibility, or his competence to testify. Mass has not even attempted to admit evidence suggesting that Mr. Waraksa's mental health would affect any of these issues. And a non-party's mental health status is not relevant to any of the claims or defenses in this action. Rather, without comment or expert testimony, Mass offers the mental health testimony only to prejudice the trier of fact against Mr. Waraksa.

In *O'Brien v. Chaparro*, no. 9:05-cv-80342-JIC (ECF No. 110) (S.D. Fl. Dec. 8, 2005) (filed as ECF No. 213-2), the court considered a witness with the same disorder as Mr. Waraksa (i.e., bipolar disorder). After examining the impact of the disorder on testimony, the Court excluded evidence regarding mental health under Fed. R. Evid. 403. *Id.* (slip op. pp. 5-7). The Court examined documentary and testimonial evidence regarding the effects of bipolar disorder and found that even if a person suffering from bipolar disorder had psychotic episodes, such episodes "are not accompanied by memory loss." *Id.* at p. 6. "The Court conclude[d] that [the witness's] mental condition [was] not relevant to her recollection of specific events absent evidence that the events occurred during her experience of a severe episode of mania or depression." *Id.* The Court properly held,

> [B]ipolar disorder is a treatable disease that does not impair memory. At the same time, the remaining stigma in our society of mental illness makes admission

of such evidence in this case to be substantially more prejudicial than probative. Thus, even if relevant, such evidence should be excluded pursuant to Rule 403.

*Id.* at p. 7; *see also* Deirdre M. Smith, The Disordered and Discredited Plaintiff: Psychiatric Evidence in Civil Litigation, 31 CARDOZA L. REV. 749, 798 (2009)[5] (citing 27 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure §6097 for the proposition that "The potential for evidence of mental illness to inflict unfair prejudice is so great, a party may be precluded from asking a witness questions on the subject unless there is a good faith belief that this line of questioning might lead to evidence pertinent to credibility."); *id.* at 808-809 (""There is overwhelming evidence that being labeled with a psychiatric diagnosis changes people's view of individuals. There is no reason to believe that this prejudice does not transfer into the courtroom.' … Those with less severe forms of mental illness are not spared from stigma; it may simply appear in a different form since these otherwise 'normal'-appearing individuals may be assumed to lack self-control and self-restraint."); *Smith v. Schlesigner*, 513 F.2d 462, 477 (D.C. Cir. 1975) ("A further reason for providing more stringent procedural safeguards in cases involving mental illness is that a finding of mental illness is unfortunately seen by many as a stigma…").

Mr. Waraksa's mental health disorder is even further removed from the relevant facts than the disorder considered in *O'Brien*. Mr. Waraksa did not start having severe episodes until 2002 or 2003 (years after the relevant events of '97- '98 and had the disorder under control by 2010 (years before his deposition in 2016). Due to the temporal remoteness, testimony about his mental health should be excluded. *See United States v. Barnard*, 490 F.2d 907, 913 (9th Cir. 1973) (noting that expert testimony was offered suggesting that the witness was a sociopath and prone to lying and stating, "After conducting its voir dire of [the witness], the court excluded the [witness's Army psychiatric evaluation] report on the grounds that it was of dubious probative value because it reflected

---

[5]  <Available at: http://digitalcommons.mainelaw.maine.edu/faculty-publications/7, last viewed August 6, 2017>

proceedings occurring some twelve years before trial, and that the report dealt with a personality disorder which was not severe enough to bear on the question of competency.  The court felt that any probative value the report might have would be offset by its prejudicial effect on the jury."); *see also United States v. Moore*, 923 F.2d 910, 913 (1st Cir. 1991) ("Evidence about a prior condition of mental instability would be relevant here, however, only if it were to provide some significant help to the jury in its efforts to evaluate the witness's ability to perceive or to recall events or to testify accurately.  If relevant, the district court nonetheless has broad discretionary authority to prohibit cross-examination where that cross-examination would introduce into the case collateral matters that could confuse the jury, that would require later introduction of otherwise unnecessary, additional, potentially clarifying evidence, or that might prejudice one of the parties." (citations omitted)).

Excluding the evidence regarding mental health would be consistent with the Ninth Circuit and the consensus of multiple U.S. Courts of Appeals.[6]  In *Antone*, the Ninth Circuit held that mental health "records are not relevant to [witness's] veracity, and nothing in them should have been made available to [defendant]" where "there is no evidence in this case or in the sealed psychiatric records that [witness] suffered from a serious mental illness shortly before or during the period in which the events to which she testified occurred."  *United States v. Antone*, 981 F.2d 1059, 1061-62 (9th Cir. 1992).  Under *Antone*, such information is not relevant. And based upon the body of appellate law, it is not error to exclude this highly prejudicial information.[7]

---

[6] "[F]ederal courts appear to have found mental instability relevant to credibility only where, during the time-frame of the events testified to, the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness, such as schizophrenia, that dramatically impaired her ability to perceive and tell the truth."  *United States v. Butt*, 955 F.2d 77, 82-83 (1st Cir. 1992); *see also United States v. Kohring*, 637 F.3d 895, 910 (9th Cir. 2011) (favorably citing the preceding quote); *United States v. Sasso*, 59 F.3d 341, 347-348 (2d Cir. 1995) ("In assessing the probative value of [psychological history], the court should consider such factors as … whether the witness suffered from the problem at the time of the events to which she is to testify…").

[7] *United States v. Honneus*, 508 F.2d 566, 573 (1st Cir. 1974) (finding that court acted within its discretion in excluding mental health evidence and noting, "While insanity or abnormality at the time of observing the facts testified to or at the time of testimony are provable, a 'nervous

For the foregoing reasons, Mass should not be permitted to present evidence related to Mr. Waraksa's mental health.

## V.   Motion No. 5 - Preclude Mass From Eliciting Testimony Regarding The Contents Of Documents That Cannot Be Authenticated

### A.   Introduction

Planar moves for an order precluding Mass from questioning Mr. Waraksa regarding documents that cannot be authenticated by any witness.  Introducing such documents and related questions are nothing more than improper attempts to inject significant amounts of hearsay from unauthenticated documents.

Planar raised this issue in ECF No. 213 (Planar Systems, Inc.'s Reply Regarding Deposition Designations, filed Aug. 9, 2017).  However, this issue became moot for the earlier trial when the Court ruled that Planar could not present Mr. Waraksa's testimony with respect to invalidity under 35 U.S.C. §251.  (ECF No. 252 pp. 7 et seq. (ruling on Mass's Motion No. 8)).  Now, this issue is relevant again.

The discussion herein has been updated, because Mr. Waraksa is expected to testify live, and because Mass has now identified the documents on its trial exhibit list.

### B.   Argument

Pursuant to at least Fed. R. Evid. 403, 611(b), 802, and 901, Mass should not be permitted

---

breakdown' at some unspecified time is too remote… The court was entitled to weigh the potential unfairness of a free wheeling inquiry intended to stigmatize the witness against whatever materiality the evidence might have."); *United States v. Gonzalez-Sanchez*, 825 F.2d 572, 586 (1st Cir. 1987) (no abuse of discretion in excluding mental health history where there was no evidence of mental incapacity that would affect ability to testify, no concealment of past mental history, and "the evidence would 'result in undue delay and a waste of time, and needless presentation of cumulative evidence, as well as confuse the jury.'"); *United States v. Diecidue*, 603 F.2d 535, 551 (5th Cir. 1979) (finding no abuse of discretion in excluding evidence of mental capacity in "time period about which [the witness] was attempting to testify" and noting that the "psychiatric records were not probatively related to the events in [the relevant time period]").

to inject hearsay from unauthenticated documents into the proceeding in the form of its questions that include reading the document contents.

Specifically, Planar objects to and requests that the Court (a) preclude Mass from asking Mr. Waraksa to read hearsay aloud and (b) preclude Mass's counsel from himself reading hearsay aloud from documents that are not authenticated.  Mass attempted to do exactly this in the deposition designations that it proposed for the jury trial,[8] leaving Planar with a credible concern that Mass will do the same in this trial.  Yet, the mere act of introducing this information to the Court is intended to prejudice the Court against Mr. Waraksa.  Further, some of the relevant documents bear indications of having been fabricated rather than indications of authenticity.  The documents and the statements therein are highly prejudicial statements insofar as Mass's counsel's allegations of the document contents.  (Planar disputes that there is sufficient evidence to establish that these documents are what Mass purports.)  Mass's counsel alleged that the documents are[9]

(a) Mass's Exhibit 364 (i.e., Waraksa Depo. Exh. 135) an alleged complaint by the Canadian equivalent of the state bar against Mr. Waraksa,

(b) Mass's Exhibit 371 (i.e., Waraksa Depo. Exh. 136) an alleged second letter from the same entity allegedly bearing Mr. Waraksa's signature, and

(c) Mass's Exhibit 370 (i.e., Waraksa Depo. Exh. 137) a document purporting to be a letter sent by Mr. Moscovitch.

With respect to these exhibits, during the deposition Mass's attorney either read aloud from the document or instructed Mr. Moscovitch to do so and then Mass later attempted to designate this hearsay recitation as trial testimony, for example, regarding Exhibit 370, Mass designated the

---

[8] These designations include at least the following passages of Mr. Waraksa's deposition that were designated by Mass, i.e., pp. 81:14-83:2, 84:15-87:22, 88:1-90:10, 92:14-93:17, 99:3-100:9, and 110:10-111:8.

[9]

following testimony:

> "Q. Okay. And in this letter, Mr. Moscovitch says: 'I've tried to contact you without success … Q. And he goes on to say: 'As indicated in my phone mail it is urgent that I talk to you …'"

The expected testimony (based on the deposition designations) will contain further readings of the contents of the documents. In addition, Mr. Waraksa had never received some of these documents and stated the following regarding Exhibits 364 and 370, respectively:

> "I was never served with anything or received any of this. I don't know what the heck is going on there."

> "I don't recall receiving this… I never received this letter."

With respect to these documents: (a) they are not authenticated and are not self-authenticating (Rule 901); (b) the statements contained in the documents that Mass's counsel either read or required Mr. Moscovitch to read during deposition are inadmissible hearsay (Rule 802) because they are being introduced to show the alleged existence of proceedings that apparently did not even happen; (c) the statements are not probative of any fact, but are highly prejudicial (Rule 403), because they purport to concern proceedings and include an alleged letter from a client that was actually never sent; and (d) as they appeared in the deposition, they were cross-examination that is unrelated to the direct examination (Rule 611(b)). Mass may argue that the statements are probative of credibility and proper cross-examination due to credibility issues, but that would only be true if evidence existed to authenticate the documents and show that they are not fabricated or forged. Rather, here, the witness testified that the alleged proceedings did not happen, so even introducing the suggestion of such proceedings is prejudicial. Protecting against this type of highly questionable allegation is the very essence of the requirements of authenticity and the hearsay rule.

Instead, Mr. Waraksa is the only witness in this proceeding who could authenticate these documents; and his consistent deposition testimony was that he had no recollection of any of them. And it is even more damning to Mass's position that in its designations for the April 2018 trial, Mass

did not add any of the documents to its exhibit list when it designated the deposition testimony. This omission demonstrates that Mass does not believe that the documents will be admitted into evidence, but merely seeks to inject innuendo against the witness through counsel's repetition of hearsay and counsel's requirement that the witness read hearsay aloud from the documents.

Accordingly, Mass should be precluded from injecting hearsay into the proceeding by reading aloud (or asking the witness to read aloud) from documents that cannot be authenticated and admitted, pursuant to at least Fed. R. Evid. 403, 611(b), 802, and 901.

## VI.    Motion No. 6 – Exclude Mass's Proposed Exhibits That Cannot Be Authenticated By Any Witness

Planar moves for an order excluding Mass's exhibits that cannot be authenticated by any witness, in particular, exhibits 364, 370, and 371.  (Planar notes that other exhibits may fall into this category after Planar receives the documents from Mass.)

Mr. Waraksa testified at deposition that he was unfamiliar with Exhibits 364 (Waraksa deposition exhibit 135) and 371 (Waraksa deposition exhibit 136).  Regarding Exhibit 371, Mr. Waraksa stated that it appeared to contain his signature.  But he was unable to authenticate either of the documents.  No other witness will be able to authenticate these documents.  Accordingly, these exhibits should be excluded.

Mr. Waraksa testified at deposition that he never received Exhibit 370 (Waraksa deposition exhibit 137), which purports to be a letter sent by Mr. Moscovitch.  However, even if Mr. Moscovitch can authenticate the existence of the document, he will not be able to establish that it was ever received by Mr. Waraksa.  Thus, the purpose for which Mass seeks to introduce the document, i.e., showing that Mr. Waraksa received it or to attack Mr. Waraksa's credibility, cannot be established by any witness.

Exhibits 364, 370, and 371 should be excluded.

Dated:  July 2, 2018                    Respectfully submitted,


By:    */s/ Andrew T. Oliver*
       Jacob S. Gill, OSB No. 033238

       Jenny W. Chen (admitted *pro hac vice*)

       Andrew T. Oliver (admitted *pro hac vice*)

       Attorneys for Defendant Planar Systems, Inc.