# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MASS ENGINEERED DESIGN, INC.**, | Case No. 3:16-cv-1510-SI |
| Plaintiff, | **OPINION AND ORDER ON PRETRIAL MOTIONS, OBJECTIONS, AND OTHER PRETRIAL MATTERS** |
| v. | |
| **PLANAR SYSTEMS, INC.**, | |
| Defendant. | |

John Mansfield, HARRIS BRICKEN, LLP, 511 SW 11th Street, Suite 201, Portland, OR 97214; John J. Edmonds, Stephen F. Schlather, Shea N. Palavan, Brandon G. Moore, and Eric R. Carr, COLLINS EDMONDS & SCHLATHER, PLLC, 1616 South Voss Road, Suite 125, Houston, TX 77057 Of Attorneys for Plaintiff.

Jacob S. Gill, STOLL STOLL BERNE LOKTING & SHLACHTER, PC, 209 SW Oak Street, Suite 500, Portland, OR 97204; Jenny W. Chen, CHEN IP LAW GROUP, 7F, No. 1, Alley 30, Lane 358, Rueiguang Road, Neihu District, Taipei Taiwan 114 (R.O.C.); Andrew T. Oliver, AMIN, TUROCY & WATSON, LLP, 160 W. Santa Clara Street, Suite 975, San Jose, CA 95113. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff, Mass Engineered Design, Inc. ("Mass"), brings this lawsuit against Defendant, Planar Systems, Inc. ("Planar"), alleging infringement of U.S. Patent No. RE36,978 (the "978 Patent") and U.S. Patent No. 8,102,331 (the "331 Patent"). A jury trial was held, beginning April 24, 2018, and ending May 8, 2018. The jury found that Planar was liable for direct infringement, active inducement, and as a contributory infringer and that neither the 978 Patent

nor the 331 Patent were invalid. The jury then awarded Mass money damages in the total amount of $1,150,000. The jury, however, was unable to reach a unanimous verdict on the question of whether Planar's infringement was willful. The Court declared a mistrial only on that question, and otherwise accepted the jury's verdict. The Court then scheduled a new jury trial solely on the question of willfulness. A two-day jury trial is scheduled to begin on Monday, July 9, 2018, at 10:00 a.m., that will address only the question of willfulness. In anticipation of this second jury trial, the parties have filed various pretrial motions, objections, and related matters. This Opinion and Order addresses the parties' pending pretrial motions, objections, and other pretrial matters. Finally, after the jury trial on "willfulness" concludes, the Court will conduct a one-day bench trial on Planar's defense of "inequitable conduct."

**1.    Strict Time Limits to be Observed at Trial**

During the telephone status conference held on June 4, 2018, the parties agreed to the following time limits, which the Court will enforce: each party is allowed 20 minutes for opening statement, three hours for all witness testimony (*i.e.*, direct, cross, redirect, and re-cross examinations), and 30 minutes for closing argument. ECF 320. These time limits, however, do not include jury selection or the Court's instructions to the jury. The Court finds these time limits are reasonable. *See Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) ("Trial courts have broad authority to impose reasonable time limits. Such limits are useful to prevent undue delay, waste of time, or needless presentation of cumulative evidence. While trial courts have discretion to expedite the completion of trials, they must not adhere so rigidly to time limits as to sacrifice justice in the name of efficiency.") (quotation marks and citations omitted).

The Court will monitor the parties' time "chess clock style," with each party's time beginning when counsel starts an examination segment (*e.g.*, direct, cross, redirect, or re-cross)

and ending when counsel concludes that segment. The Court will inform the parties of their consumed and remaining times at the conclusion of each trial day, or more often upon request.

**2.     Planar's Motions *in Limine* (ECF 361)**

   **a.     Motion No. 1: Exclude certain witness testimony
   GRANTED IN PART, OTHERWISE DENIED**

Planar moves to exclude "testimony by irrelevant witnesses." Planar objects to five witnesses. Regarding those witnesses for whom the Court has overruled Planar's motion *in limine*, Planar may object at trial to any specific question or answer, if Planar believes the question or answer is improper under the rules of evidence or any of the Court's rulings.

   **i. Jerry Moscovitch – DENIED**

Planar objects that Mr. Moscovitch should not be allowed to testify at all at the second trial (*i.e.*, the "willfulness trial"). This objection is overruled. At the first trial, the Court ruled that Mr. Moscovitch would not be allowed to testify regarding willfulness because Mass's initial witness statement disclosures did not include willfulness as a topic of Mr. Moscivitch's testimony. During the first jury trial, however, Mr. Moscovitch testified regarding a meeting that took place in 2007 between Mr. Moscovitch and Planar relating to Mr. Moscovitch's patented products. Emails relating to that meeting were then located and produced. Those emails were between Planar employees and Mr. Moscovitch. In lieu of introducing those emails into evidence, the parties agreed at the first trial to a stipulation that was included in the jury instructions. Planar objects to including that same stipulation in the jury instructions in the second trial. Accordingly, the Court will not inform the jury of that earlier stipulation.

The Court, however, will allow Mr. Moscovitch to testify about the 2007 meeting and the related emails. In addition, the Court will allow these emails and other related documents to be received in evidence, if a proper foundation is provided at trial and these documents do not

otherwise contain objectionable material. The 2007 meeting and related emails are relevant to when Planar first became aware of Mass's patent and to Mass's theory that Planar was allegedly involved in the copying of Mass's product.

Although the burden is on Mass to offer evidence that this meeting in 2007 is connected to Planar's requesting HighGrade to copy Ergotron's product that infringed on Mass's product, the Court is satisfied that as a result of and subsequent to the original trial, Planar has had sufficient notice of the meeting, Mr. Moscovitch's testimony, and the emails for the introduction of this evidence, including Mr. Moscovitch's testimony, not to be unfairly prejudicial. The Court also notes that during a June 4, 2018 telephone status conference, the Court stated that it would allow Mr. Moscovitch to testify during the second trial on the same matters to which he testified in the first trial. Thus, there is no unfair surprise to Planar. *See* ECF 320 and 356. Mr. Moscovitch, however, may not offer testimony in which he speculates about Planar's "state of mind."

Moreover, as a condition of the Mr. Moscovitch being allowed to testify on these topics, the Court will allow Planar, if it chooses, to take the deposition of Mr. Moscovitch, not to exceed two hours, before the jury trial commences on Monday, July 9th. This deposition may only cover the topics of the 2007 meeting, the related documents, and the alleged copying of Mass's products. Upon request by Planar, Mass shall make Mr. Moscovitch available for such a deposition on Saturday (July 7th), Sunday (July 8th), or early Monday morning (July 9th), at a time and place mutually convenient to the parties.

      ii. **Walter Bratic – GRANTED**

      iii. **John Akin – RESERVED**

Mass asserts that Dr. Akin will not be called in the jury trial and will only be called as a rebuttal witness to Dr. Yee in the bench trial on the issue in inequitable conduct, if Dr. Yee

PAGE 4 – OPINION AND ORDER ON PRETRIAL MOTIONS

testifies. Because at this time it is not known whether Dr. Yee will testify at the bench trial, the Court reserves ruling on Planar's objection to Dr. Akin.

    **iv. Peter Heuser – GRANTED**

    **v. Ming-Hsien Huang – DENIED**

Planar objects that Mr. Huang should not be allowed to testify regarding "copying" because the only copying that is relevant would be copying by Planar. Mr. Huang, however, is the founder of HighGrade Tech. Co., Ltd. ("HighGrade"). HighGrade is a supplier to Planar for the products at issue in this case. According to Planar, neither HighGrade nor Mr. Huang is an agent or employee of Planar.

The theory propounded by Mass, however, is that Planar sent HighGrade a product made by Ergotron, Inc. ("Ergotron") that infringed Mass's patents and Planar asked HighGrade to design a product similar to Ergotron's infringing products, along with providing HighGrade specifications that Planar knew or should have known also would infringe Mass's patents. Thus, the fact that HighGrade was the entity doing the "copying" is not necessarily dispositive on the issue of relevance, if Mass provides evidence that HighGrade did so at Planar's request or direction. The assertion by counsel for Planar that there is no such evidence is an insufficient basis on which to grant a motion *in limine*. If it is a correct assertion, however, it may support the Court granting a directed verdict or otherwise excluding Mr. Huang's testimony or instructing the jury to disregard it.

    **b. Motion No. 2: Preclude Mr. Moscovitch from Testifying at the Willfulness Trial – DENIED**

This is a primarily a duplicate of the motion above and the Court's discussion in Section 2(a)(i) is incorporated by this reference. Additionally, Planar objects to Mr. Moscovitch testifying to: (1) dates of notice of infringement and dismissal of the first lawsuit against Planar;

(2) Mass's reasons for dismissing the first lawsuit; (3) the alleged 2007 meeting between Mass and Planar; and (4) alleged copying of Mass's products by Ergotron. Planar's first objection is that willfulness only involves facts Planar knew or had reason to know and thus no other facts can be included in the trial. The Court disagrees. Although Planar is correct that for a finding of willfulness by the infringer, only the facts known or that should have been known by the infringer may be considered, but a trial is not held in a vacuum. Having some understanding of what was happening at the time, such as why the first lawsuit was voluntarily dismissed by Mass, gives the jury context in which it can better understand the full picture in order to focus on the facts relevant to the question of willfulness. If a jury is distracted or confused about facts that would seem quite important (such as why a company would dismiss a lawsuit and then bring it again a few years later), that is not a fair or efficient trial. The Court will not admit unreasonably prejudicial or confusing facts and will instruct the jury on the law of willful infringement such that the jury will know to only consider the facts that Planar knew or had reason to know at the time Planar acted. Moreover, the fact of the earlier lawsuit, why it was dismissed and then refiled are relevant to what Planar knew or reasonably should have known regarding Mass's patents and Planar (and Ergotron's) and alleged infringement.

Regarding Mr. Moscovitch testifying as to the date of notice of infringement, the Court is not including Planar's requested instruction regarding the date of notice of infringement. During the first trial, the parties agreed to a damages jury instruction that included notice of infringement dates as the dates the two relevant lawsuits were filed. For purposes of willful infringement, Mass objects to including that instruction. The Court is not including that instruction, although the Court is including the stipulation of the parties regarding when the lawsuits were filed. The parties may argue to the jury at closing about notice of infringement for purposes of willfulness.

Accordingly, unless otherwise inadmissible, Mr. Moscovitch may testify regarding notice of infringement, why he dismissed his original lawsuit, and what he believed was the effect of his dismissal "without prejudice." Further, as discussed above in Section (2)(a)(i), Mr. Moscovitch may testify regarding the alleged 2007 meeting with Planar and, if a proper foundation has been laid and there is not otherwise objectionable content, he may testify regarding the documentary evidence relating to that meeting, including why the emails contained the patent numbers on them. He also may testify regarding the alleged "copying" of Mass's products by Ergotron, if he has otherwise admissible testimony to offer on that subject.

### c. Motion No. 3: Preclude Certain Exhibits
**DENIED, WITH LEAVE TO OBJECT AT TRIAL**

Planar moves to preclude Exhibits 333 through 350 and related testimony. These exhibits are emails relating to the 2007 meeting between Mass and Planar. The Court has already overruled Planar's objection to the related testimony. The Court also overrules Planar's objection that introduction of these exhibits is "too late" and that good cause has not been shown. That standard is for a Rule 16 motion. The Court already ruled that these documents may be received in evidence if a proper foundation is laid and they do not contain otherwise objectionable content.

Regarding Planar's relevance objection, Mass contends that shortly after the 2007 meeting, instead of using Mass's product Planar provided an infringing Ergotron product to Highgrade and requested Highgrade to design a similar product that then also infringed Mass's patent. This evidence is relevant to willfulness.

Regarding Planar's objection that the dates of these documents are before Planar was on notice of its alleged infringement, the date of notice of infringement for purposes of willfulness is disputed. Additionally, conduct after notice of infringement is only one relevant factor for

PAGE 7 – OPINION AND ORDER ON PRETRIAL MOTIONS

willfulness. Intentional copying is a separate factor, and intentional copying could take place before one had notice of infringement. Thus, whether Planar requested that HighGrade intentionally copy the infringing product made by Ergotron is relevant to the willfulness inquiry. During the first trial, evidence was presented showing that Planar provided to HighGrade the infringing Ergotron product, Planar asked HighGrade to make a similar product, HighGrade quickly developed a similar product, and the Ergotron product that Planar gave to HighGrade infringed one or more of Mass's patents.[1]

To be relevant, however, Mass must present evidence that it was Planar that sent the Ergotron product to HighGrade and when Planar became aware that the Ergotron product was infringing one or more of Mass's patents. Without that evidence, Mass may be subject to judgment as a matter of law on the question of willfulness. At this point, however, there is sufficient evidence to support denying Planar's motion *in limine*. Accordingly, conduct that occurred before Mass formally put Planar on notice of alleged infringement may be relevant if it involved intentional copying, which is the theory that Mass appears to be pursuing.

The Court notes that Planar contends that this is a "new theory" by Mass that was not raised in the previous trial. That is not an accurate statement. Mass argued in the previous trial that there was a 2007 meeting, shortly thereafter Planar sent the infringing Ergotron product to HighGrade, requesting that HighGrade create a similar product, and that HighGrade completed this product—from initial concept to completion—in a very short amount of time because it was a copied product. The *evidence* relied on was, among other things, the stipulation (to support

---

[1] For example, Mr. Moscovitch testified regarding the 2007 meeting between himself and Planar. Mr. Huang testified that "one of my customers came to me" in 2007 and brought an Ergotron product, "hoping that I would design a similar product" for that customer to sell. There also was testimony that the Ergotron product provided to HighGrade infringed on Mass's patents, as well as evidence regarding how quickly HighGrade developed its products from conception to completion.

PAGE 8 – OPINION AND ORDER ON PRETRIAL MOTIONS

Mr. Moscovitch's testimony about the 2007 meeting), Mr. Moscovitch's testimony, Mr. Huang's testimony about receiving the Ergotron product from a "client in 2007," and evidence showing the timing of the product from conception to completion. Because there is no stipulation, Mass seeks to submit the 2007 emails as documentary evidence to support Mr. Moscovitch's testimony about the 2007 meeting. The *theory*, however, is not being newly-raised in this trial.[2]

Planar may object at trial to any specific document as not having a proper foundation or as containing otherwise objectionable content. Planar's objection that Mr. Moscovitch cannot lay a foundation because he cannot testify regarding willfulness, or that the documents are objectionable because they are untimely, are without merit and overruled.

### d. Motion No. 4: Preclude Testimony at the Bench Trial on Inequitable Conduct About Certain Mental Health Issues
### DENIED

Planar moves to exclude testimony regarding Mr. Mirek Waraksa's mental health issues and their effect on his memory and the performance of his job as unduly prejudicial. Mr. Waraksa, however, is not testifying before the jury. Concerns of relevance and prejudice are different in a bench trial and Rule 403 has a limited role, if any. *See Harris v. Rivera*, 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) (noting that "in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial); *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (holding that in civil bench trials "evidence should not

---

[2] The Court also notes that Planar cites the Court's opinion discussing the necessity of timely pleading a cause of action and needing good cause untimely to raise a new claim as support that Mass should have known what evidence it was going to need to support its claims and needing to show good cause to add these exhibits. These are entirely different issues. A pleading must raise a cause of action or defense; it does not need to recite evidence or include specific documents that will be used to prove a claim or defense.

PAGE 9 – OPINION AND ORDER ON PRETRIAL MOTIONS

be excluded under [Rule] 403 on the ground that it is unfairly prejudicial"); *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) (indicating that "Rule 403's weighing of probative value against prejudice . . . has no logical application to bench trials"); *see also Woods v. United States*, 200 F. App'x 848, 853 (11th Cir. 2006) (unpublished opinion) (noting that "the part of Rule 403 that authorizes exclusion of evidence because of its unfair prejudicial impact has no logical relationship to bench trials"); *United States v. Hall*, 2000 WL 32010, at *2 (6th Cir. Jan.4, 2000) (per curiam) (unpublished opinion) (noting that undue prejudice was unlikely in a bench trial where "the application of the unfair prejudice portion of Rule 403 has been seen as an unnecessary and 'useless procedure'" (quoting 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5213 (1978 & Supp. 1999))). Accordingly, this motion is denied.

  e. **Motion No. 5: Preclude Testimony About Certain Documents**
    **DENIED**

Planar moves to preclude Mass from questioning Mr. Mirek Waraksa at the bench trial about three documents about which he was questioned during his deposition. As an initial matter, the Court notes that Mr. Waraksa is testifying only at the bench trial on inequitable conduct, and not at the jury trial on willfulness. Thus, concerns of unfair prejudice and confusion are less significant. Moreover, at the bench trial, the Court will only consider admissible evidence in making its findings of fact and conclusions of law.

The documents that are the subject of Planar's motion are Exhibits 364, 370, and 371. Regarding Exhibit 370, a letter purportedly from Mr. Moscovitch to Mr. Waraksa, this motion is DENIED. Issues of admissibility and authentication are addressed in Planar's next motion *in limine*. Regarding what questions Mass might ask Mr. Waraksa and how he might answer at trial, the Court will not rule in the abstract.

Regarding Exhibit 371, this motion is DENIED. Mr. Waraksa testified at deposition that the document appeared to contain his signature. Thus, Mass may ask Mr. Waraksa questions about this document, although Planar may make other evidentiary objections relating to this document, if appropriate.

Regarding Exhibit 364, this motion is also DENIED. Planar argues that Mass may not be able to lay a foundation for this document. That objection, however, concerns the admissibility of the document and not whether Mass may ask questions in an attempt to lay a proper foundation. Mr. Waraksa might be able to answer Mass's questions sufficient to lay a foundation for admissibility. Again, the Court will not rule in the abstract.

    **f.**    **Motion No. 6: Exclude Exhibits that Cannot Be Authenticated RESERVED UNTIL TRIAL**

The Court reserves ruling on the admissibility of exhibits based on insufficient authentication until the Court is presented with evidence of foundation.

**3.**    **Mass's Motions *in Limine***

    **a.**    **Motion No. 16: Exclude HighGrade's Evidence Regarding "Beliefs" Relating to Willfulness – GRANTED**

Mass moves to exclude evidence or testimony regarding HighGrade's own "beliefs" with regard to Planar's willful infringement. This motion is granted because, among other reasons, Mr. Huang was not previously disclosed as a witness who would testify relating "beliefs regarding defenses," as his new witness statement now states. Nor did Mr. Huang offer any such testimony in the first trial. Additionally, Planar's willfulness turns on the facts known or that reasonably should have been known to Planar, not whether HighGrade believed Planar was willfully infringing. HighGrade is a legally distinct and separate entity from Planar. HighGrade's "beliefs" are legally irrelevant to the question of Planar's willfulness.

In addition, Planar's argument that HighGrade's beliefs are relevant because Mass intends to rely on the fact that Planar relied on the statement by a HighGrade salesman that HighGrade had received a opinion from counsel that HighGrade's products did not infringe Mass's patents is unavailing. The issues relevant to the question of Planar's willfulness are what did Planar know (or believe) and when did Planar know (or believe) it. Willfulness turns on the facts known to Planar. Whatever may have occurred that made HighGrade have its own subjective beliefs about whether its products infringed is irrelevant unless it is a fact known to Planar. Further, as previously ruled upon in the first trial, neither party may introduce or discuss the "Trop opinion."

### b. Motion No. 17: Exclude Evidence from Mr. Huang Regarding Design and Manufacture of the Accused Product
### DENIED WITH LEAVE TO RENEW AT TRIAL

Mass moves to exclude Mr. Huang from testifying regarding the design and manufacture of the accused products. Mass argues that the products have already been found to be infringing, and thus the only question is whether Planar infringed willfully. Mass contends that testimony regarding the manufacture of the products is irrelevant, unfairly prejudicial, misleading, and confusing because it conflates infringement, which has already been found, and willfulness, which is the question for this jury.

Mass appears to be arguing that: (a) Planar provided the infringing products to HighGrade and asked HighGrade to make a similar product; (b) HighGrade quickly designed a product by copying Ergotron's infringing product; and (c) this is a contributing factor to Planar's willfulness. Mass also argues Planar's willfulness is found in the indemnification agreement and verbal assurance provided by HighGrade that it had received an opinion that its products did not infringe Mass's patents.

PAGE 12 – OPINION AND ORDER ON PRETRIAL MOTIONS

Factors relevant to willfulness include whether Planar acted in accordance with the standards of commerce for its industry, whether it intentionally copied Mass's products, whether it formed a reasonable belief that it did not infringe Mass's patents, whether it made a good faith effort to avoid infringing, whether it attempted to "design around" the patents, and whether it tried to cover up its infringement. Thus, to the extent that Mass pursues a theory regarding HighGrade copying Ergotron's copy of Mass's product, then HighGrade's manufacture process is relevant to willfulness. Mr. Huang may not, however, testify that the products, in his opinion, did not infringe Mass's patents. Mass may object at trial that any specific question or testimony is irrelevant or otherwise improper to the willfulness factors or beyond the scope of this Opinion and Order.

If, however, Mass only relies on the fact of Planar's reliance on the indemnity agreement and the verbal assurance of a existence of an opinion or non-infringement, then HighGrade's manufacturing process would not appear to be relevant. In that event, Mass may renew this motion at trial.

    **c.    Motion No. 18: Exclude Reference to the Enhancement of Damages GRANTED**

Mass moves to preclude Planar from informing the jury of the fact that damages may be enhanced, including trebled, if the jury makes the underlying factual finding of willfulness. Because whether to enhance damages is solely within the Court's discretion, Mass argues, it is unfairly prejudicial and confusing for the jury to be informed of this information. Further, Mass notes that Ninth Circuit authority has expressly held evidence of treble damages not to be admissible before the jury. *Brooks v. Cook*, 938 F.2d 1048 (9th Cir. 1991); *Noble v. McClatchy Newspapers*, 533 F.2d 1081 (9th Cir. 1975). Mass also cites to other cases excluding testimony relating to enhanced damages, including trebling. ECF 363 at 6-7.

PAGE 13 – OPINION AND ORDER ON PRETRIAL MOTIONS

The Ninth Circuit has expressed concern that knowledge of additional monetary benefits, whether from a collateral source, attorney's fees, or enhanced damages, may improperly affect a jury's verdict and has thus excluded such information. *See, e.g.*, *Brooks*, 938 F.2d at 1053 ("Therefore, we hold that as with information about the right to treble damages or the receipt of funds from a collateral source, the right of a prevailing plaintiff to attorneys' fees under § 1988 should play no part in the jury's deliberation. The information has no relevance to the task before the jury, and might lead the jury to improperly adjust its findings in contravention of the legislative purpose behind § 1988. By telling the jury of the existence of § 1988, the judge erred. Also erroneous was the judge's decision to let the defendants, in their closing argument, comment on § 1988 for the purpose of attacking Brooks's motives."). Accordingly, Mass's motion is granted. No party may discuss the potential that the Court may enhance the damages awarded by the previous jury if the jury in the second trial makes a finding of willfulness.

Planar also argues that HighGrade's indemnification falls within this same category and must also be excluded. The Court disagrees. Unlike treble damages, which is irrelevant to the question before the jury on willfulness, HighGrade's indemnification agreement is relevant to Planar's alleged willfulness. Moreover, any minimal prejudicial effect is outweighed by its substantial probative value.

4.  **Mass's Motion to Exclude the Opinions and Testimony of Dr. Yee GRANTED IN PART, RESERVED IN PART**

Mass moves to exclude the opinion and testimony of Dr. Yee because it is based solely on his opinion that the 742 Provisional Application is "prior art" and material and the Court has already ruled that the 742 Provisional Application is *not* prior art. Planar responds that the Court has not ruled that the 742 Provisional Application is not prior art *for purposes of inequitable conduct* because Planar can now make new arguments that it did not previously make when

PAGE 14 – OPINION AND ORDER ON PRETRIAL MOTIONS

Planar litigated this issue for purposes of Planar's invalidity defenses. Planar also argues that a reference can be "material" for purposes of inequitable conduct, even if it is not prior art.

The Court finds Planar's first argument is without merit. Mass moved in July 2017 to exclude any reference, evidence, or argument that the 103 Patent or anything in its priority chain, including the 742 Provisional Application, are prior art against the 331 Patent. Planar had the opportunity to respond to that motion with any and all arguments about why the 103 Patent and any of the items in its priority chain are prior art. Planar responded primarily by disputing the priority date of the 331 Patent, instead of arguing why the 103 Patent and its priority chain should be considered prior art, and Planar made a general argument against the evidence submitted by Mass. Accordingly, the Court resolved the issue of the disputed priority date of the 331 Patent. Because Planar did not argue that the 103 Patent and its priority chain was prior art if the 331 Patent had the earlier prior date as proposed by Mass, it was not clear to the Court at the time that there was any dispute on this issue and thus the Court allowed the motion to be renewed at trial if there was a dispute.

During the pretrial conference in April 2018 before the first trial, the parties clarified that there was indeed a dispute about whether the 103 Patent and its priority chain constitute prior art, even with the earlier priority date of the 331 Patent found by the Court. The Court thus requested that the parties submit additional authorities and briefing on the matter. In its submission, Planar argued that the 103 Patent and its priority chain constitute prior art under both § 102(a) and § 102(e). After the Court provided a tentative opinion to the parties, Planar then argued at the hearing that the 103 Patent and its priority chain also could constitute prior art under § 102(g), but the Court held that argument was waived because Planar previously had not raised it. The

Court also held that the 103 Patent and its priority chain was not prior art under either § 102(a) or § 102(e).

The Court rejects Planar's argument now that its previous arguments that the 103 Patent and its priority chain are prior art were limited only to Planar's invalidity defenses and that Planar now can raise new arguments for purposes of Planar's inequitable conduct claim. Whether the 103 Patent and its priority chain are prior art is a fact that has already been adjudicated by the Court. Planar had two prior opportunities to raise all arguments supporting Planar's contention that these items are prior art. Although the fact of whether the 103 Patent and its priority chain are prior art, once decided, may have implications for Planar's invalidity defense, inequitable conduct claim, or other issues in the case, it is not a different fact requiring separate adjudication based on the varying context in which the fact might apply. *See, e.g.*, *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) (*en banc*) (noting that often inequitable conduct patentability "will be congruent with the validity determination—if a claim is properly invalidated in district court based on the deliberately withheld [prior art] reference, then that reference is necessarily material because a finding of invalidity in a district court requires clear and convincing evidence, a higher evidentiary burden than that used in prosecution at the PTO").

Planar also argues that a reference need not be prior art to be material for purposes of inequitable conduct. Planar cites to *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012). The Court does not find that *Aventis* supports this proposition because the materiality discussion in *Aventis* expressly involves prior art. The section of the opinion cited by Planar begins: "A prior art reference is but-for material if . . . ." *Id.* (quotation marks omitted). Although later in that section the court discusses "reference" instead of "prior art reference," it is clear from the context of the court's discussion that the "reference" was to prior art.

Historically, the Federal Circuit has not been particularly clear in its discussions (at least to this district court) on whether references for inequitable conduct must be to prior art. The Federal Circuit has stated that to be material, references need to be prior art. *See, e.g.*, *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 940 (Fed. Cir. 1990) ("Since the Viatron 21 device was not prior art, it was not material to patentability."); *Envtl. Designs, Ltd. v. Union Oil Co. of Cal.*, 713 F.2d 693, 698 (Fed. Cir. 1983) ("There was no duty . . . to bring to the attention of the [USPTO] the Riesenfeld disclosure because it was a mere 'conception' and was admittedly not prior art."). Conversely, the Federal Circuit also has stated that materiality encompasses more than just prior art. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1226 (Fed. Cir. 2006) ("Materiality is not limited to prior art but embraces any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." (quoting *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1234 (Fed. Cir. 2003)); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001) (same); *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1382 (Fed. Cir. 1998) ("With regard to the issue of inequitable conduct, we noted that both the parties and the district court appear to have assumed, quite incorrectly, that only prior art can be a material reference. Materiality instead embraces *any* information that a reasonable examiner would substantially likely consider important in deciding whether to allow an application to issue as a patent." (quotation marks and citation omitted) (emphasis in original)).

The Court notes, however, that in *Therasense* the Federal Circuit expressly stated that inequitable conduct claims had "plagued not only the courts but also the entire patent system." 649 F.3d at 1289. Thus, in that case the Federal Circuit created a more rigorous standard of materiality by establishing a "but-for" standard, which replaced the "reasonable examiner"

standard (discussed in the cases cited above allowing for materiality outside of prior art). The new standard explained in *Therasense* is:

> When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference. In making this patentability determination, the court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction. Often the patentability of a claim will be congruent with the validity determination—if a claim is properly invalidated in district court based on the deliberately withheld reference, then that reference is necessarily material because a finding of invalidity in a district court requires clear and convincing evidence, a higher evidentiary burden than that used in prosecution at the PTO. However, even if a district court does not invalidate a claim based on a deliberately withheld reference, the reference may be material if it would have blocked patent issuance under the PTO's different evidentiary standards.

*Id.* at 1291-92 (citations omitted). This standard only includes "prior art" references. The court in *Therasense* also eliminated the "sliding-scale" standard that allowed courts to find inequitable conduct if there was low materiality but strong intent to deceive or vice versa.

In considering the divergence in Federal Circuit case law preceding *Therasense* regarding whether materiality required references be prior art, the older cases that allowed non-prior art references to be material relied heavily on the "reasonable examiner" standard, which the Federal Circuit sitting *en banc* rejected and replaced in *Therasense* with the "but-for" standard. Further, in explaining the "but-for" standard, the court in *Therasense* focused only on prior art. Moreover, the court in *Therasense* equated the "reference" for materiality with the "reference" for invalidity, which necessarily is prior art. Accordingly, the Court finds that for a reference to be material for purposes of inequitable conduct, it must be prior art. The fact that the Federal Circuit sometimes calls the reference "prior art" versus merely "reference" (or, like in *Aventis*, "prior art

reference") does not make a substantive difference, as is evident from the context of when and how those various terms are used.

In summary, the Court reaffirms the applicability of its earlier holding that the 103 Patent and its priority chain, including the 742 Provisional Application, are not prior art. The Court also finds that for a reference to be material for purposes of inequitable conduct, it must be prior art. Accordingly, Mr. Yee is precluded from testifying about the 103 Patent and its priority chain, including the 742 Provisional Application. The Court, however, will allow Planar an opportunity to argue to the Court whether there is any other basis for Mr. Yee's opinions and testimony that were properly disclosed and otherwise meet the standards of *Daubert* and its progeny.

5. **Mass's Motion to Strike Portions of Planar's Trial Brief and Proposed Findings of Facts and Conclusions of Law – DENIED IN PART AND GRANTED IN PART**

Mass moves to strike portions of Planar's trial brief and proposed findings of facts and conclusions of law. As an initial matter, the Court requested that the parties provide proposed findings of facts and conclusions of law for the Court's convenience. They are not evidence. The Court will rely on evidence admitted at trial to draft the Court's findings of facts and conclusions of law. Similarly, Planar's trial brief is not evidence. Thus, the Court interprets Mass's motion as a motion *in limine* to limit evidence at trial relating to the topics Mass has indicated it wishes to strike from the brief and proposed findings of fact and conclusions of law.

Mass's motion appears to challenge Planar's assertion that the 742 Provisional Application is prior art under §§ 102(a), (g), and (f) and that it was inequitable conduct to fail to disclose it. As construed by the Court, Mass is seeking to exclude evidence of inequitable conduct based on failing to disclose the 742 Provisional Application. The Court incorporates by reference its immediately preceding ruling on Mass's motion to exclude the testimony of Dr. Yee. Accordingly, Planar may not make new arguments about why the 742 Provisional

PAGE 19 – OPINION AND ORDER ON PRETRIAL MOTIONS

Application qualifies as prior art, and may not present any evidence relating to the 742 Provisional Application because it is not prior art and thus is not material to patentability.

## CONCLUSION

The parties' pretrial motions, objections, and other pretrial matters (ECF 333, 351, 361, and 363) are resolved as stated in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 6th day of July, 2018.

<u>/s/ Michael H. Simon</u><br>
Michael H. Simon<br>
United States District Judge