IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| **MASS ENGINEERED DESIGN, INC.**, | Case No. 3:16-cv-1510-SI |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| **PLANAR SYSTEMS, INC.**, | |
| Defendant. | |

John Mansfield, HARRIS BRICKEN, LLP, 511 SW 11th Street, Suite 201, Portland, OR 97214; John J. Edmonds, Stephen F. Schlather, Shea N. Palavan, Brandon G. Moore, and Eric R. Carr, COLLINS EDMONDS & SCHLATHER, PLLC, 1616 South Voss Road, Suite 125, Houston, TX 77057 Of Attorneys for Plaintiff.

Jacob S. Gill, STOLL STOLL BERNE LOKTING & SHLACHTER, PC, 209 SW Oak Street, Suite 500, Portland, OR 97204; Jenny W. Chen, CHEN IP LAW GROUP, 7F, No. 1, Alley 30, Lane 358, Rueiguang Road, Neihu District, Taipei Taiwan 114 (R.O.C.); Andrew T. Oliver, AMIN, TUROCY & WATSON, LLP, 160 W. Santa Clara Street, Suite 975, San Jose, CA 95113. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Defendant Planar Systems, Inc. ("Planar") alleges in its Amended Answer and Counterclaims that Plaintiff Mass Engineered Design, Inc. ("Mass") engaged in inequitable conduct before the United States Patent and Trademark Office ("PTO"). First, Planar alleges inequitable conduct in the reissue proceedings relating to U.S. Patent No. RE36,978 (the '978

Patent). Specifically, Planar alleges that Mr. Jerry Moscovitch, the owner of Mass and inventor of the '978 Patent, submitted a false declaration dated October 1, 1998 (the "Moscovitch Declaration").

Second, Planar alleges that Mass engaged in inequitable conduct before the PTO in prosecuting U.S. Patent No. 8,102,331 (the '331 Patent), by failing to disclose material information. Planar alleges that Mass failed to disclose a provisional application, U.S. Patent Application Serial No. 60/113,742 (the '742 Application), filed December 23, 1998. Because of pretrial rulings made by the Court, however, no evidence of Planar's inequitable conduct claim relating to the '331 Patent was admissible at trial.

Planar requests only equitable relief. The Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1338. The Court held a bench trial on July 11 and 12, 2018. Having weighed and evaluated all of the evidence and considered the legal arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a). For the reasons that follow, the Court finds in favor of Mass.

## LEGAL STANDARDS FOR INEQUITABLE CONDUCT

1. Inequitable conduct is an equitable defense to patent infringement. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). "To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Id.* at 1287.

2. "The accused infringer must prove both elements—intent and materiality—by clear and convincing evidence." *Id.* These are separate elements. *Id.* at 1290. "[A] court must weigh the evidence of intent to deceive independent of its analysis of materiality." *Id.*

3. "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference." *Id.* at 1290 (emphasis in original) (quotation marks omitted). "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.*

4. "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. However, to meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Id.* (citation and quotation marks omitted). This means that when multiple reasonable inferences can be drawn, intent to deceive cannot be found. *Id.* "[T]he evidence must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." *Id.* (emphasis in original) (quotation marks omitted).

5. Generally, "the materiality required to establish inequitable conduct is but-for materiality." *Id.* at 1291.

6. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* In making this assessment, the court applies the preponderance of the evidence standard, and gives the patent claims their broadest interpretation. *Id.* at 1291-92.

7. In cases of "affirmative egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." *Id.* at 1292.

8. If the party asserting inequitable conduct meets its burden to prove both elements, then the court "must weigh the equities to determine whether the applicant's conduct before the PTO warrants rendering the entire patent unenforceable." *Id.* at 1287.

# FINDINGS OF FACT

Pursuant to Federal Rule of Civil Procedure 52(a)(1), the Court finds the following facts by a preponderance of the evidence.

## A. Credibility of Witnesses

At trial, the Court received testimony from Mr. Mirek Waraksa and Mr. Moscovitch. Although the Court does not find that either witness intentionally testified falsely or in a misleading manner, the Court finds that Mr. Waraksa had problems with his recollection and testified inconsistently, both on the stand and as compared to his previous sworn testimony, which was received only for impeachment purposes. The Court notes that Mr. Waraksa testified regarding his longstanding mental illness diagnosis and medications, and their effect on his memory and ability to recall details. The Court also received testimony via deposition designations from Mr. Mark Elchuk, a former patent attorney for Mr. Moscovitch. The Court finds that testimony to be generally credible, although Mr. Elchuk did not have a clear recollection of the relevant events.

## B. Background of the Relevant Patents

1. On April 26, 1996, Mr. Waraksa, as the patent agent for Mr. Moscovitch, filed U.S. Patent Application No. 08/638,158 (the '158 Application) titled "Dual Display System." On November 18, 1997, this application issued as U.S. Letters Patent No. 5,687,939 (the '939 Patent).

2. On October 13, 1998, patent attorney Mark Elchuk filed U.S. Patent Application No. 09/172,193 (the '193 application), on behalf of Mass and named inventor Mr. Moscovitch, seeking a reissue of the '939 Patent. On December 5, 2000, this application issued as the '978 Patent, which is a reissue of the '939 Patent.

3. The '978 Patent claims broader coverage than does the '939 Patent.

4. The '978 Patent adds claims 16 and 17, which, in general terms, more broadly claim a display system comprising of a pair of electronic displays with an arm assembly for supporting the displays (or monitors), support means for the arm assembly, mounting means to angle the monitors towards each other or relative to one another (the "booking" feature), and some type of base (either a separate base member or a support means that has a base).

**C. Facts Relevant to the Alleged False Declaration**

5. Mr. Waraksa's mental health condition was present during the relevant time period and was affecting his legal practice.

6. Mr. Waraksa and Mr. Moscovitch discussed the booking feature before Mr. Waraksa prosecuted the '939 Patent and filed the '158 Application on behalf of Mr. Moscovitch.

7. Mr. Waraksa erroneously believed that Mr. Moscovitch could not successfully obtain a patent on the booking feature of the dual monitor stands based on prior art Mr. Waraksa had reviewed. Mr. Waraksa so advised Mr. Moscovitch.

8. In December 1997, Mr. Moscovitch requested that Mr. Waraksa obtain patent coverage for his ball and socket invention related to the dual monitor stands, which, among other things, allows the booking feature, through a "divisional" or "continuing" patent application to the '158 Application. Unbeknownst to Mr. Waraksa or Mr. Moscovitch, by that time the '939 Patent had already issued from the '158 Application. This fact was unknown because Mr. Waraksa had inadvertently set the envelope aside and never opened it.

9. In December 1997, Mr. Moscovitch paid Mr. Waraksa to pursue this divisional, or continuing, patent application. At this point in time, however, it was too late because the '939 Patent had issued.

10. In the Moscovitch Declaration, Mr. Moscovitch made the following statements, which Planar alleges are false:

a. "At the time of filing and during the prosecution of the '158 application, neither I nor my patent attorney, Mirek A. Waraksa, appreciated that the existing claims of the '158 application were unnecessarily limited as noted above."

b. "I relied on Mr. Waraksa's professional judgement that a claim of the scope as [sic] claim [16] above was not patentable in view of the prior art that Mr. Waraksa and I reviewed prior to preparing and filing the '158 application."

c. "Upon the grant of the '939 patent, both I and Mr. Waraksa still did not appreciate that the claims of the '939 patent were unnecessarily limited in view of the prior art."

d. "Due to personal problems he was having that seriously affected the management of his practice, Mr. Waraksa did not even inform me of the issuance of the '939 patent in November, 1997 when I contacted him to inquire as to the status of the '158 application in December, 1997."

e. "In January of 1998, I became very concerned with Mr. Waraksa's failure to answer correspondence from me."

f. "I explained to Mr. [George] Rolston, just as I had initially to Mr. Waraksa, that my desire had always been to obtain a U.S. patent covering the displays being supported on a mounting arm, where the mounting arm was capable of being moved between vertical and horizontal orientations to thus support the displays attached to it in either a horizontal (i.e., side-by-side) fashion or in a vertical (i.e., one

above the other) fashion, as also where the two displays could be adjusted themselves relative to the support such that they were angled toward each other."

      g.    "Mr. Elchuk explained to me that he did not feel this limitation was required for the patentability of the independent claims of the '939 patent, although prior to this conversation both Mr. Waraksa and I were both of the belief that this limitation was necessary for patentability of the claims of the '939 patent."

      h.    "The errors and omissions arose inadvertently . . . ."

11.    For all of the challenged statements in the Moscovitch Declaration, the Court finds that Planar has not shown by clear and convincing evidence that they are "unmistakably false statements" and thus "affirmative egregious misconduct" that is presumed material.

12.    For all of the challenged statements, the Court finds that Planar has not shown by clear and convincing evidence that Mr. Moscovitch made the statements with the specific intent to deceive the PTO.

13.    At best, Planar's evidence shows that: (a) Mr. Waraksa is unclear in his memories of the events: (b) Mr. Waraksa has similar memories to Mr. Moscovitch on many key facts, although Mr. Waraksa remembers some of them occurring at different times with respect to the timeline of the prosecution of the '939 Patent; (c) Mr. Waraksa and Mr. Moscovitch have some differing memories; and (d) Mr. Waraksa, as the patent agent for Mr. Moscovitch, does not believe that he made any errors, inadvertent or otherwise. This a far cry from meeting Planar's burden. Even Mr. Waraksa's belief that he did not make any errors is not clear and convincing evidence that on October 1, 1998, Mr. Moscovitch, based on his personal knowledge obtained from his understanding of conversations with Mr. Waraska and Mr. Moscovitch's subsequent

patent attorneys Mr. Elchuk and Mr. Rolston, did not have an understanding that he and Mr. Waraksa had made errors and that those errors were inadvertent.

14. The Court also notes that there is documentary evidence and testimony by Mr. Waraksa that support the challenged statements.[1]

    a. Exhibit 362 supports the statements set out in statements 10(a), (b), and (f). These statements relate to Mr. Moscovitch's original desire to patent the booking feature and his original erroneous understanding, based on Mr. Waraksa's erroneous belief, that the booking feature would not be able to be patented. In Exhibit 362, a letter dated December 17, 1998 to the Law Society of Upper Canada, Mr. Moscovitch describes the importance of the booking feature to his invention, his desire to have it covered by the patent, and Mr. Waraksa's explanation that the booking feature could not be covered by a patent.

    b. Exhibit 366 supports the statements set out in statements 10(a), (b), and (f). This is a document dated August 25, 1995, which describes the dual monitor display invention. It describes the key feature of the horizontal and vertical alignment ability, but it also describes the "additional motions" of the "independent tilt and swivel" of the monitors "by means of ball and socket joints," which includes the booking feature.

    c. Exhibit 630 supports the statements set out in statement 10(d) ("statement (d)"). Exhibit 630 is a letter from Mr. Waraksa to the Law Society of Upper Canada dated June 3, 1999. It is in response to a complaint made by Mr. Moscovitch. First, Mr. Waraksa admits that Mr. Moscovitch is correct regarding his allegations relating to Mr. Waraksa's health problems. What Mr. Moscovitch had alleged is that during the time

---

[1] This is evidence in addition to the testimony of Mr. Moscovitch, which support the statements he made in his declaration.

Mr. Waraksa was preparing the '158 Application and advising Mr. Moscovitch on prosecuting the '939 Patent, Mr. Waraksa "was undergoing serious personal and mental health problems, and also was in serious financial difficulty." Ex. 362. Mr. Moscovitch describes problems in 1995, 1996, and 1997. In his response in Exhibit 630, Mr. Waraksa states that Mr. Moscovitch "is correct regarding my health problems," explains that he has experienced recurrent problems that have impaired his ability to work, and explains that his doctors are still searching for an effective combination of medications.

Second, in Exhibit 630 Mr. Waraksa admits that in December 1997 he accepted payment to pursue a divisional application because Mr. Waraksa was unaware at that time that the '939 Patent had issued in November 1997. Mr. Waraksa states that the bar to the divisional application "was acknowledged," and the funds were then spent on other legal matters. The only reasonable interpretation of these admissions by Mr. Waraksa is that as of December 1997 he did not know the '939 Patent had issued and he did not inform Mr. Moscovitch the patent had issued. He did not learn of this fact until later and at that point informed Mr. Moscovitch the patent had issued and that Mr. Moscovitch was barred from pursing the divisional application.

    d.    Exhibit 395 supports statement 10(d). It shows the payment to Mr. Waraksa in December 1997 for pursuing the divisional patent application.

    e.    Mr. Waraksa's testimony supports statement 10(d). He testified that Mr. Moscovitch was correct in his statement that Mr. Waraksa had not informed Mr. Moscovitch about the issuance of the '939 Patent. TR 397:16-20.

    f.    Exhibit 370 supports statement 10(e) that in January 1998 Mr. Moscovitch became concerned with Mr. Waraksa's failure to respond to communications.

Exhibit 370 is a letter to Mr. Waraksa from Mr. Moscovitch in which Mr. Moscovitch states that he has tried to contact Mr. Waraksa since January 9, 1998, without success. Mr. Moscovitch states that it is "URGENT that I talk to you immediately." (emphasis in original).

  g. Although the Court does not specifically find that the statements in the Moscovitch Declaration are true, this evidence further supports the Court's findings that Planar has not shown by clear and convincing evidence that the statements are false and that they were submitted to the PTO with the intent to deceive the PTO.

15. The later disclosures and declarations submitted to the PTO are not clear and convincing evidence that the statements in the Moscovitch Declaration are unmistakably false or made with the specific intent to deceive the PTO.

  a. The August 30, 1999 Supplemental Information Disclosure Statement by Mr. Elchuk disclosing prior art does not affect the veracity of Mr. Moscovitch's statements in the Moscovitch Declaration.

  b. The July 21, 1999 Supplemental Oath of Jerry Moscovitch confirming that the errors requiring the reissue applications arose without any deceptive intent comports with the statements in the Moscovitch Declaration and does not demonstrate that the Moscovitch Declaration is false. For the reasons discussed with respect to the Moscovitch Declaration, the Court finds that Planar fails to show by clear and convincing evidence that this statement is false. Thus Planar fails to show a pattern of false statements being submitted to the PTO.

  c. The Court finds credible the testimony that Mr. Moscovitch originally believed that Mr. Waraksa had retained the original copy of the '939 Patent. This

testimony is also supported by Exhibit 379, an email dated November 29, 1999, from Mr. Moscovitch's email account (although signed by Mr. Moscovitch's secretary) to Mr. Waraksa with the subject line "URGENT!!" In this email Mr. Moscovitch's secretary notes that she has tried contacting Mr. Waraksa and notes that Mr. Moscovitch "would like to know as soon as possible, where is the original patent for the 'dual display system'?" Accordingly, the Court does not find the December 8, 1999 Declaration of Jerry Moscovitch, which states that Mr. Moscovitch believes that the original patent was never forwarded from Mr. Waraksa and has been lost, to be false.

        d.        The Court also does not find the correction sent to the PTO by Mr. Elchuk, which states that the original patent was in the possession of Mr. Rolston and not lost by Mr. Waraksa, to be clear and convincing evidence of falsity. The Court finds that Mr. Moscovitch and Mr. Elchuk at first erroneously believed that Mr. Waraksa had lost the original patent and when it was discovered in Mr. Rolston's possession the information was corrected with the PTO.

        e.        Finally, the Court does not find the fact that Mr. Moscovitch resubmitted his declaration in February 2000, even though in the interim he had received a copy of Mr. Waraksa's letter to the Law Society refuting many of the assertions made by Mr. Moscovitch's in his complaint to the Law Society (and admitting to some of them), to be clear and convincing evidence of inequitable conduct. Mr. Waraksa and Mr. Moscovitch recall certain events differently. Mr. Moscovitch did not change his declaration after reading Mr. Waraksa's recollection of events and refusal to admit in the context of a legal complaint that he made any legal errors. This is not clear and convincing evidence of a specific intent to deceive with either declaration. It also is not

clear and convincing evidence that Mr. Moscovitch's original statements, which he did not change after reading Mr. Waraksa's unilateral statements, were unmistakably false. Nor is it clear and convincing evidence that the later declaration is false, thereby showing a pattern of false declarations being submitted to the PTO.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact and Legal Standards, the Court makes the following Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a)(1).

**A. Planar's Claim of Inequitable Conduct Relating to the '331 Patent**

1. The Court incorporates herein by reference its previous orders relating to the priority date of the '331 Patent (ECF 252), the conclusion that the '742 Application, and all other aspects of the priority chain of which it is part, do not constitute prior art of the '331 Patent (ECF 303), and the conclusions that Planar may not raise new arguments at this late stage as to why the '742 Application is prior art and the that the '742 Application is necessarily not material to the PTO (ECF 372).

2. Planar has not shown by clear and convincing evidence that Mass engaged in inequitable conduct by failing to disclose a material reference when prosecuting the '331 Patent.

3. The Court finds in favor of Mass with respect to Planar's claim of inequitable conduct relating to the '331 Patent.

**B. Planar's Claim of Inequitable Conduct Relating to the '978 Patent**

4. Planar argues that because Mr. Waraksa intentionally did not include the booking feature in the '158 Application, the error necessarily cannot be inadvertent and Mr. Moscovitch's statement to the contrary is false as a matter of law. This argument, however, is without merit. "An attorney's failure to appreciate the full scope of the invention qualifies as an error under section 251 and is correctable by reissue." *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997);

PAGE 12 – OPINION AND ORDER

*see also* 35 U.S.C. § 251 (1994) (establishing that "[w]henever any patent is, through error without any deceptive intention, deemed wholly or partially inoperative or invalid . . . by reason of the patentee claiming more or less than he had a right to claim in the patent" a patent can be reissued).[2] The Court has found that Mr. Waraksa erroneously believed that the booking feature could not be patented. Thus, he did not appreciate the full scope of the invention. Mr. Waraksa and Mr. Moscovitch's original failure to claim that feature was done through an erroneous belief that it would not be patentable, not with deceptive intention. Moreover, the booking feature was not surrendered during prosecution of the '939 Patent, and thus remained eligible to be claimed during reissue and not precluded under the recapture rule. *In re Clement*, 131 F.3d at 1468.

5. Planar has not shown by clear and convincing evidence that Mass engaged in inequitable conduct by submitting a false affidavit dated October 1, 1998, to the PTO with the specific intent to deceive to the PTO.

6. The Court finds in favor of Mass with respect to Planar's claim of inequitable conduct relating to the '978 Patent.

## CONCLUSION

Based on the evidence presented at trial, the Court finds in favor of Plaintiff, Mass Engineered Design, Inc.

**IT IS SO ORDERED**.

DATED this 20th day of July, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[2] The statute has since been amended to remove the phrase "without any deceptive intention," but this was the version in effect at the time of the reissue of the '939 Patent.