# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MASS ENGINEERED DESIGN, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **PLANAR SYSTEMS, INC.**, <br><br> Defendant. | Case No. 3:16-cv-1510-SI <br><br> **OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

John J. Edmonds, Stephen F. Schlather, Shea N. Palavan, and Brandon G. Moore, COLLINS, EDMONDS, SCHLATHER & TOWER, PLLC, 1616 South Voss Road, Suite 125, Houston, TX 77057; John Mansfield, HARRIS BRICKEN, 121 SW Morrison Street, Suite 400, Portland, OR 97204. Of Attorneys for Plaintiff.

Andrew T. Oliver, AMIN, TUROCY & WATSON, LLP, 160 West Santa Clara Street, Suite 975, San Jose, CA 95113; Jacob S. Gill, STOLL STOLL BERNE LOKTING & SHLACHTER, PC, 209 SW Oak Street, Suite 500, Portland, OR 97204; Jenny W. Chen, CHEN IP LAW GROUP, 7F, N0. 1, Alley 30, Lane 358, Rueiguang Road, Neihu District, Taipei City 114, Taiwan (R.O.C.). Of Attorneys for Defendant.

Before the Court are two issues relating to the jury's verdict in favor of Plaintiff, Mass Engineered Design, Inc. ("Mass"), and against Defendant, Planar Systems, Inc. ("Planar"). The first is Plaintiff's motion to set a prejudgment interest rate relating to the jury's award of money damages. The second is Plaintiff's request for post-verdict royalty.

A. **Prejudgment Interest**

The Supreme Court has held "that prejudgment interest should be awarded under § 284 absent some justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1263 (Fed. Cir. 2014) ("Prejudgment interest should ordinarily be awarded absent some justification for withholding such an award."). An award of prejudgment interest is necessary to ensure that a patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement. *General Motors*, 461 U.S. at 655-56 ("An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the forgone use of the money between the time of infringement and the date of the judgment.").

Mass requests that prejudgment interest be set at six percent. Mass asserts that it had to borrow money during the relevant time period as a result of Planar's infringement and failure to pay royalties. Mass further asserts that it paid rates ranging from five and one-half percent to nearly eight percent. Thus, Mass argues, a rate of six percent is a reasonable rate to compensate Mass and put it in the position it would have been in had Planar entered into a reasonable royalty agreement. Mass submits the declaration of Jerry Moscovitch as evidence of these loans and their interest rates. In the alternative, Mass argues that the prime rate should be used, because the Treasury bill rate during the relevant time period was at historically low rates and did not represent the realistic cost of borrowing.

Planar objects to the admission of Mr. Moscovitch's declaration because the information it contains was not timely disclosed during fact discovery. Planar also argues that the Treasury bill rate is standard in the Ninth Circuit and should be used in this case, regardless of how low or

PAGE 2 – OPINION AND ORDER

high it was during the relevant time period. Planar further argues that Mass should not be awarded prejudgment interest for three years because Mass caused undue delay in waiting two years to file the litigation after dismissing the first lawsuit against Planar, and then by filing the case in the Eastern District of Texas instead of Oregon.

Planar's objection to Mr. Moscovitch's declaration is overruled. The Court stated during the telephone conference with parties relating to the issue of prejudgment interest that the Court was interested in the actual cost of borrowing during the relevant time period. Mass responded by submitting evidence relating to its actual cost of borrowing. This evidence is timely.

Planar's request that Mass not be awarded prejudgment interest for three years also is rejected. Prejudgment interest may be limited or denied "where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *General Motors*, 461 U.S. at 657. Mass explains that its two-year delay in filing a new lawsuit against Planar was the result of Mass defending several declaratory judgment actions that had been filed throughout the United States. Mass had to use attorneys charging by the hour, after Mass's contingency-fee attorney withdrew due to illness. One month after the last of those actions was settled, and after Mass obtained new contingency-fee counsel, Mass filed this action. The Court does not find undue delay on the part of Mass. The Court also does not find undue delay on the part of Mass based on the original filing of this action in the Eastern District of Texas. That court denied Planar's motion based on improper venue, and only granted the motion to transfer venue based on convenience. The delay in transferring was because that court decided to retain jurisdiction until after claim construction.

In considering the appropriate interest rate for prejudgment interest, courts have broad discretion. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (citation omitted) ("A trial court is afforded wide latitude in the selection of interest rates, and may award

interest at or above the prime rate."). The Ninth Circuit, in a case involving a collision at sea, noted that the Treasury bill rate is appropriate for fixing the prejudgment interest rate "in cases such as this . . . unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate." *Western Pac. Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984). In patent cases arising in California, however, district courts routinely apply the California state statutory interest rate of seven percent. *See, e.g.*, *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 2018 WL 1805102, at *2 (S.D. Cal. Apr. 17, 2018) ("Here, the Court finds that California's statutory rate of seven percent is appropriate to fully compensate Columbia and to prevent Seirus from being unjustly enriched by its infringement of the Design Patent."); *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d 1284, 1330 (S.D. Cal. 2010), *aff'd in part, vacated in part*, 702 F.3d 1351 (Fed. Cir. 2012) ("California courts have found that a simple interest rate of 7% is usually appropriate to fully compensate the plaintiff for the infringement.").

Courts also consider whether the patent holder borrowed money at a rate other than the Treasury rate. *See, e.g.*, *Kowalski v. Mommy Gina Tuna Res.*, 2009 WL 855976, at *6 (D. Haw. Mar. 30, 2009) (considering whether it was the patent holder or an unrelated entity who actually borrowed the money and thus paid the higher interest rate); *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 721 (D. Del. 1993) (noting that where the plaintiff is a net borrower, "the cost of borrowing money—and not the rate of return on investing money—provides a better measure of the harm [the plaintiff] suffered as a result of the loss of the use of money over time"); *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 1990 WL 293886, at *3 (D. Or. Sept. 19, 1990) ("I awarded plaintiff prejudgment interest on its patent claims at the rate of interest *actually paid* by plaintiff. Plaintiff is entitled to be compensated for the actual amount of interest it paid." (emphasis in

original)); *cf. Uniroyal*, 939 F.2d at 1545 ( "[I]t is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate."). Thus, the Treasury rate is not necessarily the *de facto* rate, even for courts in the Ninth Circuit.

Mr. Moscovitch states in his declaration that he created a separate entity, Sidlin Realty, Inc. ("Sidlin"), which he owned during the relevant time period. Sidlin held title to the building and real estate of Mass's headquarters. Because of Mass's legal and financial situation, including in part Planar's infringement and failure timely to enter into a royalty agreement, Mass could not obtain any loan. Sidlin thus borrowed money from 2007 through 2015, secured by the building and land that was Mass's headquarters. Those loans were passed through to Mass to pay operating expenses. At first Sidlin did not charge Mass any extra interest, but within one year Sidlin began charging Mass one percent additional interest.

Sidlin's loans from 2007 through early 2015 were at fluctuating interest rates, but all were above 6 percent. For example, the rate paid by Sidlin in 2009 was 6.625 percent and the rate in 2015 was 6.85 percent. Because Sidlin was charging Mass an extra one percent, Mass was paying 7.625 percent and 7.85 percent in those years respectively. In March 2015 Sidlin borrowed funds at 4.5 percent and paid off all earlier loans. In June 2015, Sidlin and Mass merged, with Mass as the remaining entity. On July 6, 2015, Mass sold the real property that was the security on the loan, and the loan was paid off. Thus, as of July 6, 2015, Mass no longer had any borrowed funds.

The Court finds that the equities in this case support a higher interest rate than the Treasury bill rate. Mass had to borrow money for five years during the relevant time period at interest rates significantly higher than the Treasury bill rate. Had Planar timely entered into a royalty agreement, Mass would have had more funds to spend on its operating and legal

expenses and may not have needed to borrow any, or at least as much, money. The Court notes, however, that Mass stopped borrowing in July 2015, and the prejudgment interest in this case will run through much of 2018. Thus, choosing an interest rate based on the rate of Mass's loans may overcompensate Mass.

Under the circumstances of this case, the Court is persuaded that the prime rate will best compensate Mass. It balances the time period that Mass had to borrow money at a higher rate with the time period that Mass did not borrow money at a specific rate. *Cf. IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007), *on reconsideration in part*, 2007 WL 1232184 (D. Del. Apr. 25, 2007) ("Courts have recognized that the prime rate best compensate a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money."); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2008 WL 928535, at *4 (N.D. Cal. Apr. 4, 2008) (awarding the prime rate and noting that "it is the rate charged by banks to its most credit-worthy customers" (quotation marks omitted); *A&L Tech. v. Resound Corp.*, 1995 WL 415146, at *5 (N.D. Cal. June 29, 1995) ("Absent evidence of A & L's cost of borrowing money or its rate of return on investments, the prime rate more nearly approximates the position A & L would have been in had ReSound entered into a reasonable royalty agreement than either of the proposals of the parties."). The Court therefore sets the prejudgment interest rate at the prime rate, compounded quarterly. The parties shall confer on the amount of prejudgment interest that should be included in the Court's judgment. If the parties cannot reach agreement on this amount after conferring in good faith, they may each submit their own proposed calculation of prejudgment interest not later than two weeks from the date of this Opinion and Order.

## B. Post-Verdict Royalty

Mass also requests that the Court set a post-verdict royalty for ongoing infringement. Mass argues that the jury awarded damages for past infringement and thus the Court needs to address Planar's ongoing infringement. Planar objects, arguing that although the verdict form asked for damages for past infringement, the verdict form was inconsistent with the jury instructions, and the jury instructions were clear that a lump sum award had to be for both past and future infringement. Thus, concludes Planar, the jury awarded damages for both past and future infringement and there is nothing left for the Court to determine.

The verdict form in this case is unambiguous. It stated

> What amount of money, if any, has Plaintiff, Mass Engineered Design, Inc., proven by a preponderance of the evidence is fair and reasonable to compensate Mass Engineered Design, Inc. for past infringement by Defendant, Planar Systems, Inc. of the 978 or 331 patents? In answering, you are to consider what amount, if any, Mass has proven by a preponderance of the evidence is a fair and reasonable royalty to which it is entitled for the 978 and/or 33 patents.

Planar did not timely object to the verdict form's reference only to "past infringement." Thus, Planar has waived this objection.

The verdict form's reference to a royalty is because the general damages jury instruction provided that the damages awarded could not be "less than a reasonable royalty." Jury Instr. No. 36. The jury instructions then defined "reasonably royalty-generally." Jury Instr. No. 37. This instruction described how a royalty is the payment for a license that would have been negotiated between the parties, taking place at the time the infringing activity first started. The instruction then described how a reasonable royalty can be calculated in several ways and directed the jury to decide the best way based on the evidence presented. The first method described is the "ongoing royalty" method, taking the number of units sold and multiplying them

PAGE 7 – OPINION AND ORDER

by a percentage of the sales price. Another type of "ongoing royalty" is taking a certain dollar amount per unit sold and multiplying it by the number of units sold.

The general royalty instruction also described a "lump sum" royalty, wherein the parties negotiate one lump sum to cover all past and future infringement. The instruction noted this type of royalty differs from the ongoing royalty because it is not based on the revenue of any unit sales of infringing products. It is instead a single price for a license of past and future sales. The general royalty instruction concluded by stating: "It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the patent."

The evidence presented to the jury only addressed past infringement. Each party's expert calculated damages based on past sales, dating through March 31, 2018. Mass's expert used a royalty percentage rate of 5.9 percent for sales through September 2016 and 3.5 percent from September 2016 through March 31, 2018. Mass's expert calculated damages through March 31, 2018 at $1,399,682, rounded to $1.4 million. Tr. 1087:16-21 ("My opinion is that reasonable royalties due and owing Mass, assuming the two patents in suit are valid and infringed, are at least $1,399,682, so rounded to about $1,400,000. The reason I say 'at least,' these are the sales records from March 31, 2018, over a month ago, which is the last date I have records."). Planar's expert used various per-unit rates, ranging from 20 cents to $1. Planar's expert calculated damages through March 31, 2018 at $302,000. Tr. 1363:5-8 ("So at the bottom here, it shows that if both of the patents in suit would apply for damages, the appropriate royalty through March 2018 would be $302,000."). Neither party provided argument or expert testimony relating to future infringement, anticipated future sales, or lump sum damages encompassing past and future infringement together.

During deliberations, the jury asked whether it was required to pick the damages number proposed by either Planar's expert ($302,000) or Mass's expert ($1.4 million), or whether the jury could decide its own figure. After consulting with the parties, the Court told the jury that it was not required to choose one number or the other but "may determine an appropriate damage figure based on the jury instructions." Tr. 1801:2-3. The jury instructions, as noted above, required the jury to determine an appropriate royalty based only on the evidence presented. The jury awarded damages in the amount of $1,150,000.

Planar argues that because the jury awarded an amount of money that was an even amount with "four zeros at the end," it is necessarily a "lump sum" royalty as described in the royalty jury instruction and cannot be an "ongoing royalty" calculated on a per-unit or percentage of sales basis. Planar asserts that the "lump sum" royalty in the royalty jury instruction must include past and future infringement and thus conflicts with the verdict form that states only past infringement. Planar, however, does not explain how its argument comports with the fact that Planar's own expert, who applied a per-unit calculation, reached an "ongoing royalty" damage figure of $302,000, which has "three zeros" at the end and also is a rounded number. Nor is Planar's argument consistent with all of the references by the parties at trial, and with the jury's question, to Mass's expert's calculation of the percentage-of-sales "ongoing royalty" as $1.4 million, which is a rounded number with five zeros at the end. Thus, the conclusion that the jury awarded a per-unit or percentage of sales royalty only for past infringement, even though the jury used a rounded and even number, is the only reasonable conclusion consistent with the evidence presented at trial by the parties and their witnesses. There simply is no evidentiary basis to support Planar's argument that the jury awarded a "lump sum" royalty for past and future infringement, as the term "lump sum royalty" is defined in the

PAGE 9 – OPINION AND ORDER

jury instructions. Further, Planar did not ask the Court to query the jury on this point before the jury was discharged, thereby waiving that objection.

More importantly, as Planar correctly asserts, juries are presumed to follow their instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). The jury was instructed to award a royalty based only on the evidence presented. There was no evidence presented related to future sales, future infringement, or a lump sum royalty encompassing past and future infringement.[1] The Court finds that the jury awarded damages only for past infringement. *Cf. Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012) (noting that where "the parties limited their damages arguments to past infringement rather than projected future infringement" the instruction to award "damages" meant past damages only). As well explained by U.S. District Judge Michael W. Mosman:

> Although the verdict form and jury instructions did not contain an explicit damages cutoff date, based on the evidence presented at trial, I believe the jury did not consider or award damages for the period of time between the close of discovery (December 31, 2013) and the entry of the verdict (October 10, 2014). First, as Mentor points out in its briefing, both sides' experts limited their damages calculations to sales and market conditions up to and including December 31, 2013. Neither expert included models or a proposed methodology for how those calculations could be projected into the future.

*Mentor Graphics Corp. v. Eve-USA, Inc.*, 2015 WL 1097317, at *3 (D. Or. Mar. 11, 2015) *aff'd* 851 F.3d 1275 (Fed. Cir. 2017).

Unlike the situation in *Mentor Graphics*, the verdict form in the pending case employed a "cutoff" date when the verdict form expressly asked for the amount of "past" damages. Planar

---

[1] Planar makes some argument in its briefing that isolated comments at trial like "total" royalty and "entire time period" was meant to include future infringement. This is without merit. It is clear from the context of those comments and the testimony as a whole that the entire time period being discussed was through March 31, 2018, and the total royalty being discussed was past damages through that date.

argues that there is a conflict between the jury instructions and the verdict form and that the jury instructions must govern. The Court rejects Planar's argument and finds that there is no conflict. The jury instructions directed the jury to decide an appropriate royalty based only on the evidence presented at trial. No evidence was presented relating to anticipated future sales, any future infringement, or any calculated lump sum involving both past and future infringement. The only argument and evidence presented to the jury related to past infringement and damages for past infringement. Thus, there was no conflict with the verdict form that asked for an amount in compensation for past infringement.

Planar also argues that Mass did not request an ongoing royalty in its Complaint. This argument is without merit. Mass requested a reasonable royalty. Mass also requested relief under 35 U.S.C. § 283, which allows a court to grant injunctions on such terms the court deems reasonable. The Federal Circuit has held that courts may award ongoing royalties in lieu of an injunction under § 283. *See, e.g.*, *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007) ("Under some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate."). Thus, Mass sufficiently alleged in its Complaint relief that might encompass an ongoing royalty to put Planar on notice.

The jury found that Planar's products infringe Mass's patents. The jury awarded damages for past infringement. The Court declines to enter a permanent injunction on Planar's future sales of infringing products. The Court finds, however, that Mass is entitled to ongoing royalties to the extent Planar continues to sell infringing products.

Finally, the Court follows the Federal Court's suggestion in *Paice* and instructs the parties to negotiate a license amongst themselves. To ensure this process does not take too long, the Court sets a briefing schedule for the Court to set a reasonable royalty in the event that the

parties are unable to agree on a license. The parties shall file simultaneous opening briefs on a reasonable ongoing royalty on September 28, 2018, and simultaneous response briefs on October 12, 2018. The parties shall notify the Court Clerk if they reach agreement on an ongoing license.

## CONCLUSION

Plaintiff's motion to set a prejudgment interest rate (ECF 404) is GRANTED IN PART. The prejudgment interest rate is set at prime, compounded quarterly. The parties are directed to confer in good faith about this calculation and to file within two weeks from the date of this Opinion and Order either a stipulated calculation based on the Court's ruling (with both parties preserving their objections to the Court's ruling) or their respective calculations for the appropriate amount of prejudgment interest. The Court also finds that the jury awarded damages only for past infringement and that Plaintiff is entitled to an ongoing reasonable royalty for any future infringement. The parties are directed to attempt to negotiate a license in good faith. If, however, their negotiations are unsuccessful, the parties shall file simultaneous opening briefs regarding the amount of a reasonable ongoing royalty on September 28, 2018, and simultaneous response briefs on October 12, 2018.

**IT IS SO ORDERED.**

DATED this 11th day of September, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge