**Jacob S. Gill,** OSB No. 033238
Email: jgill@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile:  (503) 227-6840

**Jenny W. Chen** (admitted *pro hac vice*)
Email: Jenny.Chen@ChenIPLaw.com
CHEN IP LAW GROUP
7F, N0. 1, Alley 30, Lane 358
Rueiguang Road
Neihu District,  Taipei City  114
Taiwan (R.O.C.)
Telephone: (886)-2-7721-8855
Facsimile:  (886)-2-7721-8822

**Andrew T. Oliver**  (admitted *pro hac vice*)
Email: aoliver@ATWiplaw.com
AMIN, TUROCY & WATSON, LLP
160 West Santa Clara Street, Suite 975
San Jose, California 95113
Telephone: (650) 618-6481
Facsimile:  (216) 696-8731

**Attorneys for Defendant Planar Systems, Inc.**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MASS ENGINEERED DESIGN, INC., | Case No. 3:16-cv-01510-SI |
| Plaintiff, | PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING ROYALTY |
| v. | |
| PLANAR SYSTEMS, INC., | **[AUTHORIZED TO BE FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]** |
| Defendant. | |

**Table of Contents**

I.      Introduction...............................................................................................1

II.     Argument ..................................................................................................1

        A.      Mass Failed to Apportion Damages.................................................2

        B.      Mass Incorrectly Assumes That Planar Should be Deemed
                a Willful Infringer ........................................................................4

        C.      Mass Relies Heavily on an Expert Report That Should be
                Struck .......................................................................................10

        D.      Mass Failed to Update the Hypothetical Negotiation as
                Required by the Federal Circuit....................................................11

III.    Mass's Requests for Pre-Judgment Royalties and Accountings............................14

IV.     Conclusion ................................................................................................15

## I.    Introduction

Pursuant to the Court's Order in ECF No. 413 directing "the parties shall file simultaneous response briefs [on a reasonable ongoing royalty] on October 12, 2018," Planar Systems, Inc. ("Planar") hereby submits its Response Brief Regarding Ongoing Royalty, responsive the Plaintiff Mass Engineered Design, Inc.'s ("Mass") filing styled "Plaintiff's Opening Brief on a Reasonable Ongoing Royalty Rate" (ECF No. 415).

## II.    Argument

Mass's opening arguments are fatally flawed in multiple manners, such that adopting Mass's royalty proposal amounts to nothing more than an invitation for remand and further proceedings.

In the first fatal flaw, Mass ignored a century-old mandate of the Supreme Court requiring that a patentee "must" submit evidence apportioning damages between infringing and non-infringing features of the accused products.  Because Mass failed to meet its burden of proof, regarding apportionment, the only competent evidence is that put forward by Planar, suggesting that the Court set a royalty rate of 0.5% for the of the value of the alleged "wrap-around" arm for most products, and 1.5% of the arm value for the triple monitor stand.

In Mass's second fatal flaw, Mass relied heavily on the assumption that Planar is a willful infringer, even though the Supreme Court's recent *Halo v. Pulse* decision inherently overruled the case law on which Mass based that assumption.  Since *Halo* reworked the willful infringement analysis, it is now clear that a verdict of infringement does not transform a knowing infringer into a willful infringer, especially where the knowing infringer does not try to conceal its infringement.  Yet, despite this, Mass relies on no-longer-applicable case law to support its claim for enhanced royalties.

PAGE 1 -  PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
          ROYALTY

Mass's third fatal flaw is relying upon an improper expert report that is so late and so full of improper analysis that the report should be struck (as set forth in the motion to strike that is being filed contemporaneously with this document).  Without this improper expert report, Mass is left with only facts related to the pre-verdict hypothetical negotiation that would have occurred eight to ten years ago.  Mass does not base its request on post-verdict considerations as is required.

Mass's final fatal flaw is failing to update its analysis of the hypothetical negotiation and the related *Georgia-Pacific* factors to account for the current factual situation.  Mass ignored the trial testimony and relied upon an incomplete summary suggesting that the facts have not significantly changed since 2010.  As pointed out in Planar's opening brief, however, many of the factors have significantly changed since 2010, rendering Mass's cursory review less than useful.

While Mass's analysis is significantly flawed and fails to apply either the facts or the relevant legal authorities, Planar's opening brief (ECF No. 416) demonstrates that a proper royalty would be 0.5% of the arm value for most products and 1.5% of the arm value for the triple monitor stand.  Using the only figures in the record that demonstrate the cost of the arms of the accused products, this would result in a per unit royalty of $0.03 for dual monitor stands, $0.06 for quad monitor stands, and $0.09 for triple monitor stands.

### A.    Mass Failed to Apportion Damages

As Planar stated in its opening brief (ECF 416 p. 13 et seq.) and also states in its motion to strike Mr. Bratic's declaration (to be filed the same day as this brief), Mass did not put forward any evidence or analysis apportioning damages between the features of the '331 patent and the unpatented features of the accused products.  However, unless the patent to be licensed is

PAGE 2 -  PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
         ROYALTY

the sole driver of demand for the accused products, the patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l., Inc.*, 894 F.3d 1258, 1270 (Fed. Cir. 2018) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). In this case, the '978 patent expired in 2016, well before the post-verdict hypothetical negotiation. Mass argued at trial that the '978 patent was the "flagship" patent, driving demand for the accused products. (*See, e.g.,* ECF No. 416 pp. 13-14 (summarizing testimony)). Since 2016, all of the features of the '978 patent that allegedly drove demand have been in the public domain and not subject to any royalty. *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2405 (2015) ("[A] patent holder cannot charge royalties for the use of his invention after its patent term has expired."). Thus, because the '331 patent is not the sole driver of demand for the patented products, Mass was required to apportion damages for the post-verdict hypothetical negotiation, but did not. Thus, Mass's arguments and evidence, if accepted will lead to an ongoing royalty finding that invites remand and further proceedings.

On the other hand, Planar pointed to some evidence, albeit limited evidence that suggests that the apportioned value of the arms in the accused products is about $6 for dual monitor stands and about $12 for quad monitor stands. (*See* ECF No. 416 pp. 15-16). Planar also pointed to a hypothetical negotiation showing that the value of the '331 patent is minimal for Planar's dual and quad stands, but has slightly higher value for the triple monitor stands. (*See id.* at p. 19). Based on this information incorporated into a post-verdict hypothetical negotiation, Planar showed that the ongoing royalty should be set at 0.5% of the apportioned value for the dual and quad monitor stands and 1.5% of the apportioned value for the triple monitor stands. (*See id.* at p. 31).

PAGE 3 -  PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
          ROYALTY

This would result in a per unit royalty of (0.005 X $6.00, or) $0.03 for dual monitor stands, (0.005 X $12.00, or) $0.06 for quad monitor stands, and (0.015 X $6.00,[1] or) $0.09 for triple monitor stands.

Because Mass failed to meet its burden of proof regarding apportioned damages, the Court should adopt the only evidence of record and set the per unit royalty rates at $0.03, $0.06, and $0.09 as further detailed in the preceding sentence.

**B.    Mass Incorrectly Assumes That Planar Should be Deemed a Willful Infringer**

Mass incorrectly relies heavily on outdated legal principles for a presumption that Planar should be deemed a willful infringer and, therefore, an enhanced royalty should be assessed. However, the case law on which Mass relies was upended when the Supreme Court issued the *Halo* decision in June 2016. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  In *Halo*, the Supreme Court overturned the Federal Circuit's test for willful infringement and stated that it was reverting to the "'sound legal principles' developed over nearly two centuries" that "limit[] the award of enhanced damages to egregious cases of misconduct beyond typical infringement." *Id.* at 1935.  In this case, Planar was tested twice by juries to determine if its conduct was egregious.  Both juries refused to find that Planar exhibited egregious misconduct beyond typical infringement.

At least two district courts (one, with a Federal Circuit judge sitting by designation) have considered the impact of *Halo* on the ongoing royalty analysis.  Both have reached well-reasoned explanations of why a jury verdict of infringement should not alone lead to an assumption of

---

[1] Neither party introduced evidence of the apportioned value of the arms in the triple monitor stand.  Thus, for purposes of this analysis, Planar has assumed that they are approximately the same as the dual monitor stand arms.

PAGE 4 - PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING ROYALTY

willful infringement or an enhanced ongoing royalty.  In the first such opinion, Judge Bryson of

the Federal Circuit, sitting as a trial judge by designation, specifically questioned the

applicability of pre-*Halo* cases (including specifically identifying the *Mondis* case cited by Mass)

with respect to the assumption that post-verdict infringement was willful.  *Erfindergemeinschaft*

*UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2017 U.S. Dist. LEXIS 111425 at *36

and *36 n. 2 (E.D. Tex. July 18, 2017) (noting that "the Halo decision counsels against" an

assumption that post-verdict infringement is willful).  And Judge Bryson also pointed out that

"the entry of a verdict and judgment does not justify recharacterizing [defendant's] post-verdict

behavior as 'wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed

– characteristic of a pirate.'"  *Id.* at *34 (citing *Halo*).  Rather, Judge Bryson reasoned,

> Although [defendant] nows know that a jury has found its conduct to be
> infringing, [defendant] has not committed any new acts deserving of enhanced
> punishment.  [Defendant] has merely continued its previous conduct with the
> reasonable belief that [plaintiff] would not seek an injunction and in
> circumstances in which [defendant] would be required to pay any ongoing royalty
> to which [plaintiff] is entitled… And because [plaintiff] has in fact not sought an
> injunction, there is no apparent reason that [plaintiff] would want [defendant] to
> cease its infringing conduct at this point.

*Id.* at *34-*35.

Planar notes that Judge Bryson did award an enhanced ongoing royalty in the

*Erfindergemeinschaft* case.  However, the royalty was not enhanced due to assumed willfulness.

Rather, as Judge Bryson noted that one side's expert witness found that defendant's post-verdict

profit margins would be "5.2 times as high" and the other estimated that profits would be "twice

as high" as the pre-verdict period.  *Id.* at *38.  Thus, when Judge Bryson analyzed the post-

verdict hypothetical negotiation, he found, "Because [the] expert concluded that the profit

margin for the post-verdict period would be approximately twice that of the pre-verdict

PAGE 5 -  PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
            ROYALTY

infringement period, … the Court accepts that increase …" and therefore doubled the royalty

rate. *Id.* at *39. The enhanced royalty rate was not due to inferring willful infringement.

The *Erfindergemeinschaft* reasoning is consistent with another post-*Halo* opinion, i.e.,

*Wisconsin Alumni Research Found. v. Apple, Inc.*, 261 F. Supp. 3d 900 (W.D. Wis. 2017)

("WARF"), *reversed on other grounds by* 2018 U.S. App. LEXIS 27664 (Fed. Cir. Sept. 28,

2018). In *WARF*, the Court noted,

> … the court rejects WARF's attempt to describe Apple's infringement post-jury
> verdict as willful… Rather, Apple reasonably believed that the court would not
> enter a permanent injunction … and instead would award an ongoing royalty
> based on a hypothetical negotiation – an expectation shared by this Court. Given
> this context, Apple knew that it was going to have to pay for its continued use of
> the infringing technology, unlike a willfully infringing party who hopes to conceal
> its knowing infringement.

*Id.* at 922. Mass, however, did not consider the import or impact of either of these well-reasoned

post-*Halo* opinions, even though Mass cited the *Erfindergemeinschaft* case for the bare

proposition that ongoing royalties should be enhanced. (*See* ECF No. 415 p. 13).

The final post-*Halo* opinion cited by Mass is the 2017 *Arctic Cat* opinion. *Artic Cat Inc.*

*v. Bombardier Rec. Prods.*, no. 14-cv-62369, 2017 U.S. Dist. LEXIS 1607 (S.D. Fla. Jan. 3,

2017). *Arctic Cat* does not inform our situation because *Arctic Cat* involved a defendant that the

jury determined to be a willful infringer (unlike Planar); a brief look at the related Federal Circuit

opinion confirms that the jury found that infringement was willful, so the district court trebled

damages for the pre-verdict period. *See, e.g., Artic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d

1350, 1371 (Fed. Cir. 2017) (discussing treble damages for willful infringement). Thus, as noted

in the district court's opinion, the royalty awarded by the district court was actually "$307.62 per

infringing unit." *Artic Cat Inc.*, 2017 U.S. Dist. LEXIS 1607 at *7. In view of the $307.62 pre-

verdict royalty, the "ongoing royalty rate of $205.08 per infringing unit" (*id.* at *14) was lower

PAGE 6 -  PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
           ROYALTY

than the amount awarded by the court for pre-verdict infringement.  And the court awarded this lower amount even though the jury found pre-verdict willful infringement.  Thus, in a post-*Halo* case, even where willful infringement was present, the court reduced the post-judgment royalty.

As demonstrated above, for post-*Halo* consideration of potential "enhanced damages" the Supreme Court held that "such punishment should generally be reserved for egregious cases typified by willful misconduct."  *Halo*, 136 S. Ct. at 1934.  Here, there is no willful misconduct by Planar.  From the verdict until September 11, 2018, Planar reasonably believed that it owed no further damages after trial.  *See, e.g.,* ECF No. 405 (Planar's brief explaining why it believed that the jury had compensated Mass for all infringement).  On September 11, the Court informed Planar that Mass is entitled to an ongoing royalty for future infringement, and that the Court would set a royalty after briefing.  ECF No. 413 p. 12.  Thus, Planar is currently selling products with the knowledge that any infringing products will be subject to this ongoing royalty and will be licensed, not infringing.  Thus, there has been no post-verdict period in which Planar's conduct could have been deemed "egregious" or "willful misconduct."

For these reasons, Mass's suggestion of an enhancement for willfulness is misplaced.

Mass also argues that the Court should consider the *Read* factors for enhanced damages.  (*See* ECF No. 415 p. 13-14).  This is incorrect because the Court would first need to have a basis for finding Planar to be a willful infringer, which does not exist.  The clear jury verdict is that Planar did not willfully infringe either of Mass's patents prior to the date of that verdict, i.e., July 11, 2018.  (ECF No. 391).  To the extent that the *Read* factors should be implicated at all – which they should not – the proper application of those factors would look at post-verdict conduct.  However, at least one opinion cited by Mass noted that "many of [the *Read*] factors are not well-

PAGE 7 -  PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING ROYALTY

suited for analyzing future willful infringement, as the factors were designed to analyze a party's willful infringement in the past." *Mondis Tech., Ltd. v. Chimei Innolux Corp.*, 822 F. Supp. 2d 639, 652-653 (E.D. Tex. 2011). That opinion quoted *Read v. Portec* for the proposition that "the paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct…" *Id.* at 653. There is no "egregiousness" in Planar's conduct.

Despite this, Mass suggests that *Read* factor one (copying) should be evaluated based on a meeting that took place in 2007 and a vague suggestion that Planar's supplier copied an infringing product. However, as extensive testimony in the July trial in this case demonstrated, Highgrade had designed its products and shipped samples to Planar by December 2007 (*see, e.g.,* ECF No. 392 (jury notes)), but the Ergotron DS-100 product referenced by Mass was not determined to be infringing until November 19, 2008. (*See* ECF No. 660 (jury verdict) in E.D. Tex. Case no. 2:06-cv-272). Thus, even if one assumes copying (which was not established), at the time of the assumed copying, Highgrade had no indication that the product would later be found to infringe. Moreover, trial testimony established that Mr. Moscovitch told Planar that the DS-100 infringed his patents and Planar dropped the DS-100 and had a different product offering within months. (Testimony didn't identify why, but one can't assume copying where a company stops selling a product as soon as it is informed of infringement.) Moreover, even if Highgrade were assumed to have copied Mass's ideas (which it did not), Highgrade made the product at the request of Vizio, not Planar. (July 9 trial transcript p. 166:2-24). And the product design started in January 2007, before Highgrade was even aware of Planar. (July 9 trial transcript p. 167:16-168:1). Assuming arguendo that Highgrade copied a product, the *Read* factor asks whether Planar (not Highgrade) copied; Planar did not.

PAGE 8 -  PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
              ROYALTY

Turning to the second *Read* factor, Mass assumes that a jury verdict shows that a party cannot claim to have a reasonable belief of non-infringement or invalidity.  In *Erfindergemeinschaft*, Judge Bryson noted that the jury verdict does not negate defendant's good faith belief in invalidity.  *Ergindergemeinschaft*, 2017 U.S. Dist. LEXIS 111425 at *31.  Judge Bryson also noted the pending motion for JMOL and expressed intent to appeal.  *Id.*  Planar has repeatedly expressed intent to appeal and intent to file post-judgment motions.  Planar could not file such appeal or motions without a good faith belief that it will prevail.  *See, e.g.,* Fed. R. Civ. P. 11; Fed. R. App. P. 38.

*Read* factor three, the infringer's behavior as a party to the litigation, does not favor enhanced damages.  As the Court already noted during trial, "I don't think the litigation conduct on either side has been inappropriate."  (July 12 Trial Transcript p. 671:6-7).

Regarding *Read* factor four, Planar does not dispute that it is able to weather a verdict, but "size and financial condition … does not by itself support [a] contention that [defendant] has engaged in conduct deserving of an enhanced royalty award."  *Ergindergemeinschaft*, 2017 U.S. Dist. LEXIS 111425 at *32.

Mass misconstrues the fifth *Read* factor, i.e., the "closeness of the case," because it is wholly unfavorable to Mass.  A jury verdict does not demonstrate that a case was not close. Rather, Planar filed motions for summary judgment on both infringement and validity, and raised close defenses at trial on both issues as well as inequitable conduct.  Additionally, the jury deliberated for 2 ½ days before reaching a verdict (*see, e.g.,* Trial Transcript p. 1836:6-11), starting deliberations at 9:35 am on May 4 (Trial Transcript p. 1774:11) and returning a verdict on the afternoon of May 8.  The length of deliberations themselves demonstrate the closeness of the issues and the amount of time that the jury needed to come to agreement.

PAGE 9 -  PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
           ROYALTY

*Read* factor six, duration of misconduct, weighs in Planar's favor, because the Court indicated only one month ago, on September 11, that the jury verdict did not cover both past and future infringement.

As to *Read* factor seven, Mass again misconstrues the facts, assuming that Planar should have taken remedial action upon learning of the verdict.  However, as noted above, until the Court's order on September 11, Planar believed that the jury verdict covered all infringement past and present, consistent with the jury instructions.  On September 11, the Court informed the parties that it would award an ongoing royalty, so there was no need to remedy a situation where a reasonable ongoing royalty would be assessed.  (As noted by Judge Bryson in *Erfindergemeinschaft*, many of the *Read* factors are not suited for post-verdict analysis.)

Regarding *Read* factor eight, "defendant's motivation for harm," Planar never had any intent to harm Mass, nor does it have such intent now.

Regarding *Read* factor nine, i.e., attempted concealment, Planar never concealed its sales. In fact, it advertised the accused products on its website.

While Planar posits that it is not even appropriate to review the *Read* factors, because there is no basis for finding Planar to be a willful infringer, even if the Court does consider the *Read* factors, a review of the nine factors shows that almost every factor weighs against enhancement of the ongoing royalty.

### C.    Mass Relies Heavily on an Expert Report That Should be Struck

Mass's proposed analysis of a post-verdict hypothetical negotiation should be largely disregarded because it relies almost exclusively on portions of a declaration by Mr. Bratic (i.e., ECF No. 415-2) that should be struck for numerous reasons.  To avoid repetitive briefing, Planar notes that Planar is filing a motion to strike Mr. Bratic's declaration concurrently with this brief.

PAGE 10 -    PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
             ROYALTY

The arguments of the motion to strike Mr. Bratic's declaration are incorporated by reference into this submission (rather than repeated herein) to spare the Court and the parties the burden of re-reading the same arguments multiple times.  However, the points raised in the motion regarding the failures of Mr. Bratic's analysis are directly relevant to Mass's improper post-verdict hypothetical negotiation analysis.

Because Mass's analysis is based almost entirely on a declaration that should be struck, Mass is left with little argument or evidence that would tend to establish the royalty that Mass requests.  And, in fact, though Mass cites paragraph 5 of Mr. Bratic's declaration at least 18 times at pages 9-10 of ECF No. 415 (using page numbering applied by ECF system), Mr. Bratic states that paragraph 5 is a summary of his prior opinions regarding the "hypothetical negotiation in or about March 2008," and is not an assessment of post-verdict circumstances.  (*See* ECF No. 415-2 at ¶5 (preamble)).  Thus, that paragraph, while potentially useful to the jury at trial, does not address the post-verdict circumstances related to an ongoing royalty.

### D.   Mass Failed to Update the Hypothetical Negotiation as Required by the Federal Circuit

Mass's ongoing royalty analysis should be disregarded or heavily discounted, because Mass failed to consider the post-verdict change in circumstances beyond what Mass characterizes as its "far stronger bargaining position."  The Federal Circuit has been clear that "[P]ost-verdict factors should drive the ongoing royalty rate calculation in determining whether such a rate should be different from the jury's rate."  *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1297 (Fed. Cir. 2018) (explaining "The later jury would necessarily be focused on what a hypothetical negotiation would look like after the prior infringement verdict."); *Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017) ("Ongoing royalties

PAGE 11 -    PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING ROYALTY

may be based on a postjudgment hypothetical negotiation using the *Georgia-Pacific* factors."). However, Mass largely cites evidence related to what Mass characterizes as the "2008"[2] hypothetical negotiation.

Mass's brief regarding the ongoing royalty cites to two sources of information. At pages 6, 7 n. 2, 8, and 11, Mass cites trial transcripts that relate to a hypothetical negotiation that would have occurred years ago. Mass's other evidentiary citations are to Mr. Bratic's declaration that either (as noted above) relate to a hypothetical negotiation in 2008 or that should be struck for the reasons outlined in Planar's motion to strike.

Mass's analysis, however, ignores many of the changes to the *Georgia-Pacific* factors that are discussed in Planar's brief of September 28, at sections IV C 1 through IV C 15. (ECF No. 416). That discussion shows that the post-verdict hypothetical negotiation should result in an ongoing royalty that is much lower than the rates suggested by Mass.

Though Mass is correct in stating that the starting point for the ongoing royalty should be the evidence at trial and the jury's determination, Mass errs on its analysis of both. First, with respect to the evidence at trial, Mass ignored the evidence of the changes that would affect a post-verdict hypothetical negotiation. That evidence is detailed in Planar's discussion of the *Georgia-Pacific* factors in its September 28 brief (ECF No. 416). Second, with respect to the "jury's determination," Mass makes erroneous and unfounded assumptions to suggest that the jury awarded a high royalty rate for the '331 patent.

---

[2] The parties seem to have a slight disagreement as to whether the pre-verdict hypothetical negotiation would have taken place in 2008, when the accused products were initially sold or in 2010, when Planar first received notice of the '978 patent. That dispute is irrelevant for purposes of assessing the ongoing royalty, because regardless of the pre-verdict date, it was 8 or 10 years ago, and circumstances have changed in the past decade.

PAGE 12 -    PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
                    ROYALTY

Without any basis, Mass argues that "the jury clearly rejected" Planar's non-infringing substitute theory at trial.[3]  But, if anything, the amount of the jury verdict shows that it is just as probable that the jury awarded a nominal (0.26%) royalty rate for the '331 patent as it is that the jury awarded the 3.5% or 2.88% royalty that Mass assumes based on conjecture.  To clarify this, note that Mass assumes that the jury either (a) awarded the full 3.5% royalty that Mass requested for the '331 patent, or (b) discounted both royalty rates equally to arrive at a 2.88% royalty for the '331 patent.  (*See* ECF No. 415 p. 15 n. 5 (showing Mass's calculation of the 2.88% royalty)).  However, equally as likely as scenario (a) is the possibility that the jury awarded the full 5.9% royalty that Mass requested for the '978 patent that Mass touted to the jury as its "flagship" patent.  In this scenario that Mass did not analyze, the jury would have awarded $1,130,141 (of the total $1,150,000) for infringement of the '978 patent.  (*See* ECF No. 415-2 at ¶ 11 (Mr. Bratic stating that damages for the '978 patent were $1,130,141)).  This award of the full royalty for the '978 patent would have left only $19,859 in damages attributable to the '331 patent, i.e., $1,150,000 - $1,130,141 = $19,859.  This is only 7.3% of the $269,541 in damages that Mr. Bratic requested for the '331 patent.  (*See* ECF No. 415-2 at ¶ 11 (showing request for $269,541 in damages for the '331 patent)).  Applying that 7.3% to the 3.5% royalty rate requested by Mr. Bratic would result in the realization that the jury might have applied a 0.26% royalty rate for the '331 patent (i.e., 0.073 X 3.5% = 0.26%).

---

[3] Planar notes that in more than one instance in ECF No. 415, Mass states that Planar or its expert "conceded" or "agreed with" Mass's royalty rate proposal or that the jury rejected Planar's proposal.  While those arguments are incorrect, they are also largely irrelevant to the issues faced in this briefing.  Planar notes its objection to those characterizations, so that it will not be deemed to have agreed with them by silence.  But because those issues are not related to the issues being discussed herein, Planar will not waste the Court's time by briefing the reasoning for its objection herein.

PAGE 13 -    PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
             ROYALTY

As noted above, because only the jury knows how the damages award should be broken down between the two patents, this scenario is just as probable as the two scenarios proposed by Mass.  Thus, if the Court attempts to start with the jury's determination, the Court should consider the 0.26% royalty rate to be equally as probable as the 3.5% rate and to be equally as probable at the 2.88% rate.  And in fact, the jury could have used any royalty rate ranging from 0% to 3.5% (or even a dollar amount per unit) for the '331 patent.  The fact is that we don't know what royalty the jury chose for the '331 patent.  Thus, even though the Court should normally start with the jury determination, such a starting point is not presented here.  Therefore, it is necessary to look at the relevant *Georgia-Pacific* factors to see if they suggest a royalty rate. As set forth in Planar's opening brief (ECF No. 416), at least factors 1, 8, and 15 suggest royalty rates.  Applying the full set of *Georgia-Pacific* factors to those suggested rates results in the conclusion set forth at section V of Planar's opening brief (ECF No. 416) and in the conclusion, below, of this brief.

## III.    Mass's Requests for Pre-Judgment Royalties and Accountings

Mass seems to make two unrelated motions in what was purportedly a brief addressing ongoing royalties pursuant to the Court's order in ECF No. 413.  While it does not appear that such requests are properly before the Court in view of the unmet meet-and-confer requirement of Local Rule 7-1(a) and the "separately stated motion" requirement of Local Rule 7-1(b) (i.e., "Motions may not be combined with any … other pleading."), Planar does not contest that relief of this type is generally permitted to patentees in some form.  However, Planar does object to the form in which Mass requests the relief.

First, with respect to a pre-judgment royalty, contrary to Mass's conjecture, the jury did not leave any clue as to whether it awarded a 3.5% royalty or a 0.26% royalty (as explained

PAGE 14 -    PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
             ROYALTY

above) for the '331 patent, or some other amount. In view of the jury's silence on this issue and Mass's failure to seek jury clarification before releasing the jury, Planar requests that any pre-judgment royalty on sales between March 31, 2018 and May 8, 2018 be set at the specific dollar amounts requested below, to avoid future disputes regarding profitability, apportionment, costs of sales, etc. In the alternative, because it is Mass who seeks the royalty after waiving its ability to seek jury clarification, it would be proper to employ the royalty assumption favorable to Planar and set the interim royalty rate at 0.26%.

Second, with respect to an accounting, Planar requests that any reports be (a) required no more frequently than quarterly and (b) required only to contain numbers of units sold on a product-by-product basis, because the sales price not be useful in view of the required apportionment. With respect to item (b), Planar notes that it has requested a royalty of a specific dollar amount per unit based on the apportioned value of the feature of the '331 patent. Because royalties must be apportioned, requiring pricing or profit information will not provide any indication of the actual royalty due. Thus, the most efficient manner of reporting for purposes of avoiding future disputes is to provide the number of units sold and multiply that number by the number of cents per unit that is due as a royalty.

## IV.    Conclusion

Mass failed to carry its burden of proving the amount of a properly apportioned ongoing royalty. Based on this, a proper remedy would be to award Mass a nominal royalty (e.g., $1 for all future infringement). However, the evidence and analysis put forward by Planar would support an ongoing royalty of 0.5% of the arm value for most products and 1.5% of the arm value for triple monitor stands. The only figures in the record that demonstrate the cost of the arms of the accused products are those put forward by Planar, showing that the dual monitor

PAGE 15 -    PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
             ROYALTY

stand arms cost approximately $6 to manufacture and that the amount is doubled for quad

monitor stands.  (One might assume that triple monitor stand arms are somewhere in the same

range; although, neither party introduced evidence regarding this.)  This would result in a per

unit royalty of (0.005 X $6.00, or) $0.03 for dual monitor stands, (0.005 X $12.00, or) $0.06 for

quad monitor stands, and (0.015 X $6.00, or) $0.09 for triple monitor stands.

Accordingly, with respect to the '331 patent, Planar requests that the Court set an

ongoing royalty no higher than $0.03 per stand for dual monitor stands, $0.06 per stand for quad

monitor stands, and $0.09 per stand for the triple monitor stands.  (Setting an actual amount

rather than a percentage is the most reasonable way to assess such a royalty to avoid disputes

between the parties regarding computation of amounts based on a percentage.)

Dated:  October 12, 2018

STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.


By: s/Jacob S. Gill
   **Jacob S. Gill,** OSB No. 033238

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840
Email:  jgill@stollberne.com

-And-

**Jenny W. Chen** (admitted *pro hac vice*)
Email: Jenny.Chen@ChenIPLaw.com
CHEN IP LAW GROUP
7F, N0. 1, Alley 30, Lane 358
Rueiguang Road
Neihu District,  Taipei City  114
Taiwan (R.O.C.)
Telephone:     +(886)-2-7721-8855
Facsimile:     +(886)-2-7721-8822

 -And-

PAGE 16 -     PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
              ROYALTY

**Andrew T. Oliver**  (admitted *pro hac vice)*
Email: aoliver@ATWiplaw.com
AMIN, TUROCY & WATSON, LLP
160 West Santa Clara Street, Suite 975
San Jose, California 95113
Telephone:   (650) 618-6481
Facsimile:   (216) 696-8731

**Attorneys for Defendant**

PAGE 17 -    PLANAR SYSTEMS, INC.'S OPENING BRIEF REGARDING ONGOING
             ROYALTY