# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MASS ENGINEERED DESIGN, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **PLANAR SYSTEMS, INC.**, <br><br> Defendant. | Case No. 3:16-cv-1510-SI <br><br> **OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

John J. Edmonds, Stephen F. Schlather, Shea N. Palavan, and Brandon G. Moore, COLLINS, EDMONDS, SCHLATHER & TOWER, PLLC, 1616 South Voss Road, Suite 125, Houston, TX 77057; John Mansfield, HARRIS BRICKEN, 121 SW Morrison Street, Suite 400, Portland, OR 97204. Of Attorneys for Plaintiff.

Andrew T. Oliver, AMIN, TUROCY & WATSON, LLP, 160 West Santa Clara Street, Suite 975, San Jose, CA 95113; Jacob S. Gill, STOLL STOLL BERNE LOKTING & SHLACHTER, PC, 209 SW Oak Street, Suite 500, Portland, OR 97204; Jenny W. Chen, CHEN IP LAW GROUP, 7F, N0. 1, Alley 30, Lane 358, Rueiguang Road, Neihu District, Taipei City 114, Taiwan (R.O.C.). Of Attorneys for Defendant.

  Before the Court is a request for an ongoing post-verdict royalty by Plaintiff, Mass Engineered Design, Inc. ("Mass"), and a motion to strike an expert declaration filed in support of that request filed by Defendant, Planar Systems, Inc. ("Planar"). For the reasons that follow, the Court denies Planar's motion to strike and sets the post-verdict royalty at 3.5 percent of sales of infringing products.

## A. Motion to Strike

Planar moves to strike the expert declaration of Walter Bratic filed on September 28, 2018. Planar argues that: (1) Mr. Bratic's declaration is untimely because it contains opinions not disclosed in his expert reports produced during expert discovery or discussed at trial; (2) Mr. Bratic's opinions are unreliable and otherwise problematic under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993); and (3) Mr. Bratic's opinions should be stricken because he failed to apportion damages as required under patent law.

### 1. Timeliness

In 2014, Mass disclosed in its damages disclosure that it was going to request a post-judgment royalty. Mass also stated in its trial brief filed July 2017 that it may be owed a post-verdict royalty. Planar argues that these disclosures obligated Mass to submit with its expert opinions relating to damages sought at trial any expert opinion supporting a post-verdict royalty, and that Mass should have presented the post-verdict royalty evidence to the jury. Planar also argues that it should have been permitted the opportunity to cross-examine Mass's expert at trial on his post-verdict royalty opinions. Planar is essentially arguing that Mass should have had the jury determine Mass's post-verdict royalty. That, however, is not what occurred at trial and Mass was not *required* to have the jury make such a determination, nor is there a Seventh Amendment right to a jury trial on post-verdict royalties. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1316 (Fed. Cir. 2007) ("As such, the fact that monetary relief is at issue in this case does not, standing alone, warrant a jury trial. Accordingly, Paice's argument falls far short of demonstrating that there was any Seventh Amendment violation in the proceedings below.").

As the Court has already noted, post-verdict royalties can be an equitable determination made by the Court after a jury verdict, in lieu of an injunction under § 283. *See, e.g.*, ECF 413

at 11 (quoting *Paice*, 504 F.3d at 1314); *see also XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1289 (Fed. Cir. 2018) (noting that the post-verdict royalty was awarded by the district court "as an equitable remedy for Trans Ova's future infringement"); *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012) ("There are several types of relief for ongoing infringement that a court can consider: (1) it can grant an injunction; (2) it can order the parties to attempt to negotiate terms for future use of the invention; (3) it can grant an ongoing royalty; or (4) it can exercise its discretion to conclude that no forward-looking relief is appropriate in the circumstances."). The Court declined to enter an injunction and held that Mass was entitled to an ongoing royalty. Thus, Mass was not required to have its expert testify regarding post-verdict royalty at trial. Indeed, it would have confused the jury had Mr. Bratic done so because the jury was not making any determination relating to a post-verdict royalty. It is an equitable remedy that Mass is seeking from the Court.

After the Court determined that Mass was entitled to a post-verdict royalty, the Court requested that the parties submit briefs on the amount of a reasonable ongoing royalty. Mass filed an expert declaration in support of its brief relating to the post-verdict royalty. This is not uncommon in issues handled by a court post-verdict, including motions for attorney's fees, which are generally accompanied by expert declarations supporting the motion from experts not disclosed during pretrial expert discovery. Additionally, in determining a post-verdict royalty rate, the Court must focus on the changed circumstances post-verdict. *See XY, LLC*, 890 F.3d at 1297. Planar offers no compelling argument why expert testimony regarding the *Georgia-Pacific*[1] factors cannot be supplemented post-trial to discuss changed circumstances. Requiring this expert disclosure during pretrial expert discovery or even at trial would contradict

---

[1] These factors set out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

PAGE 3 – OPINION AND ORDER

the Federal Circuit's requirement to consider the *Georgia-Pacific* factors in light of the post-verdict changed circumstances. Moreover, the Federal Circuit has expressly noted that the process of calculating the post-verdict royalty will include the court taking evidence, and there is no reason why expert evidence would not be part of this process. *See, e.g.*, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1343 (Fed. Cir. 2012) ("The district court, on remand, should determine an appropriate ongoing royalty, an inquiry that is much the same as its sunset royalty analysis. The district court may wish to consider on remand *additional evidence* of changes in the parties' bargaining positions and other economic circumstances that may be of value in determining an appropriate ongoing royalty." (emphasis added)); *Paice*, 504 F.3d at 1315 n.15 ("This process will also, presumably, allow the parties the opportunity to present evidence regarding an appropriate royalty rate to compensate Paice and the opportunity to negotiate their own rate prior to the imposition of one by the court . . . .").

Planar also argues that Mass could have supplemented its expert testimony during the four months between the jury verdict in May 2018 and the filing of Mass's opening brief relating to the ongoing royalty, to give Planar more time to counter Mr. Bratic's declaration. This argument is unpersuasive. The parties disputed whether a post-verdict ongoing royalty was appropriate in this case. The Court did not decide the issue until September 11, 2018. Mass filed its opening brief attaching Mr. Bratic's declaration on September 28, 2018, the deadline set by the Court. It would be unreasonable to require Mass to incur the expense of expert fees to opine on the reasonable amount of a post-verdict ongoing royalty before the issue of whether a post-verdict royalty would be allowed had been determined. If Planar wanted additional time to respond to Mr. Bratic's declaration, or wanted to depose Mr. Bratic relating to his declaration, Planar could have sought leave from the Court. The Court has been generous with the parties in

allowing such discovery. Planar did not make any such request, nor did Planar file any rebuttal expert declaration of its own.

### 2. Exclusion under *Daubert*

Mr. Bratic's challenged opinions are submitted to the Court for its consideration in determining a post-verdict royalty. The challenged opinions are not going to a jury. "'*Daubert* is meant to protect *juries* from being swayed by dubious scientific testimony. When the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.'" *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (quoting *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (emphasis in original); *see also Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial."). "Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *Flores*, 901 F.3d at 1165.

The Court acknowledges that some of Mr. Bratic's statements purport to set out what the law holds, and that is improper expert testimony. The Court, however, will not go line-by-line through Mr. Bratic's declaration and strike portions of it that are inappropriate. The Court will disregard the inappropriate statements and only consider proper and reliable expert testimony.

### 3. Apportionment of Damages

Planar asserts that Mr. Bratic did not apportion damages to account for the fact that the '331 Patent only contains some unique features, while the '978 Patent contained many features but has now expired. Mass responds by pointing out how Mr. Bratic expressly apportioned damages to account for this fact, which is why the '331 Patent royalty is 3.5 percent

PAGE 5 – OPINION AND ORDER

and the '978 Patent royalty is 5.9 percent. Moreover, when Planar questions why sales after April 2016 (when the '978 Patent expired) are not properly apportioned and accounted-for in Mr. Bratic's expert report, Mass responds that on the next page of the report from the section quoted by Planar, Mr. Bratic specifically accounts for the post-April 2016 sales and the '331 Patent-only damages. Planar did not respond to any of Mass's arguments relating to apportionment in Planar's reply brief.

The Court agrees with Mass that Mr. Bratic did not use the "entire market value rule." He states as much in his report. Further, Mr. Bratic, relying on the expert testimony of John Akin, did apportion the damages. Mr. Bratic used the relative technical values of the '978 Patent (technical value of 10) and the '331 Patent (technical value of 6) to apportion the damages and conclude that the '331 Patent is 6/10 the value of the '978 Patent. This resulted in the royalty rate of 3.5 percent for the '331 Patent, which is 6/10 of the value of the 5.9 percent royalty rate of the '978 Patent. Indeed, Planar's damages expert Mr. Reed noted that "Mr. Bratic uses these technical weighing factors to then *apportion* his determined 5.9% royalty rate for the '978 patent to the '331 patent at 6/10 resulting in a 3.5% royalty rate." ECF 417-3 at 34 (emphasis added). Mr. Bratic's expert report does not violate any requirement to apportion damages.

B. **Post-Verdict Royalty**

Mass argues that the post-verdict ongoing royalty should be enhanced to three-times the reasonably royalty rate of 3.5 percent, or 10.5 percent, for the changed circumstance of Planar's purported willful infringement after the jury's verdict. In the alternative, Mass argues that a reasonable interpretation of the jury's verdict is that it awarded 2.88 percent royalty for the '331 Patent, and the ongoing royalty should be 8.64 percent. Planar argues that the appropriate ongoing royalty is a small fraction of 0.5 percent for all products except triple monitors, for which a small fraction of 1.5 percent is an appropriate royalty. Planar relies primarily on the

PAGE 6 – OPINION AND ORDER

argument that Mass failed to apportion damages and that damages should be reduced from the jury's verdict when considering the *Georgia-Pacific* factors under the changed circumstances.

The Court has already rejected Planar's argument that Mass used the entire market value rule and failed to apportion damages. The Court thus starts with the jury's verdict and looks at the relevant disputed *Georgia-Pacific* factors under the changed circumstances post-verdict.

1. **Jury Verdict**

"Generally, the jury's damages award is a starting point for evaluating ongoing royalties." *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 6687122, at *14 (N.D. Cal. Nov. 25, 2014). The jury awarded $1,1150,000 in damages for past infringement of the '978 and '331 patents. Mass had requested $1,130,141 for infringement of the '978 Patent and $269,541 for infringement of the '331 Patent, for total damages of $1,399,682, which Mass's expert rounded up to $1.4 million. Planar had suggested damages, if any, were $119,000 for the '331 Patent alone and $215,000 for the '978 Patent alone, or total damages of $302,000 if both patents were infringed. The jury awarded damages much closer to Mass's calculation than to Planar's. The verdict form, however, did not have the jury separate the damages between the two patents. Thus, it is unknown how much of the damages awarded were for the '331 Patent, and the Court cannot know precisely how the jury discounted from Mass's requested damages.

If the jury discounted the damages evenly between the two patents, then the royalty awarded for past infringement of the '331 Patent was approximately 2.8 percent. The jury could have awarded full damages for the '331 Patent and only discounted damages for the '978 Patent, and then the royalty for the '331 Patent would be 3.5 percent. The jury also could have awarded damages fully for infringement of the '978 Patent and only discounted the '331 Patent, and then the royalty for the '331 Patent would be approximately 0.26 percent.

PAGE 7 – OPINION AND ORDER

The Federal Circuit recently summarized how a court should determine a post-verdict royalty. The court stated:

> In *Amado v. Microsoft Corp.*, we held that there is a "fundamental difference" between "a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." 517 F.3d 1353, 1360 (Fed. Cir. 2008). For example, when calculating an ongoing royalty rate, the district court should consider the "change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability." *Id.* at 1362. When patent claims are held to be not invalid and infringed, this amounts to a "substantial shift in the bargaining position of the parties." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012). We have also instructed district courts to consider changed economic circumstances, such as changes related to the market for the patented products.
>
> The requirement to focus on changed circumstances is particularly important when, as in this case, an ongoing royalty effectively serves as a replacement for whatever reasonable royalty a later jury would have calculated in a suit to compensate the patentee for future infringement. The later jury would necessarily be focused on what a hypothetical negotiation would look like *after* the prior infringement verdict. Therefore, post-verdict factors should drive the ongoing royalty rate calculation in determining whether such a rate should be different from the jury's rate.

*XY, LLC*, 890 F.3d at 1297 (citations omitted).

Given that the jury awarded damages much closer to Mass's request than Planar's and considering that this case is one in which the post-verdict royalty effectively serves as a replacement for whatever a royalty a reasonable jury would award in the future, the Court considers the jury's award to be at the 2.88 percent royalty rate. The Court does not find it to be a reasonable assumption that a reasonable jury awarding nearly full damages to Mass awarded a 0.26 percent royalty for infringement of the '331 Patent.

## 2. Changed Circumstances

The parties discuss different dates for the original hypothetical negotiation. Mass asserts it should be March 2008 and Planar asserts it should be 2010 or 2014. Regardless, the new hypothetical negotiation would be in May 2018. The first changed circumstance is Mass's improved bargaining position with the jury's determination that Mass's patent is valid and Planar's products infringe the patent. *XY, LLC*, 890 F.3d at 1297; *ActiveVideo*, 694 F.3d at 1342; *Amado*, 517 F.3d at 1362. This favors a higher royalty rate than the jury's verdict. The Court turns to the disputed *Georgia-Pacific* factors.

## 3. Factor 1: Royalties Received by Mass

Mass provided evidence of one ongoing license at 3.25 percent ongoing royalty, and two licenses that did not have any ongoing royalty but were paid at a lump sum that was effectively a royalty of 3.5 percent.[2] This favors a rate of 3.25 to 3.5 percent.

## 4. Factor 3: Nature and Scope of License

Mass has entered into three other licenses, so Planar's license would not be exclusive. The license would be broad in its geographic scope, however, covering the United States. This factor does not support any significant departure from the jury's award.

## 5. Factor 5: Commercial Relationship between Mass and Planar

At the time of the original hypothetical negotiation, Mass and Planar arguably were competitors. They are no longer commercial competitors because Mass does not engage in many direct sales of monitors. This supports a reduction from the jury's award.

---

[2] Planar's repeated argument that these licenses are inadmissible is rejected, for the same reasons the Court previously rejected them. *See* ECF 252 at 24-26.

### 6. Factor 6: Effect of Mass's Patent on Sales of Planar's other Products; Derivative or Convoy Sales

Mass argues that Planar's ability to sell monitors with stands supports an upward departure based on this factor, or its neutrality. Planar responds that this is a changed factor because although it used to sell bundled products, that attempt was a commercial failure and it no longer sells bundled products. Planar cites to the trial testimony of Colleen McCullough that Planar offered two bundled products, not very many of them were sold, and Planar no longer offers bundled products. Thus, Planar argues, this factor supports a downward departure. The jury, however, heard the testimony Planar relies on and presumably factored it into the jury's verdict. Accordingly, this factor is neutral.

### 7. Factor 7: Duration of Patent and Term of License

Planar argues that because the '331 Patent expires in slightly more than two years, this factor supports a downward departure. Planar asserts that a license with a term of eight or 10 years, per the original negotiation, is worth more than a license with a term of two years. Planar cites *Brunswick Corp. v. United* States, 36 Fed. Cl. 204, 214 (Ct. Fed. Cl. 1996) (noting that this factor "embodies the conventional wisdom that the longer the remaining duration of a patent term, the more willing a hypothetical licensee is to pay higher royalty rate" because the patent holder has more time to cultivate goodwill). Mass responds by citing to a district court case that awarded a higher rate despite the license only having a three-year duration, *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 2017 WL 7732873, at *3 (S.D. Fla. Jan. 3, 2017), and quoting the finding in *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 2017 WL 3034655, at *9 (E.D. Tex. July 18, 2017), that "the shortness of the post-verdict infringement period may in fact favor UroPep, because it may 'be more expedient for Lilly to pay UroPep's requested royalty than to change its entire marketing strategy [ ] and promotional materials . . . for just a

few months.'" (alterations in original). The Court notes that, as Planar has argued, Mass has not been an active participant in the market much over the past several years. Mass thus has not been cultivating additional goodwill on its patents, nor does that reasoning counterbalance the fact that regardless of the license term, Planar would have to reconfigure its products and change all of its marketing materials. Indeed, paying a higher royalty for a shorter term may be more appealing to Planar as compared to paying a higher royalty for a longer term, when considering the offsetting cost of changing Planar's products and marketing materials. This factor is neutral.

### 8. Factor 8: Profitability of Product, Commercial Success, Current Popularity

Planar asserts that the profitability of most of its infringing products has significantly decreased since the time of the original hypothetical negotiation. This evidence was presented to the jury. Mr. Bratic included the lower profit margins through March 2018 in his royalty calculation of 3.5 percent, basing that figure on an overall profit margin of 22.9 percent for Planar's allegedly infringing products from 2008 through 2018. Mr. Reed, Planar's expert, disagreed with Mr. Bratic's calculations, explaining why Mr. Bratic's calculations properly did not account for the fact that most alleged infringing products had lower profit margins and that the calculations should begin in 2012 and not 2008. Mr. Bratic calculated an overall profit margin of 12.8 percent. The jury accepted Mr. Bratic's calculations more than Mr. Reed's, as is evident from the jury's award being nearly the amount calculated by Mr. Bratic and nowhere near the amount calculated by Mr. Reed.

Although the jury was instructed to consider a hypothetical negotiation at the time when the infringing activity first began, the evidence presented to the jury regarding royalty rates incorporated Planar's lower profit margins through March 2018. Both experts testified regarding the *Georgia-Pacific* factors and for this factor incorporated Planar's profits through March 2018.

Planar has not demonstrated that its profits reduced after March 2018, showing a change in circumstance since the jury's verdict. This factor is neutral.

### 9. Factors 9 & 10: Utility, Advantage, and Benefit of Patented Product and Nature of the Invention

Mass and Planar discuss *Georgia-Pacific* factors 9 and 10 together. Planar's argument here is largely based on its misunderstanding that Mass did not apportion damages. The Court has already ruled that Mass apportioned damages and that the reduced utility of the '331 Patent absent the '978 Patent was taken into account by Mr. Bratic. Further reduction is not warranted. Additionally, Mr. Bratic, relying on Mr. Akin, recites the separate benefits of the '331 Patent. These factors are neutral and remain unchanged from the jury's verdict.

### 10. Factor 11: Extent of Planar's Use of the Patented Invention

Planar's argument on this factor also is based on its assertion that Mr. Bratic did not separately consider the '331 Patent's damages and features. This argument is without merit and thus this factor is neutral.

### 11. Factor 13: Portion of Profit that Should be Credited to the Invention

Planar's argument on this factor also is based on its assertion that Mr. Bratic did not separately consider the '331 Patent's damages and features. This argument is without merit and thus this factor is neutral.

### 12. Summary of *Georgia-Pacific* Factors

Factors 2, 4, 12, 14 are undisputedly neutral. The Court finds factors 3, 6-11, and 13 are all neutral. The Court finds factor 1 supports an increase and factor 5 supports a decrease. The Court also finds that Mass's increased bargaining power supports an increase. Thus, the Court finds a modest increase from 2.88 percent to 3.5 percent is a reasonable ongoing royalty rate.

### 13. Enhancement

Mass argues that the Court should enhance the royalty rate by three times because Planar's ongoing infringement is now willful, after the jury's verdict. The jury had found that Planar's pretrial conduct was not willful. "The sort of conduct warranting enhanced damages has been variously described in [Supreme Court] cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1928 (2016). The Court finds that merely because a jury found that Mass's patent is valid and Planar's products infringe, that does not automatically convert Planar's conduct into willful conduct under *Halo*. *See, e.g.*, *Erfindergemeinschaft*, 2017 WL 3034655, at *11 ("Although Lilly now knows that a jury has found its conduct to be infringing, Lilly has not committed any new acts deserving of enhanced punishment.").

The parties have been litigating the past few months whether an ongoing royalty was available in this case or whether the jury had awarded Mass damages for past and future infringement. Planar's continued sales during this time period thus did not demonstrate willfulness. After the Court determined that Mass was entitled to an ongoing royalty, the Court ordered the parties to negotiate a reasonable royalty rate and then argue to the Court their respective positions if they could not reach agreement. Engaging in sales during this time, in an expectation that they will negotiate or the Court will set a post-verdict royalty rate and Planar will be required to pay that rate beginning as of the date of the verdict, does not demonstrate willfulness. *See, e.g.*, *Erfindergemeinschaft*, 2017 WL 3034655, at *10-11; *see also Wisconsin Alumni Research Fund v. Apple, Inc.*, 261 F. Supp. 3d 900, 922 (W.D. Wis. 2017), *rev'd on other grounds by* 905 F.3d 1341 (Fed. Cir. 2018). The Court declines to enhance damages.

### C. Interim Period Royalty

Mass requests damages for the uncompensated time period of April 1, 2018 through May 8, 2018. Planar had not provided financial data after March 31, 2018, and thus the damages calculations at trial only covered through March 2018. The post-verdict royalty will only apply to sales after the verdict was entered on May 8, 2018. There is, therefore, an uncompensated period from April 1, 2018, through May 8, 2018. Planar acknowledges that Mass is entitled to some compensation for this time period, but Planar requests a per-unit royalty beginning with the presumed lowest royalty rate that the jury could have awarded, 0.26 percent. The Court awards Mass a 2.88 percent royalty for this interim period.

## CONCLUSION

Planar's motion to strike (ECF 419) is DENIED. The Court sets the post-verdict ongoing royalty at 3.5 percent of sales of infringing products. Planar is ordered to submit to Mass on a quarterly basis sufficient supporting financial documentation to calculate the ongoing royalty. Mass also is awarded royalties at the rate of 2.88 percent for sales of infringing products from April 1, 2018 through May 8, 2018. The parties are directed to confer in good faith and file within two weeks from the date of this Order either a stipulated proposed judgment or their respective proposed judgments.

**IT IS SO ORDERED.**

DATED this 19th day of November, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge