# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MASS ENGINEERED DESIGN, INC.,** | Case No. 3:16-cv-1510-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **PLANAR SYSTEMS, INC.,** | |
| Defendant. | |

John Mansfield, HARRIS BRICKEN, LLP, 511 SW 11th Street, Suite 201, Portland, OR 97214; John J. Edmonds, Stephen F. Schlather, Shea N. Palavan, Brandon G. Moore, and Eric R. Carr, COLLINS EDMONDS & SCHLATHER, PLLC, 1616 South Voss Road, Suite 125, Houston, TX 77057 Of Attorneys for Plaintiff.

Jacob S. Gill, STOLL STOLL BERNE LOKTING & SHLACHTER, PC, 209 SW Oak Street, Suite 500, Portland, OR 97204; Jenny W. Chen, CHEN IP LAW GROUP, 7F, No. 1, Alley 30, Lane 358, Rueiguang Road, Neihu District, Taipei Taiwan 114 (R.O.C.); Andrew T. Oliver, AMIN, TUROCY & WATSON, LLP, 160 W. Santa Clara Street, Suite 975, San Jose, CA 95113. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff, Mass Engineered Design, Inc. ("Mass"), brought this lawsuit against Defendant, Planar Systems, Inc. ("Planar"), alleging infringement of U.S. Patent No. RE36,978 (the "978 Patent") and U.S. Patent No. 8,102,331 (the "331 Patent"). A jury trial was held, beginning April 24, 2018 and ending May 8, 2018. The jury found that Planar was liable for direct infringement, active inducement, and as a contributory infringer, and that neither the 978 Patent

nor the 331 Patent were invalid. The jury awarded Mass money damages in the total amount of $1,150,000. The jury, however, was unable to reach a unanimous verdict on the question of whether Planar's infringement was willful. The Court declared a mistrial only on that question, and otherwise accepted the jury's verdict. The Court then scheduled a new jury trial solely on the question of willfulness. The Court held a two-day jury trial beginning July 9, 2018. The jury found for Planar, finding that Mass had not proven that Planar's infringement was willful. The Court also held a two-day bench trial on Planar's claim that Mass had engaged in inequitable conduct. The Court found in favor of Mass.

Before the Court are three post-judgment motions: (1) Plaintiff's Motion for an Exceptional Case Finding and Attorney's Fees under 35 U.S.C. § 285 (ECF 441), in which Mass seeks attorney's fees in the amount of $185,000 for Planar's allegedly improper litigation conduct; (2) Defendant's Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, for a New Trial (ECF 443); and (3) Defendant's Motion to Amend the Judgment and for New Trial Pursuant to Rule 59 (ECF 444). For the reasons that follow, all three post-trial motions are DENIED.

## STANDARDS

### A. Exceptional Case Status and Attorney's Fees Under 35 U.S.C. § 285

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (alteration added). A court "should determine whether a case is exceptional on a case-by-case basis, considering the totality of the circumstances." *ATEN Int'l Co. v. Uniclass Tech. Co.*, 932

F.3d 1371, 1373 (Fed. Cir. 2019). Such circumstances may include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6 (quotation marks omitted).

## B. Judgment as a Matter of Law

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Acco Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007). Thus, the Court follows Ninth Circuit law in evaluating Planar's motion for judgment as a matter of law.

Judgment as a matter of law is proper if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quotation marks omitted); *see also Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (explaining that judgment as a matter of law must be granted if it is clear that "the evidence and its inferences cannot reasonably support a judgment in favor of the opposing party"). Because a motion under Rule 50(b) is a renewed motion, a party cannot "raise arguments in its post-trial motion for judgment as a matter of law that it did not first raise in its Rule 50(a) pre-verdict motion." *Go Daddy Software*, 581 F.3d at 961 (quotation marks omitted).

In evaluating a motion for judgment as a matter of law, the Court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Experience Hendrix, L.L.C., v. Hendrixlicensing.com, Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). The Court may not, however, make credibility determinations, weigh the evidence, or "substitute its view of the evidence for that of the jury." *Krechman v. City of*

*Riverside*, 723 F.3d 1104, 1110 (9th Cir. 2013) (quotation marks omitted). A jury's verdict must be upheld if it is supported by substantial evidence. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014); *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). Substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion[,] even if it is possible to draw two inconsistent conclusions from the evidence." *Weaving*, 763 F.3d at 1111 (quotation marks omitted).

## C. New Trial

As with Rule 50 motions, Rule 59 motions in patent cases are governed by the law of the regional circuit. *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1350 (Fed. Cir. 2019). The Court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation marks omitted); *see also Shimko v. Guenther*, 505 F.3d 987, 993 (9th Cir. 2007). Unlike a Rule 50 determination, the Court is not required to view the evidence in the light most favorable to the non-moving party. *Experience Hendrix*, 762 F.3d at 842. Rather, the Court "can weigh the evidence and assess the credibility of the witnesses." *Id.* (citing *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) (per curiam)). A judge should not award a new trial unless she is "left with the definite and firm conviction that a mistake has been committed." *France Telecom S.A. v. Marvell Semiconductor Inc.*, 2015 WL 925892, at *1 (N.D. Cal. Mar. 2, 2015) (quoting *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987)).

## DISCUSSION

## A. Plaintiff's Motion for Reasonable Expenses, Including Attorney's Fees

Mass argues that the Court should find that certain aspects of this case were litigated unreasonably, and thus Mass is entitled to a portion of its attorney's fees. Mass argues that

particular arguments in certain motions were unreasonably litigated and resulted in Mass having to incur unreasonable attorney's fees. Mass also argues that Planar asserted before trial the defense of reliance on the opinion of counsel and a significant amount of prior art, causing Mass to expend resources preparing to defend those issues, but then dropped the reliance of counsel defense shortly before trial and at trial only submitted a very limited number of prior art references to the jury. Mass contends that this litigation conduct was unreasonable and makes this case exceptional. Mass also notes that in a few of the Court's opinions and orders, the Court noted that some of Planar's arguments were "without merit."[1]

The fact that the Court rejected some of Planar's legal arguments during this complex, hard-fought patent litigation does not mean that Planar unreasonably litigated this case to the point that it rises to the level of an exceptional case warranting an award of attorney's fees. *See, e.g.*, *ATEN*, 932 F.3d at 1374 ("Though ATEN's lost profits theory was not strong enough to withstand summary judgment, '[a] party's position . . . ultimately need not be correct for them to not 'stand[ ] out.'" (alterations in original) (quoting *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015))). The Court has considered Plaintiff's litigation conduct with respect to the strengths of its arguments and positions and does not find that they were "so objectively unreasonable or exceptionally meritless as to stand out from other cases." *Id.*

Regarding Planar's "shifting" positions on whether to use the defense of an opinion of counsel, the Court does not find this conduct to be objectively unreasonable. Planar's original counsel did not assert this defense. Planar's replacement counsel requested the ability to add this as a defense, based on the advice of counsel that HighGrade received. Planar argued that its

---

[1] Any argument raised by Mass in support of its motion not specifically addressed herein is rejected.

original counsel had not provided adequate services and had perhaps engaged in malpractice. The Court allowed Planar to add this defense. After further discovery, learning more about Mass's infringement case, and learning more about the specifics of the advice of counsel, Planar's new counsel ultimately decided not to rely on this defense at trial and to exercise its statutory right not to have the advice of counsel disclosed at trial. This was not an unreasonable trial strategy, nor was it unreasonable for Planar's counsel to change tactics after learning more information.

Regarding Planar's use of fewer prior art references at trial than before trial, the Court does not find this to stand out. Parties often assert arguments, propose exhibits, propose testimony, and propose witnesses before trial that do not end up being presented at trial. Planar contends that it did not submit to the jury all of the prior art references because it ran out of trial time. The parties had agreed to a set amount of hours per side and the Court monitored the trial time "chess clock" style. This is a reasonable explanation for why Planar presented fewer prior art references. Even if Planar had not ran out of trial time, however, it is not objectively unreasonable for litigants to shift strategies during trial and reduce the number of witnesses or the evidence presented. Additionally, the fact that Planar expended resources on expert testimony relating to the prior art references supports that Planar litigated those prior art references in good faith and not solely for the purpose of driving up Mass's expenses.

Considering the totality of the circumstances, the Court finds that Mass has not met its burden of proving that this was an exceptional case as that term is used in § 285. This case does not stand out from others with respect either to the strength of Planar's litigating position or the unreasonable manner in which Planar litigated this case. Accordingly, Mass's motion for attorney's fees is denied.

### B. Defendant's Motion for Judgment as a Matter of Law

Defendant renews its motion for judgment as a matter of law on three grounds: (1) there was not substantial evidence presented at trial supporting the jury's findings regarding Plaintiff's contributory infringement claim; (2) there was not substantial evidence presented at trial supporting the jury's findings regarding Plaintiff's induced infringement claim; and (3) there was not sufficient evidence presented at trial to support the jury's damages award. Mass objects to this motion on the merits, but also argues that the motion, and Planar's motion for a new trial under Rule 59, are untimely. Planar also moves for a remittur. The Court addresses each argument in turn.[2]

#### 1. Timeliness

Mass argues that under Rule 6(b)(2) of the Federal Rules of Civil Procedure, the Court did not have any discretion to extend the deadline as established in Rules 50(b) and 59(b) for Planar to file its post-judgment motions. Mass further argues that the "placeholder" motions filed by Planar are insufficient under Local Rule 7-1(c).

Rule 6(b)(2) provides: "A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b),(d), and (e), and 60(b)." Local Rule 7-1(c) provides: "Every motion must be supported by a legal memorandum. The legal memorandum must be combined in a single document with the motion. A legal memorandum exceeding 20 pages must have a table of contents and a table of cases and authorities with page references."

Rule 50 requires that renewed motions for judgment as a matter of law be filed 28 days after the judgment is entered. Fed. R. Civ. P. 50(b). Rule 59 has the same time requirement for motions for a new trial. Fed. R. Civ. P. 59(b). The Court entered judgment on December 4, 2018,

---

[2] Any argument not specifically addressed herein is rejected.

making the motions due January 2, 2019 (January 1, 2019, 28 days from December 4, 2018, was a court holiday). The parties, however, each proposed a post-judgment briefing schedule that included initial motions to be filed by Planar (and Mass, for attorney's fees) after the 28-day period. Mass proposed that post-judgment motions be filed by January 11, 2019, and Planar proposed that such motions be filed by January 29, 2019. These proposed deadlines took into consideration the holidays and pre-planned attorney vacations. The Court set the deadline for January 29, 2019.

In light of the requirement that motions under Rule 50(b) and 59(a) must be filed within 28 days from the entry of judgment, Planar filed a motion on January 2, 2019. ECF 433. This motion outlined in a few pages Planar's arguments supporting its Rule 50(b) and 59(a) motions. This motion also stated that by January 29, 2019, the deadline set by the Court, Planar would both fully confer with Mass and file a more complete memorandum in support of the motions, to comply with Local Rule 7-1(a) and (c). Planar's motion generally described the grounds on which it challenged the jury's verdict and on which Planar it requested a new trial.

The Court accepts Planar's initial filing as containing sufficient particularity and reasonable specificity to comply with the Federal Rules of Civil Procedure and the Local Rules. *See, e.g. United States v. Bills*, 2018 WL 6697180, at *2 (N.D. Ill. Dec. 20, 2018) ("The Court finds this [Rule 59(e)] Motion sufficiently identifies the relief sought and sets forth the Government's argument in support of such relief with reasonable specificity. The Court, therefore, will consider the Motion and supporting briefs, despite their piecemeal filing." (citation omitted)). Additionally, to the extent Planar's January 2, 2019 motion did not fully comply with Local Rule 7-1(c), the Court finds that an exception to Local Rule 7-1(c) is appropriate in this case. Both parties requested deadlines beyond the 28-day period (albeit

different deadlines) and the Court granted the request and extended the deadline for the substantive memoranda supporting the post-judgment motions. It is inequitable for Mass to request a briefing schedule outside the 28-day period and then argue under Local Rule 7-1(c) that the motions should be denied because the full supporting memorandum was filed outside the 28-day period.

## 2. Contributory Infringement

Planar argues that the jury's finding of contributory infringement was not supported by substantial evidence. Specifically, Planar argues that Mass failed to show that: (a) Planar's products did not have a substantial, noninfringing use with respect to the "integral arm" requirement of claims 1, 4, and 10 of the 331 Patent; (b) Planar's products tended to "wrap around" the user as required in claims 1, 4, and 10 of the 331 Patent; (c) Planar's "old" model of triple monitor stand was sold after the 331 Patent issued; and (d) any user had any preference of a "desired degree" to which Planar's monitor stands would allow the monitors to be adjusted, as required under the 978 Patent. Each argument is addressed in turn.

### a. Integral arm

The patent code provides, in relevant part, that "[w]hoever . . . sells . . . a component of a patented machine . . ., constituting a material part of the invention, . . . and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c). "A substantial noninfringing use is any use that is not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018) (quotation marks omitted). Planar asserts that it presented evidence that its allegedly infringing monitor stands were used with the arms separated, and thus were not infringing.

Mass presented evidence and argued at trial that Planar's purported noninfringing use of the monitor stands with arms separated was illusory, impractical, and, at most, occasional. Mass showed a video of its expert, Dr. John Akin, testing a configuration with arms separated and showing the instability of that configuration. Dr. Akin also performed a similar demonstration in court and testified that using the monitor stands with the arms separated was unsafe, dangerous, and presented a tipping hazard. Dr. Akin further testified that the separated-arm configuration that Planar claimed, in which one monitor was in portrait mode and one was in landscape mode and the top or the bottom of the monitors was aligned, was not a configuration he had ever seen in his 50 years in a computer-aided science environment. Mass also submitted Planar's product specifications and assembly instructions, which provided instructions for locking the two arms together as one integral unit and showed images of the arms together. Some later instructions also, however, provided an optional configuration with arms separated and some included an image of that configuration. Mass argued that those later instructions were produced after this lawsuit was filed, in an effort to avoid liability. The jury also had the allegedly infringing monitor stands along with some monitors in the jury room.

Planar asserts that Dr. Akin's configuration with arms separated is not the configuration shown in the assembly instructions or a normal configuration with arms separated, but is instead an improper assembly with the monitor mount attached to the arm (in contravention to the instructions), no monitor attached, and the arms tilted so far back that the stand could do nothing but fall over. Planar asserts that with a normal arms-separated configuration and monitors attached, the monitor stands are stable.

Planar presented the testimony at trial of Ming-Hsien Huang, president of HighGrade Technology Co, Ltd. ("HighGrade"). HighGrade is the indemnitor of Planar and manufacturer of

the allegedly infringing products. Mr. Huang testified that the products are manufactured to be able to work with the arms separated and he has never received a complaint that the monitor stands are unstable with the arms separated. Mr. Huang also testified that he had seen "a lot of uses with doctors and in the office, and [the monitor stands are] used the way [they were] designed." He explained that these uses included with the arms separated and the monitors split, with one in portrait orientation and one in landscape orientation. Planar also presented the expert testimony of Dr. Raymond Yee, who had purportedly followed Planar's assembly instructions and tested arms-separated configurations that had monitors attached. Dr. Yee testified that the configurations he tried were stable and safe. Planar also notes that Mass's owner Jerry Moscovitch testified that he would not expect someone to put Planar's products together in the manner shown by Dr. Akin, because people would not "set it up so it would fall over" and may instead put them "together in the correct manner."[3]

Viewing the evidence in the light most favorable to Mass and drawing all inferences in Mass's favor, the Court does not find that that the "evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Go Daddy*, 581 F.3d at 961. The jury was presented with conflicting evidence and experts with contradicting opinions. The jury also had the physical items in the jury room to test. The jury was given an instruction on contributory infringement that included the requirement that there be no substantial, noninfringing use. Substantial, noninfringing use was defined to the jury as use that is not "occasional, farfetched, impractical, experimental, or hypothetical." There was substantial

_____

[3] Based on his full testimony, the "correct" manner to Mr. Moscovitch appears to mean with the arms locked together and as one integral unit.

evidence supporting the jury's implicit finding that Planar's purported noninfringing use was occasional, farfetched, impractical, experimental, or hypothetical.

### b. Wrap around the user

Planar argues that its products cannot infringe the 331 Patent because the products only hold monitors of less than 24 or 32 inches, the monitors necessarily will sit in front of a user regardless of how the support arms are bowed, and thus they do not "wrap around" the user. Planar appears to interpret the claims of the 331 Patent to require the monitors to literally surround, or at least be beside the user or otherwise break the plane in front of the user. Planar's interpretation of "tends to wrap around the user" is too limiting and contrary to the 331 Patent. The 331 Patent discusses "wrapping around" the user in the specification and in claims 1 and 9. The patent provides:

> The slightly bowed configuration of the horizontal support arm further helps to place the LCD screens 14, 16 and 18 in a manner such that the screens "wrap around" the user and further enhance the ease with which each screen may be viewed. The radius of curvature is preferably within a range of about 24"-36", and more preferably about 30", which has been found to ergonomically maximize the convenience to the user in viewing the LCD screens
>
> * * *
>
> the support arm is a) bowed at the front of the support arm so that in use the support arm tends to wrap around a user positioned in front of and viewing the displays
>
> * * *
>
> the front of the support arm on one side of the support column is bowed, and the front of the support arm on the other side of the support column is bowed so that in use the support arm tends to wrap around a user positioned in front of and viewing the displays

331 Patent at 3:36-43, 4:56-58, 5:38-41.

The plain text of the claims provides that the user is *in front of* the display monitors and not that the support arm or the monitors are encroaching on the sides of the user to "wrap around" the user.[4] Although the specification discussed that the screens would "wrap around"—offset in quotation marks to indicate the term was not meant literally—the user, the claims both state that the *support arm* would be bowed such that it *tends to* wrap around the user. Qualifying "wrap around" with "tends to" shows that the support arms (and the monitors attached to them) do not literally wrap around the user (which would not be very conducive to use). Further, in the specification the amount of curvature is explained at preferably only 30 degrees. The specification also explains that the point of this *slightly* bowed configuration is to ergonomically maximize convenience in viewing the monitors. Under Planar's interpretation, where monitors need to be surrounding a user on the sides such that the user is not in front of the monitors, it would be *in*convenient viewing, forcing a viewer to turn his or her head back and forth to see both monitors.

Planar cites the testimony of Mr. Moscovitch, who stated that "dual horizontal" monitors are "side-by-side" and that if one had "three or four, they would wrap around a user." He then testified that "you can't wrap two monitors around the user if they're not large enough. You would have to have probably 40-inch monitors to do that. These are only 15-inch."

The claims of the 331 Patent require a support arm that is bowed such that when used the viewer will be sitting in front of the attached monitors and the curved *support arm* will tend to wrap around the viewer. The support arm will not literally wrap around the viewer because it

---

[4] Planar asserts that with a smaller monitor a user would have to rest his or her head against the monitor before the monitors could "wrap around the head." A requirement that the monitors "wrap around the head," however, is contrary to the claims' requirement that the user be "positioned in front of and viewing the displays."

isn't large enough, but the curvature, if continued beyond the support arm, would create a line that would tend to go around the viewer. The testimony by Mr. Moscovitch does not change the requirements of the patent. There was substantial evidence in the record supporting the jury's verdict that Planar's products contained such a bowed support arm. The jury had the products themselves to review and the testimony of Mass's expert, Dr. Akin.

### c. Old model of triple monitor stand

Planar notes that there is one of its products, the "old" triple monitor stand, was designed with arms that were unable to be separated. This product, asserts Planar, was only sold before the 331 Patent issued. Thus, argues Planar, it could not have infringed the 331 Patent. Mass responds that this product infringed the 978 Patent, which was issued well before the alleged sales, and that Mass's expert calculated damages using the 978 Patent royalty figures for sales made until that patent expired in 2016. Thus, argues Mass, even if the triple monitor did not infringe the 331 Patent, because it infringes the 978 Patent and that is the patent from which Mass's expert calculated damages for the sales at issue, any error in the jury finding this product infringed the 331 Patent in addition to the 978 Patent is harmless error. Mass asserts that the damages calculation would not have been any different had the 331 Patent not been in the mix.

Planar responds to Mass's argument claiming that the jury might have based its entire *direct* infringement verdict on this one product and that the only reasonable assumption is that "the jury improperly determined infringement and awarded damages based on the sales of the 'old' triple monitor stand that should not have been included in the award." Planar, however, did not move for a judgment as a matter of law on direct infringement.[5] Planar also ignores Mass's

---

[5] Perhaps Planar's reference to direct infringement is because of the requirement that to prove contributory infringement there must be underlying direct infringement.

point that the "old" triple monitor was alleged to have infringed the 978 Patent, which predates the 331 Patent.

Although the 978 Patent is titled "Dual Display System," Mass asserted that any multi-screen product that was intended to display at least a pair of monitors and otherwise met the claim limitations infringed on this patent, including triples and quads. Mr. Moscovitch testified generally that triple monitor stands with the "booking" feature infringed the 978 Patent. Dr. Akin specifically opined that the older version of the triple monitor stand infringed the 978 Patent, discussing each of the relevant claim elements. There was substantial evidence supporting Planar's indirect infringement of the 978 Patent through the old triple monitor stand. Thus, regardless of whether that monitor stand infringed the 331 Patent, its sales would have been included in the damages calculation and award. Any error if the jury found the old triple monitor stand to infringe the 331 Patent would have been harmless error.

### d. Desired degree

The 978 Patent includes a claim limitation that the "mounting means" must "permit [the] displays to be angled toward each other to a desired degree." Planar argues that substantial evidence was not presented to the jury that its products include this limitation. Planar notes that in other litigation involving Mass's patent, the court in the Eastern District of Texas found that this term was not indefinite because it is "objectively verifiable" and that a user's preference might change depending on the circumstances, such as glare and seat height. Planar argues that this analysis by the Eastern District of Texas, to which this Court "agreed," required Mass to present evidence of specific users' preferences of using Planar's products and whether they used those products to adjust the displays to a desired degree. Planar also notes that its products allow only a maximum 20-degree swivel of the monitors toward one another, and some configurations

allow only a 5-degree adjustment, and that Mass did not present any evidence that such a degree of adjustment met the desire of any user.

The Court previously discussed this claim text in its Opinion and Order resolving Planar's motion for summary judgment. The Court agreed with the analysis of the Eastern District of Texas, which held that "the claim language focuses on whether the apparatus allows the user to adjust the angular orientation of the display." *Mass Engineered Design, Inc. v. Planar Sys., Inc.*, 2017 WL 2642277, at *12 (D. Or. June 19, 2017) (quoting *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 559 F. Supp. 2d 740, 751 (E.D. Tex. 2008)). This Court then held:

> The limitation in both claims is for a *mounting means* that includes the *means* for adjusting the monitors to the user's desired degree. The claims do not describe limitations on the specific angles of adjustment. They only require that the product contain a means for adjusting the monitors toward or relative to each other to one or more desired degrees. The "desired degree" part merely explains that at any given time the amount of adjustment will vary based on user preference at that moment.
>
> * * *
>
> The ability to adjust to a specific degree is not required by the claim limitation. It is objectively verifiable whether a product can adjust the monitors toward or relative to each other.

*Id.* at *13 (emphasis in original) (citation omitted).

The jury was presented with substantial evidence that Planar's products had a mounting means that included a means for adjusting the monitors toward or relative to each other to one or more desired degrees. Dr. Akin and Mr. Moscovitch testified regarding the mounting means and the jury had exemplar physical devices.

### 3. Induced Infringement

Planar argues that the Court should grant judgment as a matter of law on Mass's claim for induced infringement because based on the substantial noninfringing use with the arms separated

as discussed in Planar's arguments relating to contributory infringement, Mass was required to present evidence of instances of direct infringement that were induced by Planar. The Court, however, has rejected Planar's argument that the jury's finding that there was no substantial noninfringing use was not supported by substantial evidence. Furthermore, the jury found Planar liable for direct infringement and Planar has not moved for judgment as a matter of law on the jury's verdict relating to direct infringement. Thus, Planar's argument that Mass was required to prove direct infringement is inapposite, because Mass did prove direct infringement, the jury found direct infringement, and that finding is not challenged.

Even if the Court accepted Planar's argument regarding substantial noninfringing use, however, the Court would still deny judgment as a matter of law on induced infringement. Planar relies on *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) to argue that Mass must have presented either (1) specific instances of infringement, or (2) that Planar's accused products sold without monitors "necessarily infringe." The Court, however, already rejected Planar's arguments in the Opinion and Order resolving Planar's motion for summary judgment. *See Mass*, 2017 WL 2642277, at *6. Planar's arguments are less persuasive now that the jury has found direct infringement. As the Federal Circuit has noted, "where an alleged infringer designs a product for use in an infringing way and instructs users to use the product in an infringing way, there is sufficient evidence for a jury to find direct infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1366 (Fed. Cir. 2012); *see also Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318, 1322 (Fed. Cir. 2009) (upholding jury verdict of direct and induced infringement where the products were designed to practice the claimed invention and sold with instructions on how to use the products in an infringing way). Such a situation is unlike in *Acco*, when the manufacturer did not instruct users on the infringing

use. Planar specifically instructed users on the infringing use and Dr. Akin testified regarding infringing use. As the Federal Circuit has noted, "[e]vidence of active steps taken to induce infringement, such as advertising an infringing use, can support a finding of an intention for the product to be used in an infringing manner." *Lucent*, 580 F.3d at 1322; *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016) ("Indeed, we have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material."); *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1377 (Fed. Cir. 2005) ("Instruction manuals for the other accused probes similarly confirm that the return electrode should be completely surrounded by or immersed in saline during use. Thus, substantial evidence supports the jury's determination that Smith & Nephew indirectly infringed the claimed method."). The jury's verdict was supported by substantial evidence.

### 4. Damages

Planar argues that the damages award is not supported by substantial evidence, primarily relying on the same arguments with respect to contributory and induced infringement that the Court has rejected in evaluating Planar's motions for judgment as a matter of law on Mass's contributory and induced infringement claims. For direct infringement, Planar argues that there was not substantial evidence of the number of direct infringing users. Planar notes that Ms. McCullough testified that at least 5 and no more than 50 allegedly infringing stands have been used by Planar, but that Mass did not obtain testimony from her regarding whether the arms were separated or apart to infringe the 331 Patent or whether she saw the products in use before 2016 to infringe the 978 Patent.

Because the jury found direct, contributory, and induced infringement and that Planar's products necessarily infringe,[6] the specific number of directly infringing users was not required to be found. As the Federal Circuit explained in *Dynacore Holdings Corp. v. U.S. Philips Corp.*, with respect to vicarious liability for indirect infringement under such circumstances, "Plaintiffs who identify an entire category of infringers (e.g., the defendant's customers) may cast their theories of vicarious liability more broadly, and may consequently seek damages or injunctions across the entire category." 363 F.3d 1263, 1274 (Fed. Cir. 2004).

For contributory infringement, Planar's arguments rely on its rejected argument regarding substantial noninfringing use for the 331 Patent and the mounting means adjusting to a desired degree for the 978 Patent. Thus, these arguments by Planar are rejected.

For induced infringement, Planar relies on the same arguments the Court rejected in evaluating Planar's motion for judgment as a matter of law on Mass's claim for induced infringement. Planar also argues that the jury had nothing but speculation to support the damages award because no evidence describes how many of Planar's products were used in an infringing

---

[6] Planar argues that a finding that there is no substantial noninfringing use is not a finding that a product necessarily infringes. The Court disagrees. The Federal Circuit in *Dynacore* explained that the plaintiff must demonstrate either that the products "necessarily infringe" or specific instances of direct infringement and limit liability to those instances. 363 F.3d at 1276. The Federal Circuit then explained that it "must therefore determine whether" the products "directly infringe" or "whether there may also be substantial non-infringing configuration." *Id.* Thus, the Federal Circuit found that to "necessarily infringe" means not to have substantial non-infringing configurations. *See also Kaneka Corp. v. SKC Kolon PI, Inc.*, 198 F. Supp. 3d 1089, 1101 (C.D. Cal. 2016) ("Where products necessarily infringe a patent—i.e., where there are no substantial non-infringing uses of the patent—a patentee may base its theory of liability upon an entire class of infringers, such as the defendant's customer base, and may cast its theory of vicarious liability across the entire category. . . . Because there are no substantial non-infringing uses of the accused polyimide film, the film necessarily infringes."); *Candela Corp. v. Palomar Med. Techs., Inc.*, No. 2008 WL 11442020, at *2 n.3 (E.D. Tex. Sept. 5, 2008) ("The court therefore reads *Dynacore* as requiring the patent holder to either show that the accused products always infringe the patents-in-suit (i.e., that no substantial non-infringing use exists) or to demonstrate specific instances of direct infringement by third parties to prevail.").

manner. Planar quotes *Lucent*, in which the court found that the damages award was speculative. 580 F.3d at 1334. *Lucent*, however, is distinguishable from this case.

*Lucent* involved a product that when used in only in a limited set of circumstances infringed. The jury here, however, found that Planar's products do not have a substantial noninfringing use and thus necessarily infringe. *Lucent* also involved a lump sum royalty, which is different than the per-unit royalty involved in this case. As the Federal Circuit explained in *Lucent*:

> A per-unit running royalty is paid based on the number of units ultimately sold (or made, etc.), which is of course directly related to product revenues. As more units are sold, more revenue is earned and more royalties are paid. If the licensee chooses to omit the patented feature from its commercial product, the licensee will generally owe no per-unit royalty. Thus, a per-unit running royalty agreement differs from a lump-sum agreement in the same general ways a percentage-of-price running royalty agreement differs from a lump-sum agreement.

*Id.* at 1330. In a per-unit royalty, as in this case, evidence of the number of units sold or product revenues from units sold that contain the patented feature, plus evidence of a reasonable royalty, enables the jury to calculate the damages award. The Federal Circuit has also explained that "[w]e have never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence. Such a strict requirement could create a hypothetical negotiation far-removed from what parties regularly do during real-world licensing negotiations." *Id.* at 1334.

The jury had evidence of Planar's revenue from units sold that contained the features patented by the 978 and 331 patents. Mass also presented the stipulation of the parties regarding the percentage of total sales that was in the United States. The jury also heard a detailed breakdown of damages, by allegedly infringing product and by date, calculated by Mass's damages expert Walter Bratic.

Planar challenges the sufficiency of the evidence of the units sold or revenue from units sold relied on by Walter Bratic as evidence that was inadmissible at trial. Planar's financial records relied on by Mr. Bratic were admitted as exhibits at trial. Before they were offered and outside the presence of the jury, Planar noted that it was objecting to Mr. Bratic's royalty opinion as not based on admissible, substantive evidence of sales or revenue, or at a minimum that the Court should include a limiting instruction. The Court responded that it would need to consider the issue of a limiting instruction further, but that Mr. Bratic would be permitted to give his opinion on a reasonable royalty, and that if Planar believed as a matter of law that the jury could not award damages, then that would be addressed in post-trial motions. At that point Mass joined the discussion and stated that it intended to offer exhibits 307, 309, 310, and 311, Planar's financial records relied on by Mr. Bratic. The following discussion then took place:

> M's Counsel:  [W]e are going to get in through Mr. Bratic what we have as Exhibits 307, 309, 310, 311. They are [Planar's] financial documents on which his numbers are based. They've lodged no objections to them; they're on our exhibit list.
>
> Court:  And you're going to offer them into evidence at that time?
>
> M's Counsel:  We are offering them into evidence. There is no authenticity issue. They are their documents. They are not hearsay. They are their numbers; it is their numbers.
>
> Court:  Fine. Let's move on. If for whatever basis it turns out that Planar is right, if there is a plaintiff's verdict for reasonable royalties, and Planar turns out to be right, we can deal with that in post-trial motions.
>
> P's Counsel:  Just to clarify, there are objections to those exhibits. Those are new exhibits that we received right before trial.
>
> Court:  Were they produced by Planar?
>
> P's Counsel:  They were produced by Planar, but Mass put up Ms. McCullough, who we thought they would ask about the documents, and Mass's declined to ask her anything about damages.

> Court: You are welcome to call her. You will not be precluded
> from calling her. She can say whatever is truthful and accurate
> within her knowledge about them.

Tr. 884:3-13. When the exhibits were offered at trial, the Court asked Mass's counsel whether

the exhibits were produced by Planar in discovery and Mass's counsel confirmed that they were.

Tr. 1106:19-21. At that time, Planar did not object to the admission of any of the exhibits.

Planar argues that its counsel's dialogue with the Court outside the presence of the jury

was sufficient to preserve Planar's objections to each exhibit, despite Planar's statement when

each exhibit was offered that it had no objection. The Court disagrees and finds that Planar

waived its right to object to Exhibits 307, 309, 310, and 311. Additionally, even if Planar had

preserved its right to object to these exhibits, Planar's objection is based on authenticity. Planar

admitted, however, that the financial records contained in these exhibits were produced by Planar

during the litigation, and Mass agreed. The Court finds that Planar's admission is sufficient

authentication of Planar's financial records and any objection to the exhibits would be overruled.

The argument that the exhibits are inadmissible and that Mr. Bratic based his testimony on

inadmissible evidence, therefore, is rejected.

The Court must "afford substantial deference to a jury's finding of the appropriate

amount of damages" and "[u]nless the amount is grossly excessive or monstrous, clearly not

supported by the evidence, or based only on speculation or guesswork" must be upheld. *Harper

v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008) (quotation marks omitted). Those

standards have not been met and the Court upholds the jury's damages award.

### 5. Remittitur

Planar moves for remittitur, arguing that the verdict was excessive and the Court should

reduce the damages award to the maximum amount sustainable by the proof. The Court does not

find that the damages award was excessive or not sustainable by the proof. The reasonable royalty as asserted by Mass, applied to the sales and revenue data produced by Planar and presented by Mass, supports the jury's damages award.

## C. Motion for New Trial

Planar also moves, in the alternative, to amend the judgment and for a new trial under Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure on Mass's claims for contributory and induced infringement, and with respect to damages. In support of this motion, Planar makes nine separate arguments that it claims justify a new trial and remittitur. The Court addresses each argument in turn.[7]

### 1. Whether there was an improper verdict of infringement of the 331 Patent

Planar argues that the jury's verdict finding that the 331 Patent was infringed was contrary to the clear weight of the evidence and that a new trial must be granted to prevent a miscarriage of justice. In determining the clear weight of the evidence, a district court has "the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (quotation omitted). "The district court's denial of the motion for a new trial is reversible only if the record contains *no evidence* in support of the verdict." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1347 (9th Cir. 1985) (emphasis added). While a district court may view the evidence differently than the jury, a district court may not substitute its "evaluations for those of the jurors." *Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir.

---

[7] Any argument not specifically addressed herein is rejected.

2003); *see also Silver Sage Partners, Ltd.*, 251 F.3d at 819 ("[A] district court may not grant a new trial simply because it would have arrived at a different verdict.").

Having reviewed the competing evidence presented by the parties on these points, the Court is not persuaded that the jury's verdict was against the clear weight of the evidence. Planar is correct that there was some evidence that supports its theory of the case. Planar, however, had a full and fair opportunity to present its defense to the jury. The jury reasonably weighed both parties' evidence and found in favor of Mass. Planar is not entitled to a new trial simply because it is dissatisfied with the jury's conclusions.

Planar asserts that Dr. Akin testified that if the two arms are separated they would still be an "integral arm" and thus would still infringe Mass's patents, when the Court had previously indicated that when the arms were separated they were not an integral arm but were two separate arms. Planar argues this testimony confused the jury. The Court notes that this is a slight exaggeration of Dr. Akin's testimony, when taken in context. Planar also spent significant time at trial challenging whether its products contained an "integral arm." The jury had ample evidence to consider in making its determination.

Planar also asserts that Dr. Akin gave false testimony because in a previous trial he testified that an arm with pieces permanently attached together was not a single piece arm and in this trial he testified that an arm with separate pieces was a single piece arm, and that impeaching him was insufficient because in rebuttal he clarified the different claim constructions involved in the different cases.[8] Planar asserts that a new trial is required to prevent manifest injustice.

---

[8] The other case construed "single piece support arm" to have its plain and ordinary meaning, and Dr. Akin opined that the arm at issue, involving multiple pieces that attached together, was not a single piece arm. The Eastern District of Texas, who performed claim construction in this case, construed "single piece support arm" to mean an "integral arm."

As an initial matter, the Court does not find that Dr. Akin "lied" on the stand. Although Planar asserts that the term "single piece support arm" may not have a different meaning in one state (Virginia) than in another state (Oregon), the reality is that this term was subject to claim construction in two different courts and was given two different meanings. Dr. Akin's opinions in the two different cases were consistent with the meanings as construed in each case.

Additionally, Planar attacked Dr. Akin's credibility on this point during its cross of Dr. Akin. Planar asked Dr. Akin whether he was "lying back then or were you lying today." Planar also attacked Dr. Akin's credibility on this issue during closing arguments. Planar emphasized that Dr. Akin had found that an arm that could not be separated was not a single-piece arm and "[y]et now he is sitting here telling you that this thing, not only can't be separated, but becomes separated and intends to be used separated is a single-piece arm. What is it? Where is he telling the truth? You have got to gauge that." Tr. 1704:4-8. The jury therefore had the information on which to weigh Dr. Akin's credibility and the jury's verdict did not result in a miscarriage of justice.[9]

### 2. Whether the jury's finding of "mounting means" as required in the 978 Patent was against the weight of the evidence

Planar argues that the weight of the evidence shows that Planar's products are not kinematically equivalent to the ball-and-socket joint of the "mounting means" claimed in the 978 Patent. Planar asserts that the three axis of rotation of its products do not intercept at exactly the same, single point and thus are not the kinematic equivalent of a ball-and-socket joint. Planar

---

Dr. Akin opined that two separate pieces linked together were an integral arm and, thus, a single piece support arm.

[9] Planar also attacks Dr. Akin's testimony regarding one piece of prior art, and that is similarly without merit as a basis to reject the jury's verdict.

also argues that because the doctrine of equivalents requires that the difference in the equivalent be "insubstantial" to one of ordinary skill in the art, and Mass and Dr. Akin focused on whether the difference in axis rotation intersection would be noticeable or substantial to a "user," the jury's verdict on this point may not stand. Planar notes that in closing argument Mass's counsel conceded that only two axis intersect, but argued that this difference would not matter to a "user," which is not the proper legal test.

The Court instructed the jury on the means-plus-function test, on the doctrine of equivalents, and that arguments by counsel are not evidence. The Court presumes the jury followed instructions. *Penry v. Johnson*, 532 U.S. 782, 799 (2001); *Poyson v. Ryan*, 879 F.3d 875, 898 (9th Cir. 2018). Therefore, the arguments of counsel regarding whether a "user" would find any differences insubstantial or meaningful do not support a new trial.

Regarding the "mounting means," Planar's focus on the kinematic equivalence of the ball-and-socket joint is too narrow. Mass was required to show that Planar's products contained a structure that performed the identical function of the mounting means using a structure that was identical or equivalent to the structure identified in the 978 Patent. *Gen. Protecht Grp., Inc. v. Int'l Trade Comm'n*, 619 F.3d 1303, 1312 (Fed. Cir. 2010). To show structure equivalence under 35 U.S.C. § 112, ¶ 6, Mass must show that the structures in Planar's products "perform the identical function, in substantially the same way, with substantially the same result." *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000).

The Court instructed the jury that the function was "mounting the displays to the arm assembly" and the structures included ball, shaft, socket, hold, tabs, etc. identified in the patent, plus equivalents. The equivalents do not have to be for each individual component (*e.g.*, an equivalent for hole 72, tabs 80 and 82, and so forth), so long as all of the claim limitations are

met. *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394, 398 (Fed. Cir. 1994) ("The doctrine of equivalents does not require a one-to-one correspondence between components of the accused device and the claimed invention. An accused device may infringe under the doctrine of equivalents even though a combination of its components performs a function performed by a single element in the patented invention. The accused device must nevertheless contain *every* limitation or its equivalent." (emphasis in original) (citations omitted)); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991) (finding equivalency when the accused product used a "multiplexer rather than an address buffer" because even though the components were not the same, the accused product performed "substantially the same function in substantially the same way to achieve substantially the same result"); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989) ("Sumitomo's analysis is faulty in that it would require equivalency in components . . . . However, the determination of equivalency is not subject to such a rigid formula. An equivalent must be found for every limitation of the claim somewhere in an accused device, but not necessarily in a corresponding component, although that is generally the case." (footnote omitted)).[10]

There was ample evidence that Planar's product contained structures that performed the same function as the "mounting means," in substantially the same way, to achieve the substantially the same result. There is no requirement that Planar's hinge joints be "kinematically

---

[10] Structural equivalence under 35 U.S.C. § 112, ¶ 6 is "an application of the doctrine of equivalents in a restrictive role." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28 (1997); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999) (noting that the tests for equivalence under the doctrine of equivalence are "closely related" and involve "similar analysis" to those under § 112, ¶ 6, although noting that the "function" must be identical under § 112, ¶ 6 and only the "way"—*e.g.*, the structure—and the "result" can be equivalent). The Court therefore finds these cases discussing the doctrine of equivalents instructive because they involve equivalent structures (*e.g.*, "way") with identical functions.

equivalent" to Mass's ball-and-socket joint. That is not the test for equivalence under Federal Circuit law. Weighing all the evidence, the Court is not persuaded that the jury's verdict was against the clear weight of the evidence.

### 3. Whether the jury's finding of a "support means" as required in the 978 Patent was against the weight of the evidence

Planar argues that its products do not have the "support means" as used in the 978 Patent because its products do not support the monitors in such a manner that allows the rotation of displays from a horizontal side-by-side arrangement to a vertical one-above-the other arrangement. That, however, is not the function of the support means, as agreed to by the parties, established in the claims, and instructed by the Court. The Court instructed the jury that the function of the support means is "supporting the arm assembly from the base member." Considering the evidence in the record, the jury's verdict that Planar's products contained a support means was not against the clear weight of the evidence.

### 4. Whether the verdict form was flawed, resulting in a flawed general finding of infringement

Planar argues that the verdict form was flawed because it did not separate each product. Planar asserts that the 978 Patent requires a pair of electronic displays, and therefore direct infringement could only be found for "bundled" products when stands were sold with, which were only a small percentage of Planar's sales. Planar contends that allowing the single verdict to stand results in a verdict that is contrary to the clear weight of the evidence, a miscarriage of justice, and an excessive award of compensation. This argument is unclear because Planar is not challenging the jury's verdict of direct infringement.

More importantly, Planar concedes that the jury found Planar liable for contributory and induced infringement. Planar's argument that the jury's award is excessive, contrary to the weight of the evidence, and manifestly unjust relies on an assumption that the jury did not award

Mass significant damages for indirect infringement of the 978 Patent. The Court finds that the weight of evidence does not support such a contention.

### 5. Whether the Court erred in its instruction regarding unassembled products

Planar argues that the Court's Instruction No. 35 on unassembled products was erroneous. The Court instructed the jury: "The patent laws do not allow a manufacturer or seller to avoid infringement simply by selling a dissassembled device, if the device is designed to be assembled before operation and would infringe as assembled." Planar cites to *Deepsouth Packing Company v. Laitram Corporation*, 406 U.S. 518, 528-29 (1972). That case, however, involved the *export* of unassembled parts outside the United States for assembly in a foreign country. The Supreme Court has explained that assembly within the United States *would* constitute infringement and that the issue in *Deepsouth* was the foreign assembly:

> In *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972), a manufacturer produced components of a patented machine and then exported those components overseas to be assembled by its foreign customers. (The assembly by the foreign customers did not violate U.S. patent laws.) In both *Deepsouth* and this case, the conduct that the defendant induced or contributed to would have been infringing if committed in altered circumstances: in *Deepsouth* if the machines had been assembled in the United States, *see id.*, at 526, and in this case if performance of all of the claimed steps had been attributable to the same person. In *Deepsouth*, we rejected the possibility of contributory infringement because the machines had not been assembled in the United States, and direct infringement had consequently never occurred.

*Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 923 (2014) (footnote omitted).

The Federal Circuit has also explained that *Deepsouth* does not apply when unassembled parts are sold within the United States:

> Although in *Deepsouth* the Court at times used broad language in reaching its decision, it is clear that *Deepsouth* was intended to be narrowly construed as applicable only to the issue of the extraterritorial effect of the American patent law. The Court so implied not only in *Deepsouth* ('[A]t stake here is the right of

American companies to compete with an American patent holder *in foreign markets. Our patent system makes no claim to extraterritorial effect*, . . . ' 406 U.S. at 531 (emphasis added)), but in a subsequent decision as well ('The question under consideration [in *Deepsouth* ] was whether a patent is infringed when unpatented elements are assembled into the combination *outside the United States*.' *Dawson Chemical Co. v. Rohm & Haas Co.*, 448 U.S. 176, 216 (1980) (emphasis added).)").

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 17 (Fed. Cir. 1984)

(emphasis and alterations in original); *see also Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d

1325, 1340 (Fed. Cir. 2005) ("Congress enacted section 271(f) in the wake of the United States

Supreme Court's decision in *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972).

*Deepsouth* acknowledged that unauthorized manufacturers of patented products could avoid

liability for infringement under the then-existing law by manufacturing the unassembled

components of those products in the United States and then shipping them outside the United

States for assembly. Section 271(f) closed that obvious loophole in the statutory protections for

patented inventions.").

Because *Deepsouth* does not apply in the circumstances of this case, where Planar

concedes the products were sold in the United States, Planar's argument that selling unassembled

parts for assembly in the United States may not result in infringement is incorrect. *See,e.g.*, *High

Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995)

("[I]f a device is designed to be altered or assembled before operation, the manufacturer may be

held liable for infringement if the device, as altered or assembled, infringes a valid patent."); *EBS

Auto. Servs. v. Illinois Tool Works, Inc.*, 2011 WL 4021323, at *5 (S.D. Cal. Sept. 12, 2011)

("[S]uffice it to say that the patent laws do not allow a manufacturer to avoid infringement

simply by selling a disassembled device that would infringe on assembly."). The Court's instruction, therefore, was not erroneous.[11]

### 6. Whether the Court erred in its instruction of "single piece"

Planar argues that the construction of the term "single piece support arm" was erroneous and allowed the jury to find that a support arm made of two separate pieces could be "integral" and, therefore, a "single piece." Planar argues that the Court found that when the two separate arms were not interlocked and notched together but were attached to the support means separated from one another, they were not "integral." The Court noted as follows in its Opinion and Order resolving Planar's motion for summary judgment:

> The majority of the photographs, instructions, technical specification sheets, and manuals in the record show the two arm pieces being locked together on the support column using the notch-and-groove connection so that they form a single arm that extends on both sides of the support column. In this configuration, they come together to form one whole—an "integral" arm. Some of the instruction sheets, however, include at least one photograph where the two arm pieces are not locked onto one another forming one long arm. Instead, they are offset so that one monitor could be placed higher than another. In such a configuration, they are not an integral arm, and appear to be two separate support arms.

*Mass*, 2017 WL 2642277, at *8.

The Court affirms its previous finding in resolving summary judgment that the two separate arms can be an "integral" or single piece arm as that term is used in the 331 Patent when they are locked together using the notch-and-groove connection to form a single arm. The Court

---

[11] Planar's proposed alternate instruction is legally erroneous. Planar proposes; "Sale of a disassembled [or unassembled] device does not infringe a patent, even if it would be easy to assemble the device into an infringing assembly in a manner of minutes." This is contrary to Supreme Court and Federal Circuit precedent. *See, e.g.*, *Limelight*, 572 U.S. at 923 (noting that the conduct in *Deepsouth* of assembling parts into an infringing product would have been infringing if the assembly had taken place within the United States).

therefore rejects any argument by Planar that the two "separate" arms may not infringe or that an instruction was required to be given to the jury that the arms must be constructed as a single piece to meet the "single piece" requirement.

Regarding Planar's argument that the Court needed to give an additional instruction to the effect that if Planar's products were assembled with the two arms separated and not interlocked they were not integral, even if such an instruction was required, the failure to give it was harmless. "Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading. If a jury instruction is incorrect, reversal is appropriate unless the error is more probably than not harmless." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 828 (9th Cir. 2019) (quotation marks and citation omitted). The Court discussed above that the jury's implicit finding that Planar's claimed substantial noninfringing use when the two arms were separated was occasional, farfetched, impractical, experimental, or hypothetical was supported by substantial evidence.

### 7. Whether the Court erred in its instruction of "behind" and "width of the base"

Planar argues that the Court erred in its treatment of the terms "behind" and "width of the base." In resolving the parties' pretrial motions, the Court found that Planar waived its right to request at that time claim construction on these terms. *See* ECF 252 at 47-49. Also at that time, Planar argued that although the Court construed the terms as having their plain and ordinary meaning, the Court was required to determine their "scope." The Court noted that after significant briefing and argument by the parties at summary judgment, the Court had construed "behind" as "behind the plane where the monitors are sitting" and width as being measured "side-to-side." *Id.* at 49. The Court, therefore, instructed the jury as such. Planar argues that it was not provided an appropriate opportunity to brief and make arguments regarding claim

construction of these terms. Planar's arguments are rejected and a new trial is not warranted based on the Court's instructions on "behind" and "width of the base."

### 8. Whether Mass failed to present proper evidence of damages

Planar argues that because "the damages award with respect to infringement . . . is not supported by the evidence but is against the clear weight of the evidence, a new trial on damages is necessary." *Lucent*, 580 F.3d at 1335. For all the reasons discussed herein, the jury's damages award is supported by the evidence, is not against the clear weight of the evidence, and a new trial on damages is not warranted.

### 9. Remittitur

Planar relies on the same arguments for remittitur that it presented with its Rule 50 motion. The Court denies Plaintiff's request for remittitur for the same reasons the Court denied Planar's request for remittitur submitted with that motion.

## CONCLUSION

Plaintiff's Motion for an Exceptional Case Finding and Attorney's Fees Under 35 U.S.C. § 285 (ECF 441), Defendant's Renewed Motion for Judgment as a Matter of Law (ECF 443), and Defendant's Motion to Amend the Judgment and for New Trial Pursuant to Rule 59 (ECF 444) are all DENIED.

**IT IS SO ORDERED**.

DATED this 8th day of November, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge